# Exhibit A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: HERBAL SUPPLEMENTS** **MARKETING AND SALES PRACTICES** **LITIGATION** | MDL No. 2619 Case No. 15-CV-5070 Judge John W. Darrah |

**THE CONSENSUS PLAINTIFFS' APPLICATION**
**FOR APPOINTMENT OF LEAD COUNSEL**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF FACTS ....................................................................................3

    A. Summary of Facts ......................................................................................3

        1. Defendants market and sell herbal supplements touted to contain certain herbs that would promote health.....................................................3

        2. The New York Attorney General reveals the fraud. ....................................3

    B. The Lead Counsel Committee Has Carefully Evaluated The Industry Testing Standards and the DNA Testing At The Heart of This Case ...................................3

III. ARGUMENT ...........................................................................................................4

    A. Legal Standards.................................................................................................4

    B. The Lead Counsel Committee Reflects An Unmatched Breadth of Consumer Class Action Expertise and Geographic Diversity.....................................................5

        1. Hagens Berman Sobol Shapiro LLP Should be Appointed Chair of the Lead Class Counsel Committee and Liaison Counsel ................................5

        2. Girard Gibbs LLP should be appointed to the Lead Counsel Committee. ..7

        3. Heins Mills & Olson P.L.C. should be appointed to the Lead Counsel Committee..................................................................................................9

        4. Kozyak Tropin Throckmorton, LLP should be appointed to the Lead Counsel Committee....................................................................................11

        5. Milberg LLP should be appointed to the Lead Counsel Committee. ........13

        6. Scott+Scott, Attorneys at Law, LLP should be appointed to the Lead Counsel Committee....................................................................................14

    C. The Committee's Anticipated Litigation And Discovery Plan.............................16

        1. Proposed case schedule.............................................................................16

        2. Discovery management proposals. ............................................................16

            a. Techniques for streamlining discovery.........................................16

010494-12 796177 V1

|  |  | b. | Early production of documents produced in Government investigations. ..............................................................17 |
| | | c. | Protocol for the production of electronically-stored information. .18 |
| | D. | | The Committee Pledges To Maximize Efficiency.................................................18 |
| IV. | CONCLUSION | | ....................................................................................................19 |

010494-12  796177 V1

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   240 F.R.D. 56, 58-59 (E.D.N.Y. 2006).....................................................................................2

*In re Amino Acid Lysine Antitrust Litig.*,
   918 F. Supp. 1190 (N.D. Ill. 1996) ..........................................................................................5

*Covad Commc'ns Co. v. Revonet, Inc.*,
   254 F.R.D. 147 (D.D.C. 2008)................................................................................................18

*Hagenbuch v. 3B6 Sistemi Elettronici Industriali S.R.L.*,
   2006 WL 665005 (N.D. Ill. Mar. 8, 2006)..............................................................................18

*In re Nissan Motor Corp. Antitrust Litig.*,
   385 F. Supp. 1253 (J.P.M.L. 1974).........................................................................................12

*In re Oil Spill by Oil Rig "Deepwater Horizon"*,
   295 F.R.D. 112 (E.D. La. 2013)..............................................................................................12

*Osborne v. C.H. Robinson Co.*,
   2011 U.S. Dist. LEXIS 123168 (N.D. Ill. Oct. 25, 2011).......................................................18

*Romero v. Allstate Ins. Co.*,
   271 F.R.D. 96 (E.D. Pa. 2010)................................................................................................18

*In re Synthroid Mktg. Litig.*,
   325 F.3d 974 (7th Cir. 2003) ....................................................................................................3

*Takeda v. Turbodyne Techs., Inc.*,
   67 F. Supp. 2d 1129 (C.D. Cal. 1999) ....................................................................................12

*Walker v. Discover Fin. Servs.*,
   2011 WL 2160889 (N.D. Ill. May 26, 2011) (Darrah, J.).........................................................2

010494-12 796177 V1

Pursuant to Rule 23(g)(3) of the Federal Rules of Civil Procedure, 40 Plaintiffs in 33 cases (the "Consensus Plaintiffs")[1] transferred by the Judicial Panel on Multi-District Litigation to this Court respectfully submit this application for appointment of a Lead Counsel Committee comprised of Girard Gibbs LLP, Hagens Berman Sobol Shapiro LLP, Heins Mills & Olson P.L.C., Kozyak Tropin Throckmorton, LLP, Milberg LLP, and Scott+Scott, Attorneys at Law, LLP, led by Hagens Berman as the Chair of the Committee and Liaison Counsel. In support thereof, the Consensus Plaintiffs state as follows:

## I. INTRODUCTION

As the firm that filed the first case in this District, Hagens Berman took an early lead in these cases, coordinating with Defendants' counsel, filing a motion to deem the cases in this District related and reassigned to this Court, retaining and working with leaders in the field of DNA testing of herbal supplements, and endeavoring to build consensus among Plaintiffs' counsel nationwide regarding centralization in Chicago and appointment of Lead Counsel.

Ultimately, that process resulted in consensus-building among counsel representing Plaintiffs in 33 actions, all of which agree to a proposed Lead Counsel Committee. The proposed Lead Counsel Committee is comprised of the top class action firms in the country, each of which is qualified to lead this litigation in its own right. The Lead Counsel Committee also represents geographic diversity, has

---

[1] *Allsup v. Walgreen Co.*, 1:15-cv-01244 (N.D. Ill.); *Andrews v. Walgreen Co.*, 1:15-cv-01308 (N.D. Ill.); *Angiulli v. Walgreen Co., et al.*, 1:15-cv-05461 (N.D. Ill.); *Barber v. Target Corp.*, 1:15-cv-05113(N.D. Ill.); *Beal, Walker v. Walgreen Co., et al.*, 1:15-cv-05439 (N.D. Ill.); *Boss v. Target Corp., et al.*, 1:15-cv-05433 (N.D. Ill.); *Burns v. Wal-Mart Stores, Inc.*, 1:15-cv-05418 (N.D. Ill.); *Chamberlin v. Target Corp., et al.*, 1:15-cv-05452 (N.D. Ill.); *Cintron v. Walgreen Co.*, 1:15-cv-01314 (N.D. Ill.); *Cohn v. Target Corp.*, 1:15-cv-05451 (N.D. Ill.); *Cook v. Wal-Mart Stores, Inc.,* 1:15-cv-05416 (N.D. Ill.); *Dore v. GNC Holdings, Inc., et al.*, 1:15-cv-05108 (N.D. Ill.); *Eisenbraun, McCrudden v. Target Corp., et al.*, 1:15-cv-05453 (N.D. Ill.); *Figueiredo, Kardasz v. Wal-Mart Stores, Inc.*, 1:15-cv-05093 (N.D. Ill.); *Gomez v. Target Corp.*, 1:15-cv-05428 (N.D. Ill.); *Goodman, Phiferv. Wal-Mart Stores, Inc.*, 1:15-cv-05429 (N.D. Ill.); *Greenfield v. Target Corp., et al.*, 1:15-cv-05440 (N.D. Ill.); *Hale, Pirtle v. Walgreen Co., et al.*, 1:15-cv-01182 (N.D. Ill.); *Harris v. Walgreen Co.*, 1:15-cv-02723 (N.D. Ill.); *Hernandez v. Walgreens Co.*, 1:15-cv-05076 (N.D. Ill.); *Jerdrychowski v. GNC Holdings, Inc., et al.*, 1:15-cv-02908 (N.D. Ill.); *Jones v. Wal-Mart Stores, Inc.*, 1:15-cv-05081 (N.D. Ill.)*; Kardasz v. Walgreen Co.*, 1:15-cv-05077 (N.D. Ill.); *Kohn v. Wal-Mart Stores, Inc.*, 1:15-cv-05434 (N.D. Ill.); *Mager v. GNC Holdings, et al.*, 1:15-cv-05100 (N.D. Ill.); *Marks v. Walgreen Co., et al.*, 1:15-cv-05459 (N.D. Ill.); *Moors v. Wal-Mart Stores, Inc., et al.*, 1:15-cv-05090 (N.D. Ill.); *Owens v. Wal-Mart Stores, Inc.*, 1:15-cv-05431 (N.D. Ill.); *Stevens v. Wal-Mart Stores, Inc., et al.*, 1:15-cv-05103 (N.D. Ill.); *Taketa, Fine v. Wal-Mart Stores, Inc.*, 1:15-cv-05084 (N.D. Ill.); *Trinidad v. Walgreen Co., et al.*, 1:15-cv-05078 (N.D. Ill.); *Trinidad v. Wal Mart Stores, Inc., et al.*, 1:15-cv-05102 (N.D. Ill.); and *Williams, Valdez Rodriguez v. Wal-Mart Stores, Inc., et al.*, 1:15-cv-05438 (N.D. Ill.).

ample economic resources, and is a brain trust that cannot be beat. [2] The Consensus Plaintiffs seek appointment of a committee of six firms, with five firms designated, respectively, to be principally responsible for one of the five current defendants[3] and one firm designated as the Chair of the committee and Liaison Counsel.[4] This structure will ensure the streamlined, efficient coordination of work and the significant pooling of resources necessary for the scientific testing and expert work involved.

The Consensus Plaintiffs respectfully move for the appointment of Hagens Berman (Chicago and Seattle[5]) as Chair of the Lead Counsel Committee and Liaison Counsel, because the firm brings the experience, resources and ability to lead these putative class actions, to coordinate work among counsel, and to act as Liaison Counsel with the Court. In addition, the Consensus Plaintiffs move for the appointment of Girard Gibbs (San Francisco), Heins Mills (Minneapolis), Kozyak Tropin (Miami), Milberg (New York), and Scott+Scott (New York) to the Lead Counsel Committee, because they bring the experience, resources, geographic diversity, and ability to prosecute the actions against the Defendants, and will work together as a team to coordinate strategy and resources. Each of the six firms has experience as lead counsel in nationwide consumer class actions and cases in this District, and all six have relationships and a history of working productively with other Plaintiffs' firms of record. Accordingly, as further set forth below, the Consensus Plaintiffs' motion should be granted.

---

[2] *See* Order dated July 15, 2015, ¶ 6 (Dkt. # 25) (stating that one of the main criteria for appointment is "ability to work cooperatively with others").

[3] The defendants are Walgreen Co. ("Walgreens"), GNC Holdings, Inc. ("GNC"), Target Corporation ("Target"), Wal-Mart Stores, Inc. ("Wal-Mart"), and NBTY, Inc. ("NBTY") (collectively "Defendants"). It is possible that additional defendants may be joined as the investigation is ongoing. If so, it is anticipated that one of the Committee members will have primary responsibility for such defendant.

[4] This Court has approved multi-firm lead counsel structures. *Walker v. Discover Fin. Servs.*, 2011 WL 2160889, at *3 (N.D. Ill. May 26, 2011) (Darrah, J.) (appointing two firms as lead counsel) (citing *Waudby v. Verizon Wireless Servs., LLC*, 248 F.R.D. 173, 177 (D.N.J. 2008) (appointing four firms as interim class counsel); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58-59 (E.D.N.Y. 2006) (appointing four firms as co-lead counsel); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 2007 WL 4150666, at *22-23 (M.D. Pa. Nov. 19, 2007) (appointing four law firms as co-lead class counsel after previously appointing the same four firms as co-lead interim class counsel)).

[5] Hagens Berman maintains offices in nine cities nationwide. *See* Hagens Berman's Firm Resume attached to the Declaration of Elizabeth A. Fegan In Support of the The Consensus Plaintiffs' Application ("Fegan Decl.") as Ex. 1.

- 2 -

## II. STATEMENT OF FACTS

**A.  Summary of Facts**

**1.  Defendants market and sell herbal supplements touted to contain certain herbs that would promote health.**

Walgreens, Target, GNC, and Wal-Mart (the "Defendant Retailers") each sell a variety of herbal supplements under their own private labels. NBTY manufactures and distributes vitamins, nutritional supplements, and related products in the United States, and sells herbal supplements to Walgreens, Target, and Wal-Mart and directly to consumers. In turn, the Defendant Retailers market, distribute and sell the supplements under their respective proprietary brands.

For years, Defendants have promoted their herbal supplements as containing the herbal ingredients listed on their labels. These statements were simply false. In fact, these products essentially contained little to none of the advertised herbal ingredients and were worthless.

**2.  The New York Attorney General reveals the fraud.**

On February 2, 2015, New York Attorney General Eric Schneiderman sent letters to the Defendant Retailers ordering them to immediately "cease and desist engaging in the sale of adulterated and/or mislabeled herbal dietary supplements." The NYAG stated that it had tested random samples of the Defendant Retailers' store-brand nutritional supplements to determine their ingredients using established DNA barcoding technology.

The testing of Defendants' products revealed that none of the samples contained the advertised herbal supplement with many of the samples tested either showing no presence of plant material or else undisclosed filler ingredients. Because Defendants' products are not as represented, Plaintiffs seek monetary and injunctive relief on behalf of the putative class.

**B.  The Lead Counsel Committee Has Carefully Evaluated The Industry Testing Standards and the DNA Testing At The Heart of This Case**

Rule 23(g) places a premium on the work counsel has done "in identifying and investigating" the class's potential claims. Fed. R. Civ. P. 23(g)(1)(a)(i). The Seventh Circuit has thus recognized that "the consumer class counsel [that has] done the entrepreneurial work" should be rewarded. *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 978 (7th Cir. 2003). Entrepreneurial case development often is more important in a consumer fraud case such as this than in a securities suit, because of the higher risk of non-success. *Id.* at 979. As demonstrated below, the Lead Counsel Committee has done far

- 3 -

more work investigating and advancing the putative Class's claims than any other counsel.

Together with the Lead Counsel Committee, Hagens Berman has independently evaluated this case, including by:

- Engaging some of the leading botanists and experts in DNA testing, who have conducted DNA testing on herbal supplements and published peer-reviewed articles on the DNA testing of herbal supplements;

- Identifying, studying, and determining that many of the key tests currently utilized by the industry are inadequate to determine whether or not an herbal supplement contains the purported botanical;

- Identifying, studying and debunking many of the key criticisms of DNA testing; and

- Engaging experienced laboratories to conduct DNA testing of certain herbal supplements.

As a result of its recognized expertise, Hagens Berman was asked to and did chair "HarrisMartin's MDL Conference: Herbal Supplements Litigation" on May 27, 2015 in Minneapolis, Minnesota (the day before the JPML hearing). At that conference, members of the Lead Counsel Committee (Girard Gibbs, Hagens Berman, Heins Mills, and Milberg) appeared as panelists and made presentations regarding an overview of the science at issue, the FDA's role with respect to herbal supplements, and the role of consumer class actions in the herbal supplements industry.[6]

In sum, the Lead Counsel Committee has progressed far beyond other firms in investigating the herbal supplements industry and evaluating Defendants' potential liability. This careful analysis, while preliminary, serves as a basis for the firms' decisions to undertake the risk of serving as members of the Lead Counsel Committee and to commit to the time-consuming process such a case has and will entail.[7]

## III. ARGUMENT

### A. Legal Standards

A court considering the appointment of class counsel must consider the following criteria:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

---

[6] Ex. 2 to the Fegan Decl.

[7] *See* Order dated July 15, 2015, ¶ 6 (Dkt. # 25) (stating that one of the main criteria for appointment is "willingness and ability to commit to a time-consuming process").

- 4 -

(iii) counsel's knowledge of the applicable law; and (iv) the resources
that counsel will commit to representing the class.

*See* Fed. R. Civ. P. 23(g)(1)(A). In addition to the factors stated above, the Consensus Plaintiffs

address the following issues that bear on the efficiency built into their proposal:  (i) the appointment of

a Committee Chair to ensure the paramount protection of the Classes' interests, including a plan for

allocating work among other counsel as needed; (ii) counsel's anticipated litigation and discovery plan;

and (iii) steps and guidelines the Committee intends to implement to control fees and costs, minimize

duplication, and maximize efficiency.

**B.    The Lead Counsel Committee Reflects An Unmatched Breadth of Consumer Class Action Expertise and Geographic Diversity**

"This Court has always recognized full well that it is essential to choose counsel who have

impeccable credentials in terms of ability and experience."  *In re Amino Acid Lysine Antitrust Litig.*,

918 F. Supp. 1190, 1195 (N.D. Ill. 1996).  Reflected below, each firm demonstrates its "professional

experience in this type of litigation" and "access to sufficient resources to advance the litigation in a

timely manner." [8]

**1.    Hagens Berman Sobol Shapiro LLP Should be Appointed Chair of the Lead Class Counsel Committee and Liaison Counsel**

Repeatedly named to the National Law Journal's "Plaintiffs' Hot List," Hagens Berman has

spent decades investigating, prosecuting and winning class actions.[9]  Hagens Berman's track record of

high recoveries in class actions on behalf of consumers includes:

- *Toyota Motor Corp. Unintended Acceleration Marketing Sales Practices & Products Liability Litigation*, No. 8:10-ML-02151 (C.D. Cal.), where Hagens Berman achieved a landmark $1.6 billion settlement for economic loss claims, *or a 100% recovery for claimants;*[10]

- *In re Charles Schwab Corp. Securities Litigation*, No. 08-cv-1510 (N.D. Cal.), a recent securities class action that settled during the course of argument on *in limine* motions on the eve of trial for approximately $235 million or *a 42.5% recovery for the federal class and an 80% recovery for the California class*.

- *New England Carpenters v. First DataBank, et al.*, No. 05-11148-PBS (D. Mass.), where Hagens Berman achieved a $350 million settlement 11 days before trial was scheduled to

---

[8] *See* Order dated July 15, 2015, ¶ 6 (Dkt. # 25).
[9] HBSS Firm Resume, Ex. 1 to the Fegan Decl.
[10] *See* Fegan Decl., ¶ 4, Ex. 3.

- 5 -

start on behalf of a nationwide class of private payors that purchased prescription brand name drugs;

- *Tobacco Litigation*, in which Mr. Berman was a special assistant attorney general for Illinois and 12 other states. As the State of Illinois' national counsel, Mr. Berman helped Illinois reach its largest settlement ever of approximately $9 billion.

Appointing founding and managing partner Steve W. Berman and Hagens Berman Lead Counsel in a recent MDL, Judge Shadur remarked:

> But it must be said that the track record of Hagens Berman and its lead partner Steve Berman is even more impressive, having racked up such accomplishments as a $1.6 billion settlement in the Toyota Unintended Acceleration Litigation and a substantial number of really outstanding big-ticket results.
>
> It may be worth mentioning that to this Court's recollection it has had no first-hand judicial experience with either of the two finalist firms…. But that is not true of its colleagues in this District of more recent vintage, an email inquiry to whom brought in return some high praise of attorney Berman's skills.[11]

Further, Hagens Berman is one of the few plaintiffs' firms in the United States that often has taken complex civil litigation, including class actions, to trial.[12]

Hagens Berman's practice of viewing the class's interests as paramount recently resulted in *sua sponte* leadership appointments by multiple MDL court. Most recently, the Hon. Jesse Furman, presiding over *In re General Motors LLC Ignition Switch Litig.,*[13] *sua sponte* appointed Mr. Berman as temporary lead counsel and then reappointed Mr. Berman as co-lead counsel for economic loss cases, after receiving dozens of written applications and hearing 40 individual presentations by lawyers. Similarly, in *In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices & Prods. Liab.*

---

[11] *In re: Stericycle, Inc., Sterisafe Contract Litig.*, MDL No. 2455, No. 13-C-5795 (Memorandum Order dated October 11, 2013) (Dkt. # 56) (footnotes omitted).

[12] Class action cases that Hagens Berman has tried include *In re Neurontin Marketing & Sales Practices Litig.*, MDL No. 1629 (D. Mass.); *Williams v. The Boeing Co.*, No. C-98-761 P (W.D. Wash.); *In re Burlington Northern & Santa Fe Railway Co. Employee Settlement Agreements Litig.* (W.D. Wash.); *In re Pharmaceutical Indus. Average Wholesale Price (AWP) Litig.*, MDL No. 1456, No. 01-12257 (D. Mass.), and *Kucera, et al. v. The State of Washington Department of Transp. & Washington State Ferries,* No. 99-2-01161-1 (King Cty. Super. Ct.).

[13] No. 14-MD-2543 (S.D.N.Y.).

- 6 -

*Litig.*,[14] the Hon. James V. Selna *sua sponte* appointed Mr. Berman as a presumptive co-lead counsel upon transfer of the MDL.

Founded in 1993 with its headquarters in Seattle, Hagens Berman actively prosecutes cases through its Chicago office. A Chicago native and the managing partner of Hagens Berman's Chicago office, Elizabeth Fegan has successfully led nationwide class actions (including regarding herbal supplements), been recognized by courts in this District for her experience, and been appointed by Illinois federal and state courts to Special Master teams overseeing class actions.[15] Judge Shadur recently recognized Ms. Fegan's "outstanding credentials" and "the strength of support provided by the others in the Chicago office as well,"[16] which includes Jason Zweig. Mr. Zweig has focused his efforts in this case on developing the science and working with experts, chaired the HarrisMartin Herbal Supplements conference, and presented the relevant science to the conference attendees.[17]

## 2. Girard Gibbs LLP should be appointed to the Lead Counsel Committee.

Girard Gibbs is a national litigation firm that has been dedicated to serving plaintiffs in class actions for 20 years. The firm was distinguished as a Tier 1 law firm for plaintiffs' mass tort and securities litigation in the 2013-2015 "Best Law Firms" lists, an annual survey published in the *U.S. News & World Report's Money Issue*. The *National Law Journal* named Girard Gibbs to its elite "Plaintiffs' Hot List," a selection of top U.S. plaintiffs' firms recognized for wins in high-profile cases.[18]

Leading the team is founding partner Daniel Girard, who has spent over 25 years prosecuting class actions under consumer, securities, antitrust, privacy, and civil rights laws. Mr. Girard has been recognized by his peers and the judiciary for professional excellence. He served on the United States Judicial Conference Advisory Committee on Civil Rules from 2004 to 2010, and has appeared twice at the invitation of the Standing Committee on the Rules of Practice and Procedure as an expert on class actions and complex litigation. He was named in *The Best Lawyers in America* (2012-2015) for his

---

[14] No. 10-ml-2151 (C.D. Cal.).

[15] *See* Fegan Decl., ¶¶ 5-8.

[16] *In re: Stericycle, Inc., Sterisafe Contract Litig.*, MDL No. 2455, No. 13-C-5795 (Memorandum Order dated October 11, 2013) (Dkt. # 56).

[17] Fegan Decl., Ex. 2.

[18] *See* Girard Gibbs' Firm Resume, Ex. 1 to Declaration of Daniel C. Girard in Support of the Consensus Plaintiffs' Application for Appointment of Lead Counsel.

work in class action litigation, has been consistently honored as a *Northern California Super Lawyer* (2007-2015), and has been named among the "Top 100 Super Lawyers" in Northern California.

David Stein, another member of the firm's Consumer Attorneys Practice Group, has represented consumers in a variety of deceptive advertising class actions. For example, he is among the attorneys serving as lead counsel in the *In re: Ford Fusion & C-Max Fuel Economy Litigation*, No. 13-MD-2450 (S.D.N.Y.), in which consumers allege that Ford Motor Company overstated the fuel economy of several of its hybrid models. Mr. Stein has been named a *Northern California Rising Star* in each of the past three years and has been invited to speak on consumer class action issues before organizations including the American Association for Justice and the Consumer Attorneys of California. Elizabeth Kramer is an associate with the firm, also specializing in consumer protection cases. Mr. Girard, Mr. Stein, and Ms. Kramer serve as co-lead counsel in a case in this District on behalf of defrauded commodities customers, *In re Peregrine Financial Group Customer Litigation*, No. 12-cv-5546-SLE (N.D. Ill.), where they have secured recoveries of approximately $60 million for class members.

Girard Gibbs has obtained favorable results in a wide range of deceptive advertising and consumer class actions, and in other large cases, including:

- *In re Hyundai & Kia Horsepower Litig.*, Case No. 02CC00287 (Cal. Super. Ct. Orange Cty), Mr. Girard served as lead counsel in a nationwide class action alleging false advertisement of vehicle horsepower, and after aggressive litigation over several years, delivered a settlement worth up to $125 million.

- *In re Chase Bank U.S.A. "Check Loan" Contract Litig.*, No. 3:09-md-2032 (N.D. Cal.), in a class action arising from loans that were marketed as fixed, low rate loans, Girard Gibbs served on the six-firm committee that handled all pretrial preparation as well as negotiations of a $100 million settlement.

- *In re MCI Non-Subscriber Telephone Rates Litig.*, No. 3:99-cv-01275 (S.D. Ill.), serving as lead counsel on behalf of telephone subscribers, Mr. Girard secured a $90 million cash settlement for the class.

- *In re Hyundai & Kia Fuel Economy Litig.*, Case. No. 2:13-ml-02424 (C.D. Cal.), in another class action alleging false advertising, the firm served as liaison counsel, coordinating discovery and communications between twenty-five law firms and the Court, and helped negotiate revisions to a $120 million settlement.

- *In re Providian Credit Card Cases*, J.C.C.P. No. 4085 (Cal. Super. Ct. San Francisco

Cty), the firm served as co-lead counsel in a nationwide class action and obtained a $105 million settlement on behalf of credit card holders.

- *Billitteri v. Secs. Am., Inc.*, No. 3:09-cv-01568 (N.D. Tex.), serving as lead counsel, Mr. Girard coordinated settlement negotiations with bankruptcy trustees and competing plaintiff groups, resulting in a global $150 million settlement.

Girard Gibbs has demonstrated its ability to successfully navigate complex matters and achieve exceptional results for its clients. The firm is often called upon in multi-party cases to take the lead in briefing motions to dismiss and for class certification. Girard Gibbs goes toe to toe with sophisticated, well-funded adversaries, but where voluntary resolution is in the best interests of the class, the firm has negotiated settlements favorably received by courts and class members.

### 3. Heins Mills & Olson P.L.C. should be appointed to the Lead Counsel Committee

Heins Mills & Olson, P.L.C. ("Heins Mills") is one of the nation's premier advocates for consumers, playing a leadership role in numerous class actions to redress violations of a wide variety of deceptive trade practices and consumer protection laws. [19] Among others, the firm has represented victims of data security breaches and purchasers of prescription drugs, long distance telephone service, air compressors, smoke detectors, lawn mower engines and hearing aids. The firm also has substantial and successful trial experience in class actions, including *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, Case No. 4:09-cv-1967 (N.D. Cal.) and *In re High Pressure Laminates Antitrust Litigation*, MDL No. 1368 (S.D.N.Y.). The firm has won many accolades from judges, peers, and clients. As one example among many, *The Legal 500 US*, based on comments from clients and peers, has consistently placed Heins Mills in the top tier of firms practicing civil litigation and plaintiffs' class action litigation.

Consumer cases in which Heins Mills has served as lead or co-lead counsel include:

- Sole lead counsel for the consumer class in *In re Target Corporation Customer Data Security Breach Litigation*, MDL No. 2522 (D. Minn.), a consumer class action against Target Corporation arising from a large data security breach. In a significant ruling on December 18, 2014, Judge Magnuson allowed the majority of the consumer claims to proceed, largely denying Target's motion to dismiss.

- Co-lead counsel in *Glaberson (formerly Behrend) v. Comcast Corp.*, No. 03-6604 (E.D. Pa.), a long-running antitrust case alleging that Comcast restrained trade and monopolized the cable television market in the Philadelphia area. On December 12,

---

[19] *See* Heins Mills' Firm Resume, Ex. 1.

2014, the court certified a settlement class and granted preliminary approval of a $50 million settlement comprising both cash payments for former subscriber class members and bill credits and services for current subscribers.

- Co-lead counsel in *In re Fiber Optic Cable Litigation*, which comprises multi-state litigation against major telecommunications companies and utilities to vindicate the rights of landowners whose property was used for the installation of fiber optic cable without compensation. To date, a total of 42 state settlements have been finally approved in an aggregate amount of nearly $150 million.

- Co-lead counsel in *In re Universal Service Fund Telephone Billing Practices Litigation*, MDL No. 1468 (D. Kan.), representing business and residential customers nationwide alleging a conspiracy to fix USF surcharges and breach of contract claims against long-distance telephone companies. The November 2008 trial resulted in a verdict for the class, which was affirmed on appeal.

- Co-lead counsel for nationwide consumer classes in *In re Aftermarket Filters Antitrust Litigation*, MDL No. 1957 (N.D. Ill.), which alleged antitrust, consumer protection and unfair competition claims against leading manufacturers of replacement vehicle filters on behalf of consumer purchasers from multiple states. Settlements with all defendants were reached and received final approval.

- Co-lead counsel for classes of consumers nationwide in *In re Lawnmower Engines Horsepower Marketing & Sales Practices Litigation*, MDL No. 1999 (E.D. Wis.), alleging consumer fraud, civil conspiracy and unjust enrichment claims against manufacturers of lawn mowers and lawn mower engines. The court granted final approval of settlements with all defendants.

Heading the Heins Mills litigation team in this case will be Vincent Esades, a senior partner, who has extensive leadership experience in consumer class litigation. A perennial "Super Lawyer" in the practice of complex litigation on the annual Thomson Reuters list of outstanding attorneys, Mr. Esades was appointed as sole lead counsel for the consumer class in the Target data breach action and to the Financial Institutions Plaintiffs' Steering Committee in *In re: The Home Depot, Inc., Customer Data Security Breach Litigation*, No.: 1:14-md-02583-TWT (N.D. Ga.), arising from another one of the largest payment-card security breaches in the nation.

Joining Mr. Esades will be Renae Steiner and David Woodward, both partners who have devoted much of their time to consumer causes. Ms. Steiner, who also has served in many class leadership roles, has regularly been selected by her peers as a "Super Lawyer" in the areas of class action litigation. Ms. Steiner has also been recognized as a top litigator in *The Legal 500 US*, *Who's Who Legal* and *Benchmark Plaintiff*, and is listed by *Benchmark Plaintiff* as one of the Top 150 Women in Litigation.

- 10 -

Mr. Woodward brings a special consumer background to the Heins Mills team, having focused on consumer protection litigation while with the Minnesota Attorney General's Office. In particular, he served as lead counsel on a number of multi-state enforcement efforts that challenged practices in the drug and food industries, and helped create a multi-state health fraud litigation group.

### 4. Kozyak Tropin Throckmorton, LLP should be appointed to the Lead Counsel Committee.

Kozyak Tropin & Throckmorton has played a leading role in some of the most significant class actions in the nation since its founding in 1982.[20] Mr. Adam M. Moskowitz heads Kozyak Tropin's class action practice and is experienced in all forms of class action claims, including state consumer protection statutes and RICO. Mr. Moskowitz frequently leads Kozyak Tropin's participation in multi-state class action litigation that involves teams of law firms from around the nation. Most recently, Mr. Moskowitz spearheaded litigation against the major lenders and mortgage servicers over the issue of "force-placed insurance," and served as lead counsel in twelve nationwide class action cases that have settled for more than $2 billion in relief. *See Herrick v. Chase Bank, N.A., et al.*, No. 13-cv-21107 (S.D. Fla.) (court granted final approval of parties' settlement on February 28, 2014); *Diaz v. HSBC Bank N.A,. et al.*, No. 13-cv-21104 (S.D. Fla.) (court granted final approval of parties' settlement on October 29, 2014); *Fladell v. Wells Fargo Bank, N.A., et al.,* No. 13-cv-60721 (S.D. Fla.) (court granted final approval on October 29, 2014); *Hamilton v. SunTrust Mortgage, Inc., et al*, No. 13-cv-60749 (S.D. Fla.) (court granted final approval of parties' settlement on October 23, 2014); *Hall v. Bank of Am., et al.,* No. 12-cv-22700 (S.D. Fla.) (court granted final approval of parties' settlement on December 17, 2014); *Montoya v. PNC Bank, et al*, No. 14-cv-20474 (S.D. Fla.) (preliminary approval motion filed on June 17, 2015); *Lee v. Ocwen, et al.*, No. 14-cv-60649 (S.D. Fla.) (preliminary approval granted, final fairness hearing held on June 11, 2015); *Braynen v. Nationstar Mortg. LLC, et al.*, No. 14-cv-20726 (S.D. Fla.) (preliminary approval granted, final fairness hearing held on July 16, 2015); *Wilson v. Everbank, et al.*, No. 14-cv-22264 (S.D. Fla.) (motion for preliminary approval filed on July 27, 2015).

---

[20] *See* Kozyak Tropin Firm Resume, Ex. 2. For example, Kozyak Tropin served as Co-Lead Class Counsel in *In re Managed Care HMO Litigation*, MDL No. 1334 (S.D. Fla.), and *LiPuma v. American Express, et al*., No. 04-cv-20314 (S.D. Fla.).

- 11 -

Kozyak Tropin has already invested substantial time, money, and effort over the past six months coordinating and investigating the herbal supplements litigation, including filing four separate cases on behalf of six plaintiffs.[21] Early on, Kozyak Tropin specifically focused on Defendant NBTY, Inc., which has strong manufacturing and distribution ties to Florida.[22] The Florida facilities are specifically responsible for manufacturing, packaging, and labeling NBTY's customers' private label products, such as Wal-Mart's Spring Valley products.

At the time of this submission, it appears that Kozyak Tropin is the *only* counsel in the southeastern United States seeking a lead counsel role in this litigation. Given the broad, nationwide economic impact of Defendants' deceptive practices, especially specifically in the State of Florida, geographically diverse representation is imperative and is a particularly important means of reducing the expenses associated with this multi-district litigation.[23] The appointment of Kozyak Tropin to the Lead Counsel Committee will greatly alleviate the need for travel to Florida for the depositions, inspections, and productions associated with NBTY.[24]

The coalition of support from the Consensus Plaintiffs demonstrates Kozyak Tropin's and Mr. Moskowitz's ability to work cooperatively in this case. Kozyak Tropin regularly advances substantial out-of-pocket litigation costs and is thus well-suited to commit to efficiently prosecute this complicated MDL litigation in a timely manner. Accordingly, the qualifications of Kozyak Tropin and Mr. Moskowitz are in direct alignment with the Court's primary criteria for Lead Counsel appointment.

---

[21] *Williams et al. v. Wal-Mart Stores, Inc., et al.*, No. 0:15-CV-60354 (S.D. Fla.); *Dore v. GNC Holdings, Inc. et al.*, 1:14-CV-20618 (S.D. Fla.); *Greenfield. v.Target Corp., et al.*, No. 1:15-CV-20955 (S.D. Fla.); *Beal et al. v. Walgreen Co., et al.*, No. 0:15-CV-60504 (S.D. Fla.).

[22] *See* NBTY, Inc. Annual Report on the Form 10-K for the Fiscal Year Ended September 30, 2014. NBTY owns or leases facilities in Boca Raton, Pompano Beach, and Naples, Florida.

[23] *See Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1139 (C.D. Cal. 1999) (finding that the geographic diversity of three lead counsel would add to the efficient handling of the case); *In re Oil Spill by Oil Rig "Deepwater Horizon"*, 295 F.R.D. 112, 137-38 (E.D. La. 2013) (finding that geographic diversity was particularly important to the appointment of leadership roles).

[24] Indeed, Kozyak Tropin's appointment should "eliminate the need for most counsel to ever to travel to" Florida. *In re Nissan Motor Corp. Antitrust Litig.*, 385 F. Supp. 1253, 1255 (J.P.M.L. 1974).

### 5. Milberg LLP should be appointed to the Lead Counsel Committee.

Since its inception, Milberg has recovered more than $55 billion for plaintiffs in class and other complex litigation in the fields of consumer protection, privacy, securities, shareholder rights, and mass torts.[25] The National Law Journal has lauded Milberg's "exemplary, cutting-edge work" by repeatedly including the firm in its prestigious Plaintiffs' Hot List. Defendants, too, recognize Milberg as a worthy adversary. In 2011, the BTI Consulting Group asked 240 corporate counsel which firms they would "least like to see as opposing counsel," and reported that corporate counsel view Milberg as an "awesome opponent." Reporting on the survey, Law360 recognized that defendants consider Milberg to be "[one of the law firms] they prefer to steer clear of in litigation."

Currently, Milberg represents consumers as lead or co-lead counsel in numerous class actions involving—as in this case—complex scientific issues, including for consumer goods:

- *In re ConAgra Foods, Inc*., No. 11-cv-05379 MMM (AGRx) (C.D. Cal.), in which the Court recently certified 11 statewide classes challenging ConAgra's false labeling of Wesson Oils as "100% Natural" despite the fact they are derived from GMOs. In prevailing on class certification, the District Court approved Plaintiffs' novel hybrid damages model leveraging both hedonic regression and conjoint analysis.

- *Frito-Lay North America, Inc. "All Natural" Litigation*, No. 12-md-2413-RRM-RLM (E.D.N.Y.), where plaintiffs defeated Frito-Lay's motion to dismiss and negotiated an in-depth ESI search protocol that led to the production of over 300,000 pages of documents.

- *In re General Mills Kix Cereal Litigation*, No. 2:12-cv-249-KM-JB (D.N.J.), where plaintiffs are currently briefing and defending against multiple motions for summary judgment. The motions involve expert testimony regarding consumers' expectations of products labeled as "natural" and the manipulation of DNA needed to create GMOs.

- *In re Target Corp. Customer Data Security Breach Litigation*, No. 0:14-md-02522-PAM (D. Minn.), appointed to the Steering Committee in the landmark data breach case, Ms. Stadler was part of the team that successfully resolved this suit for $10 million, entitling individual consumers to recover losses up to $10,000.

- *In re Shop-Vac Marketing & Sales Practices Litigation*, MDL No. 2380, No. 12-md-02380 (M.D. Pa.), where a Milberg team led by partner and chairman of the firm, Sanford P. Dumain, defeated Defendant's motion to dismiss. In a related state case, *Palomino v. Shop-Vac Corp.*, No. BER-L-1399-12 (N.J. Sup. Ct. Law Div.), Milberg defeated Defendant's motions to dismiss and for summary judgment, and successfully certified a class of New Jersey consumers, which is scheduled for trial in September.

---

[25] *See* Milberg's Firm Resume, Ex. 3.

- 13 -

Each of these cases involves front-line legal issues, cutting edge discovery negotiations, and complex motion practice. These cases often involve the use of multiple experts specializing in economic analysis, consumer market research, and complex scientific matters. Milberg partners Ariana J. Tadler and Henry J. Kelston are leading the teams prosecuting the ConAgra, General Mills, and Frito Lay actions, and they will be heading the Milberg team in this litigation as well.

Milberg has also been at the vanguard of e-discovery practice in complex litigation. More than a decade ago, Milberg became one of the first plaintiffs' firms to assemble a dedicated team of lawyers and other professionals to meet the e-discovery demands of major litigation, and has developed e-discovery capabilities exceptional among U.S. law firms. Milberg's e-discovery practice is led by partner Ariana J. Tadler, one of the most respected e-discovery practitioners in the field. Ms. Tadler is Chair Emeritus and an active member of The Sedona Conference® Steering Committee for Working Group I on Electronic Document Retention and Production, the preeminent "think tank" on e-discovery. She also serves on the Advisory Board of Georgetown University Law Center's Advanced E-Discovery Institute, which provides e-discovery education for federal judges and practitioners. Milberg's e-discovery practice is further supported by a state-of-the-art e-discovery infrastructure that includes, among others, innovative document review tools, document hold management systems, an analytic index engine, a deposition digest program, a case analysis and a complex litigation organization tool.

As it has demonstrated over the decades, Milberg has the human resources and capital necessary to prosecute this complex litigation for as long as it takes to achieve the best recovery for the class.

**6.      Scott+Scott, Attorneys at Law, LLP should be appointed to the Lead Counsel Committee**

Founded in 1975, Scott+Scott, Attorneys at Law, LLP ("Scott+Scott" or the "Firm") is a nationally recognized law firm of approximately 40 attorneys dedicated to complex and class action litigation.[26] Headquartered in Connecticut with offices in California, New York City and Ohio, Scott+Scott and its attorneys have a proven leadership record in MDL and class cases, serving as lead

---

[26] *See* Scott+Scott's Firm Resume, Ex. 4.

- 14 -

or co-lead counsel and achieving significant results on behalf of consumers injured by fraudulent and anticompetitive conduct in cases such as:

- *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL 1720 (E.D.N.Y.) ($7.25 billion settlement was achieved on behalf of classes of consumers and merchants who paid excessive fees in connection with Visa and MasterCard card interchange transactions);

- *Dahl v. Bain Capital Partners, LLC, et al.*, Lead Case No. 1:07-cv-12388-EFH (D. Mass.) ($590.5 million settlement was achieved on behalf of purchasers of certain investment vehicles who had alleged that certain private equity firms had conspired to artificially suppress the value of the investments);

- *In re Providian Financial Corp. Credit Card Terms Litigation*, MDL No. 1301 (E.D. Pa.) ($105 million settlement was achieved on behalf of a class of credit card holders who were charged excessive interest and late charges on their credit cards);

- *In re Korean Air Antitrust Litigation*, MDL No. 1891 (C.D. Cal.) ($65 million settlement was achieved on behalf of a class of consumers who purchased airline tickets); and

- *In re Prudential Insurance Co. SGLI/VGLI Contract Litigation*, MDL No. 2208 (D. Mass.) ($40 million settlement was achieved on behalf of a class of military service members and their families who had purchased insurance contracts).

Scott+Scott also has been a forerunner in herbal supplement litigation, suing manufacturers, distributors and retailers for deceptively marketing the herbal supplement kava kava in *In re Kava Kava Litigation*, No. BC-269717 (L.A. Super. Ct.) and obtaining settlements that require warnings on products sold in California plus restitutionary and/or other equitable remedies.

Joseph P. Guglielmo, a Firm partner, has focused in the areas of consumer, antitrust, and securities class action litigation for over 20 years and currently serves as co-lead counsel *In re The Home Depot, Inc., Customer Data Security Breach Litigation*, MDL No. 2583 (N.D. Ga.), and on the plaintiffs' steering committee *In re Target Corp. Customer Data Security Breach Litigation*, MDL No. 2522 (D. Minn.), representing financial institutions injured by the theft of sensitive payment card information in two of the largest data breaches in the U.S. Mr. Guglielmo previously served in a leadership capacity, achieving significant recoveries, in consumer MDL and class cases such as *In re Managed Care Litigation*, MDL No. 1334 (S.D. Fla.) (settlements in excess of $1 billion); *Love v. Blue Cross and Blue Shield Ass'n*, No. 03-cv-21296 (S.D. Fla.) (settlements of approximately $130 million in cash and other benefits valued in excess of $2 billion); *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1897 (D.N.J.) (settlements exceeding $180 million); *Gunther v. Capital One,*

- 15 -

*N.A.*, No. 09-2966-ADS-AKT (E.D.N.Y.) (settlement resulting in class members receiving 100% of their damages). In addition to his litigation successes, Mr. Guglielmo is an expert on electronic discovery, a subject on which he frequently lectures, and is a member of the Steering Committee of Working Group 1 of the Sedona Conference®, an organization devoted to guidance on discovery issues.

Erin Green Comite, who will also be dedicated to this case, has litigated such cases as *In re Priceline.com Securities Litig.* (D. Conn.) ($80 million settlement); *Irvine v. ImClone Systems, Inc.*, No. 02-cv-0109 (S.D.N.Y.) ($75 million settlement); *Schnall v. Annuity and Life Re (Holdings) Ltd.* (D. Conn.) ($27 million settlement); and *In re Qwest Commun.Int'l, Inc.* (D. Colo.) (settlement obtaining $25 million for the company and achieving corporate governance reforms aimed at ensuring board independence). Ms. Comite currently serves as co-lead counsel in *In re Monsanto Company Genetically-Engineered Wheat Litig.*, MDL No. 2473 (D. Kan.), representing a class of farmers who were injured by the defendant's purported contamination of wheat with certain genetically-modified wheat strains, and on the plaintiffs' executive committee in *In re L'Oreal Wrinkle Cream Marketing Practices Litig.*, MDL 2415 (D.N.J.), which is brought on behalf of a class of consumers alleging defendants misrepresent the anti-aging benefits of certain of their products.

**C.    The Committee's Anticipated Litigation And Discovery Plan**

    **1.    Proposed case schedule.**

The Committee submits herewith a proposed schedule through class certification.[27] If appointed, Hagens Berman, by consensus with the Committee, will negotiate with Defendants and present to the Court a pretrial order proposing these or similar mutually acceptable dates.

    **2.    Discovery management proposals.**

        **a.    Techniques for streamlining discovery.**

Courts routinely adopt several effective techniques for managing discovery prior to class certification that permit Plaintiffs access to relevant information while balancing the defendant's desire to reduce burden and expense. Examples follow, which would be the subject of the proposed meet-and-confer with Defendants within 30 days of the appointment of lead counsel:

---

[27] *See* Fegan Decl., Ex. 7.

- ***Production of relevant transactional data***:  The production of transactional data is relevant to Plaintiffs' demonstration that class-wide damages can be calculated from available data. For this reason, the transactional data must be prioritized.

- ***Prioritized custodian files***:  The Committee proposes to conduct, prior to class certification, targeted discovery that requires the parties to share information, whether through truncated written discovery (*e.g.*, organizational charts together with voluntary information) or depositions pursuant to Fed. R. Civ. P. 30(b)(6), identifying the key Defendant custodians. Plaintiffs would then identify centrally-located files and a reasonable set of custodian files to be searched and produced in a first phase, subject to supplementation at an appropriate time.[28]

- ***Disclosure and vetting of search terms***:  If any party intends to use search terms, it will produce to the other party a list of the proposed search terms and a means for testing the adequacy of any such terms.

### b.     Early production of documents produced in Government investigations.

Documents a defendant previously produced to governmental entities are appropriate for early production in civil litigation due to limited burden.  For this reason, several MDL courts have entered early case management orders requiring the production of Government Investigation Productions before the filing of the Consolidated Amended Complaint.[29]   For example, in *In re Toyota Motor Corp. Unintended Acceleration Litigation*, Judge Selna ordered that the Government Investigation Productions be produced 30 days before the due date for the Consolidated Amended Complaint, stating:

> … the Court is convinced that defendants have within their possession a defined set of documents, consisting of approximately 75,000 to 100,000 pages, much or all of which is likely to be discoverable, and which has already been produced to Government entities to date, including without limitation to the United States Congress and National Highway Traffic Safety Administration. Those documents which are discoverable under Federal Rules of Civil Procedure shall be produced no later than July 2, 2010.[30]

---

[28] A similar procedure was recently used in *Optical Disk Drive Antitrust Litig.*, Order Regarding Discovery Matters, Dkt. # 730 (Dec. 17, 2012).  *See* Fegan Decl., Ex. 9.

[29] *See, e.g.*, Fegan Decl., Ex. 10 at 2 (*Toyota Unintended Acceleration Litig.*, Order No. 3, Dkt. 180 (June 1, 2010)).

[30] *Id.  See also* Fegan Decl., Ex. 11 (*In re Pharmaceutical Indus. Average Wholesale Price (AWP) Litig.*, (Case Management Order No. 5 dated October 28, 2002) (ordering defendants to produce: "A copy of the set or sets of documents, if any, previously produced by a defendant to any federal or state executive or legislative agency or entity in connection with any investigation into, in whole or in part, the use of the average wholesale price ("AWP") in the pricing or reimbursement of a drug manufactured by that defendant during the Class Period.")); Fegan Decl., Ex. 12 (*Government Emps. Hosp. Ass'n, et al. v. Serono Labs., Inc.*, No. 05-11935 (D. Mass.) (Order on Plaintiffs' Motion To Enforce Court Order) (ordering defendants to "produce all non-work product, non-privileged documents previously produced to the Government in any federal or state criminal

- 17 -

That same procedure would be equally applicable here, would serve to reduce burden, and would expedite the discovery process.[31]

### c. Protocol for the production of electronically-stored information.

The majority of the documents in this matter will likely be maintained and produced electronically. The Committee thus proposes entry of a Protocol for the Production of Electronically-Stored Information ("ESI Protocol") that requires the native production of documents with associated metadata.[32] A native production of documents substantially reduces costs to the Class.[33] Moreover, metadata enables Plaintiffs to have the same access, ability to search, and to display the information as Defendants.[34]

### D. The Committee Pledges To Maximize Efficiency.

The Committee commits to staff and litigate this action efficiently. For example,

- Hagens Berman will use its Chicago office for Court appearances, as appropriate, thus substantially reducing travel expenses;

- The Lead Counsel Committee will use their geographic diversity to minimize the amount of travel for depositions or other discovery;

- The Lead Counsel Committee will strictly impose time-keeping procedures, designed to prevent duplication of efforts and control unnecessary billing or work; and

- Hagens Berman (and others) has an established relationship with an online document-review company that will enable review of documents from anywhere in the country, providing savings of tens of thousands of dollars to class members.

---

investigation, grand jury investigation, or false claims act investigation concerning the development, manufacture, marketing, pricing, or sale of the drug Serostim")).

[31] A proposed confidentiality order to address concerns Defendants may have is attached as Ex. 6 to the Fegan Decl.

[32] *See* Fegan Decl., Ex. 8. *See also Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 108 (E.D. Pa. 2010) ("In short, the Court finds that Plaintiffs are entitled to have documents produced in native format with their associated metadata.").

[33] *See Osborne v. C.H. Robinson Co.*, 2011 U.S. Dist. LEXIS 123168, at *19 (N.D. Ill. Oct. 25, 2011); *Covad Commc'ns Co. v. Revonet, Inc.*, 254 F.R.D. 147, 150 (D.D.C. 2008).

[34] *See Hagenbuch v. 3B6 Sistemi Elettronici Industriali S.R.L.*, 2006 WL 665005, at *3 (N.D. Ill. Mar. 8, 2006) (compelling production of metadata which "will allow [the receiving party] to piece together the chronology of events and figure out, among other things, who received what information and when"). Also, because ESI contains metadata by default, it is more costly to remove the metadata than to produce the metadata. *See, e.g., Romero*, 271 F.R.D. at 107 (noting that "metadata, as a general rule, must be affirmatively removed from a document" when it is converted out of native format) (quoting *Wyeth v. Impax Labs., Inc.*, 248 F.R.D. 169, 171 (D. Del. 2006) ("Removal of metadata from an electronic document usually requires an affirmative alteration of that document, through scrubbing or converting the file from its native format to an image file, for example[.]")).

Moreover, the Committee submits herewith *ex parte* its attorney fee proposal, rates and percentages that it would expect to seek if the litigation succeeds in creating a common fund.

## IV.    CONCLUSION

WHEREFORE, the Consensus Plaintiffs respectfully request that the Court appoint the Lead Counsel Committee comprised of Girard Gibbs LLP, Hagens Berman Sobol Shapiro LLP, Heins Mills & Olson P.L.C., Kozyak Tropin Throckmorton, LLP, Milberg LLP, and Scott+Scott, Attorneys at Law,  LLP, led by Hagens Berman as the Chair of the Committee and as Liaison Counsel.

DATED:  August 6, 2015                HAGENS BERMAN SOBOL SHAPIRO LLP


By:   */s/ Elizabeth A. Fegan*

Elizabeth A. Fegan
Jason A. Zweig
Thomas E. Ahlering
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Telephone:  (708) 628-4949
Facsimile:   (708) 628-4950
E-mail:    beth@hbsslaw.com
                  jasonz@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Ave., Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
E-mail:    steve@hbsslaw.com

*Proposed Liaison Counsel and Chair of the Lead Counsel Committee*

010494-12  796177 V1

Tal J. Lifshitz
Monica Marie McNulty
Adam M. Moskowitz
Robert J. Neary
KOZYAK TROPIN & THROCKMORTON
LLP
2525 Ponce De Leon Boulevard , 9th Floor
Coral Gables, FL 33134
Telephone:  305-728-2959
E-mail: tjl@kttlaw.com
         mmcnulty@kttlaw.com
         amm@kttlaw.com
         rn@kttlaw.com

Joseph D. Cohen
Joseph P. Guglielmo
SCOTT + SCOTT, ATTORNEYS AT LAW,
LLP
The Chrysler Building
405 Lexington Ave, 40 Fl
New York, NY 10174
Telephone:  212-223-6444
E-mail: jcohen@scott-scott.com
         jguglielmo@scott-scott.com

Erin Green Comite
SCOTT + SCOTT, ATTORNEYS AT LAW,
LLP
PO Box 192
156 South Main Street
Colchester, CT 06415
Telephone:  860-537-5537
E-mail: ecomite@scott-scott.com

Andrei V. Rado
MILBERG LLP
One Pennsylvania Plaza
50th Floor
New York, NY 10119
(212) 946-9315
E-mail: arado@milberg.com

Daniel C. Girard
Steven Augustine Lopez
Adam E. Polk
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone:  415-981-4800
E-mail: ehg@girardgibbs.com
         dcg@girardgibbs.com
         stevelopez@girardgibbs.com
         aep@girardgibbs.com

- 20 -

Vincent J. Esades
Renae Diane Steiner
David Woodward
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403-3218
Telephone:  612-338-4605
E-mail: vesades@heinsmills.com
            rsteiner@heinsmills.com
            dwoodward@heinsmills.com

*Proposed Lead Counsel Committee*

- 21 -

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that, on August 6, 2015, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered attorneys.

*/s/ Elizabeth A. Fegan*
Elizabeth A. Fegan

# EXHIBIT 1



Heins Mills & Olson, p.l.c.

## Firm Résumé

The law firm of Heins Mills & Olson, P.L.C., located in Minneapolis, is a premier advocate for businesses, consumers and investors in the nation's courts.  We focus our practice on complex litigation, frequently serving as lead counsel for national classes of businesses, shareholders and consumers in actions to redress securities fraud, antitrust violations, deceptive trade practices and consumer fraud.  Our team of lawyers collectively has many decades of experience in complex litigation and has successfully handled more than 100 class actions, primarily in a leadership role.

### <u>Antitrust</u>

In the arena of antitrust litigation, Heins Mills has served as lead or co-lead counsel in dozens of cases representing plaintiff classes alleging price fixing, vertical trade restraints, monopolization and other anticompetitive conduct in diverse markets. We are currently serving as class counsel in antitrust cases venued in state and federal courts throughout the United States. Although our role varies, our contributions are



always valuable. In some cases we serve in a court-appointed leadership capacity; in others we contribute as members of a court-approved executive committee or in a supportive role for the lead law firms.

### *Current Leadership Roles*

We are currently serving in a leadership role in the following cases:

- ***In re Lidoderm Antitrust Litigation***, MDL No. 2521 (N.D. Cal.). We serve as co-lead counsel in this action and represent end-payor plaintiffs and a proposed nationwide class of end-payors seeking damages arising out of an alleged anticompetitive scheme to delay the availability of a generic version of the lidocaine patch Lidoderm. In November 2013, the court denied in central part the defendants' motion to dismiss the claims, finding that the complaint adequately alleges a large, unjustified payment to the generic manufacturers to stay off the market.

- ***In re Aggrenox Antitrust Litigation***, MDL No. 2516 (D. Conn.). We serve as co-lead counsel in this litigation and represent end-payor plaintiffs and a proposed nationwide class of end-payors in this lawsuit alleging defendants took anticompetitive steps to delay generic competition for Aggrenox, including a pay-for-delay settlement to delay entry of a generic version. Defendants' motion to dismiss is pending.

- ***In re Lipitor Antitrust Litigation***, MDL No. 2332 (D.N.J.). We serve as co-lead counsel for the proposed end-payor class (consumers and health plan



sponsors) in which alleges that drug manufacturers violated state antitrust and consumer laws by engaging in anticompetitive conduct to delay the entry of a generic version of Lipitor, resulting in significant overcharges to plaintiffs. On October 31, 2014, the district court granted defendants' motions to dismiss, deciding that plaintiffs had not satisfied a recent U.S. Supreme Court ruling allowing antitrust challenges to pay-for-delay agreements, directing the parties to mediation and temporarily staying the case. The end-payor plaintiffs and direct-purchaser plaintiffs have appealed the district court's decision to the Third Circuit.

- ***Glaberson (formerly Behrend) v. Comcast Corp***., Case No. 03-cv-6604 (E.D. Pa.). We continue to serve as co-lead counsel in this long-running antitrust case alleging that Comcast allocated cable television markets and customers in restraint of trade and monopolized the Philadelphia area market for these services. After the court denied Comcast's summary judgment motion, the United States Supreme Court reversed a decision certifying the Philadelphia-area class. The trial court granted our request to proceed with a motion to certify a revised class in accordance with the Supreme Court's opinion. On December 12, 2014, the court certified the settlement class and preliminarily approved a settlement providing for $50 million in cash, bill credits or free services to settlement class members.

- ***Fond du Lac Bumper Exchange, Inc., et al. v. Jui Li Enterprise Co., et al.***, **(Aftermarket Sheet Metal Antitrust Litigation**), Case No. 2:09-cv-



00852 (E.D. Wis.). We are serving as co-lead counsel a class action asserting price-fixing claims on behalf of business purchasers of aftermarket automotive sheet metal parts.

- ***Fiber Optic Cable Litigation* (multiple state and federal courts)**. We serve as co-lead counsel in multi-state litigation against major telecommunications companies and utilities to vindicate the rights of landowners whose property was used for the installation of fiber optic cable without compensation. In that capacity we participated in fashioning an innovative global settlement that comprises separate agreements on a state-by-state basis. To date there have been settlements in 42 states in a total amount of nearly $150 million.

*Other Litigation Roles*

We also play important roles in the following cases:

- ***In re NCAA Student-Athlete Name & Likeness Licensing Litigation***, Case No. 4:09-cv-1967 (N.D. Cal.). We have been extensively involved in prosecuting this class action brought on behalf of current and former U.S. collegiate student-athletes alleging that they should receive a share of the revenue generated from use of their likenesses (e.g., use of their image as a video game avatar). The court certified the class for injunctive relief and in August 2014, after a trial in which we were integrally involved, court found that the NCAA's rules prohibiting compensation for likeness use is an antitrust violation. In a landmark decision, the court issued a permanent injunction against these rules.

4



Before this result, in September 2013, a $40 million settlement was reached with the two other defendants, Electronic Arts Inc. and Collegiate License Company.

- ***In re Publication Paper Antitrust Litigation***, MDL No. 1631 (D. Conn.). We are a member of the Class Counsel Executive Committee leading this nationwide antitrust action alleging an unlawful conspiracy by manufacturers to fix the price of publication paper.

- ***In re Pool Products Distribution Market Antitrust Litigation***, MDL No. 2328 (E.D. La.). We are a member of the plaintiffs' steering committee in this class action asserting claims of monopolization and attempted monopolization of the U.S. pool products distribution market. The court preliminarily approved a $6.5 million settlement with one of the manufacturers on September 26, 2014, and a $3.45 million settlement with another manufacturer on December 22, 2014.

- ***In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation***, MDL No. 2445 (E.D. Pa.). We serve as a member of the court-appointed executive committee representing the proposed end-payor class in this action alleging defendant brand drug manufacturer used anticompetitive practices to improperly maintain its monopoly in the market for Suboxone and to prevent substitution of less-expensive generics. Defendants' motion to dismiss was denied on December 3, 2014, and discovery is now proceeding.

- ***In re Aluminum Warehousing Antitrust Litigation***, MDL No. 2481 (S.D.N.Y.). We were appointed to the Plaintiffs' Steering Committee in this class



action alleging a conspiracy to inflate aluminum prices and restrain aluminum supplies. Defendants' motion to dismiss is pending.

- ***In re Niaspan Antitrust Litigation***, MDL No. 2460 (E.D. Pa.). We also serve on the executive committee for the proposed end-payor class in this action alleging defendants entered into unlawful pay-for-delay agreements relating to the brand-name prescription drug Niaspan. Defendants' motion to dismiss was denied on November 8, 2014, and discovery is underway.

- ***In re Polyurethane Foam Antitrust Litigation***, MDL No. 2196 (W.D. Ohio). We are counsel for one of the class representatives in this nationwide class action alleging price fixing and anticompetitive agreements in the market for polyurethane foam. On April 9, 2014, the court granted certification of the class, and on November 6 and 14, 2014, the court preliminarily approved settlements with two of the defendants in the combined amount of $147.8 million.

### *Past Leadership Roles*

- We served as co-lead counsel in ***In re Puerto Rican Cabotage Antitrust Litigation***, MDL No. 1960 (D.P.R), which involved price-fixing by Jones Act shipping companies for ocean shipping services between the U.S. and Puerto Rico.

- We served as co-lead counsel in ***In re Aftermarket Filters Antitrust Litigation***, MDL No. 1957 (N.D. Ill.), alleging antitrust, consumer protection and unfair competition claims against leading manufacturers of replacement



vehicle filters on behalf of indirect purchasers from multiple states. Settlements with all defendants were reached and received final approval.

- We served as co-lead counsel and co-lead trial counsel in *In re Polyester Staple Antitrust Litigation*, MDL No. 1516 (W.D.N.C.), a class action on behalf of business purchasers alleging price fixing of polyester staple fiber. The case was settled on the eve of trial, bringing the total recovery from all defendants to $63 million—an amount exceeding single damages suffered by the class.

- We served as co-lead counsel and co-lead trial counsel in *In re High Pressure Laminates Antitrust Litigation*, MDL No. 1368 (S.D.N.Y.), where we tried a price-fixing case to verdict on behalf of businesses that purchased high-pressure laminates. We ultimately recovered $40.5 million in settlement payments from several of the defendant manufacturers.

- We were one of two lead counsel firms representing a class of business purchasers of food additives in *In re Monosodium Glutamate Antitrust Litigation*, MDL No. 1328 (D. Minn.). We negotiated settlements with the defendants totaling $123.4 million—an amount exceeding the single damages suffered by the class.

- As co-lead counsel in *In re Bulk Graphite Antitrust Litigation*, Case No. 02-cv-06030 (D.N.J.), we represented a nationwide class of business purchasers alleging price-fixing claims against manufacturers of bulk graphite. We reached a settlement exceeding the amount of single damages sustained by the class.



- We served as lead trial counsel for a class of travel agents in ***In re Travel Agency Commission Antitrust Litigation***, MDL No. 1058 (D. Minn.), which alleged that major domestic airlines conspired to fix agent commissions. The claims were settled on the eve of trial for a total of $86 million.

- We were co-lead counsel for classes of consumers in actions asserting price-fixing claims brought in seventeen states against infant formula manufacturers. The cases were settled collectively for $64 million in cash and infant formula products.

## Securities Fraud

Heins Mills is a leading advocate for individual and institutional investors. As sole lead counsel, we achieved two of the largest recoveries in the history of securities fraud class action litigation:

- On behalf of AOL and Time Warner shareholders, we achieved a settlement of $2.65 billion in ***In re AOL Time Warner, Inc. Securities Litigation***, MDL No. 1500 (S.D.N.Y.). Of that amount, $2.4 billion was paid by media giant Time Warner and $100 million was paid by its financial auditor, Ernst & Young. The Department of Justice also contributed $150 million from a settlement it reached with Time Warner in a related enforcement action.

- In ***In re Broadcom Corp. Securities Litigation***, Case No. 01-cv-275 (C.D. Cal.), we recovered $150 million for a class of investors in Broadcom, one of the leading providers of microprocessors enabling broadband communications.



The firm has also played leadership roles in a variety of other securities fraud class litigation. As lead counsel for class investors in *In re Mercury Finance Company Securities Litigation*, for example, we negotiated a settlement with Mercury's auditing firm for $40.5 million, then one of the largest amounts ever recovered from an accounting firm for violations of the securities laws. In addition, we recovered more than $15 million in total from Mercury's officers and directors, and from Mercury itself, even though the company was in bankruptcy.

We are currently serving as liaison counsel in *Freedman v. St. Jude Medical, Inc.*, Case No. 12-cv-3070 (D. Minn.), a securities fraud class action alleging on behalf of purchasers of common stock of St. Jude Medical, Inc. that the company failed to disclose problems with leads it made for implantable cardiac defibrillators.

We are especially proud of the results our firm has obtained for institutional investors. We have successfully represented numerous state pension funds managing billions of dollars in assets. Among them are the Minnesota State Board of Investment, Utah State Retirement Board, Teachers' Retirement System of Alabama, Employees' Retirement System of Alabama, Judicial Retirement Fund of Alabama, Public Employees' Retirement Association of Colorado, as well as a number of Taft-Hartley health, welfare and pension funds.

### Consumer Protection

Heins Mills has represented consumers injured by violations of a wide variety of deceptive trade practices and consumer protection laws. The firm has brought claims

9



on behalf of all types of consumers, including purchasers of prescription drugs, long distance telephone service, air compressors, smoke detectors, lawn mower engines and hearing aids.  Examples of our consumer law cases include:

- Heins Mills serves as lead counsel for the consumer class in ***In re Target Corporation Customer Data Security Breach Litigation***, MDL No. 2522 (D. Minn.), a class action on behalf of consumers against Target Corporation arising from a large data security breach. In a significant ruling on December 18, 2014, Judge Magnuson allowed the majority of consumer plaintiffs' claims to proceed in largely denying Target's motion to dismiss.

- ***In re: The Home Depot, Inc., Customer Data Security Breach Litigation***, (Case No.: 1:14-md-02583-TWT (N.D. Ga.). We are a member of the Financial Institutions Plaintiffs' Steering Committee and Law & Briefing Committee in this class action arising from one of the largest payment-card security breaches in the nation's history.

- Heins Mills is co-lead counsel in ***Glaberson (formerly Behrend) v. Comcast Corp***., No. 03-6604 (E.D. Pa.), a long-running antitrust case alleging that Comcast restrained trade and monopolized the cable television market in the Philadelphia area.  On December 12, 2014, the court certified a settlement class and granted preliminary approval of a $50 million settlement comprising both cash payments for former subscriber class members and bill credits and services for current subscribers.



- ***In re Fiber Optic Cable Litigation (*multiple jurisdictions)**.  We serve as co-lead counsel in multi-state litigation against major telecommunications companies and utilities to vindicate the rights of landowners whose property was used for the installation of fiber optic cable without compensation. In that capacity we participated in fashioning an innovative global settlement that comprises separate agreements on a state-by-state basis. To date, a total of 40 state settlements have been finally approved in an aggregate amount of approximately $62 million.

- We were one of three co-lead counsel in ***In re Universal Service Fund Telephone Billing Practices Litigation***, MDL No. 1468 (D. Kan.), representing business and residential customers nationwide alleging a conspiracy to fix USF surcharges and breach of contract claims against long-distance telephone companies.  The November 2008 trial resulted in a verdict for the class, which was affirmed on appeal.

- We represented classes of consumers nationwide in ***In re Lawnmower Engines Horsepower Marketing & Sales Practices Litigation***, MDL No. 1999 (E.D. Wis.), alleging consumer fraud, civil conspiracy and unjust enrichment claims against manufacturers of lawn mowers and lawn mower engines.  Heins Mills' leadership resulted in nationwide settlements with all defendants.

- We served as co-lead counsel in ***In re Aftermarket Filters Antitrust Litigation***, MDL No. 1957 (N.D. Ill.), alleging antitrust, consumer protection



and unfair competition claims against leading manufacturers of replacement vehicle filters on behalf of consumer purchasers from multiple states. Settlements with all defendants were reached and received final approval.

### **Other Recent Results**

While serving in various roles, our advocacy has recently helped achieve favorable results in the following cases:

- ***In re Titanium Dioxide Antitrust Litigation***, Case No. 10-cv-00318 (D. Md.). On December 13, 2013, the Court granted final approval to settlements totaling $163.5 million in this action alleging that manufacturers of titanium dioxide conspired to fix prices for the product. Our client is one of the named plaintiffs in the action.

- ***In re Cathode Ray Tube (CRT) Antitrust Litigation***, MDL No. 1917 (N.D. Cal.). We are one of a number of law firms on the consolidated complaint in this action, which alleges that manufacturers of CRTs established a global cartel that set artificially high prices for CRTs and the televisions and monitors that contain them. Settlements with all named defendants have been reached, totaling $127.45 million. The court has granted final approval for all settlements except the two most recent, which have been preliminarily approved.

- ***In re Plasma-Derivative Protein Therapies Antitrust Litigation***, MDL No. 2109 (N.D. Ill.). Our client is one of three named plaintiffs on the consolidated complaint alleging that producers of immunoglobulin and albumin restricted the

12



supply of these blood-product therapies to inflate their prices. In April 2014, the court granted final approval of a settlement with the two remaining defendants, bringing the total amount of settlements to $128 million.

- ***In re Municipal Derivatives Antitrust Litigation***, MDL No. 1950 (S.D.N.Y.). The court granted final approval of settlements totaling more than $126 million in this class action alleging bid rigging and other anticompetitive conduct in the municipal derivatives industry by providers and brokers of municipal derivatives sold in the U.S. We represented the Puerto Rico Electric Power Authority (PREPA), one of the named plaintiffs.

- ***Refrigerant Compressors Antitrust Litigation***, Case No. 09-md-02042 (E.D. Mich.). Our client and other named plaintiffs in this action allege that the defendants conspired to fix prices of refrigerant compressors. On January 9, 2014, the court preliminarily approved four settlements totaling approximately $48.4 million. After a fairness hearing on June 12, 2014, the court granted final approval of the settlements, reduced to approximately $30 million to reflect class members who elected to opt out of the settlements.

- ***In re Processed Egg Products Antitrust Litigation***, MDL No. 2002 (E.D. Pa.). On October 10, 2014, the court granted final approval of the most recent settlement in this action, for $28 million, in this class action brought by egg buyers alleging that egg producers conspired to reduce domestic egg supplies to inflate prices.



- ***In re Actos End-Payor Antitrust Litigation***, Case No. 13-cv-09244 (S.D.N.Y.). We represent health and welfare fund plaintiffs and a proposed end-payor class of purchasers in this antitrust action alleging that defendants took anticompetitive steps to delay entry of lower-priced versions of prescription drugs (ACTOS and ACTOplus met), resulting in price overcharges to plaintiffs and the proposed class.

**<u>Judicial Recognition of Heins Mills & Olson's Skill and Effectiveness</u>**

Among judges, clients and peers, Heins Mills enjoys a reputation for its aggressive and skillful advocacy in class litigation of national and international import. The following are examples of praise we have received from the bench:

- The judge presiding over the multidistrict litigation in ***In re Monosodium Glutamate Antitrust Litigation***, the Hon. Paul A. Magnuson, said of our work as co-lead counsel: "I'll make no bones about this, I think this is as fine a job of plaintiff lawyering as I've ever seen, . . . I particularly take my hat off to the plaintiffs' counsel here."

- The presiding judge in ***AOL Time Warner***, the Hon. Shirley W. Kram, complimented our firm for its "exceptional lawyering in this case" and added that she "continues to be impressed with the quality of representation provided by [Heins Mills & Olson], its prosecution of the lawsuit, and its negotiation of the Settlement." She added, "Not only do the parties dispute the amount of damages sustained by the Class, they continue to dispute the very existence of damages. In



light of this fundamental disagreement, the $2.65 billion Settlement secured by Plaintiffs is all the more impressive."

- The judge who approved the ***Broadcom*** settlement, the Hon. Dickran Tevrizian, described it as "an exceptional result given the complexity of the case, and despite keenly contested and very complex facts. . . . Class Counsel's ability to obtain a favorable settlement despite formidable opposition confirms their immense skill."

### Recent Accolades

During the past year, our firm and its lawyers have continued to earn awards recognizing our superior ability and achievements.

- Samuel Heins, Vince Esades and Renae Steiner have consistently been named as "Super Lawyers" in the practice of antitrust and other complex litigation on the annual Thomson Reuters list of outstanding attorneys, most recently in the 2014 edition. In addition, James Anderson was named as a "Rising Star" in the areas of antitrust, securities and consumer law litigation.

- The 2014 edition of *The Legal 500 US*, which ranks "the best of the best" law firms in the country based on comments from clients and peers, again placed Heins Mills on its list of leading firms in antitrust class action litigation. The firm is one of only five to receive top ranking. As *The Legal 500 US* notes, Heins Mills "has 'top-level skill across the board with a deep bench' and is 'comprised of excellent attorneys, many of whom are highly experienced and all of whom provide superlative customer service.'" The publication also acknowledged



Vincent Esades, Renae Steiner and David Woodward individually as top litigators in the field.

- Our firm is one of only six in Minnesota to be "highly recommended" by *Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms & Attorneys*. The inaugural edition wrote that "the litigators of Heins Mills & Olson are disruptive apostles for plaintiffs that have been wounded by corporate transgressors" and "have propelled this firm to top standing in the eyes of their peers." The guide also recognizes Vincent Esades, Samuel Heins, Dylan McFarland, Renae Steiner and David Woodward as Minnesota "Litigation Stars" in the practice of Antitrust, Consumer Protection, Securities, and Commercial Litigation. Renae was also honored as one of the Top 150 Women in Litigation. These selections are the product of a six-month research project during which *Benchmark* conducted extensive interviews with litigators and clients.

- *Who's Who Legal*, a publication by Global Competition Review, has selected Renae Steiner and Vince Esades for 2015 as being among the world's leading competition lawyers. The selection process includes questionnaires, independent research of the legal press and peer evaluations.

- We were named the recipient of the 2013 Litigation Law Firm of the Year in Minnesota award from Corporate INTL. According to Corporate INTL, its awards "commemorate those who have been active over the past 12 months and who have shown excellence not only in expertise but in service and during a difficult global economic downturn." To select award winners, Corporate INTL



"undertake[s] detailed research in all categories through our editorial and research teams." Heins Mills & Olson was "chosen by an independent panel of senior lawyers and leaders from industry and private practice." Corporate INTL has a global circulation comprising leaders in the legal and financial advisor communities, senior management of leading businesses, both public and private, the venture capital community, and members of various networks and alliances.

- Commentators have also recognized Heins Mills for its groundbreaking advocacy in antitrust cases. An example is the landmark decision we obtained from the First Circuit, historically an arbitration-friendly court, invalidating class action bans in cable TV subscriber agreements. The ruling, handed down in *Kristian v. Comcast Corp.*, was described by Paul Bland, an attorney with Trial Lawyers for Public Justice in Washington with extensive expertise in challenging class waivers in consumer arbitration agreements, as the "most important decision on arbitration law" of 2006. (From "Decision Seen As Major Arbitration Policy Development," *ADRWorld.com* (April 28, 2006)). As another commentator observed, "Consumer lawyers have lauded the court's decision. . . as the first to recognize that the bans deprive plaintiffs of the ability to exercise their statutory rights under federal antitrust law." (From "1st Circuit Rejects a Class Action Ban," *The National Law Journal* (May 5, 2006)).



# Attorneys

## Stacey L. Mills

After recently ending her tenure as a member of the firm, Stacey is now of counsel to the firm. She has a wealth of experience litigating class and other complex litigation. She was one of the lead lawyers most actively involved on behalf of the plaintiff class in *In re Travel Agency Commission Antitrust Litigation* (D. Minn.) (antitrust claims on behalf of travel agents against major domestic airlines). Stacey has been involved in *In re AOL Time Warner Securities Litigation* (S.D.N.Y.) (securities fraud claims on behalf of AOL and Time Warner shareholders); *In re High Pressure Laminates Antitrust Litigation* (S.D.N.Y.) (price-fixing claims by businesses against manufacturers of high pressure laminates); *In re Fiber Optic Cable Litigation* (N.D. Ill.) (claims on behalf of property owners alleging that telecoms installed facilities within rights of way without consent); and *In re Broadcom Corp. Securities Litigation* (C.D. Cal.) (securities fraud claims on behalf of Broadcom shareholders).

Among other cases in which Stacey has been involved are *In re Green Tree Financial Stock Litigation* (D. Minn.); *In re Grand Casinos, Inc. Securities Litigation* (D. Minn.); *In re Buffets, Inc. Securities Litigation* (D. Minn.); *In re Mercury Finance Co. Securities Litigation* (N.D. Ill.); *In re Digi International, Inc. Securities Litigation* (D. Minn.); *In re Olympic Financial Securities Litigation* (D. Minn.); *In re Policy Management Systems Corp. Secs. Litigation* (D.S.C.); *In re High-Fructose Corn Syrup Antitrust Litigation* (C.D. Ill.); *Jong Lee v. Summit Medical Systems, Inc.* (D. Minn.); *In re Tricord Systems, Inc. Securities Litigation* (D. Minn.); *In re NASDAQ Market-Makers Antitrust Litigation* (S.D.N.Y.); *In re Scimed Life Securities Litigation* (D. Minn.); *A & J Deutscher Family Fund v. Bullard* (C.D. Cal.); *In re Unioil Securities Litigation* (C.D. Cal.); *In re Cousins Securities Litigation* (S.D. Cal.); *In re Daisy Systems* (N.D. Cal.); *In re HMOA Securities Litigation* (N.D. Ill.); *In re Employee Benefit Plans Securities Litigation* (D. Minn.); *Guenther v. Cooper Life Sciences* (N.D. Cal.); *In re Tera Securities Litigation* (N.D. Cal.); *In re Technical Equities Securities Litigation* (N.D. Cal.); *Krasner v. Mitchell* (Cal. Super. Ct. Los Angeles); *Kurgen v. Boise* (C.D. Cal.); *Levy v. Eletr* (N.D. Cal.); *Mirochnick v. Glasky* (C.D. Cal.); *Shields v. Smith* (N.D. Cal.); *Steiner v. Whittaker Corp.* (Cal. Super. Ct. Los Angeles); *Thau v. Johnson* (S.D. Cal.); *The Clothestime Securities Litigation* (C.D. Cal.); *Weinberger v. Kwiker* (C.D. Cal.); and *Weinberger v. Liebel* (S.D. Cal.).

Stacey has also represented plaintiffs asserting derivative claims on behalf of corporations in complex civil actions, including *Goldman v. Belzberg* (Cal. Super. Ct. Los Angeles) (on behalf of FarWest Savings & Loan Association); *Grobow v. Dingman* (S.D. Cal.) (on behalf of The Henley Group, Inc.); *In re Lockheed Corp. Securities Litigation* (C.D. Cal.); *Pacific Gas & Elec. Shareholder Derivative Litigation* (Cal.



Super. Ct. San Francisco); and *Seaman v. Pratt* (Cal. Super. Ct. Orange Co.) (on behalf of Pfizer Inc.).

B.A., U. of Nebraska; J.D., California Western School of Law
Admitted: Minnesota; U.S. District Court, District of Minnesota; Southern, Central and Northern Districts of California; District of Arizona; U.S. Court of Appeals, Seventh, Eighth and Ninth Circuits

## Vincent J. Esades

Vincent Esades is a partner of the firm. He has a national practice in the field of complex litigation, primarily in the areas of antitrust, consumer fraud and securities fraud. Mr. Esades has consistently been recognized as an outstanding attorney in the practice of antitrust, consumer law, class action and mass torts litigation on the annual Thomson Reuters Super Lawyers list, most recently in the 2014 edition. He has also been recognized as a "Leading Lawyer" by *The Legal 500 US*, which ranks Heins Mills & Olson as one of the top five antitrust class actions firms nationally. The 2012 inaugural edition of *Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms & Attorneys* recognized Vincent Esades as one of the Minnesota "Litigation Stars" in the practice of antitrust, consumer and complex litigation.

Vince has worked on numerous major antitrust cases, as lead counsel and in other capacities. He currently serves as lead counsel for the consumer class in a class action on behalf of Target customers arising from one of the largest data security breaches in history. (*In re Target Corporation Customer Data Security Breach Litigation*, MDL No. 2522 (D. Minn.). On December 18, 2014, the court denied for the most part Target's motion to dismiss, which had presented a particularly daunting challenge in the wake of decisions by other courts to dismiss similar claims for compensation for theft of personal data from other U.S. retailers. To distinguish Target from other cases, where customers claimed only the potential for future injury, the Target complaint carefully detailed actual injury to the class representatives in the form of unauthorized charges on their cards, lost access to their accounts, and payment of late fees, card-replacement fees, credit monitoring costs and other financial harm, as well as harm flowing from additional future abuse of their sensitive information arising from sale of consumers' data on the Internet black market.

Vince has also served in a leadership role in a number of other major antitrust cases, including appointment as co-lead counsel in *In re Lipitor Antitrust Litigation*, MDL No. 2332 (D.N.J.), which involves antitrust and consumer protection claims on behalf of proposed class of indirect purchasers of the prescription drug; *Fond Du Lac Bumper Exchange, Inc., Plaintiff, v. Jui Li Enterprise Company, Ltd., et al.*, Case No. 09c0852 (E.D. Wis.) which involves claims of nationwide price fixing of automotive sheet metal



parts by after market sheet metal parts manufacturers; and *In re Puerto Rican Cabotage Antitrust Litigation* (MDL No. 1960 D.P.R) which involves price fixing by Jones Act shipping companies for ocean shipping services between the U.S. and Puerto Rico. Vince was also appointed by the court as a member of the plaintiffs' steering committee in *In re Pool Products Distribution Market Antitrust Litigation* (MDL No. 2328, E.D. La.) (asserting claims of monopolization and attempted monopolization of the U.S. pool products distribution market) and in *In re Aluminum Warehousing Antitrust Litigation*, MDL No. 2481 (S.D.N.Y.) (claims alleging conspiracy to inflate aluminum prices, restrain aluminum supplies and provide extremely inefficient, low quality load out and other services).. He has served as plaintiffs' lead or co-lead counsel in several other nationwide class actions, including *In re Publication Paper Antitrust Litigation* (MDL No. 1631 D. Conn.) (price-fixing claims against paper manufacturers); *Johnson v. ELCA Board of Pensions* (representing retired pastors and church employees with breach of contract and breach of fiduciary duty claims against the ELCA Board of Pensions); *In re Polyester Staple Antitrust Litigation* (MDL No. 1516 W.D.N.C.) (price fixing claims against polyester staple manufacturers on behalf of business purchasers where Vince also served as member of the trial team before the case settled on the eve of trial); and *In Re Bulk Graphite Antitrust Litigation* (D.N.J.) (price fixing claims against manufacturers of bulk graphite on behalf of business purchasers).

Vince is also currently involved as a member of plaintiffs' executive committees in numerous other nationwide class actions including *In re TFT-LCD (Flat Panel) Antitrust Litigation* (N.D. Cal.) (price-fixing claims against producers of Thin Film Transistor Liquid Crystal Displays); *In re Municipal Derivatives Antitrust Litigation* (S.D.N.Y.) (claims on behalf of local governments against brokers, banks and insurance companies alleging bid-rigging and other anti-competitive practices in the municipal derivatives industry); *In re Rail Freight Fuel Surcharge Antitrust Litigation* (D.D.C. ) (claims alleging conspiracy among major domestic railroads to fix prices for rail freight surcharges); *In re Intel Corp. Microprocessor Antitrust Litigation* (D. Del) (claims alleging monopolistic practices by Intel in the x86 microprocessor market). He is also participating in *In re: LIBOR-Based Financial Instruments Antitrust Litigation* (S.D.N.Y.) (claims alleging that member banks of the British Bankers' Association conspired to manipulate the London InterBank Offered Rate) and *In re Air Cargo Shipping Services Antitrust Litigation* (E.D.N.Y) (claims against major airlines alleging price-fixing of fuel surcharges for freight transportation).

Vince tried a price-fixing case to verdict as a member of multi-firm trial team in the *In re High Pressure Laminates Antitrust Litigation* (MDL No. 1368 S.D.N.Y.) (price-fixing claims against manufacturers of high pressure laminates on behalf of business purchasers) and served as lead counsel in a case tried by Heins Mills and other co-lead counsel in November 2008, the *In re Universal Service Fund Telephone Billing Practices Litigation*. (MDL No. 1468 D. Kan.) (consumer fraud and price-fixing claims against AT&T, MCI and Sprint for USF surcharges). As lead counsel, Vince represented



classes of consumers and obtained nationwide settlements in *In re Lawnmower Engines Horsepower Marketing & Sales Practices Litigation* (MDL No. 1999 E.D. Wisc.) (alleging RICO, consumer fraud, civil conspiracy and unjust enrichment claims against manufacturers of lawn mowers and lawn mower engines).

Vince has actively participated in numerous other complex class actions as well, including *In re Hydrogen Peroxide Antitrust Litigation* (E.D. Pa.) (price-fixing claims against manufacturers of hydrogen peroxide); *In re Vitamins Antitrust Litigation* (D.D.C.) (discovery co-chair); *Howe v. Microsoft Corp.* (N.D.) (lead counsel); *Gordon v. Microsoft Corp.* (Minn., 4th Jud. Dist.); *In re NASDAQ Market-Makers Antitrust Litigation* (S.D.N.Y.); and *In re Motorsports Merchandise Antitrust Litigation* (N.D. Ga.).

Vince has presented at the ABA Annual Convention and the ABA Annual National Institute on Class Actions as a moderator and panelist regarding major antitrust issues, including the Class Action Fairness Act, multi-state settlement issues and class arbitration.

- Institute Planning Committee and Moderator, ABA's 17th Annual National Institute on Class Actions, ""Arbigeddon!!!" Has the Revolution to End Class Actions Spawned Weapons of Mass Arbitration?", Boston, MA, October 23-24, 2013, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

- Institute Planning Committee and Moderator, ABA's 16th Annual National Institute on Class Actions, "Sifting Through All the Big Shoulders." Litigating Class Actions Alongside Opt-Outs – Free-Riding or Riding Shotgun", Chicago, IL, October 24-25, 2012, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

- Institute Planning Committee and Moderator, ABA's 15th Annual National Institute on Class Actions, "Melee in Manhattan! Class-Action Objectors — Are They Protectors of Absent Class Members or Merely Gadflies?", New York City, NY, October 14, 2011, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

- Institute Planning Committee and Moderator, ABA's 14th Annual National Institute on Class Actions, "Perspectives on Multidistrict Litigation from the MDL Panel and Beyond", Chicago, IL, October 14, 2010, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

- Panelist and Moderator, ABA's 13th Annual National Institute on Class Actions, "A Funny Thing Happened on the Way to the Courthouse . . . I Had to Litigate an



Arbitration Clause! Crafting, Opposing, and Arguing Arbitration Clauses and Class-Action Waivers in Three Scenes," Washington DC, November 20, 2009, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

- Panelist, American Antitrust Institute's Annual Invitational Symposium on The Future of Private Antitrust Enforcement, "Action on the Class Action Front: A Potpourri" Washington, DC, December 11, 2008.

- Panelist, ABA's 12th Annual National Institute on Class Actions, "'I Could Have Sworn It was CAFA, *not Kafka*!' The Metamorphosis of Pleading, Defending, and Settling Multi-State Class Actions—A Surreal-Life, Three-Act Play," New York, NY, November 7, 2008, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

- Lecturer, "Class Actions: Growing Your Business by Understanding the Basics and Recognizing Opportunities," Cleveland, OH, October 31, 2008, sponsored by the Cleveland Bar Association

- Panelist, ABA's 11th Annual National Institute on Class Actions, "The Nationwide Class: White Elephant, Endangered Species, or Alive and Well?" Chicago, IL, October 19, 2007, sponsored by the ABA's Litigation Section's Class Action and Derivative Suits Committee

- Panelist, ABA's 2007 Annual Meeting, "'Is this CAFA or Kafka?' Multi-State Class Actions in a Time of Metamorphosis–A Surreal-Life, Three-Act Play," San Francisco, CA, August 9-12, 2007, sponsored by the ABA

B.A. *cum laude*, U. of N. Dakota; J.D., U. of N. Dakota School of Law
Admitted: Minnesota and North Dakota; U.S. District Court, District of Minnesota

## Renae D. Steiner

Renae is a partner of the firm. Renae has consistently been selected by her peers for inclusion as a "Super Lawyer" in the areas of antitrust and class action litigation (Thomson Reuters publication; 2008-2014). Renae has also been recognized as a top antitrust litigator in *The Legal 500 US*, *Who's Who Legal* and *Benchmark Plaintiff*. Renae also is listed by *Benchmark Plaintiff* as one of the *Top 150 Women in Litigation*.

Renae has a national practice in the field of complex litigation, primarily in the areas of antitrust actions (both direct purchaser and indirect purchaser cases), as well as in consumer fraud and securities actions. Over the course of her career, Renae has worked



on novel issues of antitrust law, including some of the first post-*Illinois Brick* class actions, some of the first post-*Actavis* class actions, in establishing antitrust standing under Florida's consumer protection statutes, in establishing the co-conspirator theory of state court jurisdiction in Florida, and on issues related to CAFA (Class Action Fairness Act) and standing arguments for indirect purchasers of price-fixed goods. She has worked cooperatively with many state Attorneys General in their related litigation against antitrust defendants.

Likewise, in the *Grand Casinos* securities litigation, Renae was part of the lead counsel team at Heins Mills & Olson that was the first to address the new pleading standards for motions for summary judgment under the newly-enacted PSLRA's scienter requirements.

Recently, Renae has actively participated in the representation of former and current college athletes in the landmark *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, No. 4:09-cv-1967 (N.D. Cal.) (commonly called the *"O'Bannon case"*) (challenging policies that prevent U.S. collegiate student-athletes from receiving a share of the revenue generated from use of their likeness). In *O'Bannon*, Renae lead the discovery team, deposed key witnesses and was one of the trial counsels in the 3 week trial conducted in June 2014. At trial, Renae presented the testimony of the plaintiffs' key survey expert and cross-examined two of the NCAA's witnesses. The *O'Bannon case* is widely heralded as the biggest sports law case in the last 30 years.

Renae is currently serving as a Lead Counsel for the classes in *In re Lidoderm Antitrust Litigation* (N.D. Cal.) and *In re Aggrenox Antitrust Litigation* (D. Ct.). Renae and James Anderson were recently appointed as liaison counsel in *Freedman v. St. Jude Medical, Inc.* (D. Minn.), a securities fraud class action alleging on behalf of purchasers of common stock of St. Jude Medical, Inc. that the company failed to disclose problems with leads it made for implantable cardiac defibrillators.

Past representative cases include: *In re Aftermarket Filters Antitrust Litigation* (N.D. Ill.) (as lead counsel; antitrust, consumer protection and unfair competition claims of price-fixing against leading manufacturers of replacement vehicle filters on behalf of indirect purchasers); *In re Prograf Antitrust Litigation* (D. Mass.); *In re Lipitor Antitrust Litigation* (D.N.J.); *In re DRAM Antitrust Litigation* (multiple federal and state court actions); *In re St. Paul Travelers Securities Litigation* (D. Minn.) (securities fraud); *In re Ready-Mixed Concrete Antitrust Litigation* (S.D. Ind.) (Indiana price-fixing case involving concrete); *In re Iowa Ready-Mixed Concrete Antitrust Litigation* (N.D. Iowa); *In re Universal Service Fund (USF) Telephone Billing Practices Litigation* (D. Kan.) (alleged consumer fraud in the assessment of USF fees); *Fiber Optic Cable Litigation* (multiple state and federal court actions related to the installation of fiber optic cable); *Infant Formula Antitrust Litigation* (price-fixing claims as to infant



formula; multiple state court actions; Wisconsin trial team); and *In re Thermal Facsimile Paper Antitrust Litigation* (multiple state court actions).

Renae has lectured on antitrust and sports law topics at conferences sponsored by the American Antitrust Institute, the Minnesota Section of the American Bar Association (ABA), at Women Antitrust Plaintiffs Attorneys' conferences, at Northwestern University's Sports Law Symposium and at the ABA's Class Action Institute. Topics have included the intersection of sports and antitrust law, pay-for-delay generic drug litigation, cooperation in parallel litigation with Attorneys General, class certification issues and arbitration clauses in antitrust litigation.

Renae is a member of the Federal, Minnesota, and Hennepin County Bar associations.

B.A., U. of Minnesota; J.D. *with distinction*, U. of Nebraska College of Law
Admitted: Minnesota; U.S. District Court, Districts of Minnesota, Nebraska, Colorado, and E.D. of Wisconsin; U.S. Court of Appeals, Seventh and Eighth Circuits
Member, Federal Bar Association, Minnesota Bar Association, and Hennepin County Bar Association.


## Dylan J. McFarland

Dylan is a partner of the firm. Named a "Super Lawyer" and "Rising Star" by *Minnesota Law & Politics*, he practiced in the area of complex commercial litigation as an associate with Gray Plant Mooty before attending the University of Minnesota Medical School. As a partner of Burstein Hertogs Olson & McFarland, P.A., he continued to represent corporations and municipalities in complex litigation, including shareholder derivative actions. In a case of first impression, he represented the defendant in *Skoglund v. Brady* (Minn.), which defined the scope of derivative claims and the authority of special litigation counsel under Minnesota law.

Since joining the firm, Dylan has worked on several securities fraud class actions, including *In re AOL Time Warner Securities Litigation* (S.D.N.Y.) ($2.65 billion recovery for shareholders of AOL and Time Warner); *In re Broadcom Corp. Securities Litigation* (C.D. Cal.) ($150 million recovery for shareholders of semiconductor manufacturer).

Dylan has also been involved a number of antitrust class actions, including *In re TFT-LCD (Flat Panel) Antitrust Litigation* (N.D. Cal.) (price-fixing claims against producers of liquid crystal displays); *In re Municipal Derivatives Antitrust Litigation* (S.D.N.Y.) (claims on behalf of local governments against brokers, banks and insurance companies alleging bid-rigging and other anticompetitive practices in the municipal derivatives industry); *In re: LIBOR-Based Financial Instruments Antitrust Litigation* (S.D.N.Y.)



(claims alleging that member banks of the British Bankers' Association conspired to manipulate the London InterBank Offered Rate); *In re Lidoderm Antitrust Litig*ation, MDL No. 2521 (N.D. Cal.); *Gordon et al v. Amadeus IT Group, S.A. et al* (S.D.N.Y) (alleging anticompetitive conduct by providers of airline reservation systems); *Fond Du Lac Bumper Exchange, Inc., et. al. v. Jui Li Enterprise Company, Ltd., et. al.* (E.D. Wis.) (supply and price-fixing claims against manufacturers and distributors of aftermarket automotive sheet metal parts); *In re Plasma Derivative Protein Therapies Antitrust Litigation* (N.D. Ill.) (supply and price-fixing claims against manufacturers of plasma-derivative protein therapies); *In re Pool Products Distribution Market Antitrust Litigation* (E.D. La.) (asserting claims of monopolization and attempted monopolization of the U.S. pool products distribution market); *In re American Express Anti-Steering Rules Antitrust Litigation* (E.D.N.Y.) (challenging rules preventing merchants from providing consumers with incentives to use forms of payment that are less expensive than American Express branded payment cards); *In re Puerto Rican Cabotage Antitrust Litigation* (D.P.R.) (antitrust claims against the largest providers of domestic ocean shipping between the mainland U.S. and Puerto Rico); *Glaberson v. Comcast Corp.* (E.D. Pa.) (antitrust claims against cable services provider on behalf of subscribers); and *In re Lawnmower Engines Horsepower Marketing & Sales Practices Litigation* (MDL No. 1999 E.D. Wis.) (alleging consumer fraud, civil conspiracy and unjust enrichment claims against manufacturers of lawn mowers and lawn mower engines).

While attending Harvard Law School, Dylan was an editor of the *Harvard Civil Rights-Civil Liberties Law Review*. He was an Adjunct Professor of Law at William Mitchell College of Law from 1998-2002, where he taught Legal Writing, Trial Skills, and Appellate Advocacy, and he has spoken at legal education programs on a number of litigation topics.

Dylan is named as a "Litigation Star" in *Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms & Attorneys*.

B.A. *summa cum laude*, U. of Minnesota; J.D. *cum laude*, Harvard Law School
Admitted: Hawaii and Minnesota; U.S. District Court, District of Minnesota; U.S. Court of Appeals, Second and Eighth Circuits

## David Woodward

David is a partner of the firm. From 1987-2003, he served as an Assistant Attorney General in the Civil Enforcement Unit of the Minnesota Attorney General's Office. David has extensive experience representing the State of Minnesota in lawsuits enforcing statutory prohibitions against false advertising, deceptive trade practices and consumer fraud. His consumer protection litigation areas of emphasis included health frauds, mortgage related enforcement matters and deceptive practices particularly impacting



vulnerable consumers. On behalf of the Minnesota Attorney General's Office, David helped to create a multi-state health fraud litigation group, which he co-chaired from 1994-1996. He served as lead counsel on behalf of the State of Minnesota in numerous multi-state enforcement efforts involving the application of state consumer protection statutes to nationwide drug advertising and promotional practices within the pharmaceutical industry, as well as a multi-state settlement with a large food company involving application of federal and state food laws and state consumer laws to the advertising and sale of a combination food/toy product marketed to young children.

David has extensive consumer protection litigation experience. He has represented the State of Minnesota in both state and federal courts. He represented the State of Minnesota in *State v. American Family Mut. Ins. Co.*, 609 N.W.2d 1 (Minn. Ct. App. 2000), a consumer and insurance law enforcement matter benefiting homeowners statewide in a case confirming the Attorney General's authority to sue insurers to enforce Minnesota consumer and insurance laws. David has represented the State in numerous false advertising, deceptive trade practices and consumer fraud cases, including litigation challenging advance fee loan schemes; college financial aid services companies; credit repair frauds; usurious credit card charges; home mortgage escrow overcharges; false advertising for bogus yellow page directories; the sale of bogus cancer treatment devices; the marketing to young consumers of an unapproved, dangerous drug misrepresented as a safe and natural product; misrepresentations in the sale of hearing aids; travel promotion schemes; deceptive practices affecting small businesses; and deceptive sweepstakes practices by major national sweepstakes companies.

From 1976-1979 and 1980-1987, David served as a staff attorney for a non-profit legal services corporation providing legal representation in civil matters, including litigation, to low-income persons in south central Pennsylvania. He was counsel before the Pennsylvania Supreme Court in *Pugh v. Holmes*, 405 A.2d 897 (Pa. 1979), a seminal case which established on a statewide basis the implied warranty of habitability in residential lease transactions.

David works on antitrust, consumer fraud and securities fraud class litigation in which the Heins Mills & Olson firm serves as plaintiffs' counsel including, for example, *Glaberson v. Comcast Corp.* (E.D. Pa.) (antitrust claims on behalf of cable subscribers); *In re Lipitor Antitrust Litigation*, MDL No. 2332 (D.N.J.) (state antitrust and consumer protection claims on behalf of a proposed class of indirect purchasers represented by Heins Mills & Olson as co-lead counsel); *In re Municipal Derivatives Antitrust Litigation* (S.D.N.Y.) (antitrust claims alleging bid rigging and other anticompetitive conduct in the municipal derivatives industry); *In re McKesson HBOC Securities Litigation* (N.D. Cal.) (securities fraud claims); *In re New Motor Vehicles Canadian Export Antitrust Litigation* (D. Maine) (antitrust action on behalf of consumers against automobile manufacturers); *In re Lawnmower Engines Horsepower Marketing & Sales Practices Litigation*, MDL No. 1999 (E.D. Wis.) (alleging consumer fraud, civil



conspiracy and unjust enrichment claims against manufacturers of lawn mowers and lawn mower engines); *Nogosek v. Carrier Corp.* (D. Minn.) (consumer fraud and breach of warranty action against furnace manufacturer); and class actions on behalf of consumers against Target Corporation arising from a large data security breach (*In re Target Corporation Customer Data Security Breach Litigation* (MDL No. 2522)).

David also works with Renae Steiner on various antitrust class actions alleging anticompetitive conduct by pharmaceutical companies delaying entry of lower-priced generic drugs into the market, including *In re Aggrenox Antitrust Litigation*, MDL No. 2516 (D. Conn.), *In re Lidoderm Antitrust Litig*ation, MDL No. 2521 (N.D. Cal.), *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*, Case No. 14-md-2503-DJC (D. Mass.), *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litigation*, MDL No. 2445 (E.D. Pa.), and *Minnesota and North Dakota Bricklayers and Allied Craftworkers Health Fund, et al. v. Takeda Pharmaceutical Co., Ltd., et al.*, Case No. 1:14-cv-01691 (S.D.N.Y.).

David has provided pro bono representation to persons seeking asylum. In 2000 and again in 2013, he received the Pro Bono Volunteer Annual Attorney Award from The Advocates for Human Rights.

After graduating with highest honors from St. Cloud State University (B.A.), he obtained his J.D. from the School of Law of the University of California in Los Angeles, where he was admitted to the Order of the Coif and was a member of the UCLA Law Review. He was also awarded a Masters of Law with highest honors from the National Law Center, Washington, D.C.

David presented as a panelist at the PLI's "Class Action Litigation 2013" conference in New York on July 10, 2013.

*Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms & Attorneys* includes David in its listing of *Litigation Stars.*

B.A. *with highest honors,* St. Cloud State University; J.D., UCLA School of Law; Masters of Law, National Law Center
Admitted: Minnesota, Pennsylvania and California; U.S. District Court, District of Minnesota, Middle District of Pennsylvania; U.S. Court of Appeals, Third, Fifth, Eighth and Ninth Circuits; U.S. Supreme Court

## Jessica N. Servais

Jessica is a partner of the firm. She currently is or has recently been working on complex litigation, including *Fond Du Lac Bumper Exchange, Inc., et. al. v. Jui Li Enterprise*



*Company, Ltd., et. al.* (E.D. Wis.) (supply and price-fixing claims against manufacturers and distributors of aftermarket automotive sheet metal parts); *In re Plasma Derivative Protein Therapies Antitrust Litigation* (N.D. Ill.) (supply and price-fixing claims against manufacturers of plasma-derivative protein therapies); *In re Transpacific Passenger Air Transportation Antitrust Litigation* (N.D. Cal.) (antitrust claims against airlines for price-fixing passenger fares and/or fuel surcharges on transpacific air passenger transportation); *Glaberson v. Comcast Corp.* (E.D. Pa.), *Kristian v. Comcast Corp.* (E.D. Pa.) and *Rogers v. Comcast Corp.* (E.D. Pa.) (antitrust claims against cable services provider on behalf of subscribers); *In re Ready-Mixed Antitrust Litigation* (S.D. Ind.) (price-fixing claims against ready-mixed concrete suppliers on behalf of purchasers); *In re Korean Air Lines Co., Ltd., Antitrust Litigation* (claims against Korea's major airlines alleging price-fixing of fuel surcharges); *In re Universal Service Fund Telephone Billing Practices Litigation* (D. Kan.) (consumer fraud and antitrust claims against AT&T, MCI and Sprint for USF telephone charges); and *In re Relafen Antitrust Litigation* (N.D. Cal.) (antitrust claims on behalf of consumers against manufacturers of brand name nabumetone tablets).

In addition, Ms. Servais is one of the lawyers who represented Colorado, Minnesota and Utah state employee pension funds in private litigation regarding losses suffered in connection with their purchases of McKesson HBOC securities in *In re McKesson HBOC Securities Litigation* (N.D. Cal.).

At the University of Minnesota Law School, Jessica was the Executive Editor of the *Minnesota Intellectual Property Review*. Jessica served as a federal judicial law clerk to the Honorable Michael J. Davis, United States District Court, District of Minnesota.

B.A. *magna cum laude*, Macalester College; J.D., U. of Minnesota Law School
Admitted: Minnesota, Wisconsin; U.S. District Court, District of Minnesota

## James Anderson

James Anderson is a partner of the firm. James was named in the 2014 edition of the annual Thomson Reuters *Super Lawyers* list of outstanding attorneys as a "Rising Star" in the areas of antitrust, securities and consumer law litigation. He is currently working on, or has worked on, a variety of complex civil matters, including *In re Lithium Ion Batteries Antitrust Litigation* (N.D. Cal.) (asserting antitrust claims against manufacturers of lithium ion batteries); *Kleen Products LLC v. Packaging Corporation of America, et al.* (N.D. Ill.) (antitrust claims against manufacturers of containerboard products); *In re American Express Anti-Steering Rules Antitrust Litigation* (E.D.N.Y.) (challenging rules preventing merchants from providing consumers with incentives to use forms of payment that are less expensive than American Express branded payment cards); *In re Aftermarket Filters Antitrust Litigation* (N.D. Ill.) (antitrust, consumer



protection and unfair competition claims against leading manufacturers of replacement vehicle filters on behalf of indirect purchasers); *In re Pool Products Distribution Market Antitrust Litigation* (E.D. La.) (asserting claims of monopolization and attempted monopolization of the U.S. pool products distribution market); *In re Air Cargo Shipping Services Antitrust Litigation* (E.D.N.Y) (claims against major airlines alleging price-fixing of fuel surcharges for freight transportation); *In re Cathode Ray Tube (CRT) Antitrust Litigation* (N.D. Cal.) (price-fixing claims against the producers of CRT televisions); *In re DRAM Antitrust Litigation* (multiple federal and state court actions involving price-fixing claims against the producers of DRAM computer memory); *In re SRAM Memory Products Antitrust Litigation* (N.D. Cal.) (price-fixing claims against the producers of SRAM computer memory); and *In re AOL Time Warner Securities Litigation* (S.D.N.Y.) (securities fraud claims on behalf of AOL and Time Warner shareholders). James has also been involved in other, non-class litigation including *Spine Solutions, Inc. v. Medtronic Sofamor Danek, Inc.* (W.D. Tenn.).

James graduated *cum laude* from William Mitchell College of Law where he was awarded a *21st Century Scholarship*, received a CALI Award for his performance in Legislative Advocacy, and a Minnesota State Bar Association outstanding achievement award in *Employment Discrimination*.

B.A. *magna cum laude*, St. Olaf College; J.D. *cum laude*, William Mitchell College of Law
Admitted: Minnesota; U.S. District Court, District of Minnesota; U.S. Court of Appeals, Eighth Circuit

## Scott W. Carlson

Scott is of counsel to the firm. He was named in the 2014 edition of the annual *Super Lawyers* list of outstanding attorneys as a "Rising Star." Scott served as trial counsel in *In re High Pressure Laminates Antitrust Litigation*, a six-week federal antitrust trial in the Southern District of New York (2006), and in *In re Polyester Staple Antitrust Litigation* (W.D.N.C.), a federal antitrust case that settled with the last remaining defendant on the eve of trial (2008), ultimately recovering more than the single damages suffered by the class. Scott is or has worked on many class actions, including *In re Lithium-Ion Batteries Antitrust Litigation*(N.D. Cal.) (asserting antitrust claims against manufacturers of lithium ion batteries); *In re Capacitors Antitrust Litigation* (N.D. Cal.) (antitrust claims against manufacturers of electronic capacitors); *In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods. Liab. Litig.* (D.S.C.) (consumer protection claims against windows manufacturer); *In re Rail Freight Fuel Surcharge Antitrust Litigation* (D.D.C.) (claims alleging conspiracy among major domestic railroads to fix prices for rail freight surcharges); *In re Titanium Dioxide Antitrust Litigation* (D. Md.) (price-fixing claims



against manufacturers of titanium dioxide); *In re Lawnmower Engines Horsepower Marketing & Sales Practices Litigation* (E.D. Wis.) (alleging consumer fraud, civil conspiracy and unjust enrichment claims against manufacturers of lawn mowers and lawn mower engines); *In re Puerto Rican Cabotage Antitrust Litigation* (D.P.R.) (antitrust claims against the largest providers of domestic ocean shipping between the mainland U.S. and Puerto Rico); *In re Flat Glass Antitrust Litigation* (W.D. Pa.) (price-fixing claims against manufacturers of flat glass);*In re AOL Time Warner Securities Litigation* (S.D.N.Y.) (securities fraud claims against AOL and Time Warner on behalf of shareholders); *In re Cathode Ray Tube (CRT) Antitrust Litigation* (N.D. Cal.) (price-fixing claims against the producers of CRT televisions); *In re Flash Memory Antitrust Litigation* (N.D. Cal.) (price-fixing claims against manufacturers of flash memory chips); *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation* (D. Minn.) (product liability claims on behalf of patients with implanted defibrillators); *In re Hydrogen Peroxide Antitrust Litigation* (E.D. Pa.) (price-fixing claims against manufacturers of hydrogen peroxide); *In re Korean Air Lines Co., Ltd., Antitrust Litigation* (claims against Korea's major airlines alleging price-fixing of fuel surcharges); *In re Methyl Methacrylate (MMA) Antitrust Litigation* (E.D. Pa.) (alleging price fixing against manufacturers of a chemical used to produce plastic); *In re Monosodium Glutamate Antitrust Litigation* (D. Minn.) (price-fixing claims on behalf of business purchasers of MSG against manufacturers); *In re Ready-Mixed Concrete Antitrust Litigation* (S.D. Ind.) (Indiana price-fixing case involving concrete); *In re Static Random Access Memory (SRAM) Antitrust Litigation* (N.D. Cal.) (price-fixing claims against the producers of SRAM computer memory); *In re TFT-LCD (Flat Panel) Antitrust Litigation* (N.D. Cal.) (price-fixing claims against producers of Thin Film Transistor Liquid Crystal Displays); *In re Fannie Mae Securities Litigation* (D.D.C.) (securities fraud claims against Fannie Mae on behalf of its shareholders); *In re Fiber Optic Cable Litigation* (N.D. Ill.) (claims on behalf of property owners alleging that telecommunication companies installed facilities within rights of way without consent); *In re Relafen Antitrust Litigation* (N.D. Cal.) (antitrust claims on behalf of consumers against manufacturers of brand name nabumetone tablets); and other complex litigation.

In his previous professional experience, Scott served as Senior Professional Staff to the U.S. Senate Budget Committee (2000-01), as a Legislative Assistant (1997-2000) and Legislative Correspondent (1993-94) to U.S. Senator Kent Conrad (D-N.D.), as the Communications Director of the Lee Kaldor for Governor of North Dakota campaign (1996), and as the Policy & Communications Director of the N.D. Department of Agriculture (1994-96).

A *cum laude* honors graduate of the University of Minnesota Law School, Scott served as Managing Editor of the *Minnesota Law Review* and as the founding chairman of the Minnesota Law Review Technology Committee. During law school, Scott was as extern law clerk to Magistrate Judge Franklin L. Noel, U.S. District Court for the District of



Minnesota. Scott returned to the Law School as an Adjunct Legal Writing Instructor for the 2011-12 and 2012-13 academic years while continuing in private practice.

B.A. *Honors Program*, Minot State University; J.D. *cum laude*, U. of Minnesota Law School
Admitted: Minnesota; District of Columbia; U.S. District Court, District of Minnesota; U.S. District Court, Central District of Illinois

**Teresa M. Jones**

Teresa is an associate of the firm and works on a wide range of complex litigation matters, with a focus on antitrust litigation, securities litigation, class actions, and consumer fraud matters. Before joining the firm, Teresa was part of the trial team in a large antitrust class action lawsuit against a major software company which settled in 2007 after several months of trial for $180 million.

Teresa has significant experience in document-intensive discovery, through which she has developed practices to identify, highlight and manage key case documents.

She is currently working on, or has worked on, *In re Lidoderm Antitrust Litigation* (N.D. Cal.) and *In re Aggrenox Antitrust Litigation* (D. Conn); *In re Lipitor Antitrust Litigation* (D.N.J.) (state antitrust and consumer protection claims on behalf of proposed class of indirect purchasers represented by Heins Mills & Olson as co-lead counsel); *In re Domestic Drywall Antitrust Litigation* (E.D. Pa.) (supply and price-fixing claims against manufacturers of gypsum wallboard); and *Fond Du Lac Bumper Exchange, Inc., et. al. v. Jui Li Enterprise Company, Ltd., et. al.* (E.D. Wis.) (supply and price-fixing claims against manufacturers and distributors of aftermarket automotive sheet metal parts). She has also worked on *In re Plasma Derivative Protein Therapies Antitrust Litigation* (N.D. Ill.) (supply and price-fixing claims against manufacturers of plasma-derivative protein therapies); *Glaberson v. Comcast Corp.* (E.D. Pa.) (antitrust claims against cable services provider on behalf of subscribers); and *In re AOL Time Warner Securities Litigation* (S.D.N.Y) (securities fraud claims on behalf of AOL and Time Warner shareholders).

Teresa graduated *magna cum laude* from William Mitchell College of Law and is admitted to practice in the state courts of Minnesota, the U.S. District Court for the District of Minnesota, and the United States Court of Appeals for the Eighth Circuit. Teresa is an active member of the Minnesota State Bar Association, Hennepin County Bar Association and American Bar Association and has held leadership positions in each.

B.A., U. of Minnesota; J.D. *magna cum laude*, William Mitchell College of Law



Admitted: Minnesota; U.S. District Court, District of Minnesota; U.S. Court of Appeals, Eighth Circuit

**Maureen E. Sandey**

Maureen is an associate of the firm. She is currently working on a variety of complex civil cases, including *In re Lidoderm Antitrust Litigation* (N.D. Cal.); *Kleen Products LLC v. Packaging Corporation of America, et al.* (N.D. Ill.) (antitrust claims against manufacturers of containerboard products); *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, Case No. 4:09-cv-1967 (N.D. Cal.) (challenging policies that prevent U.S. collegiate student-athletes from receiving a share of the revenue generated from use of their likeness); *Fond Du Lac Bumper Exchange, Inc., et. al. v. Jui Li Enterprise Company, Ltd., et. al.* (E.D. Wis.) (supply and price-fixing claims against manufacturers and distributors of aftermarket automotive sheet metal parts); and *In re Processed Egg Products Antitrust Litigation* (E.D. Pa.) (price-fixing claims by direct purchasers against shell egg and processed egg producers). Maureen also worked on *Pastor Benjamin A. Johnson, et al. v. The Evangelical Lutheran Church of America, et al.* (D. Minn.) (breach of contract and breach of fiduciary duty claims against the ELCA and the ELCA Board of Pensions on behalf of retired pastors and church employees).

In her previous professional experience, Maureen worked as a discovery attorney at a law firm in Minneapolis. She has worked on *Auxilium Pharmaceuticals, Inc. and FCB 1, L.L.C. v. Upsher-Smith Laboratories, Inc.* (D.N.J.); *Federal Home Loan Bank of Pittsburgh v. J.P. Morgan Securities, L.L.C., et al.* (Allegheny County Court of Common Pleas); *Devi Khoday and Danise Townsend, individually and on behalf of the class they represent v. Symantec Corp. and Digital River, Inc.* (D. Minn.); *Blue Cross and Blue Shield of Minnesota, as Administrator of the Blue Cross and Blue Shield of Minnesota Pension Equity Plan, et al. v. Wells Fargo Bank, N.A.* (D. Minn.); and *ObjectVideo, Inc. v. Robert Bosch, GMBH, et al.* (E.D. Va.).

Previously, Maureen served as a law clerk for the Ramsey County Attorney's Office and as a judicial extern to the Honorable Tanya Bransford, Minnesota District Court, Fourth Judicial District.

At William Mitchell College of Law, Maureen was the Co-Editor-in-Chief of *Cybaris®: Intellectual Property Law Review* and was a student attorney in the Intellectual Property Law Clinic. Currently, Maureen volunteers at various organizations, such as Feed My Starving Children.

B.A., Macalester College; J.D., William Mitchell College of Law
Admitted: Minnesota



**Cole S. Woodward**

Cole is an associate of the firm. He is currently assisting with work on, or has assisted with work on, complex litigation, including *In re: The Home Depot, Inc., Customer Data Security Breach Litigation*, (N.D. Ga.) (representing class of financial institutions harmed by one of the largest payment card security breaches in U.S. history); *In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Products Liability Litigation* (D.S.C.) (consumer protection claims against windows manufacturer); *In re Herbal Supplements Marketing and Sales Practices Litigation* (N.D. Ill.); *Fond Du Lac Bumper Exchange, Inc., et. al. v. Jui Li Enterprise Company, Ltd., et. al.* (E.D. Wis.) (supply and price-fixing claims against manufacturers and distributors of aftermarket automotive sheet metal parts), and *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, Case No. 4:09-cv-1967 (N.D. Cal.) (challenging policies that prevent U.S. collegiate student-athletes from receiving a share of the revenue generated from use of their likeness). He currently assists, or has assisted with legal research on *In re Target Corporation Customer Data Security Breach Litigation* (MDL No. 2522)*.*

While attending William Mitchell College of Law, Cole was a law clerk at Mid-Minnesota Legal Aid's Minneapolis office and worked in immigration law. He was a Minnesota Justice Foundation summer law clerk at Legal Aid Service of Northeastern Minnesota. There, he worked in landlord-tenant and housing law.

B.A., St. John's University; J.D., William Mitchell College of Law
Admitted: Minnesota

**Ian F. McFarland**

Ian is an associate of the firm. He is currently working on a variety of complex litigation matters, including *In re Aggrenox Antitrust Litigation*, No. 3:14-MD-2516 (D. Conn.) (antitrust class action alleging anticompetitive conduct by pharmaceutical companies delaying entry of lower-priced generic drug into the market) and *Gordon, et al v. Amadeus IT Group, S.A., et al* (S.D.N.Y) (antitrust class action alleging anticompetitive conduct by providers of airline reservation systems).

Before joining the firm, Ian served as a law clerk for the Honorable Regina M. Chu, Minnesota District Court, Fourth Judicial District.

Ian graduated *magna cum laude* from the University of Wisconsin Law School, where he served as a Note and Comment Editor of the *Wisconsin Law Review* and was admitted to the Order of the Coif. While attending law school, he worked as a judicial



intern to the Honorable Margaret J. Vergeront, Wisconsin Court of Appeals, District IV, and as a summer law clerk for the firm.

B.A., University of Wisconsin-Madison; J.D., *magna cum laude*, University of Wisconsin Law School
Admitted: Minnesota

# EXHIBIT 2

KOZYAK · TROPIN
THROCKMORTON
A T T O R N E Y S   A T   L A W

## RESUME OF ADAM MOSKOWITZ & KTT

For more than 30 years, Kozyak Tropin & Throckmorton ("KTT") has successfully litigated significant class action and complex commercial cases involving the rights of consumers, investors, and businesses. The Firm and its attorneys consistently rank among the most highly regarded litigation attorneys locally and on the national stage — from clients, judges, opponents, and professional journals — for effectiveness in and out of the courtroom.

*Adam Moskowitz.* Mr. Moskowitz runs KTT's Class Action Practice and has served as Lead Counsel in some of the largest class action cases in Florida and nationwide. Last year, Adam was awarded the "Most Effective Lawyer Award" in Florida for the "Business and Complex Litigation Division" from the American Legal publication for his work in prosecuting and resolving force-placed insurance ("FPI") cases. The FPI cases have involved Mr. Moskowitz initiating and serving as co-lead counsel in 14 nationwide class actions brought against 16 of the largest banks and insurers, and reaching 10 settlements for the proposed nationwide classes.

Mr. Moskowitz has also been appointed co-lead counsel in numerous other state and federal class actions, including a certified class of thousands of physicians who purchased a defective product and — before this Court — representation of a certified class of thousands of consumers across the country who purchased cellphone insurance. Mr. Moskowitz also served as co-lead counsel in an antitrust action against a chemical company, obtained one of the nation's largest personal injury jury verdicts against chemical company DuPont in Miami, and served as co-lead counsel in resolving one of the nation's largest consumer class actions LiPuma vs. American Express.

A case that underscores the effectiveness of the KTT team in complex, commercial actions is *Razorback Funding, LLC, et al., v. Scott W. Rothstein, et al.,* Case No. 09-062943 (07) (17th Cir. Fla.). In 2012, a corrupt Fort Lauderdale lawyer, Scott Rothstein, swindled hundreds of investors out of well over six hundred million dollars. Representing 70% of the victims, KTT — acting as co-lead counsel with Conrad Scherer — recovered roughly $250 million in losses. And in *Klay v. Humana*, KTT partner Harley Tropin served as co-lead counsel for plaintiffs in a multidistrict litigation in which medical societies and several hundred thousand physicians sued Aetna, Cigna, Humana, and other managed care organizations for monetary and structural relief. Successfully certified as a RICO class action, this case — along with a second, equally challenging action brought against the Blue Cross entities — was settled for hundreds of millions of dollars in monetary relief as well as structural relief to physicians valued at well over a billion dollars.

Page 2

Lawyers at KTT have been recognized by Best Lawyers in America since 1989 and are in the top-tier litigation category: "Bet-The-Company Litigators."

### *KTT Is Committed To Diversity*

In May 2001, KTT received the Florida Bar Association's First Annual Diversity Award. The firm was recognized for its partners' commitment to, and results achieved in, diversity, including race, sex, religion, and ethnic background. The firm's diversity efforts are exemplified by the Kozyak Minority Mentoring Foundation (kmmfoundation.org), created by John W. Kozyak, one of our founding partners, along with his wife and the help of KTT partner, Detra Shaw-Wilder. The Foundation's mission is to provide assistance and support to minorities interested in pursuing legal careers, mentoring programs, networking opportunities, and limited financial aid. The Foundation takes primary responsibility for finding experienced lawyers and judges to mentor minority students at every law school in Florida. During the past 11 years, Mr. Kozyak has matched more than 950 black students with judges and lawyers who serve as mentors.

KTT has been recognized for its commitment to women and minorities. For the past twenty years, KTT's managing partner has been a woman: our current managing partner is Detra Shaw Wilder. KTT also sponsors the Trial Advocacy Program at the University of Miami Law School and funds a scholarship for the most promising minority student each semester.

KTT and Mr. Kozyak have received numerous awards over the years including the Supreme Court Chief Justice's 2004 Law Firm Commendation in recognition of its commitment to providing free legal services to those who cannot afford legal fees, the Florida Bar President's 2006 Pro Bono Service Award, the ABA's 2007 "Spirit of Excellence" award, the Anti-Defamation League's 2010 Jurisprudence Award to recognize contributions to the legal profession and to the community at large, and, in January of this year, the 2015 Tobias Simon Pro Bono Service Award, which recognizes extraordinary contributions by a Florida lawyer in making legal services available to people who otherwise could not afford them, and to focus public awareness on the substantial voluntary services rendered by Florida lawyers.

# EXHIBIT 3



NEW YORK
LOS ANGELES
DETROIT

## THE FIRM'S PRACTICE AND ACHIEVEMENTS

Milberg LLP, founded in 1965, was one of the first law firms to prosecute class actions in federal courts on behalf of investors and consumers. The Firm pioneered this type of litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing. The Firm's practice focuses on the prosecution of class and complex actions in many fields of commercial litigation, including securities, corporate fiduciary, ERISA, consumer, False Claims Act, antitrust, bankruptcy, mass tort, and human rights litigation. The Firm has offices in New York City, Los Angeles, and Detroit.

In its early years, the Firm built a new area of legal practice in representing shareholder interests under the then recently amended Rule 23 of the Federal Rules of Civil Procedure, which allowed securities fraud cases, among others, to proceed as class actions. In the following decades, the Firm obtained decisions establishing important legal precedents in many of its areas of practice and prosecuted cases that set benchmarks in terms of case theories, organization, discovery, trial results, methods of settlement, and amounts recovered and distributed to clients and class members.

Important milestones in the Firm's early years include the Firm's involvement in the *U.S. Financial* litigation in the early 1970s, one of the earliest large class actions, which resulted in a $50 million recovery for purchasers of the securities of a failed real estate development company; the Ninth Circuit decision in *Blackie v. Barrack* in 1975, which established the fraud-on-the-market doctrine for securities fraud actions; the Firm's co-lead counsel position in the *In re Washington Public Power Supply System* ("*WPPSS*") *Securities Litigation*, a seminal securities fraud action in the 1980s in terms of complexity and amounts recovered; the representation of the Federal Deposit Insurance Corporation in a year-long trial to recover banking losses from a major accounting firm, leading to a precedent-setting global settlement; attacking the Drexel-Milken "daisy chain" of illicit junk-bond financing arrangements with numerous cases that resulted in substantial recoveries for investors; representing life insurance policyholders defrauded by "vanishing premium" and other improper sales tactics and obtaining large recoveries from industry participants; and ground-breaking roles in the multi-front attack on deception and other improper activities in the tobacco industry.

Milberg remains at the forefront in its areas of practice. Significant litigation results include: *In re Vivendi Universal, S.A. Securities Litigation* (post-verdict proceedings pending with claims valued at over $1 billion); *In re Tyco International, Ltd. Securities Litigation* ($3.2 billion settlement); *In re Nortel Networks Corp. Securities Litigation* (settlement for cash and stock valued at $1.142 billion); *In re Lucent Technologies, Inc. Securities Litigation* ($600 million recovery); *In re Raytheon Co. Securities Litigation* ($460 million recovery); *In re Managed Care Litigation* (recoveries over $1 billion and major changes in HMO practices); the *In re Washington Public Power Supply System Securities Litigation* (settlements totaling $775 million), and the *In re NASDAQ Market-Makers Antitrust Litigation* ($1 billion in recoveries). Milberg has been responsible for recoveries valued at approximately $55 billion during the life of the Firm.

The Firm's lawyers come from many different professional backgrounds. They include, among others, prosecutors, private defense attorneys, and government lawyers. The Firm's ability to pursue claims against defendants is augmented by its investigative team, headed by a 27-year veteran of the Federal Bureau of Investigation, as well as in-house staff with expertise in forensic accounting and financial analysis. In addition, Milberg offers in-house e-discovery specialists and data hosting capabilities.

For more information, please visit www.milberg.com.



NEW YORK
LOS ANGELES
DETROIT

*Judicial Commendations*

Milberg has been commended by countless judges throughout the country for the quality of its representation.

Milberg partners played leading roles in representing class plaintiffs in a nearly four-month jury trial in *In re Vivendi Universal, S.A. Securities Litigation*, No. 02-5571 (S.D.N.Y.), which in January 2010 resulted in a jury verdict for an international class of defrauded investors (with claims valued at over $1 billion; claims procedure pending). At the close of the trial, Judge Richard Holwell commented:

> I can only say that this is by far the best tried case that I have had in my time on the bench. I don't think either side could have tried the case better than these counsel have.

In approving a $3.2 billion securities fraud settlement, one of the largest in history, in *In re Tyco International, Ltd. Securities Litigation*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007), Judge Barbadoro lauded Milberg's efforts as co-lead counsel:

> This was an extraordinarily complex and hard-fought case. Co-Lead Counsel put massive resources and effort into the case for five long years, accumulating [millions of dollars in expenses] and expending [hundreds of thousands of hours] on a wholly contingent basis. But for Co-Lead Counsel's enormous expenditure of time, money, and effort, they would not have been able to negotiate an end result so favorable for the class. . . . Lead Counsel's continued, dogged effort over the past five years is a major reason for the magnitude of the recovery. . . .

In *Simon v. KPMG LLP*, No. 05-3189, 2006 U.S. Dist. LEXIS 35943, at *18, 30-31 (D.N.J. June 2, 2006), a case in which Milberg served as class counsel, Judge Cavanaugh, in approving the $153 million settlement, found that "Plaintiffs . . . retained highly competent and qualified attorneys" and that "[t]he Initial Complaint . . . demonstrates that [Milberg] expended considerable time and effort with the underlying factual and legal issues in this case before even filing this lawsuit. . . . Settlement discussions were conducted over a period of some fourteen months with the supervision and guidance of Judges Politan and Weinstein, and are evidence of [Milberg's] appreciation of the merits and complexity of this litigation."

In *In re Lucent Technologies, Inc. Securities Litigation*, 307 F. Supp. 2d 633, 641-47 (D.N.J. 2004), Judge Pisano issued an opinion approving the $600 million settlement and complimenting Milberg's work as co-lead counsel for the class as follows:

> [T]he attorneys representing the Plaintiffs are highly experienced in securities class action litigation and have successfully prosecuted numerous class actions throughout the United States. They are more than competent to conduct this action. Co-Lead Counsel diligently and aggressively represented the Plaintiffs before this Court and in the negotiations that resulted in the Settlement. . . . [T]he efforts and ingenuity of Lead Plaintiffs and Lead Counsel resulted in an extremely valuable Settlement for the Benefit of the Class.

In *In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003), Judge Dalzell commented on the skill and efficiency of the Milberg attorneys litigating this complex case:

> At the risk of belaboring the obvious, we pause to say a specific word about . . . the skill and efficiency of the attorneys involved. [Milberg was] extraordinarily



deft and efficient in handling this most complex matter. [T]hey were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write-down of over $1.6 billion in previously reported Rite Aid earnings. . . . In short, it would be hard to equal the skill class counsel demonstrated here.

In *In re IKON Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 195 (E.D. Pa. 2000), Judge Katz commented on Milberg's skill and professionalism as one of plaintiffs' co-lead counsel:

> First, class counsel is of high caliber and has extensive experience in similar class action litigation. . . . Each of the co-lead counsel firms has a national reputation for advocacy in securities class actions, and there is no doubt that this standing enhanced their ability both to prosecute the case effectively and to negotiate credibly. . . .
>
> Of particular note in assessing the quality of representation is the professionalism with which all parties comported themselves. The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines. This professionalism was also displayed in class counsel's willingness to cooperate with other counsel when appropriate. . . . This cooperation enabled the parties to focus their disputes on the issues that mattered most and to avoid pointless bickering over more minor matters.

In *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), in an opinion approving settlements totaling over $1.027 billion, Judge Sweet commented:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

Judicial recognition of Milberg's excellence is not limited to courts within the United States. In *In re Flag Telecom Holdings, Ltd. Securities Litigation*, No. 02-3400 (S.D.N.Y. 2009), Milberg litigated a discovery dispute before the English Royal High Court of Justice, Queens Bench Division, which recognized the Milberg attorney handling the matter as a "Grade A" lawyer and a "vital cog in the machine." Likewise, in *Sharma v. Timminco Ltd.*, 09-378701 (Can. Ont. Sup. Ct. 2009), Canada's Ontario Superior Court of Justice recognized Milberg's "fine reputation and excellent credentials" in connection with Milberg's representation in a securities case pending in Canada.

Milberg has also been recognized for its commitment to public service. In lauding Milberg's work representing victims of the September 11th attack on the World Trade Center in connection with the September 11 Victims Compensation Fund, Special Master Kenneth R. Feinberg stated the following:

> Once again, as I have learned over the years here in New York, the [Milberg] firm steps up to the
> plate in the public interest time and time again. The social conscience of the [Milberg] firm,
> acting through its excellent associates and partners, help deal with crises that confront the



American people and others, and I am personally in the debt of Milberg . . . for the work that it is

doing . . . .  [T]hey are second among none in terms of the public interest, and I'm very, very grateful, not only to you guys for doing this, but . . . for the firm's willingness to help out.  I wanted to let everybody know that.

*In re September 11 Victim Compensation Fund*, Preliminary Hearing, Claim No. 212-003658 (Dec. 9, 2003).



*Noteworthy Results*

The quality of Milberg's representation is further evidenced by the Firm's numerous significant recoveries, some of which are described below.

- In ***In re Vivendi Universal, S.A. Securities Litigation***, No. 02-5571 (S.D.N.Y.), Milberg lawyers were instrumental in obtaining a jury verdict for an international class of defrauded investors after a trial lasting nearly four months. The jury found Vivendi liable for 57 false or misleading class period statements. The case is now in post-verdict proceedings. Even with claimants who made foreign purchases removed from the class after the Supreme Court's *Morrison* decision, total damage claims exceed $1 billion.

- ***In re Initial Public Offering Securities Litigation***, No. 21-92 (S.D.N.Y.). Milberg represented investors in 310 consolidated securities actions arising from an alleged market manipulation scheme. Plaintiffs alleged, among other things, that approximately 55 defendant investment banks, in dealing with certain of their clients, conditioned certain allocations of shares in initial public offerings on the subsequent purchase of more shares in the aftermarket, thus artificially boosting the prices of the subject securities. This fraudulent scheme, plaintiffs alleged, was a major contributing factor in the now infamous technology "bubble" of the late 1990s and early 2000s. As a member of the court-appointed Plaintiffs' Executive Committee, and with certain partners appointed by the court as liaison counsel, Milberg oversaw the efforts of approximately 60 plaintiffs' firms in combating some of the most well-respected defense firms in the nation. In granting final approval to a $586 million settlement on October 5, 2009, the court described the law firms comprising the Plaintiffs' Executive Committee as the "cream of the crop."

- ***Carlson v. Xerox***, No. 00-1621 (D. Conn). Milberg served as co-lead counsel in this lawsuit, which consolidated 21 related cases alleging violations of the federal securities laws. Plaintiffs alleged that Xerox and several of its top officers reported false financial results during the class period and failed to adhere to

the standard accounting practices the company claimed to have followed. In the course of litigating plaintiffs' claims, Milberg engaged in arduous and exhaustive factual discovery, including review and analysis of more than four million pages of complex accounting and auditing documents and thousands of pages of SEC deposition transcripts. Plaintiffs' claims survived three motions to dismiss and a motion for summary judgment, ultimately resulting in a $750 million settlement, which received final approval on January 14, 2009.

- ***In re Tyco International Ltd., Securities Litigation***, MDL 1335 (D.N.H.). Milberg served as co-lead counsel in this litigation, which involved claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 against Tyco and its former CEO, CFO, general counsel, and certain former directors arising out of allegations of Tyco's $5.8 billion overstatement of income and $900 million in insider trading, plus hundreds of millions of dollars looted by insiders motivated to commit the fraud. Plaintiffs also asserted claims under the 1933 and 1934 Acts against PricewaterhouseCoopers LLP for allegedly publishing false audit opinions on Tyco's financial statements during the class period and failing to audit Tyco properly, despite knowledge of the fraud. On December 19, 2007, the court approved a $3.2 billion settlement of the plaintiffs' claims and praised the work of co-lead counsel.

- ***In re Sears, Roebuck & Co. Securities Litigation***, No. 02-7527 (N.D. Ill.). This case involved allegations that Sears concealed material adverse information concerning the financial condition, performance, and prospects of Sears' credit card operations, resulting in an artificially inflated stock price. The approved settlement provided $215 million to compensate class members.

- ***In re General Electric Co. ERISA Litigation***, No. 04-1398 (N.D.N.Y.). This ERISA class



action was brought on behalf of current and former participants and beneficiaries of the General Electric ("G.E.") 401(k) Plan. Milberg, serving as co-lead counsel, achieved a $40 million settlement on behalf of current and former G.E. employees who claimed that the company's 401(k) Plan fiduciaries imprudently invested more than two-thirds of the Plan's assets in company stock. The settlement included important structural changes to G.E.'s 401(k) plan valued at more than $100 million.

- *In re Biovail Corp. Securities Litigation*, No. 03-8917 (S.D.N.Y.). Milberg, representing Local 282 Welfare Trust Fund and serving as co-lead counsel, litigated this complex securities class action brought on behalf of a class of defrauded investors, alleging that defendants made a series of materially false and misleading statements concerning Canadian company Biovail's publicly reported financial results and the company's then new hypertension/blood pressure drug, Cardizem LA. This was a highly complex case in which counsel took numerous depositions across the U.S. and Canada and obtained documents from defendants and several third-parties, including, among others, UBS, McKinsey & Co., and Merrill Lynch. Milberg obtained a $138 million settlement for the class, and Biovail agreed to institute significant corporate governance changes.

- *In re Nortel Networks Corp. Securities Litigation*, No. 01-1855 (S.D.N.Y.). In this federal securities fraud class action, Milberg served as lead counsel for the class and the court-appointed lead plaintiff, the Trustees of the Ontario Public Service Employees' Union Pension Plan Trust Fund. In certifying the class, the court specifically rejected the defendants' argument that those who traded in Nortel securities on the Toronto Stock Exchange (and not the New York Stock Exchange) should be excluded from the class. The Second Circuit denied the defendants' attempted appeal. On January 29, 2007, the court approved a settlement valued at $1.142 billion.

- *In re American Express Financial Advisors Securities Litigation*, No. 04-1773 (S.D.N.Y.). This case involved allegations that American Express Financial Advisors violated securities laws by representing to class members that the company would provide tailored financial advice, when the company actually provided "canned" financial plans and advice designed to steer clients into American Express and certain nonproprietary mutual funds. The case settled for $100 million, with the settlement agreement requiring that the company institute remedial measures.

- *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-621 (D.N.J.). In this federal securities fraud action in which Milberg served as co-lead counsel, plaintiffs alleged, *inter alia*, that Lucent and its senior officers misrepresented the demand for Lucent's optical networking products and improperly recognized hundreds of millions of dollars in revenues. The settlement provided compensation of $600 million to aggrieved shareholders who purchased Lucent stock between October 1999 and December 2000.

- *In re Raytheon Co. Securities Litigation*, No. 99-12142 (D. Mass.). This case, in which Milberg served as lead counsel, concerned claims that a major defense contractor failed to write down assets adequately on long term construction contracts. In May 2004, Raytheon and its auditor, PricewaterhouseCoopers LLP, settled for a total of $460 million.

- In *In re Rite Aid Corp. Securities Litigation*, No. 99-1349 (E.D. Pa.), in which Milberg served as co-lead counsel, the plaintiffs asserted federal securities fraud claims arising out of allegations that Rite Aid failed to disclose material problems with its store expansion and modernization program, resulting in artificially inflated earnings. Judge Dalzell approved class action settlements totaling $334 million against Rite Aid ($207 million), KPMG ($125 million), and certain former executives of Rite Aid ($1.6 million).

- In *In re CMS Energy Corp. Securities Litigation*, No. 02-72004 (E.D. Mich.), a federal securities fraud case arising out of alleged round-trip trading practices by CMS Energy Corporation, Judge Steeh approved a cash settlement of more than $200 million. Milberg served as co-lead counsel in this litigation.



- *In re Deutsche Telekom AG Securities Litigation*, No. 00-9475 (S.D.N.Y.). Milberg served as co-lead counsel in this securities class action alleging that Deutsche Telekom issued a false and misleading registration statement, which improperly failed to disclose its plans to acquire VoiceStream Wireless Corporation and materially overstated the value of the company's real estate assets. On June 14, 2005, Judge Buchwald approved a $120 million cash settlement.

- *In re CVS Corp. Securities Litigation*, No. 01-11464 (D. Mass). Milberg served as co-lead counsel in this class action alleging that defendants engaged in a series of accounting improprieties and issued false and misleading statements which artificially inflated the price of CVS stock. On September 7, 2005, Judge Tauro approved a $110 million cash settlement for shareholders who acquired CVS stock between February 6, 2001, and October 30, 2001.

- *Scheiner v. i2 Technologies, Inc.*, No. 01-418 (N.D. Tex.). Milberg served as lead counsel in this securities fraud case, filed on behalf of certain purchasers of i2 common stock. The plaintiffs alleged that certain of the company's senior executives made materially false and misleading statements and omissions in i2's public statements and other public documents regarding i2's software, thereby artificially inflating the price of i2's common stock. In May 2004, Milberg recovered a settlement of $84.85 million.

- *In re Royal Dutch/Shell Transport ERISA Litigation*, No. 04-1398 (D.N.J.). This was an ERISA breach of fiduciary duty class action against the Royal Dutch/Shell Oil Group of Companies on behalf of certain of the companies' U.S. employee investment plan participants. Notably, the $90 million settlement included important provisions regarding the monitoring and training of individuals appointed to be ERISA fiduciaries.

- Milberg served as co-lead counsel in *Irvine v. ImClone Systems, Inc.*, No. 02-0109 (S.D.N.Y.), in which a $75 million cash settlement was approved by the court in July 2005. Plaintiffs alleged that ImClone issued a number of misrepresentations and fraudulent statements to the market regarding the likelihood of approval of the drug Erbitux, thereby artificially inflating the price of ImClone stock.

- In *In re W.R. Grace & Co. (Official Committee of Asbestos Personal Injury Claimants v. Sealed Air Corp. and Official Committee of Asbestos Personal Injury Claimants v. Fresenius Medical Care Holdings, Inc.)*, Nos. 02-2210 and 02-2211 (D. Del.), Milberg acted as lead counsel for the asbestos personal injury and property damage committees in two separate fraudulent conveyance actions within the W.R. Grace bankruptcy. The actions sought to return the assets of Sealed Air Corporation and Fresenius Medical Care Holdings (each of which had been Grace subsidiaries pre-bankruptcy) to the W.R. Grace bankruptcy estate. Complaints in both cases were filed in mid-March 2002, and agreements in principle in both cases were reached on November 27, 2002, the last business day before trial was set to begin in the Sealed Air matter. The two settlements, which consisted of both cash and stock, were valued at approximately $1 billion.

- *Nelson v. Pacific Life Insurance Co.*, No. 03-131 (S.D. Ga.). Milberg served as lead counsel in this securities fraud class action arising from allegations of deceptive sales of deferred annuity tax shelters to investors for placement in retirement plans that are already tax-qualified. The court approved a $60 million settlement of claims arising from such deception.

- The Firm was lead counsel in *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.), a landmark case challenging Prudential's sales practices that resulted in a recovery exceeding $4 billion for certain policyholders. The settlement was approved in a comprehensive Third Circuit decision.

- In *In re NASDAQ Market-Makers Antitrust Litigation*, MDL 1023 (S.D.N.Y.), Milberg served as co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases



in recent history. After more than three years of intense litigation, the case settled for a total of $1.027 billion, one of the largest antitrust settlements at that time.

- *In re Washington Public Power Supply System ("WPPSS") Securities Litigation*, MDL 551 (D. Ariz.) was a massive securities fraud litigation in which Milberg served as co-lead counsel for a class that obtained settlements totaling $775 million, the largest-ever securities fraud settlement at that time, after several months of trial.

- *In re Exxon Valdez*, No. 89-095 (D. Alaska) and *In re Exxon Valdez Oil Spill Litigation*, 3 AN-89-2533 (Alaska Sup. Ct. 3d Jud. Dist.). Milberg was a member of the Plaintiffs' Coordinating Committee and co-chair of the Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. Plaintiffs obtained a jury verdict of $5 billion, which, after years of appeals by Exxon, was reduced to approximately $500 million by the United States Supreme Court. Recently the United States Court of Appeals for the Ninth Circuit held that plaintiffs are entitled to post judgment interest on the award in the amount of approximately $470 million.

- In *In re Managed Care Litigation*, MDL 1334 (S.D. Fla.). Final approval of a settlement between a nationwide class of physicians and defendant CIGNA Healthcare, valued in excess of $500 million, was granted on April 22, 2004. A similar settlement valued in excess of $400 million involving a nationwide class of physicians and Aetna was approved by the court on November 6, 2003. The settlements stem from a series of lawsuits filed in both state and federal courts by physicians and medical associations against many of the nation's largest health insurers arising from allegations that the insurers engaged in a fraudulent scheme to systematically obstruct, reduce, delay, and deny payments and reimbursements to health care providers. These settlements brought sweeping changes to the health care industry and significant improvements to physician-related business practices.

- *In re Sunbeam Securities Litigation*, No. 98-8258 (S.D. Fla). Milberg acted as co-lead counsel for the class. Plaintiffs alleged that Sunbeam, its auditor, and its management engaged in a massive accounting fraud which led to a restatement of over three years of previously reported financial results. The court approved a combined settlement of more than $140 million, including a $110 million settlement with Arthur Andersen LLP, Sunbeam's auditor. At that time, the Andersen settlement was one of the largest amounts ever paid by a public accounting firm to settle federal securities claims. The settlement with the individuals was achieved on the eve of trial, and ended almost four years of litigation against Andersen and Sunbeam's insiders, including Albert Dunlap, Sunbeam's former Chairman and CEO. The settlement included a personal contribution from Dunlap of $15 million.

- *In re Triton Energy Limited Securities Litigation*, No. 98-256 (E.D. Tex.). Plaintiffs alleged that defendants misrepresented, among other things, the nature, quality, classification, and quantity of Triton's Southeast Asia oil and gas reserves during the period March 30, 1998 through July 17, 1998. The case settled for $42 million.

- In *In re Thomas & Betts Securities Litigation*, No. 00-2127 (W.D. Tenn.), the plaintiffs, represented by Milberg as co-lead counsel, alleged that Thomas & Betts engaged in a series of accounting improprieties while publicly representing that its financial statements were in compliance with GAAP, and failed to disclose known trends and uncertainties regarding its internal control system and computer and information systems. The case settled for $46.5 million dollars in cash from the company and $4.65 in cash from its outside auditor, KPMG.

- *In re MTC Electronic Technologies Shareholder Litigation*, No. 93-0876 (E.D.N.Y.). Plaintiffs alleged that defendants issued false and misleading statements concerning, among other things, purported joint venture agreements to establish telecommunications systems and manufacture telecommunications equipment in China. The court approved a settlement of $70 million,



including $65 million in cash and $5 million worth of MTC Class A shares with "put" rights.

- In *In re PaineWebber Limited Partnerships Litigation*, No. 94-8547 (S.D.N.Y.). Milberg represented investors alleging that PaineWebber developed, marketed, and operated numerous investment partnerships as part of an ongoing conspiracy to defraud investors and enrich itself through excessive fees and commissions over a twelve-year period. On March 20, 1997, Judge Sidney Stein approved a $200 million settlement, consisting of $125 million in cash and $75 million worth of guarantees and fee waivers.

- In *Andrews v. AT&T*, No. 91-175 (S.D. Ga.) the Firm represented a class of persons who paid for premium-billed "900-number" calls that involved allegedly deceptive games of chance, starting in 1993. Defendants included major long-distance companies, which approved the call programs and billed for the calls. Defendant MCI settled for $60 million in benefits. The class against AT&T was decertified on appeal and the Firm prosecuted the individual plaintiffs' claims, obtaining a jury verdict in 2003 for compensatory and punitive damages.

In the context of shareholder derivative actions, Milberg has protected shareholder investments by effectuating important changes in corporate governance as part of the global settlement of such cases. Cases in which such changes were made include:

- *In re Comverse Technology, Inc. Derivative Litigation*, No. 601272/2006 (N.Y. Sup. Ct. N.Y. Cnty.). On December 28, 2009, Milberg announced a $62 million settlement for the derivative plaintiffs, which was approved by the Court on June 23, 2010. The settlement also resulted in significant corporate governance reforms, including the replacement of the offending directors and officers with new independent directors and officers; the

amendment of the company's bylaws to permit certain long-term substantial shareholders to propose, in the Company's own proxy materials, nominees for election as directors (proxy access); and the requirement that all equity grants be approved by both the Compensation Committee and a majority of the non-employee members of the Board.

- *In re Topps Co., Inc. Shareholder Litig.*, No. 600715/2007 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 17, 2007). Milberg served as co-lead counsel in this transactional case, which led to a 2007 decision vindicating the rights of shareholders under the rules of comity and the doctrine of *forum non conveniens* to pursue claims in the most relevant forum, notwithstanding the fact that jurisdiction might also exist in the state of incorporation. This case was settled in late 2007 in exchange for a number of valuable disclosures for the class.

- *In re Marketspan Corporate Shareholder Litigation*, No. 15884/98 (N.Y. Sup. Ct. Nassau Cnty.). The settlement agreement in this derivative case required modifications of corporate governance structure, changes to the audit committee, and changes in compensation awards and to the nominating committee.

- *In re Trump Hotels Shareholder Derivative Litigation*, No. 96-7820 (S.D.N.Y.). In this case, the plaintiff shareholders asserted various derivative claims on behalf of the company against certain Trump entities and senior Trump executives in connection with the self-serving sale of a failing casino to the company in which the plaintiffs held stock. Milberg negotiated a settlement on behalf of the plaintiffs that required Donald Trump to contribute a substantial portion of his personal interest in a pageant he co-owned. In addition, the settlement required the company to increase the number of directors on its board, and certain future transactions had to be reviewed by a special committee.



NEW YORK
LOS ANGELES
DETROIT

*Precedent-Setting Decisions*

Milberg has consistently been a leader in developing the federal securities, antitrust, and consumer protection laws for the benefit of investors and consumers. The Firm has represented individual and institutional plaintiffs in hundreds of class action litigations in federal and state courts throughout the country. In most of those cases, Milberg has served as lead or co-lead counsel. The Firm has also been responsible for establishing many important precedents, including the following:

- In *Merck & Co., Inc. v. Reynolds* 130 S. Ct. 1784 (2010), Milberg, along with other co-lead counsel, won a significant victory before the U.S. Supreme Court, which issued a decision addressing when an investor is placed on "inquiry notice" of a securities fraud violation sufficient to trigger the statute of limitations under 28 U.S.C. § 1658(b). The Court unanimously ruled that the two-year statute of limitations was not triggered because plaintiffs did not have actual or constructive knowledge of "the facts constituting the violation," and as such, the case was not time-barred. Importantly, the Court held that the plaintiff must be on actual or constructive notice of facts concerning the defendants' scienter in order to trigger the statute of limitations. This decision is significant in that it potentially enables plaintiffs to bring claims based on misstatements that are more than two years old.

- *In re Lord Abbett Mutual Funds Fee Litigation*, 553 F.3d 248 (3d Cir. 2009). This important decision set significant precedent regarding the scope of preemption under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). In reversing the District Court's dismissal of the plaintiffs' claims, the Third Circuit held that "SLUSA does not mandate dismissal of an action in its entirety where the action includes only some pre-empted claims." In so holding, the court explained that "nothing in the language, legislative history, or relevant case law mandates the dismissal of an entire action that includes both claims that do not offend SLUSA's prohibition on state law securities class actions and claims that do . . . ."

- *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 170 (2d Cir. 2009). In this matter, the plaintiffs, Nigerian children and their families, asserted claims under the Alien Tort Statute ("ATS") in connection with Pfizer's clinical trial of the drug, Trovan, without their knowledge. In January 2009, the Second Circuit reversed the District Court's dismissal for lack of jurisdiction. The court held that the plaintiffs pled facts sufficient to state a cause of action under the ATS for a violation of international law prohibiting medical experimentation on human subjects without their consent.

- *In re Comverse Technology, Inc. Derivative Litigation*, 866 N.Y.S.2d 10 (App. Div. 1st Dep't 2008). In this derivative case in which Milberg serves as co-lead counsel, plaintiff shareholders sued certain of the company's officers and directors based on allegations of illegal options backdating. The lower court dismissed the plaintiffs' claims, holding that the plaintiffs failed to make a pre-suit demand on the company's board, and that in any event, the board had already formed a special committee to investigate the misconduct. In this significant opinion reversing the lower court's dismissal, the Appellate Division clarified the standards of demand futility and held that a board of directors loses the protection of the business judgment rule where there is evidence of the directors' self-dealing and poor judgment. The court noted that the mere creation of a special committee did not justify a stay of the action and did not demonstrate that the board took appropriate steps. Rather, "the picture presented in the complaint is that of a special committee taking a tepid rather than a vigorous approach to the misconduct and the resultant harm. Under such circumstances, the board should not be provided with any special protection."

- *South Ferry LP #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008). The important opinion issued by the Ninth Circuit in this securities fraud class action clarified, in the post-*Tellabs* environment, whether a theory of scienter based on the "core operations" inference satisfies the



PSLRA's heightened pleading standard. In siding with the plaintiffs, represented by Milberg, the Ninth Circuit held that "[a]llegations that rely on the core operations inference are among the allegations that may be considered in the complete PSLRA analysis." The court explained that under the "holistic" approach required by *Tellabs*, all allegations must be "read as a whole" in considering whether plaintiffs adequately plead scienter. After remand, the District Court found that the plaintiffs sufficiently alleged scienter under the Ninth Circuit's analysis.

- ***In re Gilead Sciences Securities Litigation***, 536 F.3d 1049 (9th Cir. 2008). In this securities fraud class action in which Milberg represents the plaintiffs, the Ninth Circuit reversed the District Court's dismissal of the complaint in this opinion clarifying loss causation pleading requirements. In ruling that the plaintiffs adequately pled loss causation, the Ninth Circuit held that the plaintiffs' complaint identified a "specific economic loss" following the issuance of a specific press release, along with allegations of misrepresentations that were described in "abundant detail." The opinion established that plaintiffs in a securities fraud action adequately plead loss causation where they provide sufficient detail of their loss causation theory and some assurance that the theory has a basis in fact. Based on this analysis, the dismissal was reversed, and the case was remanded to the District Court for further proceedings.

- In ***Tellabs, Inc. v. Makor Issues & Rights, Ltd.***, 551 U.S. 308 (2007), in which Milberg is lead counsel for the class, the United States Supreme Court announced a uniform standard for evaluating the sufficiency of a complaint under the PSLRA. The court held that on a motion to dismiss, a court "must consider the complaint in its entirety," accepting "all factual allegations in the complaint as true," as well as "tak[ing] into account plausible opposing inferences." On remand, the Seventh Circuit concluded that "the plaintiffs have succeeded, with regard to the statements identified in our previous opinion as having been adequately alleged to be false and material, in pleading scienter in conformity with the requirements of the PSLRA. We therefore

adhere to our decision to reverse the judgment of the district court dismissing the suit." The unanimous decision was written by Judge Richard A. Posner.

- ***Asher v. Baxter International, Inc.***, 377 F.3d 727 (7th Cir. 2004). In reversing and remanding the District Court's dismissal, the Seventh Circuit resolved in plaintiffs' favor an important issue involving the PSLRA's "safe harbor" for forward-looking statements. The court held that whether a cautionary statement is meaningful is an issue of fact, because whether a statement is meaningful or not depends in part on what the defendant knew when the statement was made as well as other issues of fact. Thus, this issue is not appropriately resolved on a motion to dismiss.

- ***Gebhardt v. ConAgra Foods, Inc.***, 335 F.3d 824 (8th Cir. 2003). This important decision strongly reaffirmed the principle that whether an undisclosed fact would have been material to investors cannot ordinarily be decided on a motion to dismiss. The Eighth Circuit, stressing that "[t]he question of materiality hinges on the particular circumstances of the company in question," observed that even relatively small errors in financial statements might be material if they concern areas of particular importance to investors and raise questions about management integrity.

- ***In re Cabletron Systems, Inc.***, 311 F.3d 11 (1st Cir. 2002). In this opinion, the First Circuit joined the Second Circuit in allowing a complaint to be based on confidential sources. The court also accepted the argument made by plaintiffs, represented by Milberg, that courts should consider the amount of discovery taken place prior to deciding a motion to dismiss, with a lack of discovery resulting in a correspondingly less stringent standard for pleading securities fraud claims with particularity.

- In ***Puckett v. Sony Music Entertainment***, No. 108802/98 (N.Y. Sup. Ct. N.Y. Cnty. 2002), a class action was certified against Sony Music Entertainment on behalf of a class of recording artists who were parties to standard Sony recording or production agreements entered into during the class period. The complaint alleged



that Sony had a policy of treating the value added tax on foreign sales of recordings improperly thereby impermissibly reducing the royalties paid or credited to the class members. Justice DeGrasse of the New York State Supreme Court determined that class certification was appropriate and that Gary Puckett (of Gary Puckett & the Union Gap) and jazz musician and composer Robert Watson were appropriate class representatives to represent the class of artists and producers to whom Sony accounts for foreign record royalties.

- *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000). The Firm was lead counsel in this seminal securities fraud case in which the Second Circuit undertook an extensive analysis of the statutory text and the legislative history of the PSLRA and pre-existing Second Circuit case law. Among other things, the Second Circuit held that the PSLRA's pleading standard for scienter was largely equivalent to the pre-existing Second Circuit standard and vacated the District Court's dismissal which sought to impose a higher standard for pleading scienter under the PSLRA. The Second Circuit also rejected any general requirement that plaintiffs' confidential sources must be disclosed to satisfy the PSLRA's newly-enacted particularity requirements.

- *In re Advanta Corp. Securities Litigation*, 180 F.3d 525 (3d Cir. 1999). Here, the plaintiffs, represented by Milberg, successfully argued that under the PSLRA, scienter is sufficiently pled by making an adequate showing that the defendants acted knowingly or with reckless disregard for the consequences of their actions. The Third Circuit specifically adopted the Second Circuit's scienter pleading standard for pleading fraud under the PSLRA.

- In *Hunt v. Alliance North American Government Income Trust, Inc.*, 159 F.3d 723 (2d Cir. 1998), the Second Circuit reversed the District Court's ruling, which denied plaintiffs leave to amend to assert a cause of action against defendants for failing to disclose that the defendant Trust was unable to utilize proper "hedging" techniques to insure against risk of loss. In the court's view, taken together and in

context, the Trust's representations would have misled a reasonable investor.

- In *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194 (1st Cir. 1996), the First Circuit remanded plaintiffs' action after affirming, in part, Milberg's position that in association with the filing of a prospectus related to the issuance of securities, a corporate-issuer must disclose intra-quarter, materially adverse changes in its business, if such adverse changes constitute "material changes" the disclosure of which is required pursuant to the Securities Act of 1933.

- *In re Salomon, Inc. Shareholders Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995). The Second Circuit affirmed the District Court's holding that derivative federal securities claims against defendants would not be referred to arbitration pursuant to the arbitration provisions of the Rules of the New York Stock Exchange, but would be tried in District Court. Shortly thereafter, the case settled for $40 million.

- *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991). The Supreme Court upheld the right of a stockholder of a mutual fund to bring a derivative suit without first making a pre-suit demand. Specifically, the Court held that "where a gap in the federal securities laws must be bridged by a rule that bears on the allocation of governing powers within the corporation, federal courts should incorporate state law into federal common law unless the particular state law in question is inconsistent with the policies underlying the federal statute. . . . Because a futility exception to demand does not impede the regulatory objectives of the [Investment Company Act], a court that is entertaining a derivative action under that statute must apply the demand futility exception as it is defined by the law of the State of incorporation."

- *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873 (9th Cir. 1984), *cert. denied*, 469 U.S. 932 (1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute of limitation rules for Section 10(b) suits that are favorable to investors.

- *Hasan v. CleveTrust Realty Investors*, 729 F.2d 372 (6th Cir. 1984). The Sixth Circuit very strictly construed, and thus narrowed, the ability



of a "special litigation committee" of the board of a public company to terminate a derivative action brought by a shareholder.

- ***Fox v. Reich & Tang, Inc.***, 692 F.2d 250 (2d Cir. 1982), *aff'd sub nom*, ***Daily Income Fund, Inc. v. Fox***, 464 U.S. 523 (1984). The court held that a Rule 23.1 demand is not required in a shareholder suit brought pursuant to Section 36(b) of the Investment Company Act.

- ***Rifkin v. Crow***, 574 F.2d 256 (5th Cir. 1978). The Fifth Circuit reversed an order granting summary judgment for defendants in a Section 10(b) case, paving the way for future acceptance of the "fraud-on-the-market" rationale in the Fifth Circuit.

- ***Blackie v. Barrack***, 524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976). This is the seminal appellate decision on the use of the "fraud-on-the-market" theory of reliance, allowing investors who purchase stock at artificially inflated prices to recover even if they were personally unaware of the false and misleading statements reflected in the stock's price. In so holding, the court noted that class actions are necessary to protect the rights of defrauded purchasers of securities.

- ***Bershad v. McDonough***, 300 F. Supp. 1051 (N.D. Ill. 1969), *aff'd*, 428 F.2d 693 (7th Cir. 1970). In this case, the plaintiff, represented by Milberg, obtained summary judgment on a claim for violation of Section 16(b) of the Securities Exchange Act, where the transaction at issue was structured by the defendants to look like a lawful option. The decision has been cited frequently in discussions as to the scope and purpose of Section 16(b).

- ***Heit v. Weitzen***, 402 F.2d 909 (2d Cir. 1968). The court held that liability under Section 10(b) of the Securities Exchange Act extends to defendants, such as auditors, who were not in privity with the named plaintiffs or the class represented by the named plaintiffs.

*Partners*

**ROBERT A. WALLNER** received his B.A. degree from the University of Pennsylvania in 1976 graduating *magna cum laude*. He attended New York University School of Law, earning his J.D. degree in 1979. He was elected to the law school's Order of the Coif and served as an editor of the *New York University Law Review*.

Mr. Wallner has litigated complex securities, consumer and antitrust class actions throughout the country. He currently represents plaintiffs in lawsuits arising out of the Madoff Ponzi scheme. He has also represented investors in *In re Initial Public Offering Securities Litigation* (S.D.N.Y), *In re CMS Energy Corporation Securities Litigation* (E.D. Mich.), and *In re Deutsche Telekom AG Securities Litigation* (S.D.N.Y.), and consumers in *In re Synthroid Marketing Litigation* (N.D. Ill.) and the *Mercedes-Benz Tire Litigation* (D.N.J.).

Mr. Wallner is a frequent lecturer on securities and complex litigation issues. He has served on the editorial board of *Securities Litigation Report*, as a faculty member of the American Bar Association's First Annual National Institute on Securities Litigation and Arbitration, and as a member of the Federal Courts Committee of the Association of the Bar of the City of New York. He was recently recognized in Lawdragon's "100 Lawyers You Need to Know in Securities Litigation."

**SANFORD P. DUMAIN** attended Columbia University where he received his B.A. degree in 1978. He graduated *cum laude* from Benjamin N. Cardozo School of Law of Yeshiva University in 1981.

Mr. Dumain represents plaintiffs in cases involving securities fraud, consumer fraud, insurance fraud, and violations of the antitrust laws.

Mr. Dumain was co-lead counsel in *In re Tyco International Ltd., Securities Litigation* in which $3.2 billion was recovered for investors. Mr. Dumain also served as lead counsel in the securities class actions against Nortel and Biovail, which are the highest and third highest recoveries ever in cases involving Canadian companies. The *Nortel* settlement was valued at over $1 billion and *Biovail* settled for over $138 million in cash. Mr. Dumain successfully represented the City of San Jose,

California against 13 of the City's broker-dealers and its outside accountants in connection with major losses in unauthorized bond trading.

Mr. Dumain began his career as a law clerk to Judge Warren W. Eginton, United States District Court for the District of Connecticut 1981-1982. During the early years of his practice, he also served as an Adjunct Instructor in Legal Writing and Moot Court at Benjamin N. Cardozo School of Law.

Mr. Dumain has lectured for ALI-ABA concerning accountants' liability and has prosecuted several actions against accounting firms.

Judge Janet C. Hall of the District of Connecticut made the following comment in *In re Fine Host Corporation Securities Litigation* No. 97-2619 (D.Conn.): "The court also finds that the plaintiff class received excellent counseling, particularly from the Chair of the Plaintiffs' Executive Committee, Attorney Dumain."

Mr. Dumain is admitted to practice in the State of New York, United States District Court for the Southern, Eastern, and Western Districts of New York, District of Colorado, and District of Connecticut, and United States Courts of Appeals for the First, Second, Third, Sixth, Seventh, and Eighth Circuits.

Mr. Dumain is the Chair of the Firm's Executive Committee.

**BARRY A. WEPRIN** graduated from Harvard College in 1974. He received a J.D. degree from the New York University School of Law in 1978, and a master of public affairs from the Woodrow Wilson School of Princeton University in 1978. While in law school, Mr. Weprin was notes and comments editor of the *New York University Law Review*.

Since joining Milberg, Mr. Weprin has specialized in securities and insurance litigation. He has served as lead or co-lead counsel in a number of complex securities class action litigations. He was one of the principal attorneys in the sales practice litigations against The New York Life Insurance Company, The New England Life Insurance Service Company, The Massachusetts Mutual Life Insurance Company, The John

Hancock Mutual Life Insurance Company, and The Prudential Life Insurance Company which recovered billions of dollars for policyholders. Mr. Weprin is a frequent lecturer on complex litigation issues.

Previously, Mr. Weprin served as law clerk to Judge Charles P. Sifton of the United States District Court for the Eastern District of New York and was associated with the law firm of Wachtell Lipton Rosen & Katz where he specialized in commercial and securities litigation. He also served as general counsel to the New York State Housing Finance Agency and the New York State Medical Care Facilities Finance Agency, two agencies that issue tax exempt bonds for financing nonprofit medical facilities and qualified housing projects.

Mr. Weprin is very active in his community of Mamaroneck, New York, having served as a Town Councilman and a member of the Zoning Board of Appeals. He is President of the National Association of Shareholder and Consumer Attorneys (NASCAT) as well as Vice President of the Institute for Law and Economic Policy (ILEP).

Mr. Weprin is a member of the American Bar Association, the Association of the Bar of the City of New York, the New York County Lawyers Association, and the New York State Bar Association. Mr. Weprin is admitted to practice in New York, the United States District Court for the Southern and Eastern Districts of New York, the United States Court of Appeals for the Second Circuit, and the United States Supreme Court.

**BRAD N. FRIEDMAN** focuses his practice on various complex commercial matters, including securities, qui tam, SEC whistleblower, bankruptcy, consumer, and life insurance class actions.

Mr. Friedman has recovered billions of dollars on behalf of injured plaintiffs, including as lead counsel in numerous "vanishing premium" and "churning" life insurance sales practice class actions (including cases against Prudential and Metropolitan Life).

In 2009, after eight years of arduous litigation, Mr. Friedman recovered $750 million for shareholders in *Carlson v. Xerox*, one of the 10 largest securities class-action settlements in U.S. history. Judge Thompson noted the complexity of the international accounting case and complimented Milberg's legal work, saying, "The class received

high-quality legal representation and obtained a very large settlement in the face of vigorous opposition by highly experienced and skilled defense counsel."

In 2002, Mr. Friedman acted as lead counsel on behalf of various asbestos committees in the *W.R. Grace* bankruptcy and successfully recovered approximately $1 billion through a fraudulent conveyance litigation that settled on the eve of trial.

Mr. Friedman is currently representing numerous whistleblowers in a variety of qui tam and SEC-related matters.

Mr. Friedman began his legal career as a clerk to the Honorable Max Rosenn, United States Court of Appeals for the Third Circuit. Following his clerkship, Mr. Friedman was associated with Simpson Thacher & Bartlett LLP, where he worked until 1994. Mr. Friedman became a Milberg partner in 1996.

He is a member of the American Constitution Society, the Federal Bar Council, the American Bar Association, the American Association for Justice, the New York State Bar Association, and the New York City Bar Association.

Mr. Friedman graduated from Cornell University in 1982 with a B.A. degree. He received his J.D., *cum laude*, from New York University School of Law in 1986.

**KIRK E. CHAPMAN** graduated *cum laude* from Harvard University in 1985 with a B.A. degree in biochemistry. He received his J.D. in 1989 from the University of Chicago where he was a member of the *Legal Forum* publication.

Mr. Chapman has over 18 years of experience litigating class and complex matters in a wide range of practice areas. He began his career at Milberg LLP focusing on securities fraud and employment discrimination class actions. Recently, he was one of the Partners at Milberg who successfully prosecuted and settled the *In re Tyco International Ltd., Securities Litigation* for over $3.2 billion in 2007.

Mr. Chapman practices extensively in the False Claims Act "Whistleblower" area as well as Mass Tort litigation. He is the head of Milberg's False Claims Act and Mass Tort practice groups.

Mr. Chapman has been counsel in cases generating some of the largest recoveries under the

Federal False Claims Act, including representation of one of the whistleblowers in the FCA case brought against Bristol-Myers Squibb that resulted in the United States Government recovering over $515 million for the Medicare and Medicaid program. He is also counsel in numerous other False Claims Act cases currently under seal.

Mr. Chapman is a member of the Plaintiffs' Steering Committee in the *Bextra* mass tort proceedings and is a member of the Plaintiffs' Executive Committee in the *Rezulin* mass tort litigation.

Mr. Chapman is a member of Taxpayers Against Fraud and the American Association for Justice. He is admitted to practice in the Courts of the State of New York as well as the United States District Courts for the Southern and Eastern Districts of New York.

**ARIANA J. TADLER** is a partner at Milberg LLP and an elected member of the Firm's Executive Committee. She has extensive experience litigating and managing complex securities and consumer class actions, including high profile, fast-paced cases. Ms. Tadler is widely recognized as one of the nation's leading authorities on electronic discovery and chairs Milberg's E-Discovery Practice Group, comprised of lawyers and technologists. Ms. Tadler is regularly invited to speak on a variety of litigation and discovery-related topics and has authored numerous publications on E-Discovery.

Ms. Tadler is currently serving as lead counsel in a number of consumer cases involving the mislabeling as "natural" products that contained GMOs, including *In re ConAgra Foods, Inc.*, and is a member of the Steering Committee in *In re Target Corporation Customer Data Security Breach Litigation*, representing consumers in a class action accusing Target Corp. of failing to protect customers from a massive data breach during the holiday shopping season. Ms. Tadler is lead counsel in *Ironworkers District Council of Philadelphia & Vicinity Retirement & Pension Plan v. Lamberto Andreotti,* pending in Delaware Chancery Court. She also recently successfully represented an alternative energy company in its claims of negligence against one of the Big 4 accounting firms. Ms. Tadler's accomplishments also include litigation of three cases in the Eastern District of Virginia (a/k/a the "Rocket Docket") in less than four years, including *In re MicroStrategy Securities Litigation* in which plaintiffs' counsel negotiated settlements valued at more than $150 million. Ms. Tadler served as one of the court-appointed plaintiffs' liaison counsel in the *Initial Public Offering Securities Litigation* in which the court approved a $586 million cash settlement. Among the thousands of defendants in this coordinated action were 55 prominent investment banks and more than 300 corporate issuers.

Ms. Tadler's extensive experience acting as Special Discovery Counsel in complex litigation and class actions includes representing the government of Colombia as Special Discovery Counsel in its pursuit of claims alleging smuggling and illegal sales of alcohol by several international companies for violation of United States RICO statutes and other common law claims. The engagement encompassed identifying relevant information responsive to defendants' requests, confirming and guiding preservation practices, and interviewing and collecting data from more than 100 custodians in 23 Colombian Departments (Colombia's equivalent to our States in the U.S.). The team also reviewed and produced data in the litigation, and was tasked with ensuring compliance with the various privacy laws of Colombia and the United States with regard to personal data, controlled data and the transfer of sensitive information — all hot topics in the area of E-Discovery today.

Ms. Tadler serves on The Sedona Conference®'s Board of Directors and, after having served for five years as Chair, is now Chair Emeritus of the Steering Committee for Working Group 1 on Electronic Document Retention and Production, the preeminent "think tank" on E-Discovery. In addition, she is on the Advisory Board of Georgetown University Law Center's Advanced E-Discovery Institute where she has helped educate federal judges and lawyers on E-Discovery issues and also serves on Bloomberg BNA's eDiscovery Board of Advisors. In addition to serving on the Advisory Committee of the Judicial Improvements Committee of the Southern District of New York, Ms. Tadler is on the committee of the Seventh Circuit Electronic Discovery Pilot Program and also actively involved in the reformulation of applicable E-Discovery rules and best practices. Recently, Ms. Tadler has been

selected as a member of the Board of Advisors of the Benjamin N. Cardozo School of Law's Data Law Initiative, a comprehensive program of courses focused on various aspects of data law including information governance, E-Discovery and cybersecurity.

An AV® Preeminent rated (Martindale Hubbell's highest rating) lawyer, Ms. Tadler has been recognized by several prominent legal industry rating organizations, including 2014 Chambers USA: America's Leading Lawyers for Business as "a leading light in the plaintiffs' Bar" and a "fearless and tenacious" advocate who wins praise for her in-depth e-discovery knowledge and efficient approach. Clients also praise her ability to "navigate all the E-Discovery issues." For four years in a row, Lawdragon included her in its select list of 500 Leading Lawyers in America, describing her as "one of the nation's most talented plaintiff-side securities litigators" and crediting her with building Milberg's "team of lawyers and technologists armed with the necessary hardware and software to provide a solid and reliable service." Benchmark Litigation has also included her in its 2014 Top 250 Women Litigators in the U.S. and she was named in Super Lawyers 2014 "Top 50: Women Lawyers" in the New York Metro-area.

Ms. Tadler chairs Milberg's Client Development Committee and is a member of the Hiring and Technology Committees. Ms. Tadler is a member of several legal industry associations, including: American Bar Association; American Bar Foundation (Fellow); American Association for Justice; Federal Bar Council; New York State Bar Association; National Association of Women Lawyers; New York County Lawyers Association; New York Women's Bar Association; and The New York Inn of Court (Vice President). More recently, she was selected as fellow of the prestigious Litigation Counsel of America, an invitation-only trial lawyer honorary society that recognizes the country's top trial attorneys. She is also involved in various community and not-for-profit organizations and currently serves on the board of MFY Legal Services, Inc.

Ms. Tadler graduated from Hamilton College in 1989. In 1992, she received her J.D. from Fordham University School of Law, where she was the Articles and Commentary Editor of the Fordham Urban Law Journal, a member of the Moot Court Board, and the 1990 recipient of the American Jurisprudence Award in Criminal Law.

**LORI G. FELDMAN** is a daughter of retired public employees and understands the importance of protecting the investments of employees, as well as the general public, against corporate fraud and breaches of fiduciary duty.

In addition to lecturing on class action practice, Ms. Feldman has served as Co-Chair of the Continuing Legal Education Committee of the Federal Bar Association for the Western District of Washington. Ms. Feldman has participated as panel faculty in national continuing legal education programs on ERISA and securities fraud class actions arising from the subprime and liquidity crisis. She was named a "Rising Star of Washington Law" by practitioners in Seattle and named a Super Lawyer in 2011, 2012 and 2013 by practitioners in the New York Metro area.

Ms. Feldman's representative recoveries exceed $150 million. She has recovered $41.5 million for class members in litigation involving Washington Mutual, Inc. (W.D. Wash.), where plaintiffs received favorable appellate court opinions on the issues of scienter (*South Ferry LP, #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008)) and class certification. Ms. Feldman also recovered millions of dollars for class members in litigation involving General Electric Co. (N.D.N.Y.), Rhythms Net Connections (D. Colo.), Gilead Sciences, Inc. (N.D. Cal.), Boston Scientific Corp., Macy's Inc. (S.D. Ohio), and Textron, Inc. (D.R.I.), among others.

Ms. Feldman graduated from Albany Law School in 1990, where she served as an Executive Editor of the *Albany Law Review*. She has interned at the Civil Division of the United States Attorney's Office in Brooklyn, New York. She is admitted to the bars of the States of Washington and New York and federal district and appellate courts throughout the country.

Ms. Feldman is a member of the Firm's Executive Committee.

**MATTHEW GLUCK** was a litigation partner for over 30 years at Fried, Frank, Harris, Shriver & Jacobson LLP prior to joining Milberg. He frequently represented U.S. and foreign businesses and individuals in major litigation and other

complex matters. He has also assisted clients in both formal bankruptcies and out-of-court restructurings of financially troubled companies.

Mr. Gluck twice served as adviser to the court in the restructuring of the Manville Trust in *In re Johns-Manville Corp.*, No. 85-8922 (S.D.N.Y.) and was the legal representative for future claimants in the Chapter 11 filing of Keene Corporation in *In re Keene Corp.*, No. 93-46090 (Bankr. S.D.N.Y.). He also serves as a local judge in Muttontown, New York. He was one of the lead attorneys for the plaintiffs in the trial against Vivendi which resulted in what may be the largest jury verdict for plaintiffs in a securities class action. He conducted the examination of Vivendi's former CEO, CFO, and their accounting expert.

Mr. Gluck is admitted to the bar of the State of New York.

**MATTHEW A. KUPILLAS** graduated from the State University of New York at Albany in 1990 with a B.A. degree in philosophy. In 1994, Mr. Kupillas received his J.D. degree from New York University School of Law. Mr. Kupillas focuses his practice primarily on class actions on behalf of defrauded investors and consumers, as well as complex commercial litigation. He is a member of the bar of the State of New York and is admitted to practice before the United States District Court for the Southern and Eastern Districts of New York, the District of Colorado, the Eastern District of Wisconsin, and the United States Court of Appeals for the Tenth Circuit.

**PAUL J. ANDREJKOVICS** graduated from Union College, Schenectady, NY, in 1992, *Phi Beta Kappa*, *magna cum laude*, with a B.A. degree in political science. In 1995, Mr. Andrejkovics received his J.D. degree from Albany Law School.

Mr. Andrejkovics's practice concentrates on class action settlements and settlement administration. He was admitted as a member of the New York bar in 1996 and is admitted to practice before the United States District Court for the Northern, Southern, and Eastern Districts of New York.

**KENT A. BRONSON** received a B.A. from State University of New York at Binghamton in 1994. He graduated *cum laude* from University of Pittsburgh School of Law in 1998. During law school, Mr. Bronson was a research editor on the

Law Review and a recipient of the Dean's Scholarship.

Mr. Bronson's practice is focused on securities, consumer and class action litigation. Prior to joining Milberg, while associated with another law firm, Mr. Bronson was part of a team of attorneys representing New York homeowners in *In re Coordinated Title Insurance Litigation*, Index No. 009600/2003 (N.Y. Sup. Ct. Nassau Cnty.) who alleged that eight insurance companies doing business in New York state overcharged them for title insurance in refinance transactions. The litigation resulted in complete recovery to homeowners submitting valid claims, and reportedly the largest settlement of a consumer class action in Nassau County. The presiding Justice, in approving the $31.5 million settlement of that litigation, described the prosecution of the case as reflecting "lawyering of the highest quality." Also, in *In re Providian Financial Securities Litigation*, MDL 1301 (E.D. Pa.), Mr. Bronson was one of the attorneys representing the Xerox (GB) Pension Scheme (which reportedly oversees approximately $2.5 billion in employee retirement funds for the British affiliate of Xerox Corp.) in a securities fraud class action lawsuit alleging that a major credit card company inflated its profits with illegal charges to consumers. The Court commented, in approving the $38 million settlement of that case, on the "extremely high quality" and "skill and efficiency" of plaintiffs' counsel's work.

Mr. Bronson has litigated numerous complex class action and shareholder derivative cases in various state and federal courts, including, among others, *In re Biovail Corp. Securities Litigation*, No. 03-8917 (S.D.N.Y.) (in which Milberg LLP served as co-lead counsel on behalf of the Local 282 Welfare Trust Fund, and which was settled for $138 million and certain corporate governance modifications); *City of Miami Police Relief & Pension Fund v. Ryland Group, Inc.*, No. BC411143 (Cal. Super. Ct. Los Angeles Cnty.); *New Jersey Carpenters Annuity Fund v. Meridian Diversified Fund Management, LLC*, No. 10-5738 (S.D.N.Y.); *New Jersey Carpenters Pension Fund v. infoGroup, Inc.*, No. 5334-VCN (Del. Ch.); and *In re Massey Energy Co. Derivative & Class Action Litigation*, No. 5430-VCS (Del. Ch.).

During law school, Mr. Bronson was a research editor of the University of Pittsburgh Law Review

and a recipient of the University of Pittsburgh School of Law Dean's Scholarship.

Mr. Bronson is admitted to practice in New York State courts, the United States District Courts for the Southern, Eastern and Northern Districts of New York, and the United States Courts of Appeals for the Second and Tenth Circuits.

**LEIGH SMITH** received a B.A. degree, with high honors, and an M.A. degree from Rutgers University. Ms. Smith received a J.D. degree from Cornell Law School in 1999.

Ms. Smith focuses her practice primarily on class actions on behalf of defrauded investors. She also has significant experience with complex commercial litigation and consumer class actions. Her involvement in *In re Tyco International Ltd. Securities Litigation*, No. 02-1335, helped recover an aggregate settlement of $3.2 billion.

While at Rutgers University, Ms. Smith majored in French and was elected to *Phi Beta Kappa* and *Phi Sigma Iota*. As a graduate student, she studied French literature and film and spent a year in France working as an assistant English teacher. Ms. Smith taught French at Rutgers and at the University of Iowa before going to law school. During law school, Ms. Smith served as the Acquisitions Editor for the *Cornell Journal of Law and Public Policy* and was a member of the Cornell Moot Court Board. She also was active in a number of student organizations.

Prior to joining Milberg, Ms. Smith worked at large law firms in New York and New Jersey. She is admitted to practice in the United States District Courts for the Southern District of New York, the Eastern District of New York, the District of New Jersey, the District of Massachusetts, the District of Colorado, and the United States Courts of Appeals for the First, Second, Third, and Ninth Circuits.

**ARVIND B. KHURANA** received his B.A. from State University of New York at Albany in 1993, and a J.D. from St. John's University School of Law in 1999, *Dean's List Graduate*. While in law school, Mr. Khurana was on the Dean's List from 1995-1999 and a member of the *American Bankruptcy Institute Law Review*.

Mr. Khurana focuses his practice primarily on class actions on behalf of defrauded investors and consumers, as well as complex commercial litigation. Prior to joining Milberg in August 2005,

Mr. Khurana worked as an associate with a major international law firm in New York, concentrating in the area of complex commercial litigation.

Mr. Khurana is a member of the Federal Bar Council and admitted to practice in the state and federal courts of New York. He is also a member of the Firm's Diversity Committee.

**KRISTI STAHNKE MCGREGOR** received her B.A. degree in political science, *Phi Beta Kappa*, from the University of Florida in 1995. In 1999, Ms. McGregor received her J.D. degree from Emory University School of Law, where she was the Research Editor of the *Emory International Law Review* and student law clerk to Justice Norman Fletcher of the Georgia Supreme Court. In 2001, Ms. McGregor received her LL.M. degree from the Westfaelische Wilhelms-Universitaet Muenster, in Munester, Germany, where she was a Federal Chancellor Scholar through the Alexander von Humboldt Foundation.

For over a decade now, Ms. McGregor has focused her practice primarily on securities fraud class actions and derivative actions on behalf of investors, as well as other complex litigation involving allegations of fraud and/or breach of fiduciary duty. Working together with her colleagues at Milberg, Ms. McGregor's work has contributed to over $300 million in recoveries for investors.

Ms. McGregor has particular experience in international litigation, primarily involving European companies. She has used her German language skills and knowledge of the German legal system to represent investors in cases involving German companies, including In re Deutsche Telekom AG Securities Litigation, which resulted in a $120 million settlement for U.S. holders of American Depository Shares, and In re NYSE Euronext Shareholders Litigation challenging the proposed merger of the NYSE with the Deutsche Boerse.

Prior to joining Milberg's New York office in 2002, Ms. McGregor practiced in the international corporate law section of a large Atlanta law firm advising German companies on their business in the U.S. Ms. McGregor was admitted to the Georgia bar in 1999, the New York bar in 2003, and the Florida bar in 2004.

**ANDREI RADO** focuses his practice on securities litigation, consumer class actions, and SEC whistleblower matters.

Since the passage of the Dodd-Frank Act in 2010, Mr. Rado has represented numerous whistleblowers before the commission under a program that rewards and protects whistleblowers that report violations of securities laws to the Securities and Exchange Commission. These involved a variety of complaints, including allegations of bribing foreign officials to gain business, accounting fraud, and consumer fraud, against a variety of companies diverse in size and business.

Mr. Rado's securities practice has included numerous complex litigations nationwide, including *In re Initial Public Offering Securities Litigation*, which alleged, in hundreds of consolidated cases then pending in the Southern District of New York, that investment banks manipulated the initial public offerings of hundreds of companies, and mutual fund timing cases alleging that mutual fund managers allowed select investors to profit by improperly timing their trading in fund shares.

Mr. Rado also investigates, launches, and litigates consumer class actions. These cases are as diverse as consumer fraud itself. Early in his career, Mr. Rado litigated a case against jewelry company Zales for improperly denying credit-insurance claims made by unemployed and retired consumers, and a class action against computer maker Gateway for improperly understating in advertising the costs of internet access to consumers, some of whom incurred internet-access fees of hundreds of dollars. More recently, among other cases, Mr. Rado has launched and litigated consumer cases against companies that misled consumers by inflating the technical specifications of their products, and "all natural" food cases, including the first case alleging that products made from genetically modified organisms (GMOs) should not be advertised as natural.

Mr. Rado is editor of Milberg's consumer blog classactioncentral.com

Prior to joining Milberg, Mr. Rado worked as an attorney at a New York City-based investment bank focusing on compliance, with rules and regulations relating to re-sales of control and restricted securities under the Securities Act of 1933. Mr. Rado also worked at another prominent New York City law firm specializing in plaintiffs' securities class action litigation.

Mr. Rado received his Juris Doctor degree from St. John's University School of Law, *cum laude*, in 1999. While in law school, Mr. Rado served as a senior member of the *New York International Law Review*. He is admitted to practice in the courts of the State of New York, as well as the United States District Court for the Southern District of New York. Mr. Rado was born in Bucharest Romania, and lived in Israel for several years before immigrating to New York in the early 80s.

**ANNA C. DOVER** received a B.A. degree from Wesleyan University, with honors in Psychology, in 1995, and a J.D. degree from the University of California at Davis School of Law in 2001. While in law school, Ms. Dover was a member of the *UC Davis Law Review*.

Ms. Dover currently focuses her practice on representing whistleblowers in litigation under the False Claims Act. In addition, Ms. Dover has extensive experience litigating claims brought under Section 36(b) of the Investment Company Act of 1940, including taking such cases to trial. As an active member of the New York Inn of Court, she has spoken at several CLE seminars.

Prior to joining Milberg, Ms. Dover was an associate at Robie & Matthai, P.C. in Los Angeles where her practice was focused on insurance and legal malpractice claims. While in law school, Ms. Dover was a member of the UC Davis Law Review.

Ms. Dover is admitted to practice before the United States District Courts for the Southern District of New York and the Central and Southern Districts of California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court.

**JEFFREY R. MESSINGER** received his B.A. from the State University of New York at Stony Brook in 1980, and his J.D., from Boston University School of Law in 1985. Mr. Messinger has over 15 years experience litigating class and complex matters. Recently he was part of the Milberg team that successfully prosecuted and settled the *In re Tyco International Ltd., Securities Litigation* for $3.2 billion in 2007.

Mr. Messinger currently focuses his practice on plaintiffs' mass torts in pharmaceutical and medical device cases, and he has worked with Plaintiffs' Steering Committees in several litigations, including *Kugel Mesh*, *Avandia*, *Yaz/Yasmin*, and *Bextra*.

Mr. Messinger has also obtained significant settlements on behalf of victims of employment discrimination.

**PAUL F. NOVAK** received his B.A. and M.A. degrees from Michigan State University in 1983, and J.D. from Emory University School of Law in 1986. Mr. Novak is the head of Milberg's antitrust practice group and the managing partner of the Firm's Detroit office. He is active in a host of antitrust, securities, and consumer protection class action matters, and currently serves as interim co-lead counsel in multiple antitrust cases.

Paul F. Novak is the head of Milberg's antitrust practice group and the managing partner of the Firm's Detroit office. He is active in a host of antitrust, securities, and consumer protection class action matters, and currently serves as interim co-lead counsel in multiple antitrust cases.

Prior to joining Milberg, Mr. Novak practiced law in both the public sector, as an Assistant Attorney General for the State of Michigan and as the City Attorney of Lansing, and in the private sector consulting with clients on antitrust, environmental, and regulatory matters. As an assistant attorney general, Mr. Novak served as the Division Head of the Special Litigation Division with responsibility for antitrust enforcement, public utility matters, and securities litigation. He emerged as a national leader in multistate litigation involving pricing practices in the pharmaceuticals industry, and served as lead counsel on behalf of all fifty state attorneys general in the *In re Cardizem CD Antitrust Litigation*. He also served as lead counsel on behalf of the State of Michigan in several price fixing, monopolization, and merger cases in a broad spectrum of industries including health care, pharmaceuticals, and in cases involving Microsoft and Oracle Corporation.

Mr. Novak is the former Chair of the Michigan Bar Association's Antitrust, Franchising, and Trade Regulation Section and is a contributing editor of the American Bar Association's Antitrust and Health Care Newsletter. He is also a member of the State Bar of Michigan United States Court Committee. He was awarded the Frank J. Kelley Excellence in Trial Advocacy Award for his work in antitrust enforcement. He has lectured on antitrust issues in the pharmaceuticals and insurance industries for the Practicing Law Institute. He served as chair of the National Association of Attorneys General ("NAAG") Midwest Antitrust Enforcement Task Force and as a member of the NAAG Airlines Industry Working Group and Prescription Drug Pricing Task Force.

**JAMES M. SHAUGHNESSY** joined Milberg in 2001. He started his legal career as a litigation associate at Casey, Lane & Mittendorf in 1969 and became a litigation partner at the firm in 1976. In 1982, Mr. Shaughnessy co-founded the firm of Haythe & Curley, (now the New York office of Torys LLP) and was the firm's original litigation partner. He was the managing partner of Haythe & Curley for two years. In 1987, Mr. Shaughnessy joined the firm of Windels, Marx, Davies & Ives (now known as Windels, Marx, Lane & Mittendorf, LLP) as a litigation partner. He was the chairman of the Windels, Marx Litigation Department from 1988 through 1998, and was a member of the firm's Executive Committee from 1990 to 1992.

Over the course of his career, Mr. Shaughnessy has specialized in securities, insurance, aviation, bankruptcy, mass tort, and *qui tam* litigation. Mr. Shaughnessy was lead defense counsel for Pan American World Airways, Inc. in *In re Air Disaster at Lockerbie Scotland on December 21, 1988*, M.D.L. 799 (E.D.N.Y.), and tried the liability issues in that case on behalf of Pan Am to a jury for three months. More recently, Mr. Shaughnessy was Plaintiffs' Liaison Counsel in the Zyprexa mass tort litigation and was a member of the Plaintiffs' Steering Committee in the *Avandia* mass tort litigation.

Mr. Shaughnessy is a 1969 *cum laude* graduate of New York University School of Law where he was a member of the Order of the Coif, the Managing Director of the Moot Court Board, and a recipient of the Benjamin F. Butler Award upon graduation. Mr. Shaughnessy is admitted to practice in the States of New York, California, and New Jersey, as well as the United States Supreme Court and numerous other federal jurisdictions.

**TODD KAMMERMAN** focuses his practice on securities class action litigation, shareholder

derivative litigation and commercial litigation. Mr. Kammerman's successful litigations include *In re CMS Energy Securities Litigation*, No. 02-72004 (E.D. Mich.) ($200 million recovery); *In re Royal Dutch/Shell Transport ERISA Litigation*, No. 04-1398 (D.N.J.) ($90 million recovery); *Scheiner v. i2 Technologies,* No. 01-0418 (N.D. Tex.) ($87.8 million recovery); *In re Collins & Aikman Corporation Securities Litigation*, No. 03-71173 (E.D. Mich.) ($10.8 million recovery), and *Mich II Holdings LLC v. Schron,* No. 600736/10 (Sup. Ct. N.Y. Cnty.) (represented certain defendants in connection with real estate dispute and successfully litigated motion to dismiss all claims against those defendants).

Mr. Kammerman played a pivotal role in the *In re Comverse Technology, Inc. Derivative Litigation,* No. 601272/06 (Sup. Ct. N.Y. Cnty.) ($62 million recovery), particularly in drafting the appellate briefs which led to the seminal New York Appellate Division opinion, reported at 56 A.D.3d 49 (1st Dept 2008), clarifying the standards of demand futility, and holding that a board of directors loses the protection of the business judgment rule where there is evidence of self-dealing and poor judgment by the directors. He was also a member of the team that litigated the appeal in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* before the United States Supreme Court, in which the Supreme Court issued an opinion defining the pleading standard for scienter in all federal securities fraud cases, and is reported at 551 U.S. 308 (2007).

While at Cardozo, Mr. Kammerman was named an Alexander Fellow, through which he worked as a judicial intern in the chambers of the Honorable Joseph A. Greenaway, Jr., United States District Judge in Newark, New Jersey. Mr. Kammerman is a member of the bars of the States of New York and New Jersey and is admitted to practice before the United States Courts of Appeals for the Third and Eleventh Circuits and the United States District Courts for the District of New Jersey, Southern and Eastern Districts of New York, and Eastern District of Michigan.

**DAVID AZAR** received his B.S. in Finance from Indiana University School of Business in 1991. He graduated from Duke University School of Law, *magna cum laude*, in 1999, where he was a member of the Order of the Coif (top 10% of the class). While in law school, he served as a senior editor of *Law and Contemporary Problems*, and was a member of the Moot Court Board. After law school, he clerked for Chief Justice Veasey of the Delaware Supreme Court.

Mr. Azar focuses his practice on antitrust, corporate governance, securities fraud class actions, and selected general business litigation matters. Mr. Azar has significant litigation experience, including first-chair trial and appellate work. He is also a contributing author of the forthcoming *Antitrust Law Developments* (7th Edition), scheduled for publication by the ABA Section of Antitrust Law in April 2012.

Mr. Azar's current representative matters include: serving as co-lead counsel in multi-district litigation against Korean Air and Asiana Airlines for allegedly conspiring for more than six years to set prices for passenger airfares between the United States and Korea; serving as co-lead counsel in a class action against Wells Fargo Bank and Bank of New York Mellon for their alleged roles, as trustees, in causing more than $1 billion in losses by investors in Medical Capital Holdings, Inc.; serving as co-lead counsel in a shareholder class action against the board of directors of International Rectifier Corporation for allegedly breaching their fiduciary duties by, among other things, blocking shareholders from accepting a premium tender offer for their shares; and representing a financial institution seeking to recover for breaches of contract and mortgage fraud against various individuals and entities.

Mr. Azar serves as a volunteer prosecutor through the Los Angeles Bar Association's Trial Advocacy Project, and he has been named by *Los Angeles Magazine* as a Southern California Super Lawyers Rising Star. He serves on the pro bono panel of the Harriett Buhai Center for Family Law, and he was awarded a Distinguished Service Award in 2009 for his continuing representation of a disabled father in a complex family law matter. Mr. Azar's pro bono work has also included: prevailing at trial in a case on behalf of a learning disabled student asserting claims under the American with Disabilities Act; successfully persuading the Ninth Circuit Court of Appeals to allow a disabled prisoner's federal civil rights case to proceed, resulting in a published decision on a matter of first impression; and assisting tenants in disputes with their landlords.

Mr. Azar has extensive knowledge of dispute resolution, having served as a mediator in more than 160 cases, and he has trained and reviewed other mediators. He served for five years as the editor of the quarterly publication of the Society of Professionals in Dispute Resolution, and was honored with the association's Presidential Recognition award.

**PEGGY J. WEDGWORTH** received a B.A. degree, in 1982 from Auburn University, and her J.D. degree from University of Alabama Law School in 1986. Ms. Wedgworth was an Assistant District Attorney in Brooklyn, New York from 1986 to 1989. Since leaving the public sector in 1989, she has handled various securities, commodities, and antitrust matters. She has litigated antitrust and commodities class actions on behalf of plaintiffs including extensive experience in all aspects of pre-trial and discovery in, among other cases, *In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94-0897, 1996 WL 351180 (N.D. Ill. June 24, 1996) (approving $351 million settlement); *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465 (S.D.N.Y. 1998) ($1,027,000,000 settlement); *In re Microsoft Corp. Litigation*, MDL 1332 (D. Md.) (consolidated class actions alleging long term unlawful maintenance of a monopoly and other anticompetitive conduct by Microsoft resulting favorable partial settlements); *In re Soybean Futures Litigation*, No. 89-7009 (N.D. Ill.) ($21,500,000 class settlement providing claiming class members/soybean futures traders a full recovery under plaintiffs' expert's formula); *In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ("The recovery is the largest class action recovery in the 75 plus year history of the Commodity Exchange Act."); *Kohen v. Pacific Investment Management Company, LLC*, No. 05-4681 (N.D. Ill.) (certified class of treasury bond futures purchasers alleging manipulation of the futures market); *Leider v. Ralfe*, No. 01-3137 (D.N.J.) (alleging price-fixing and monopolization in the diamond market by DeBeers resulting in a settlement of $250,000,000 and extensive injunctive relief), and *In re Natural Gas Commodities Litigation*, 03-6186 (S.D.N.Y.) ($101 million settlement). While a partner at her previous firm, she was involved in numerous antitrust cases including, *Air Cargo Shipping Services Antitrust Litigation*, *In re Digital Music Antitrust Litigation*, *In Re Chocolate Confectionary Antitrust Litigation*,

*In re Aftermarket Filters Antitrust Litigation*, *In Re Rambus Antitrust Litigation*, and *In re Flash Memory Antitrust Litigation*. Ms. Wedgworth speaks on topics relating to antitrust litigation, most recently speaking to the New York State Bar, Antitrust Division in January 2008. She also has extensive experience in securities litigation including most recently *In re Initial Public Offering Securities Litigation*, which recently settled for $586 million.

While in law school, Ms. Wedgworth was a member of the Moot Court Board and served as Manager of the National Moot Court Team.

**ROLAND RIGGS** focuses his practice on representing whistleblowers under the False Claims Act and the Dodd-Frank Act. He has represented whistleblowers in a number of industries, including the health care, banking, pharmaceutical, finance, construction, and defense industries. Mr. Riggs also represents defrauded investors and consumers. Among other cases, he currently represents investors in *In re Merck & Co. Securities Litigation*, and *In re Oppenheimer Rochester Funds Group Securities Litigation,* and consumers in *The NVIDIA GPU Litigation*. Prior to joining Milberg LLP, Mr. Riggs worked at a boutique firm in New York practicing securities litigation. During law school, Mr. Riggs served as a clerk for one summer for the Honorable Alfred V. Covello of the United States District Court for the District of Connecticut. He later worked at McLaughlin & McCaffrey, LLP in Cleveland, Ohio in the areas of commercial litigation and white collar criminal defense, and did pro bono corporate work representing charities at the Milton A. Kramer Law Clinic.

**HENRY KELSTON** received a B.S. degree, *cum laude*, from Tufts University in 1975, and a J.D. degree from New York University School of Law in 1978, where he was a member of the *Annual Survey of American Law*.

Mr. Kelston's practice is concentrated in the areas of complex litigation and electronic discovery. He has extensive experience in state and federal court litigation, administrative proceedings, and arbitrations. Mr. Kelston is a regular speaker and CLE presenter on electronic discovery. He is a member of The Sedona Conference® Working Group 1 on Electronic Document Retention and Production. Prior to joining Milberg, he practiced

at Proskauer Rose in New York and Siegel, O'Connor & Kainen in Connecticut.

Mr. Kelston is admitted in the United States District Courts for the Southern and Eastern Districts of New York and the District of Connecticut.

## *Of Counsel*

**MICHAEL C. SPENCER** graduated from Yale University in 1973 with a B.A. degree, *magna cum laude*, with distinction, in philosophy. While at Yale, he was elected to Phi Beta Kappa. Mr. Spencer received a J.D. degree from Harvard Law School, *cum laude*, in 1976.

Mr. Spencer has prosecuted a broad range of cases at Milberg LLP, with an emphasis on representing plaintiffs in class and other representative actions involving complex financial issues.

He was one of the principal trial counsel for plaintiffs in *In re Vivendi Universal, S.A. Securities Litigation* (S.D.N.Y.), a securities fraud class action in which the jury returned a verdict for the plaintiffs in January 2010. He is presently handling post-trial motions and defendant's anticipated appeal. The case is notable for the size of the verdict and for inclusion of investors from France, England, and the Netherlands, as well as the United States, in the certified class.

Mr. Spencer has handled many other securities cases at the Firm, including those against defendants in the fields of technology, real estate, finance, leasing, manufacturing, and pharmaceuticals. His first exposure to this type of case was in the precedent-setting "*WPPSS*" litigation in the late 1980s, which involved bond defaults on nuclear power plants in the Pacific Northwest and established the blueprint for prosecuting many complex securities class actions that followed.

Mr. Spencer has also led the Firm's prosecution of other cases in diverse fields. He was one of two principal trial counsel representing the FDIC in its year-long trial against a major accounting firm involving failed-bank audits, which led to a global settlement covering all government claims just before closing arguments to the jury. He has prosecuted consumer and securities claims against companies that sold deferred annuities unsuitable for retirement plan investors. He has taken appraisal and breach of fiduciary duty cases to trial in Delaware and Pennsylvania. He had extensive involvement in representing a coalition of union health care funds seeking to recover costs for treating smoking-related illnesses from the tobacco industry, pursuing the cases through several appeals. He has also represented plaintiffs in cases involving accounting malpractice, limited partnership investments, real estate closing fees and mortgage insurance, contract disputes, defamation, unlawful lotteries, and consumer deception.

Mr. Spencer began his legal career as a law clerk to U.S. District Judge Wm. Matthew Byrne Jr. in Los Angeles (1976-77). He then returned to New York and joined Cravath, Swaine & Moore as an associate, where he worked until 1986, when he joined Milberg as an associate and became a partner later that year.

## *Senior Counsel*

**JENNIFER S. CZEISLER** graduated from Hofstra University in 1994 with a B.A. degree in psychology. After completing graduate degree work at Hunter School of Social Work (1994-95), she pursued a J.D. degree, which she earned in 1999 from the University of Miami School of Law, where she graduated *cum laude*. Ms. Czeisler was on the editorial board of the *Law Review of Psychology, Public Policy & Law* and earned numerous awards, including the CALI excellence for the Future Award, Dean's Certificate of Achievement Award, and membership in the Phi Delta Phi National Honor Society.

Ms. Czeisler is admitted to practice in the State of New York and is a member of the American Bar Association, where she is committed to her *pro bono* work with the American Bar Association Commission on Legal Problems of the Elderly.

**JONATHAN LEVY** has over 15 years of experience as a corporate and transactional attorney. He received his J.D. from Michigan State University School of Law in 1992, cum laude, and his M.B.A. from Columbia University in 1999.

Mr. Levy focuses on corporate transactional matters, including mergers and acquisitions, divestitures, minority equity investments, corporate reorganizations and strategic transactions. Mr. Levy advises on whether such transactional activities comply with international, federal and state securities and takeover laws. He also advises on domestic and international legal and regulatory matters, including merger law, antitrust, foreign investment, and strategic transactions. Prior to joining Milberg, Mr. Levy was the General Counsel for a large global conglomerate and a Managing Counsel for a large global financial institution.

Mr. Levy is admitted to the state bars of New Jersey and New York, and is admitted to practice in the United States District Court for the Southern District of New York and the District of New Jersey

**ELIZABETH MCKENNA** focuses her practice primarily on antitrust litigation as well as on securities class action litigation on behalf of defrauded individuals and institutional investors. Prior to joining Milberg, Ms. McKenna was an associate in the New York office of Healy & Baillie, LLP (now part of Blank Rome LLP), where she practiced general commercial litigation. Ms. McKenna graduated from Fordham Law School in 1998. While at Fordham, she was a Stein Scholar in Public Interest Law & Ethics, a member of the *Fordham Environmental Law Journal*, and a Co-Director of the Fordham Student Sponsored Fellowship. Ms. McKenna is admitted to practice in the state courts of New York and in the United States District Courts for the Southern and Eastern Districts of New York.

**CHARLES SLIDDERS** received his L.L.B. from Melbourne University in 1994, with honors, and his L.L.M. from Monash University in 2002. Mr. Slidders is an experienced commercial litigator with almost fifteen years of litigation experience. Prior to joining Milberg in 2008, Mr. Slidders was the principal and founding partner of one of Melbourne, Australia's premier boutique commercial litigation firms. He has frequently appeared in Australia's mainstream media in relation to his legal work.

Mr. Slidders has significant experience in plaintiffs' and class action litigation. He has acted in a variety of matters involving Australia's antitrust (trade practices) laws, corporations law, and general business and property law.

Mr. Slidders has been influential in shaping the law in Australia. He precipitated the retrospective amendment of Victoria's domestic building laws after finding a loophole in the legislation that he successfully litigated before the Supreme Court of Victoria. He also initiated one of Australia's largest multiparty claims alleging breach of fiduciary duties by property developers.

Mr. Slidders' firm was preferred counsel for Victoria's farming community through the Victorian Farmers Federation - the body representing more than 20,000 Victorian farmers. He has acted in agribusiness matters involving trade practices issues against multinational grain trade companies (disputes involving hundreds of millions of dollars of derivative contracts on the CBOT). He has also advised shareholders in a derivative dispute with the management of one of Australia's leading egg wholesalers.

Mr. Slidders is admitted to the bar of New York and is admitted to practice law in Victoria, Australia.

**JENNIFER J. SOSA** focuses her practice on class actions and complex commercial litigation, including ERISA, securities, consumer and antitrust cases. Among other matters, she has recently been involved in litigating *In re BP ERISA Litigation*, *In re Target Corporation Customer Data Security Breach Litigation* and *In re Oppenheimer Rochester Funds Group Securities Litigation*. She is also a member of the American Bar Association's Section of Litigation Class Action and Derivative Suits Committee.

Ms. Sosa is a member of the Firm's E-Discovery Practice Group and specializes in managing complex e-discovery issues. She is a member of The Sedona Conference® Working Group 1 on Document Retention and Production. Ms. Sosa also serves as the Co-Editor in Chief of the American Bar Association's Technology for the Litigator Newsletter.

In 2011, Ms. Sosa was selected as one of 50 women worldwide to participate in the pilot W50 program at UCLA's Anderson School of Management. W50 identifies future female business leaders and provides training in corporate

governance, business strategy and leadership. During law school at Temple University, Ms. Sosa was a Beasley Scholar, a member of the Environmental Moot Court Team, and was awarded the David Sive Award for Best Brief overall in the 2004 Pace National Environmental Law Moot Court Competition. Prior to law school, Ms. Sosa was a La Comunidad Latina en Accion Scholar at Northeastern University, where she earned her degree, *cum laude*, in Chemical Engineering. She also worked as a Chemical Engineer for a wide range of technology companies in the greater Boston area.

Ms. Sosa is a member of the New York and New Jersey state bars and is admitted to practice law in the Eastern and Southern Districts of New York and the District of New Jersey. Ms. Sosa is also a member of the Federal Bar Council and the AIChE, Metro NY Section.

*Associates*

**CAREY ALEXANDER** focuses his practice on complex consumer litigation and class actions.

Mr. Alexander received his B.A. from Skidmore College in 2004, and graduated *magna cum laude* from the St. John's University School of Law in 2012. During law school, Mr. Alexander served as Associate Managing Editor of the *St. John's Law Review*. His student note, *Abusive: Dodd–Frank Section 1031 and the Continuing Struggle to Protect Consumers*, 85 ST. JOHN'S L. REV. 1105 (2012), has been cited in several legal journals, including the *Harvard Law Review*.

Prior to law school, Mr. Alexander served as an editor of the consumer-advocacy blog, *Consumerist.com*. He also served as an advisor to the Bronx Borough President and worked as part of the National Campaign to Restore Civil Rights.

Mr. Alexander is a member of the New York City Bar Association, the New York State Bar Association, and the American Bar Association. He is admitted to practice in the State of New York.

**ANGELA G. BONGIORNO** received her J.D. from Catholic University of Milan Law School in 2004 and her L.L.M. from Fordham University School of Law in 2008.

Ms. Bongiorno focuses her practice on mass torts, antitrust litigation, and institutional investor and client outreach. Prior to joining Milberg, she worked for an Italian law firm specializing in consumer law. Ms. Bongiorno also has conducted various research projects concerning the implementation of European Union regulations in Member States for the Italian Embassy of Malta and for Fondazione Rosselli, a think tank for Italian and European governmental bodies.

While in law school, Ms. Bongiorno interned with the Italian Embassy of Malta during Malta's accession to the European Union. She is fluent in Italian and conversant in Spanish.

Ms. Bongiorno is admitted to practice in the courts of the State of New York.

**MELISSA R. CLARK** focuses her practice on securities class actions and shareholder derivative and privacy litigation.

Prior to joining Milberg, Ms. Clark was an associate at a boutique firm in New York, where she was part of a securities litigation team that recovered several multimillion-dollar settlements on behalf of investors.

Her legal work experience also includes judicial externships with the Honorable Jerry Brown, Chief Judge of the United States Bankruptcy Court, Eastern District of Louisiana and the Honorable Jay C. Zainey of the United States District Court, Eastern District of Louisiana. In addition, Ms. Clark clerked for the San Francisco District Attorney's Office.

While at Tulane Law, Ms. Clark was a Senior Justice and Chairperson for the Moot Court Board and a Legal Research & Writing Senior Fellow. Ms. Clark also studied for one semester at UC Berkeley - Boalt Hall, where she received high honors in Securities & Class Action Litigation and was a visiting member of the *California Law Review*.

Ms. Clark is admitted to practice in the state of New York, as well as the United States District Courts for the Southern and Eastern Districts of New York. She is an active member of the New York City Bar Association, the Federal Bar Council, and the New York State Bar Association, where she serves on the Law, Youth & Citizenship Committee and Mock Trial subcommittee. Ms. Clark was recently recognized as a New York Super Lawyers "Rising Star."

**ALASTAIR FINDEIS** has extensive litigation experience, including representing accused infringers and healthcare purchasing entities in pharmaceutical patent and antitrust cases. He also has extensive experience representing whistleblowers in actions under the False Claims Act, including a significant role in the firm's *Mason v. Medline* case, which returned $85 million to the federal Treasury, including a $23.375 million (27.5%) share to the whistleblower.

Mr. Findeis leads Milberg's team in the representation of New York's Nassau County in *In re Pharmaceutical Industry Average Wholesale Price Litigation*, and is part of the team representing a class of end-purchasers in *In re Androgel Antitrust Litigation (II)*, currently on appeal in the U.S. Court of Appeals for the Eleventh Circuit. He has substantial courtroom experience in all phases of litigation and has

successfully argued case-dispositive motions in state and federal courts, including sharing an oral argument with Professor Arthur Miller.

Mr. Findeis graduated from the Georgetown University Law Center in 2003 and has a BS in Biology (with Honors) from the Virginia Military Institute and an MS in Microbiology from the University of Virginia. After graduating from VMI, Mr. Findeis joined Britain's Royal Navy as a Sub-Lieutenant, graduating from the Britannia Royal Naval College and serving on *HMS London*.

Prior to joining Milberg, Mr. Findeis gained extensive experience in patent and other pharmaceutical litigation at Kenyon & Kenyon LLP and Cooley LLP.

Mr. Findeis is admitted to the bars of New York, the District of Columbia, California and Michigan.

**DIANA GJONAJ** focuses her practice primarily on antitrust litigation, targeting illegal and anti-competitive practices on behalf of consumers and investors. She received her Bachelor Degree, *cum laude*, from the University of Michigan and her Juris Doctor from Wayne State University Law School. During law school, Ms. Gjonaj clerked for Milberg LLP in the Firm's Detroit office.

Ms. Gjonaj is admitted to practice in the state courts of Michigan, the United States District Court for the Eastern District of Michigan and the United States Court of Appeals for the Sixth Circuit. She is a member of the American Bar Association, Women's Lawyer Association of Michigan, and Michigan Association for Justice.

**MEAGAN M. KEENAN** focuses her practice on complex consumer litigation and class actions.

Prior to joining Milberg, Ms. Keenan was a fellow at a private legal services office, where she defended low-income consumers in various credit disputes, tax disputes and debt collection litigation, as well as represented clients in affirmative actions under the Fair Debt Collection Practices Act, Truth in Lending Act, Fair Credit Reporting Act, and other federal and state consumer protection statutes.

Ms. Keenan graduated magna cum laude from Union College in Schenectady, NY, with a B.A. in Political Science in 2009. In 2012, she earned her

J.D. from Fordham University School of Law, where she was an Equal Justice Works Fellow for the Legal Aid Society of New York, a member of the Fordham Journal of Corporate & Financial Law, and co-chair of the Regional Board of Directors for the Unemployment Action Center. Ms. Keenan is admitted to practice in the State of New York.

**JOSHUA KELLER** focuses his practice on securities and consumer fraud litigation, as well as derivative actions, litigating class actions in both federal and state courts.

Mr. Keller was part of teams that successfully represented investors in *In re Biovail Corp. Securities Litigation* (S.D.N.Y.) (settling for $138 million and certain corporate governance modifications) and in *In re Sears, Roebuck & Co. Securities Litigation* (N.D. Ill.) (settling for $215 million). Additionally, Mr. Keller was part of teams that successfully represented consumers in recent settlements in *In re Reebok EasyTone Litigation* (D. Mass.) ($28.5 million settlement) and *In re Skechers Toning Shoes Product Liability Litigation* (Grabowski) (W.D. Ky.) ($45 million settlement), class actions alleging material misrepresentations relating to the purported benefits of toning shoes.

Mr. Keller's practice also involves bankruptcy, as he represents numerous victims of the Bernard L. Madoff Ponzi scheme in connection with the Securities Investor Protection Act liquidation proceeding pending in the bankruptcy court for the Southern District of New York.

Mr. Keller has also provided pro bono legal assistance, providing successful representation of a family in connection with an adoption proceeding in family court.

Mr. Keller graduated from the University of North Carolina in 1998 and from Albany Law School of Union University in 2004.

Mr. Keller is admitted to practice in the courts of the States of New York and Colorado.

**ROLANDO G. MARQUEZ** returns to Milberg as a member of its False Claims Act practice area and continues to represent private whistleblowers in sealed and unsealed actions brought pursuant to the federal False Claims Act (*qui tam* actions) as well as the parallel false claims statutes of various states.

Mr. Marquez's representative False Claims Act matters include *Mason v. Medline* (resulting in a recovery of $85 million for the United States in a non-intervened case arising from unlawful kickbacks, bribes, and other illegal remuneration to induce health care providers to continue to purchase defendant's medical supplies, including supplies paid for with government funds tainted by the kickbacks) and *United States ex rel. Marchese v. Cell Therapeutics, Inc.* (resulting in a $10.5 million recovery for the United States in an intervened action arising from the unlawful off-label promotion of the cancer drug Trisenox).

From December 2012 to March 2014, Mr. Marquez was a Senior Litigation Counsel in a boutique New York class-action firm as a member of its False Claims Act practice group. Mr. Marquez was part of the co-counsel team that litigated one of the largest *qui tam* lawsuits ever to settle on a non-intervened basis against Omnicare, Inc., the nation's largest provider of pharmacy services to nursing home patients, and which returned $120 million to the United States Treasury to resolve kickback and false-claims allegations. In addition, Mr. Marquez represented a whistleblower in an action against a medical device manufacturer in which it sold products to the government that were made in countries not designated as trade partners of the United States in violation of the Trade Agreements Act.

Before he started in the False Claims Act arena, Mr. Marquez was part of the Milberg team that served as co-lead plaintiffs' counsel in *In re Tyco International, Ltd. Securities Litigation*, one of the largest securities fraud and accountant liability class action suits ever to settle, recovering over $3.2 billion for the company's injured shareholders.

Prior to joining Milberg initially, Mr. Marquez was an associate at a boutique New York patent firm, where he concentrated on patent litigation matters involving medical device, computer software, and consumer electronic device technologies.

Mr. Marquez received a B.S. degree from Brown University in 1994 and his M.S. degree from New York University in 1998. In 2003 he received his J.D. degree from Fordham University School of Law.

Mr. Marquez is admitted to practice in the state courts of New York as well as in the United States District Courts for the Southern and Eastern Districts of New York and the United States Patent and Trademark Office.

**BIRT REYNOLDS** represents defrauded consumers and investors in class actions. He also represents whistleblowers in False Claims Act litigation. Before joining Milberg, Mr. Reynolds clerked for a magistrate judge in the Middle District of Florida, as well as Florida appellate and trial court judges.

Mr. Reynolds graduated with a B.A. from the University of South Florida in 2000. In 2004, he earned his J.D. from Case Western Reserve University School of Law. Mr. Reynolds is admitted to practice in the state courts of Florida and New York.

**CHRISTOPHER SCHUYLER** focuses his practice on False Claims Act litigation, consumer class actions, and e-discovery.

Before joining Milberg, Mr. Schuyler clerked with the Fortune Society, a New York City non-profit organization focused on providing an alternative to incarceration for non-violent offenders. While in law school, he co-chaired a student organization promoting pro bono legal assistance to indigent members of the community, a role for which he was awarded a university scholarship for public service.

Mr. Schuyler graduated from Temple University, *cum laude,* with a B.A. degree in 2007. In 2011 he earned his J.D. degree from the University of Dayton School of Law. Mr. Schuyler is a member of the bar of the State of New York and is admitted to practice before the United States District Court for the Southern and Eastern Districts of New York.

**JOHN SEREDYNSKI** received a B.A. from Villanova University in 2003 and a J.D. from New York Law School in 2010. John Seredynski's practice focuses on class action litigation involving defrauded investors and consumers in federal and state courts. Before joining Milberg LLP, Mr. Seredynski worked at a boutique firm in New York practicing securities litigation. During law school, Mr. Seredynski was named to the Dean's List, and served as a research assistant for the Center for

New York City Law. Prior to law school, Mr. Seredynski worked on a presidential campaign, and served as Judiciary Committee Staff Intern to a member of the United States Senate.

Mr. Seredynski is admitted to practice in the courts of the State of New York, as well as the United States District Courts for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Second Circuit.

**ROY SHIMON** focuses his practice on securities and stockholder derivative litigation, litigating cases in both state and federal courts. Mr. Shimon also has experience in the areas of insider trading and ERISA litigation. In 2014, Super Lawyers recognized him as a "Rising Star" in the New York Metro area.

Mr. Shimon was part of teams that recovered substantial benefits on behalf of stockholders and employee investors in In re Popular Inc. ERISA Litigation (D.P.R.) (settlement valued at $8.2 million) and Shanehchian, et al. v. Macy's Inc. (S.D. Ohio) (settlement valued at $8.5 million).

Mr. Shimon graduated with honors from Franklin & Marshall College in 2003, where he was inducted into the Pi Sigma Alpha and Alpha Kappa Delta National Honor Societies. He received his J.D. from St. John's University School of Law in 2006, where he served on the Executive Board of the Moot Court Honor Society and as Vice President of the Entertainment & Sports Law Society.

Mr. Shimon is admitted to practice in the state and federal courts of New York.

**GREGORY STAMATOPOULOS** focuses his practice on antitrust litigation, consumer protection, and e-discovery.

Mr. Stamatopoulos graduated from Michigan State University with a B.A., *with honors,* in 2006. In 2010, he earned his J.D. degree from Wayne State University School of Law.

During law school, Mr. Stamatopoulos served as Chairperson of The Free Legal Aid Clinic in Detroit, managing a facility that specializes in providing family and elder law services to city residents. As an undergraduate, Mr. Stamatopoulos double-majored in International Relations and Russian.

Mr. Stamatopoulos is admitted to practice in the state courts of Michigan and New York.

**NATHANIEL TARNOR** is an experienced litigator. He has represented clients before the U.S. Supreme Court, various federal courts of appeals, and numerous trial courts. His practice has encompassed a wide variety of issues including antitrust, civil rights, class actions, consumer protection, contractual disputes, corporate governance, RICO, securities, and shareholder derivative litigation, among others. He has also worked in conjunction with the U.S. Department of Justice (DOJ), the Securities & Exchange Commission (SEC), and state law enforcement agencies to investigate claims under the False Claims Act and Dodd–Frank Act.

Additionally, Mr. Tarnor has extensive international litigation experience, including representing victims of international human rights abuses in lawsuits against foreign governments and entities. In this regard, he has devoted substantial amounts of pro bono time on behalf of victims and their families, and he has pursued claims under the Torture Victim Protection Act, Alien Tort Statute, Antiterrorism Act, and Foreign Sovereign Immunities Act. Mr. Tarnor's commitment to international human rights law began during law school where he was captain of his law school's international law moot court team, inducted into the International Law Moot Court Honor Society, and focused his academic studies and was awarded a certificate in international and comparative law.

Mr. Tarnor graduated with a B.A. degree, *Phi Beta Kappa,* from the University of Illinois in 2000. In 2004, he earned his J.D. degree from Chicago-Kent College of Law.

Mr. Tarnor is admitted to practice before the U.S. Supreme Court, U.S. Courts of Appeals for the Second, Seventh, and D.C. Circuits, the U.S. District Courts for the Southern and Eastern Districts of New York, the Northern and Central Districts of Illinois, the District of Columbia, and the District of Colorado. Mr. Tarnor is also admitted to practice in New York, Illinois, and Washington, D.C.

# EXHIBIT 4

# SCOTT+SCOTT,
## ATTORNEYS AT LAW, LLP



**MISSION STATEMENT**

Scott+Scott, Attorneys at Law, LLP ("Scott+Scott") is a nationally recognized law firm headquartered in Connecticut with offices in California, New York City, and Ohio. Scott+Scott represents individuals, businesses, public and private pension funds, and others who have suffered from corporate fraud and wrongdoing. Scott+Scott is directly responsible for recovering hundreds of millions of dollars and achieving substantial corporate governance reforms on behalf of its clients. Scott+Scott has significant expertise in complex antitrust, consumer, securities, ERISA, and civil rights litigation in both federal and state courts. Through its efforts, Scott+Scott promotes corporate social responsibility.

**ANTITRUST**

Scott+Scott actively litigates complex antitrust cases throughout the United States. Scott+Scott represents consumers and businesses in price-fixing, bid-rigging, monopolization, and other restraints of trade cases. In such actions, Scott+Scott works to ensure that the markets remain free, open, and competitive to the benefit of both consumers and business. Scott+Scott currently serves as lead counsel in a number of class action antitrust cases, including *Dahl v. Bain Capital Partners, LLC*, No. 1:07-cv-12388 (D. Mass.) ($590.5 million settlement pending) (challenging bid rigging and market allocation in the private equity/leveraged-buyout industry); *In Re: Foreign Exchange Benchmark Rates Antitrust Litigation*, 13-cv-7789 (S.D.N.Y.) (challenging price fixing of foreign exchange rates); and *In re Korean Air Lines Co., Ltd. Antitrust Litigation*, MDL No. 1891, No. CV 07-06542 (C.D. Cal.) (challenging price fixing/illegal surcharge).

Scott+Scott's class action antitrust experience includes serving as co-trial counsel in *In re Scrap Metal Antitrust Litigation*, 02-cv-0844-KMO (N.D. Ohio), where it helped obtain a $34.5 million jury verdict, which was subsequently affirmed by the United States Court of Appeals for the Sixth Circuit (*see In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 524 (6th Cir. 2008)), as well as *Ross v. Bank of America N.A.*, No. 05-cv-7116, MDL No. 1409 (S.D.N.Y.), and *Ross v. American Express Co.*, No. 04-cv-5723, MDL No. 1409 (S.D.N.Y.).

Additionally, Scott+Scott served on leadership executive committees in various class action cases, including *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 1:05-md-1720 (E.D.N.Y.) ($7.25 billion settlement), and currently serves on the Executive Committee in *Kleen Products LLC v. Packaging Corporation of America*, No. 1:10-cv-05711 (N.D. Ill.); and *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420-YGR (DMR) (N.D. Cal.).

In addition to antitrust class actions, Scott+Scott represents clients in opt-out antitrust litigation. Past clients include publicly traded corporations, such as Parker Hannifin Corporation and PolyOne Corporation. Representative opt-out litigation prosecuted by Scott+Scott includes *In re Rubber Chemicals Antitrust Litigation*, MDL No. 1648 (N.D. Cal.); *In re Polychloroprene Rubber (CR) Antitrust Litigation*, MDL No. 1642 (D. Conn.); *In re Plastic Additives Antitrust Litigation (No. II)*, MDL No. 1684 (E.D. Pa.); and *In re: Aluminum Warehousing Antitrust Litigation*, MDL No. 2481 (S.D.N.Y.) (representing Eastman Kodak Company, Agfa Corporation and Agfa Graphics, N.V., and Mag Instrument, Inc.).

**CONSUMER RIGHTS**

Scott+Scott regularly represents the rights of consumers throughout the United States by prosecuting class actions under federal and state laws.

Scott+Scott currently serves as lead counsel in *In re Prudential Insurance Company of America SGLI/VGLI Contract Litigation*, No. 3:11-md-02208-MAP (D. Mass.) ($40 million settlement pending) (challenging Prudential's actions relating to the issuance of life insurance contracts to the nation's military personnel and dependents); and on the Executive Committee in *In re Wellpoint "UCR" Litigation*, No. 09-ml-2074 (C.D. Cal.); and *In re: Aetna, Inc. Out of Network "UCR" Rates Litigation*, MDL No. 2020 (D.N.J.).

In *Gunther v. Capital One, N.A.*, No. 09-2966-ADS-AKT (E.D.N.Y.), Scott+Scott obtained a net settlement resulting in class members receiving 100% of their damages. Other settlements obtained by Scott+Scott include *In re Kava Kava Litigation*, Lead Case No. BC 269717 (Cal. Super. Ct., Los Angeles County); *Fischer v. MasterCard International, Inc.*, No. 600572/2003 (N.Y. Sup. Ct. and New York County); *Salkin v. MasterCard International Incorporated*, No. 002648 (Penn. Ct. Com. Pl., Philadelphia County).

**SECURITIES AND CORPORATE GOVERNANCE**

Scott+Scott represents individuals and institutional investors that have suffered from stock fraud and corporate malfeasance. Scott+Scott's philosophy is simple – directors and officers should be truthful in their dealings with the public markets and honor their duties to their shareholders. Since its inception, Scott+Scott's securities and corporate governance litigation department has developed and maintained a reputation of excellence and integrity recognized by state and federal and state courts across the country. "It is this Court's position that Scott+Scott did a superlative job in its representation, which substantially benefited Ariel . . . . For the record, it should be noted that Scott+Scott has demonstrated a remarkable grasp and handling of the extraordinarily complex matters in this case . . . . They have possessed a knowledge of the issues presented and this knowledge has always been used to the benefit of all investors." *N.Y. Univ. v. Ariel Fund Ltd.*, No. 603803/08, slip. op. at 9-10 (N.Y. Sup. Ct. Feb. 22, 2010). "The quality of representation here is demonstrated, in part, by the result achieved for the class. Further, it has been this court's experience, throughout the ongoing litigation of this matter, that counsel have conducted themselves with the utmost professionalism and respect for the court and the judicial process." *In re Priceline.com, Inc. Sec. Litig.*, No. 00-cv-01884, 2007 WL 2115592, at *5 (D. Conn. July 20, 2007).

Scott+Scott has successfully prosecuted numerous class actions under the federal securities laws, resulting in the recovery of hundreds of millions of dollars for shareholders. Representative cases prosecuted by Scott+Scott under the Securities Exchange Act of 1934 include: *In re Priceline.com, Inc. Sec. Litig.*, No. 00-cv-01884 (D. Conn. July 19, 2007) ($80 million settlement); *Irvine v. ImClone Sys., Inc.*, No. 02-cv-00109 (S.D.N.Y. July 29, 2005) ($75 million settlement); *Cornwell v. Credit Suisse Group*, No. 08-cv-03758 (S.D.N.Y. July 20, 2011) ($70 million settlement); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, No. 02-cv-2133 (D. Conn. June 13, 2008) ($26.5 million settlement); and *St. Lucie County Fire District Firefighter's Pension Trust Fund v. Oilsands Quest Inc.*, No. 11-cv-1288-JSR (S.D.N.Y. Dec. 6, 2013) ($10.23 million settlement) ($7.85 million settlement preliminarily approved). Representative cases prosecuted by Scott+Scott under the Securities Act of 1933 include: *In re Washington Mutual Mortgage-Backed Securities Litigation*, No. 09-cv-0037 (W.D. Wash. Jan. 7, 2014) ($26 million settlement); *In re Pacific Biosciences Securities Litigation,* No.CIV509210 (Cal. Super. Ct., San Mateo County, Oct. 31, 2013) ($7.68 million settlement); *West Palm Beach Police Pension Fund v. CardioNet, Inc.*, No. 37-2010-00086836-CU-SL-CTL (Cal. Super. Ct., San Diego County, 2010) ($7.25 million settlement); *Parker v. National City Corp.*, No. CV-08-657360 (Ohio Ct. Com. Pl., Cuyahoga County, June 23, 2010) ($5.25 million settlement); and *Hamel v. GT Solar International, Inc.*, No. 217-2010-CV-05004 (N.H. Super. Ct., Merrimack County, May 10, 2011) ($10.25 million settlement).

Scott+Scott currently serves as court-appointed lead counsel in various federal securities class actions, including *City of Omaha Police and Fire Retirement System v. LHC Group.*, No. 6:12-cv-01609 (W.D. La, Sept. 18, 2012); *Birmingham Retirement and Relief System, v. S.A.C. Capital Advisors*, No. 1:12-cv-09350 (S.D.N.Y. June 17, 2013); *In re NQ Mobile Securities Litigation*, No. 13-cv-07608 (S.D.N.Y. April 9, 2014); and *In re Conn's Inc. Securities Litigation*, No. 14-cv-00548 (S.D. Tex. June 3, 2014).

In addition to prosecuting federal securities class actions, Scott+Scott has a proven track record of handling corporate governance matters through its extensive experience litigating shareholder derivative actions. In addition, Scott+Scott has been singularly successful in its shareholder derivative appellate practice, and as a result, has been instrumental in fashioning the standards in this area of law. In *Westmoreland County Employee Retirement System v. Parkinson*, No. 12-3342 (7th Cir. Aug. 16, 2013), the Seventh Circuit clarified the parameters of demand futility in those instances where a majority of directors of a corporation are alleged to have breached the fiduciary duty of loyalty by consciously disregarding positive law. In *Cottrell v. Duke,* No. 12-3871 (8th Cir. Dec. 28, 2013), the Eighth Circuit, in a case of first impression, clarified that the *Colorado River* stay is virtually never appropriate where there are exclusive federal claims. And in *King v. Verifone Holdings, Inc.*, No. 330, 2010 (Del. Jan. 28, 2011), the Supreme Court of Delaware has clarified the availability of the Delaware Corporate Code Section 220 "books and records" demands to a shareholder whose original plenary action was dismissed without prejudice in a federal district court. Representative actions prosecuted by Scott+Scott include: *In re Marvell Tech. Group Ltd. Derivative Litigation*, No. C-06-03894-RMW (RS) (N.D. Cal. Aug. 11, 2009) ($54.9 million and corporate governance reforms); *In re Qwest Communications International, Inc.*, No. Civ. 01-RB-1451 (D. Colo. June 15, 2004) ($25 million and corporate governance reform); *Plymouth County Contributory Retirement Fund v. Hassan*, No. 08-cv-1022

3

(D.N.J.) (settlement of derivative claims against Merck Schering Plough and its officers and directors providing for corporate governance reforms valued between $50 million and $75 million); *Carfagno v. Schnitzer*, No. 08-cv-912-SAS (S.D.N.Y. May 18, 2009) (modification of terms of preferred securities issued to insiders valued at $8 million); and *Garcia v. Carrion*, No. 3:09-cv-01507 (D.P.R. Sept. 12, 2011) (settlement of derivative claims against the company and its officers and directors providing for corporate governance reforms valued between $10.05 million and $15.49 million).

Currently, Scott+Scott is actively prosecuting shareholder derivative actions, including *In re DaVita Healthcare Partners Derivative Litigation*, No. 13-cv-1308 (D. Colo.); *Marvin H. Maurras Revocable Trust v. Bronfman*, No. 12-cv-3395 (N.D. Ill.); *In re Lender Processing Services, Inc., Shareholder Litig.*, No. 16-2011-CA-000925-XXXX-MA (Circuit Court of the Forth Judicial Circuit, Duval County, Florida); and *North Miami Beach General Employees Retirement Fund v. Parkinson*, No. 10C6514 (N.D. Ill.).

**EMPLOYEE BENEFITS (ERISA)**

Scott+Scott litigates complex class actions across the United States on behalf of corporate employees alleging violations of the federal Employee Retirement Income Security Act. ERISA was enacted by Congress to prevent employers from exercising improper control over retirement plan assets and requires that pension and 401(k) plan trustees, including employer corporations, owe the highest fiduciary duties to retirement plans and their participants as to their retirement funds. Scott+Scott is committed to continuing its leadership in ERISA and related employee-retirement litigation, as well as to those employees who entrust their employers with hard-earned retirement savings. Representative recoveries by Scott+Scott include: *In re Royal Dutch/Shell Transport ERISA Litigation*, No. 2:04-cv-01398-JWB-SDW (D.N.J. Aug. 30, 2005) ($90 million settlement); *In re General Motors ERISA Litigation*, No. 2:05-cv-71085-NGE-RSW (E.D. Mich. June 5, 2008) ($37.5 million settlement); and *Rantala v. ConAgra Foods*, No. 8:05-cv-00349-LES-TDT (D. Neb.) ($4 million settlement).

**CIVIL RIGHTS LITIGATION**

Scott+Scott has also successfully litigated cases to enforce its clients' civil rights. In *The Vulcan Society, Inc. v. The City of New York*, No. 1:07-cv-02067-NGG-RLM (E.D.N.Y.), Scott+Scott was part of a team of lawyers representing a class of black applicants who were denied or delayed employment as New York City firefighters due to decades of racial discriminatory conduct. The district court certified the class in a post-*Walmart v. Dukes* decision, granted summary judgment against the City on both intentional discrimination and disparate impact claims, and after trial ordered broad injunctive relief, including a new examination, revision of the application procedure, and continued monitoring by a court-appointed monitor for at least 10 years. The back pay and compensatory damage award will be determined in a subsequent ruling. In *Hohider v. United Parcel Services, Inc.*, No. 2:04-cv-00363-JFC (W.D. Penn.), Scott+Scott obtained significant structural changes to UPS's Americans with Disabilities Act compliance policies and monetary awards for some individual employees in settlement of a ground-breaking case seeking nationwide class certification of UPS employees who were barred from reemployment after suffering injuries on the job.

## ATTORNEY BACKGROUND AND EXPERIENCE

**MELVIN SCOTT** is a graduate of the University of Connecticut (B.A. 1950) and the University of Kentucky (M.A. 1953; LL.B. 1957). Mr. Scott founded the firm in 1975. He formerly practiced in Kentucky and is presently admitted to practice in Connecticut and Pennsylvania. Mr. Scott was a member of the Kentucky Law Review, where he submitted several articles for publication. He has served as an Attorney Trial Referee since the inception of the program in the State of Connecticut and is a member of the Fee Dispute Committee for New London County. Mr. Scott also formerly served as a Special Public Defender in criminal cases and as a member of the New London County Grievance Committee. Mr. Scott actively represents aggrieved parties in securities, commercial and criminal litigation and served or serves as counsel in *Irvine, et al. v. ImClone Systems, Inc.*; *Schnall v. Annuity and Life Re (Holdings) Ltd.*; *In re 360networks Class Action Securities Litigation*; *In re General Motors ERISA Litigation*, and *Hohider v. UPS*, among others.

**DAVID R. SCOTT** is the managing partner of Scott+Scott. Mr. Scott is a graduate of St. Lawrence University (B.A., *cum laude*, 1986), Temple University School of Law (J.D., Moot Court Board, 1989), and New York University School of Law (LL.M. in taxation). He concentrates in commercial and class action trial work. Mr. Scott's trial work involves antitrust, intellectual property, commercial, and complex securities litigation. Mr. Scott's antitrust litigation experience includes matters dealing with illegal tying, price-fixing, and monopolization actions. Mr. Scott was elected to *Who's Who Legal*: Competition 2015. Each year, *Who's Who Legal* lists the world's top antitrust lawyers, who are selected based on comprehensive, independent survey work with both general counsel and lawyers in private practice around the world. Mr. Scott has taken the lead in bringing claims on behalf of institutional investors, such as public employee retirement funds, against mortgaged-backed securities trustees for failing to protect investors. Such cases include *Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago v. The Bank of New York Mellon* (MBS sponsored by Countrywide Financial Corp.), No. 1:11-cv-05459 (S.D.N.Y.); *Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of America* (MBS sponsored by Washington Mutual Bank), No. 1:12-cv-02865 (S.D.N.Y.); and *Oklahoma Police Pension and Retirement System v. U.S. Bank National Association* (MBS sponsored by Bear Stearns), No. 1:11-cv-08066 (S.D.N.Y.). He also represented a consortium of regional banks in litigation relating to toxic auction rate securities ("ARS") and obtained a sizable recovery for the banks in a confidential settlement. This case represents one of the few ARS cases in the country to be successfully resolved in favor of the plaintiffs.

Mr. Scott has served as lead counsel in numerous antitrust, employee retirement, and securities class action lawsuits. For his outstanding work in litigation, Mr. Scott has received a highly recommended ranking by *Benchmark Litigation* for each of the years 2013-2015. Notably, Mr. Scott is serving or has served as co-lead counsel in *Dahl v Bain Capital Partners*, No. 1:07-cv-12388 (D. Mass.) (a case challenging collusion in the private equity/LBO industry); *In re Priceline.com Securities Litigation*, No. 3:00-cv-01884 (D. Conn.) ($80 million settlement); *Alaska Electrical Pension Fund v. Pharmacia Corp.*, No. 03-1519 (D.N.J.) ($164 million settlement); *Thurber v. Mattel, Inc.*, No. CV-99-10368 (C.D. Cal.) ($122 million settlement); *In re Royal Dutch/Shell Transport ERISA Litigation*, No. 04-1398 (D.N.J.) ($90 million settlement,

5

one of the largest ERISA settlements on behalf of plan participants); *Irvine v. ImClone Systems, Inc.*, No. 02-cv-0109 (S.D.N.Y.) ($75 million settlement); *Cornwell v. Credit Suisse Group*, No. 08-cv-03758 (S.D.N.Y.) ($70 million settlement); *In re Northwestern Corporation Securities Litigation*, No. 03-cv-4049 (D.S.D.) ($61 million settlement); *In re Sprint Corporation Securities Litigation*, No. 01-4080 (D. Kan.) ($50 million settlement); *In re General Motors ERISA Litigation*, No. 05-71085 (E.D. Mich.) (significant enhancements to retirement plan administration in addition to a $37.5 million settlement for plan participants); *In re Emulex Corp. Securities Litigation*, No. SACV-01-219 (C.D. Cal.) ($39 million settlement); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, No. 02cv2133 (D. Conn.) ($27 million settlement); and *In re Washington Mutual Mortgage Backed Securities Litigation*, No. 09-cv-0037 (W.D. Wash.) ($26 million settlement).

In addition to prosecuting federal securities class actions, Mr. Scott has extensive experience litigating shareholder derivative cases, achieving substantial corporate governance reforms on behalf of his clients. Representative actions include: *In re Marvell Tech. Group Ltd. Derivative Litigation*, No. C-06-03894 (N.D. Cal.) (settlement obtaining $54.9 million in financial benefits for the company, including $14.6 million in cash, and corporate governance reforms to improve stock option granting procedures and internal controls, valued at more than $150 million); *In re Qwest Communications International, Inc.*, No. 01-RB-1451 (D. Colo.) (settlement obtaining $25 million for the company and achieving corporate governance reforms aimed at ensuring board independence); *Plymouth County Contributory Retirement System v. Hasan*, No. 08-1022 (D.N.J.) (settlement requiring annual reporting to the company's board where any clinical drug trial is delayed, valued at between $50-$75 million); *Carfagno v. Schnitzer*, No. 08-cv-0912 (S.D.N.Y.) (settlement resulting in modification of terms of preferred securities issued to insiders, valued at $8 million); and *Garcia v. Carrion*, No. 09-cv-1507 (D.P.R.) (settlement achieving reforms aimed at rectifying internal control weaknesses and improving director education in accounting and ethics, valued at between $10-$15 million).

Mr. Scott is also regularly invited to speak at institutional investor educational conferences around the world and before Boards of Directors and trustees responsible for managing institutional investments. He educates institutional investors and governmental entities on the importance of fulfilling fiduciary obligations through the adoption of appropriate lost-asset recovery services, as well as through the development and enforcement of corporate governance initiatives.

Mr. Scott is admitted to practice in Connecticut, New York, the United States Tax Court, and numerous United States District Courts.

**CHRISTOPHER M. BURKE** is a graduate of The Ohio State University (B.A. 1984), William & Mary (M.A. 1988), and the University of Wisconsin (M.A. 1989; J.D. 1993; Ph.D. 1996). Mr. Burke's principal practice is in complex antitrust litigation, particularly in the financial services industry. He has headed Scott+Scott's competition practice since 2008, and is a partner in the firm's San Diego and New York offices. His practice covers the U.S., the People's Republic of China, and the European Union.

Currently, Mr. Burke is lead counsel in *In Re: Foreign Exchange Benchmark Rates Antitrust Litigation*, 13-cv-7789 (S.D.N.Y.); *Dahl v. Bain Capital Partners*, 07-cv-12388 (D. Mass.) ($590.5 million settlement pending); and *In re Wellpoint "UCR" Litigation*, No. 09-ml-2074 (C.D. Cal.). Mr. Burke serves on the Executive Committee in *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420-YGR (DMR) (N.D. Cal.), and *In re: Aetna, Inc. Out of Network "UCR" Rates Litigation*, MDL No. 2020 (D.N.J.).

Mr. Burke served as co-lead counsel in *In re Currency Conversion Antitrust Litigation*, MDL No. 1409 (S.D.N.Y.) ($336 million settlement); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.) ($7.25 billion settlement); *LiPuma v. American Express Co.*, Case No. 1:04-cv-20314 (S.D. Fla.) ($90 million settlement); was one of the trial counsel in *Schwartz v. Visa*, Case No. 822505-4 (Alameda Cty. Super. Ct.) ($800 million plaintiff verdict); and *In re Prudential Ins. Co. of America SGLI/VGLI Contract Litigation*, No. 11-md-2208 (D. Mass.) ($40 million settlement pending). Mr. Burke was one of the original lawyers in the *Wholesale Elec. Antitrust* cases in California, having drafted the complaint on Thanksgiving of 2000, which settled for over $1 billion.

Further, Mr. Burke was appointed class counsel in *Ross v. Bank of America N.A.*, No. 05-cv-7116, MDL No. 1409 (S.D.N.Y.) and *Ross v. American Express Co.*, No. 04-cv-5723, MDL No. 1409 (S.D.N.Y), and was one of the principal attorneys trying those matters, and was co-lead counsel for indirect purchasers in *In re Korean Air Lines Co., Ltd. Antitrust Litigation*, MDL No. 07-01891 (C.D. Cal.) ($86 million settlement). Mr. Burke also organized, developed, and filed the first case in the *In re Credit Default Swap Antitrust Litigation*, 13-md-2476 (S.D.N.Y.), matters and continues to advise class counsel.

Mr. Burke is recognized in the 2013-14 and 2014-15 editions of Super Lawyers, and received the Outstanding Antitrust Litigation Achievement in Private Law Practice Honorable Mention from the American Antitrust Institute in 2014. Mr. Burke frequently lectures at professional conferences and CLEs on competition matters such as class barring arbitration clauses, the effect of *Twombly* on 12(b)(6) motions, and litigation surrounding financial benchmarks.

Mr. Burke has also served as an Assistant Attorney General at the Wisconsin Department of Justice and has lectured on law-related topics, including constitutional law, law and politics, and civil rights at the State University of New York at Buffalo and at the University of Wisconsin. Mr. Burke's book, *The Appearance of Equality: The Supreme Court and Racial Gerrymandering* (Greenwood, 1999), examines conflicts over voting rights and political representation within the competing rhetoric of communitarian and liberal strategies of justification.

Mr. Burke is admitted to practice by the Supreme Courts of the States of California, New York, and Wisconsin, and numerous United States District Courts and Courts of Appeal.

**WALTER W. NOSS** serves as the managing partner for Scott+Scott's San Diego office. He practices complex federal litigation with an emphasis on prosecuting antitrust actions on both a class-wide and individual, opt-out basis.

Mr. Noss represents class plaintiffs in *Dahl v. Bain Capital Partners LLC*, No. 1:07-cv-12388 (D. Mass.), a case challenging collusion among private equity firms. In *Dahl*, Mr. Noss served as one of the primary litigation counsel prosecuting the case, including deposing key managing directors, drafting dispositive motions, and arguing in court in opposition to defendants' summary judgment motions. The defendants in *Dahl* settled for $590.5 million, pending final approval.

He represented the indirect purchaser class plaintiffs in *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company*, No. 2:12-cv-03824 (E.D. Pa.), a case challenging monopolistic conduct known as "product hopping" by the defendants. In *Mylan*, Mr. Noss was appointed sole lead counsel for the indirect class, and directed their prosecution and eventual settlement of the case for $8 million.

Currently, Mr. Noss represents class plaintiffs in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 1:13-cv-07789 (S.D.N.Y.), an action challenging collusion regarding foreign exchange rates, and *Alaska Electrical Pension Fund v. Bank of America Corporation*, No. 1:14-cv-07126 (S.D.N.Y.), an action challenging collusion regarding the setting of the ISDAfix benchmark interest rate.

Mr. Noss also represents corporate opt-out clients in *In re: Aluminum Warehousing Antitrust Litigation*, MDL No. 2481 (S.D.N.Y.), a case challenging collusion regarding the spot metal price of physically-delivered aluminum. He has previously represented out-out clients in *In re Rubber Chemicals Antitrust Litigation*, MDL No. 1648 (N.D. Cal.); *In re Polychloroprene Rubber (CR) Antitrust Litigation*, MDL No. 1642 (D. Conn.); and *In re Plastics Additives (No. II) Antitrust Litigation*, MDL No. 1684 (E.D. Pa.), which were cases involving price-fixing by horizontal competitors in the synthetic rubber industry.

Mr. Noss has experience successfully litigating in federal civil jury trials. In April 2011, Mr. Noss served as lead trial counsel in *Novak v. Gray*, No. 8:09-cv-00880 (M.D. Fla.), winning a $4.1 million jury verdict for breach of oral contract and fraudulent inducement. In December 2009, Mr. Noss served as plaintiffs' local counsel at trial in *Lederman v. Popovich*, No. 1:07-cv-00845 (N.D. Ohio), resulting in a $1.8 million jury verdict for plaintiffs on claims of breach of fiduciary duties, conversion, and unjust enrichment. In January and February 2006, Mr. Noss assisted the trial team for *In re Scrap Metal Antitrust Litigation*, No. 1:02-cv-0844 (N.D. Ohio 2006), resulting in a $34.5 million class action plaintiffs' verdict.

Mr. Noss graduated *magna cum laude* from the University of Toledo with a Bachelor of Arts in Economics in 1997 and *with honors* from The Ohio State University College of Law in 2000. He is a member of the California and Ohio Bars, and his admission to the New York bar is pending approval. Prior to joining Scott+Scott in April 2004, he was an associate in the Cleveland, Ohio office of Jones Day.

**JOSEPH P. GUGLIELMO** is a partner in the firm's New York office and represents institutional and individual clients in securities, antitrust, and consumer litigation in federal and state courts throughout the United States and has achieved numerous successful outcomes.

Recently, Mr. Guglielmo, along with other attorneys at Scott+Scott, was recognized for his efforts representing New York University in obtaining a monumental temporary restraining order of over $200 million from a Bernard Madoff feeder fund. Specifically, New York State Supreme Court Justice Richard B. Lowe III stated, "Scott+Scott has demonstrated a remarkable grasp and handling of the extraordinarily complex matters in this case. The extremely professional and thorough means by which NYU's counsel has litigated this matter has not been overlooked by this Court."

Mr. Guglielmo serves in a leadership capacity in a number of complex antitrust, securities, and consumer actions, including: *In re: Target Corporation Customer Data Security Breach Litigation*, 0:14-md-02522 (D. Minn.); *Howerton v. Cargill, Inc.*, 1:13-cv-00336 (D. Haw.); *Murr v. Capital One Bank (USA), N.A.*, 1:13-cv-1091 (E.D. Va.); *In re Aetna UCR Rates Litigation*, MDL No. 2020 (D.N.J.); *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litigation*, MDL No. 2074 (C.D. Cal.); *In re: Nexium (Esomeprazole) Antitrust Litigation*, MDL No. 2409 (D. Mass.); *In re Suboxone Antitrust Litigation*, 2:13-md-02445 (E.D. Pa); *In re SinoHub Securities Litigation*, No. 1:12-cv-08478 (S.D.N.Y.).

Mr. Guglielmo has achieved significant victories and obtained numerous settlements for his clients. He was one of the principals involved in the litigation and settlement of *In re Managed Care Litigation,* MDL No. 1334 (S.D. Fla.), which included settlements with Aetna, CIGNA, Prudential, Health Net, Humana, and WellPoint, providing monetary and injunctive benefits exceeding $1 billion. Additional cases Mr. Guglielmo played a leading role and obtained substantial recoveries for his clients include: *Love v. Blue Cross and Blue Shield Ass'n, No. 03-cv-21296* (S.D. Fla.), which resulted in settlements of approximately $130 million and injunctive benefits valued in excess of $2 billion; *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1897 (D.N.J.), settlements in excess of $180 million; *In re Pre-Filled Propane Tank Marketing and Sales Practices Litigation*, MDL 2086 (W.D. Mo.), consumer settlements in excess of $40 million; *Bassman v. Union Pacific Corp.*, No. 97-cv-02819 (N.D. Tex.), $35.5 million securities class action settlement; *Garcia v. Carrion*, Case No. CV. 11-1801 (D. P.R.), substantial corporate governance reforms; and *Boilermakers National Annuity Trust Fund v. WaMu Mortgage Pass-Through Certificates, No. 09-cv-00037 (W.D. Wash.), $26 million securities class action settlement.* Mr. Guglielmo was the principle litigator and obtained a significant opinion from the Hawaii Supreme Court in *Hawaii Medical Association v. Hawaii Medical Service Association*, 113 Hawaii 77 (Haw. 2006), reversing the trial court's dismissal and clarifying rights for consumers under the state's unfair competition law.

Mr. Guglielmo lectures on electronic discovery and is a member of the Steering Committee of Working Group 1 of the Sedona Conference®, an organization devoted to providing guidance and information concerning issues such as discovery and production issues, as well as areas focusing on antitrust law, complex litigation, and intellectual property. Recently, Mr. Guglielmo was selected as a speaker for electronic discovery issues at the Sedona Conference as well as the Advanced eDiscovery Institute at Georgetown University Law Center. Mr. Guglielmo was also recognized for his achievements in litigation by his selection to *The National Law Journal*'s "Plaintiffs' Hot List."

Mr. Guglielmo graduated from the Catholic University of America (B.A., *cum laude*, 1992; J.D., 1995) and also received a Certificate of Public Policy.

Mr. Guglielmo is admitted to practice before numerous federal and state courts: United States Supreme Court, United States Court of Appeal for the Second Circuit, United States Court of Appeal for the Third Circuit, United States Court of Appeal for the Eighth Circuit, United States Court of Appeal for the Ninth Circuit, United States Court of Appeal for the Eleventh Circuit, United States District Courts for the Southern and Eastern Districts of New York, District of Massachusetts, District of Colorado, District of Connecticut, New York State, District of Columbia, and Commonwealth of Massachusetts. He is also a member of the following associations: District of Columbia Bar Association, New York State Bar Association, American Bar Association, and The Sedona Conference®.

**BETH A. KASWAN**, during her tenure as an Assistant U.S. Attorney and subsequent promotions to Chief of the Commercial Litigation Unit and Deputy Chief of the Civil Division of the U.S. Attorney's Office for the Southern District of New York, was appointed by the FDA as lead counsel in litigation to enjoin the manufacture of adulterated generic drugs in the landmark case *United States v. Barr Laboratories, Inc.*, 812 F. Supp. 458 (D.N.J. 1993). Ms. Kaswan, who began her career as an accountant at the offices of Peat, Marwick, Mitchell & Co., and then worked as a civil trial attorney at the U.S. Department of Justice in Washington, D.C., is the recipient of several awards from the Justice Department and other agencies she represented, including the Justice Department's John Marshall award, Special Commendation from the Attorney General, a Superior Performance award from the Executive Office of U.S. Attorneys and Tax Division Outstanding Achievement awards.

While at Scott+Scott, Ms. Kaswan served as lead counsel in *Boilermakers National Annuity Trust Fund v. WaMu Mortgage Pass Through Certificates*, No. 09-cv-00037 (W.D. Wa.), the WaMu RMBS Section 11 Securities Act case which settled after plaintiffs succeeded in defeating the defendants' motion for summary judgment, only weeks before it was scheduled to proceed to a jury trial. Ms. Kaswan just completed the nine-week trial in *In the Matter of the Application of The Bank of New York Mellon*, Index No. 651786/2011 (N.Y. Supr. Ct.) in which she and other interveners challenged the proposed settlement between Bank of New York Mellon and Bank of America to resolve repurchase and servicing claims for 530 Countrywide trusts. Ms. Kaswan is currently lead counsel suing Bank of New York Mellon in federal court in *Retirement Board of the Policemen's Annuity and Benefit Fund for the City of Chicago v. The Bank of New York Mellon*, No. 11-cv-5459 (S.D.N.Y.), for its failure to prosecute the Countrywide Trusts' claims under the federal Trust Indenture Act ("TIA"). She is also pursuing TIA claims against the Securitization Trustees for WaMu and Bear Stearns Trusts in *Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of America, N.A.*, No. 12-cv-2865 (S.D.N.Y.) and *Oklahoma Police Pension and Retirement System v. U.S. Bank N.A.*, No. 11-cv-8066 (S.D.N.Y.), respectively. Ms. Kaswan brought a derivative suit on behalf of New York University against Ezra Merkin to freeze funds belonging to a feeder fund to Bernard Madoff. She also served as lead counsel to another shareholder derivative case, *Carfagno v. Schnitzer*, No. 08-CV-912-SAS (S.D.N.Y.), where she successfully negotiated a settlement on behalf of Centerline Holding Company and Centerline shareholders. Ms. Kaswan has served as lead counsel in *Cornwell v. Credit Suisse Group*, No. 08-cv-3758 (S.D.N.Y.) and *In re Tetra Technologies, Inc. Securities Litigation*, No. 08-cv-0965 (S.D. Tex.), among others.

Ms. Kaswan is a member of the New York and Massachusetts bars. While working at the U.S. Department of Justice, Ms. Kaswan frequently appeared in the U.S. District Courts in Kentucky. Ms. Kaswan has been practicing law for over 35 years and is a partner in the firm's New York office.

**GEOFFREY M. JOHNSON** is a partner in the firm's Ohio office. Mr. Johnson's practice focuses on commercial and class action trial work and appeals. His areas of concentration include complex securities litigation, ERISA class actions, and commercial and class action antitrust litigation.

Notably, Mr. Johnson serves as lead counsel in *Pfeil v. State Street Bank and Trust Company*, 2:09-cv-12229 (E.D. Mich.), a case of national significance in the area of employee retirement plans. In the case, Mr. Johnson represents a class of over 200,000 current and former General Motors employees who owned General Motors stock in GM's two main retirement plans. Mr. Johnson successfully argued the case to the United States Court of Appeals for the Sixth Circuit, which issued an opinion that is now looked to nationally as one of the seminal cases in the area of ERISA fiduciary duties and employee rights. *See Pfeil v. State Street Bank and Trust Company*, 671 F.3d 585 (6th Cir. 2012).

Mr. Johnson has also served as lead or co-lead counsel in other major securities and ERISA cases, including: *In re Royal Dutch/Shell ERISA Litigation*, No. 04-1398 (D.N.J.), which settled for $90 million and is one of the three largest recoveries ever obtained in an ERISA class action case; *In re Priceline Securities Litigation*, 00-cv-1884 (D. Conn.), which settled for $80 million and is the largest class action securities settlement ever obtain in the State of Connecticut; and *In re General Motors ERISA Litigation*, 05-cv-71085 (E.D. Mich.), a case that settled for $37.5 million and ranks among the largest ERISA class settlements ever obtained.

Mr. Johnson has been active in the firm's mortgage-backed securities litigation practice, serving as lead or co-lead counsel in mortgage-backed securities class action cases involving Washington Mutual (*In re* Washington *Mutual Mortgage Backed Securities Litigation*, 2:09-cv-00037 (W. D. Wash.)) and Countrywide Financial (*Putnam Bank v. Countrywide Financial, Inc.*, No. 10-cv-302 (C.D. Cal.)). Mr. Johnson also helped develop the theories that the firm's pension fund clients have used to pursue class action cases against mortgage-backed security trustees. *See Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of New York Mellon* (Case No. 11-cv-05459 (S.D.N.Y.)); *Oklahoma Police Pension & Retirement System v. U.S. Bank NA* (Case No. 11-cv-8066 (S.D.N.Y.)).

In addition, Mr. Johnson is active in the firm's appellate practice group, where he has handled numerous class action appeals, including appeals in the United States Court of Appeals for the Second Circuit, Third Circuit, Fifth Circuit, Sixth Circuit, Seventh Circuit, and Eleventh Circuit.

Mr. Johnson is a graduate of Grinnell College (B.A., Political Science with Honors, 1996) and the University of Chicago Law School (J.D., with Honors, 1999), where he served on the law review. Prior to joining Scott+Scott, Mr. Johnson clerked for the Honorable Karen Nelson Moore, United States Court of Appeals for the Sixth Circuit.

**JUDY SCOLNICK** is a partner in the firm's New York office.  Ms. Scolnick is a graduate of New York University (B.A., *cum laude* 1972), Brandeis University (M.A. Political Science Theory, 1973), and Boston College Law School (J.D., 1976), where she served on the Boston College Industrial and Commercial Law Review.  She has extensive experience in the fields of shareholder derivative law, particularly in the pharmaceutical industry, employment law and employment class actions, and securities class actions.  She has contributed substantially to recent jurisprudence expanding shareholders' rights to examine books and records of the corporations in which they hold stock.  In *Cain v. Merck & Co., Inc.*, 415 N.J. Super. 319 (N.J. Super. A.D. 2010), the New Jersey Appellate Division agreed with Ms. Scolnick and held in a precedential decision that the New Jersey Business Corporation Act allows shareholders to inspect the minutes of board of directors and executive committee meetings upon a showing of proper purpose.  In *King v. VeriFone Holdings, Inc.*, 12 A.3d 1140 (Del. Supr. 2011), the Delaware Supreme Court ruled in a ground-breaking decision that plaintiffs may, in certain circumstances, inspect a corporation's books and records to bolster a shareholder derivative complaint even after they have filed a lawsuit.

She has served as lead counsel in many shareholder derivative actions and is currently lead counsel in *North Miami General Employees Retirement Fund v. Parkinson*, No. 10-cv-6514 (N.D. Ill.), a shareholder derivative case on behalf of pharmaceutical company, Baxter International, arising from the Board's failure to comply with FDA orders to remediate a medical device known as the Colleague Pump.  She is also lead counsel in *Cottrell v. Duke*, No. 12-4041 (W.D. Ark.), a shareholder derivative action brought on behalf of Wal-Mart arising from a widespread bribery and cover-up conspiracy conducted by Wal-Mart executives and Board members.

Ms. Scolnick has experience litigating shareholder derivative actions at both the trial and appellate level.  She successfully argued the Baxter appeal where the Court of Appeals for the Seventh Circuit, reversing a trial court's dismissal, held that a pension fund's complaint on behalf of all shareholders passed the pre-suit demand futility threshold test under Delaware substantive law.  *Westmoreland County Employees' Retirement System v. Parkinson*, 727 F.3d 719 (7th Cir. 2013).  Also in 2013, Ms. Scolnick obtained a landmark ruling in the Wal-Mart shareholder derivative litigation from the Court of Appeals for the Eighth Circuit.  The Eighth Circuit reversed the district court's stay of the federal action in favor of a related proceeding in Delaware Chancery Court, and held that a *Colorado River* stay is never appropriate where the federal complaint alleges valid, exclusive federal claims.  *Cottrell v. Duke*, 737 F.3d 1238 (8th Cir. 2013).

Ms. Scolnick has also litigated a number of important employment discrimination class actions.  These include *U.S. v. City of New York*, No. 07-cv-2067, 2011 WL 4639832 (E.D.N.Y. Oct. 5, 2011) (successfully representing a class of black applicants for entry-level firefighter jobs who were discriminated against by the City of New York), *Hohider v. UPS*, 243 F.R.D. 147 (W.D. Pa. 2007), *reversed and remanded*, 574 F.3d 169 (3d Cir. 2009), where although the Third Circuit reversed certification of a nationwide class of Americans with Disabilities Act protected UPS employees, Ms. Scolnick was able to negotiate with UPS changes to its return to work policy with regard to injured workers.

Ms. Scolnick began her career by serving as a law clerk to the late Honorable Anthony Julian of the United States District Court in Massachusetts. Thereafter, she served as a trial attorney in the Civil Division of the United States Department of Justice, where she was lead counsel in several high-profile employment discrimination lawsuits against various U.S. agencies around the country.

Ms. Scolnick has been selected for the past two years in Thompson Reuter's "New York Super Lawyers."

Ms. Scolnick is admitted to practice in New York, New Jersey, and Massachusetts.

**DONALD A. BROGGI** is a partner in the firm's New York office. Mr. Broggi is a graduate of the University of Pittsburgh (B.A., 1990) and Duquesne University School of Law (J.D., 2000). He is engaged in the firm's complex securities, antitrust, and consumer litigation, including: *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-7789 (S.D.N.Y.), *In re: Priceline.com Inc. Securities Litigation*, No. 00-cv-1884 (D. Conn.), *Irvine v. ImClone Systems, Inc.*, No. 02-cv-0109 (S.D.N.Y.), *In re: Rubber Chemicals Antitrust Litigation*, No. C04-01648 (N.D. Cal.), *In re: Plastics Additives Antitrust Litigation*, No. 03-cv-2038 (E.D. Pa.), and *In re Washington Mutual Mortgage-Backed Securities Litigation*, No. 09-cv-0037 (W.D. Wash.), among others.

Mr. Broggi also works with the firm's institutional investor clients, including numerous public pension systems and Taft-Hartley funds throughout the United States to ensure their funds have proper safeguards in place to ensure against corporate malfeasance. Similarly, Mr. Broggi consults with institutional investors in the United States and Europe on issues relating to corporate fraud in the U.S. securities markets, as well as corporate governance issues and shareholder litigation. Mr. Broggi has lectured at institutional investor conferences throughout the United States on the value of shareholder activism as a necessary component of preventing corporate fraud abuses, including the Texas Association of Public Employee Retirement Systems, Georgia Association of Public Pension Trustees, Michigan Association of Public Retirement Systems, Illinois Public Pension Fund Association, and the Pennsylvania Association of County Controllers, among others.

Mr. Broggi is admitted to practice in New York and Pennsylvania.

**DEBORAH CLARK-WEINTRAUB** is a partner in the firm's New York office. Ms. Weintraub graduated from St. John's University, Queens, New York (B.A., *summa cum laude*, 1981; President's Award in recognition of achieving highest GPA among graduates of St. John's College of Liberal Arts and Science) and Hofstra Law School in Hempstead, New York (J.D., with distinction, 1986). While in law school, Ms. Weintraub was a member and research editor of the Hofstra Law Review. Following her graduation from Hofstra Law School, Ms. Weintraub served as a law clerk to the Honorable Jacob Mishler, United States District Judge for the Eastern District of New York (1986-1987). Ms. Weintraub is a member of the New York bar.

Ms. Weintraub has extensive experience in all types of class action litigation. She is currently representing investors in mortgage-backed securities (MBS) in litigation against trustees of MBS trusts sponsored by Countrywide, WaMu, and Bear Stearns asserting claims for violations of the Trust Indenture Act of 1939 and breach of contract in connection with the trustees' failures to discharge their statutory and contractual duties under the trusts' governing agreements to enforce the trusts' rights to require repurchase of mortgage loans in the trusts that breached representations and warranties.

Ms. Weintraub also currently represents a certified class of participants and beneficiaries in two 401(k) Plans of General Motors Corporation in an action against State Street Bank and Trust Company, the independent fiduciary and investment manager for the General Motors Corporation $1 2/3 Par Value Common Stock Fund held in the Plans, for violating its fiduciary duty to Plan participants under ERISA in failing to divest the Plans' holdings of GM stock in the GM Common Stock Fund when it had become an imprudent investment to hold in the Plans.

Ms. Weintraub is also currently representing certified classes in two significant consumer cases. In *Huyer v. Wells Fargo & Co.*, No. 4:08–CV–00507 (S.D. Iowa), Ms. Weintraub represents multiple, certified classes of borrowers in an action against Wells Fargo & Co. and Wells Fargo Bank, NA, in an action asserting claims for violation of the Racketeer Influenced & Corrupt Organizations Act and California's Unfair Competition Law in connection with Wells Fargo's assessment of charges for repeated property inspection fees to delinquent borrowers. Ms. Weintraub is also co-lead counsel for the certified class of consumers in *In re Glaceau Vitaminwater Marketing and Sales Practice Litig.*, No. 11–md–2215 (S.D.N.Y.), seeking injunctive relief for violations of California and New York deceptive trade practice statutes in connection with the marketing of Vitaminwater.

Ms. Weintraub has extensive securities class action experience and has acted as plaintiffs' co-lead counsel in numerous cases that have obtained substantial recoveries for defrauded investors. Ms. Weintraub was one of the lead counsel in *In re Oxford Health Plans, Inc. Securities Litigation*, MDL No. 1222 (S.D.N.Y.), in which a cash settlement of $300 million was obtained on the eve of trial after more than five years of litigation. At the time, the $300 million cash recovery was one of the largest recoveries ever achieved in a securities class action. The Honorable Charles L. Brieant, Jr., who presided over this case described it as "perhaps the most heavily defended, ardently pursued defense of a similar case that I can recall." Ms. Weintraub also served plaintiffs' co-lead counsel in *In re CVS Corporation Securities Litigation*, No. 01-11464 (D. Mass.), in which a cash settlement of $110 million was obtained for investors. Following the settlement in March 2006, CVS disclosed that the SEC had opened an inquiry into the manner in which CVS had accounted for a barter transaction, a subject of the class action suit, and that independent counsel to the firm's audit committee had concluded in December 2005 that various aspects of the company's accounting for the transaction were incorrect, leading to the resignations of the company's controller and treasurer.

Ms. Weintraub is the co-author of "Gender Bias and the Treatment of Women as Advocates," Women in Law (1998), and the "Dissenting Introduction" defending the merits of securities class action litigation contained in the 1994 monograph "Securities Class Actions: Abuses and

Remedies," published by the National Legal Center for the Public Interest. She is a member of the Association of the Bar of the City of New York.

**WILLIAM C. FREDERICKS** is a partner in the firm's New York office. Mr. Fredericks holds a B.A. (with high honors) from Swarthmore College, an M. Litt. in International Relations from Oxford University (England), and a J.D. from Columbia University Law School. At Columbia, Mr. Fredericks was a three-time Harlan Fiske Stone Scholar, a Columbia University International Fellow, and the winner of the law school's Beck Prize (property law), Toppan Prize (advanced constitutional law), Greenbaum Prize (written advocacy), and Dewey Prize (oral advocacy).

After clerking for the Hon. Robert S. Gawthrop III (E.D. Pa.), Mr. Fredericks spent seven years practicing securities and complex commercial litigation at Simpson Thacher & Bartlett LLP and Willkie Farr & Gallagher LLP in New York before moving to the plaintiffs' side of the bar in 1996. Since then, he has represented investors as a lead or co-lead plaintiff in dozens of securities class actions, including *In re Wachovia Preferred Securities and Bond/Notes Litig.*, No. 09-cv-6351 (S.D.N.Y.) (total settlements of $627 million, reflecting the largest recovery ever in a pure Securities Act case not involving any parallel government fraud claims); *In re Rite Aid Securities Litig.*, 99-cv-1349 (E.D. Pa.) (total settlements of $323 million, including the then-second largest securities fraud settlement ever against a Big Four accounting firm); *In re Sears Roebuck & Co. Sec. Litig.*, No. 02-cv-07527 (N.D. Ill.) ($215 million settlement, representing the largest §10(b) class action recovery ever not involving either a financial restatement or parallel government fraud claims); *In re State Street ERISA Litig.*, No. 07-cv-8488 (S.D.N.Y.) (one of the largest ERISA class settlements to date) and *Irvine v. Imclone Systems, Inc.*, No. 02-cv-0109 (S.D.N.Y.) ($75 million settlement). Mr. Fredericks also played a lead role on the team that obtained a rare 9-0 decision for securities fraud plaintiffs in the U.S. Supreme Court in *Merck & Co., Inc. v. Reynolds*, No. 08-905, and has coauthored several amicus briefs in other Supreme Court cases involving securities issues (including the recent *Halliburton* and *Amgen* cases). More recently, Mr. Fredericks has also played a major role in litigating claims relating to mortgage-backed securities ("MBS") arising out of the financial crisis.

Mr. Fredericks is recognized in the 2014-15 edition of "America's Best Lawyers" in the field of commercial litigation, and in the 2014-15 edition of New York's "Super Lawyers." He is a frequent panelist on securities litigation programs sponsored by various organizations, including the Practising Law Institute (PLI) and the American Law Institute/American Bar Association (ALI/ABA). He is a member of the New York City Bar Association (former chair, Committee on Military Affairs and Justice), the Federal Bar Council and the American Bar Association. His recent publications include "Bringing a Claim for Securities Fraud: Pre-Filing Investigation to Complaint" (PLI 2012) and "'Bet-the-Company' Litigation: Settlement" (PLI 2011).

**DARYL F. SCOTT** graduated in 1981 from Vanderbilt University with a Bachelor of Arts in Economics. He received his Juris Doctorate from Creighton University School of Law in 1984, and a Masters of Taxation from Georgetown University Law Center in 1986. Mr. Scott is a partner involved in complex securities litigation at Scott+Scott. In addition to his work with the firm, Mr. Scott has specialized in private foundation and ERISA law. He was also formerly an executive officer of a private equity firm that held a majority interest in a number of significant

corporations. Mr. Scott is admitted to the Supreme Court of Virginia and a member of the Virginia Bar Association and the Connecticut Bar Association.

**DEIRDRE DEVANEY** is a graduate of New York University (B.A., *cum laude*, 1990) and the University of Connecticut School of Law (J.D., with honors, 1998) where she was the managing editor of the Connecticut Journal of International Law. Ms. Devaney's experience includes commercial and probate litigation, as well as trusts and estates. Currently, Ms. Devaney's practice areas include commercial and securities litigation, including: *In re Priceline.com, Inc. Securities Litigation*, among others. Ms. Devaney is admitted to practice in Connecticut, New York, and the United States District Court for the District of Connecticut.

**SYLVIA M. SOKOL** is a New York-based partner in the firm's Antitrust and Competition Law Practice. She focuses on representing national and international clients in litigation involving domestic and international cartels. Ms. Sokol has substantial experience in all aspects of complex litigation, including the day-to-day management of cases. She also has substantial experience in counseling corporate clients, evaluating potential claims, and developing strategies to recoup losses stemming from anticompetitive conduct.

Ms. Sokol currently represents a nationwide class in price-fixing litigation regarding the $5.3 trillion-a-day foreign exchange market. She also represents a proposed nationwide class in an action involving ISDAfix, a financial benchmark that is tied to over $379 trillion of interest-rate swaps around the world. In addition, Ms. Sokol represents several large multinational corporations alleging that Goldman Sachs, JPMorgan, Glencore, and their warehouse affiliates conspired to restrict the supply of aluminum in London Metal Exchange-approved warehouses. And she represents several government entities in a national lawsuit alleging bid-rigging in the municipal derivatives market.

In addition, Ms. Sokol's civil litigation experience has involved defending corporate clients charged with unlawful business practices and monopolizations. She has also represented clients in criminal and extradition matters.

Ms. Sokol was named a "Super Lawyer" in 2011, 2012, and 2014.

She is a 1998 graduate of the New York University School of Law (*cum laude*), and completed her undergraduate studies at the University of British Columbia. After law school, Ms. Sokol was awarded the Soros Justice Fellowship to serve a year in the Capital Habeas Unit of the Federal Public Defender's Office, where she represented clients condemned to death and developed training materials for members of the capital defense bar. She then served as a judicial law clerk to the Honorable Warren J. Ferguson, United States Court of Appeals for the Ninth Circuit, before spending several years working at Morrison & Foerster LLP.

Ms. Sokol is a member of the American Bar Association and is admitted to practice in New York, California, and the District of Columbia. She is also admitted to the Southern District of New York, the Northern, Southern, and Eastern Districts of California, as well as the United States Supreme Court.

She is bilingual in English and French, and holds French and United States citizenships.

**AMANDA F. LAWRENCE** is a partner in the firm's Connecticut office. Ms. Lawrence is a graduate of Dartmouth College (B.A., *cum laude*, 1998) and Yale Law School (J.D., 2002). During law school, Ms. Lawrence worked for large firms in Washington, D.C., New York, and Cleveland. After graduating from Yale, she worked in-house at a tax lien securitization company and for several years at a large Hartford-based law firm.

At Scott+Scott, Ms. Lawrence is actively is engaged in the firm's complex securities, corporate governance, consumer, and antitrust litigation. She has worked on several cases that have resulted in substantial settlements including: *In re Aetna UCR Rates Litigation*, MDL No. 2020 (D.N.J.) ($120 million settlement pending); *Rubenstein v. Oilsands Quest Inc.*, No. 11-1288 (S.D.N.Y.) (securities settlement of $10.235 million); *Boilermakers National Annuity Trust Fund v. WaMu Mortgage Pass-Through Certificates*, No. 09-cv-00037 (W.D. Wash.) ($26 million securities class action settlement); and *In re TETRA Technologies, Inc. Securities Litig.*, No. 4:07-cv-00965 (S.D. Tex.) ($8.25 million securities class action settlement).

Ms. Lawrence has taught Trial Practice at the University of Connecticut School of Law and is very actively involved in her community, particularly in recreational organizations and events. A five-time NCAA National Champion cyclist who raced throughout the United States, Europe, Bermuda, and Pakistan, Ms. Lawrence is now an avid endurance athlete. She has competed in dozens of marathons, including the New York Marathon and the Boston Marathon, and in 11 full-distance ironman competitions – three of which were at the Ironman World Championships in Kona, Hawaii. She is licensed to practice in Connecticut and the Southern District of New York.

**ERIN GREEN COMITE** is a partner in the firm's Connecticut office. Ms. Comite is a graduate of Dartmouth College (B.A., *magna cum laude*, 1994) and the University of Washington School of Law (J.D., 2002). Ms. Comite litigates complex class actions throughout the United States, representing the rights of shareholders, employees, consumers, and other individuals harmed by corporate misrepresentation and malfeasance. Since joining Scott+Scott in 2002, she has litigated such cases as *In re Priceline.com Securities Litigation* ($80 million settlement); *Schnall v. Annuity and Life Re (Holdings) Ltd.* ($27 million settlement); and *In re Qwest Communications International, Inc.* (settlement obtaining $25 million for the company and achieving corporate governance reforms aimed at ensuring board independence). Currently, she is one of the court-appointed lead counsel in *In re Monsanto Company Genetically-Engineered Wheat Litigation*, MDL No. 2473 (D. Kan.), and is prosecuting or has recently prosecuted actions against defendants such as Banco Popular, N.A.; Cargill, Inc.; The Estée Lauder Companies, Inc.; Ferrero USA, Inc.; L'Oreal USA, Inc.; Merisant Company; Merrill, Lynch, Pierce, Fenner & Smith, Inc.; NCO Financial Systems, Inc.; and Nestlé USA, Inc.

While Ms. Comite is experienced in all aspects of complex pre-trial litigation, she is particularly accomplished in achieving favorable results in discovery disputes. In *Hohider v. United Parcel Service, Inc.*, Ms. Comite spearheaded a nearly year-long investigation into every facet of UPS's preservation methods, requiring intensive, full-time efforts by a team of attorneys and paralegals well beyond that required in the normal course of pre-trial litigation. Ms. Comite assisted in

devising the plan of investigation in weekly conference calls with the Special Master, coordinated the review of over 30,000 documents that uncovered a blatant trail of deception and prepared dozens of briefs to describe the spoliation and its ramifications on the case to the Special Master. In reaction to UPS's flagrant discovery abuses brought to light through the investigation, the Court conditioned the parties' settlement of the three individual ADA case on UPS adopting and implementing preservation practices that passed the approval of the Special Master.

Ms. Comite also is active in the firm's appellate practice. Recent successes include achieving a Ninth Circuit reversal of a district court's dismissal of consumers' claims concerning Nestlé's Juicy Juice Brain Development Beverage, which the plaintiffs alleged was deceptively marketed as having the ability to improve young children's cognitive development with minute quantities of the Omega-3 fatty acid, DHA. *Chavez v. Nestle USA, Inc.*, 511 F. App'x 606 (9th Cir. 2013).

Prior to entering law school, Ms. Comite served in the White House as Assistant to the Special Counsel to President Clinton. In that capacity, she handled matters related to the White House's response to investigations, including four independent counsel investigations, a Justice Department task force investigation, two major oversight investigations by the House of Representatives and the Senate, and several other congressional oversight investigations.

Ms. Comite's volunteer activities have included assisting immigrant women, as survivors of domestic violence, with temporary residency applications as well as counseling sexual assault survivors. Currently, Ms. Comite supports Connecticut Children's Medical Center and March of Dimes/March for Babies.

Ms. Comite is licensed to practice in the State of Connecticut and is admitted to practice in the U.S. District Court for the District of Connecticut and the Southern District of New York and the U.S. Court of Appeals for the Second, Third, Ninth and Eleventh Circuits.

**KRISTEN M. ANDERSON** is a partner in the firm's San Diego office. Ms. Anderson's practice focuses on complex and class action litigation with an emphasis on antitrust matters, including the following representative cases: *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y) ($7.25 billion recovery) and *In re Currency Conversion Fee Antitrust Litigation*, MDL No. 1409 (S.D.N.Y.) ($336 million recovery).

A substantial portion of Ms. Anderson's practice is devoted to antitrust cases within the financial services industry. Ms. Anderson represents pension funds and individual investors in *Dahl v. Bain Capital Partners, LLC*, No. 07-cv-12388 (D. Mass.), an antitrust action alleging collusion in the buyouts of large publicly traded companies by private equity firms. Ms. Anderson also represents plaintiff-investors in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-7789 (S.D.N.Y.), challenging foreign-exchange market manipulation by many global financial institutions. Ms. Anderson served on the trial team representing certified classes of cardholders in antitrust cases challenging class action-banning arbitration clauses in credit card agreements as restraints of trade in *Ross v. Bank of America N.A.*, No. 05-cv-7116, MDL No. 1409 (S.D.N.Y.) and *Ross v. American Express Co.*, No. 04-cv-5723, MDL No. 1409 (S.D.N.Y.).

Ms. Anderson is an active member of the American Bar Association's Antitrust Section. She currently serves as Vice Chair of the Antitrust Section's Books & Treatises Committee. She was also a contributing author to the Antitrust Section's *Antitrust Discovery Handbook* (2d ed.), *Joint Venture Handbook* (2d ed.), and the *2010 Annual Review of Antitrust Law Developments*. In addition, Ms. Anderson served as an editor for *The Woman Advocate* (2d ed.), published by the American Bar Association's Woman Advocate Committee.

Ms. Anderson is also an active member of the State Bar of California's Antitrust and Unfair Competition Law Section, authoring case updates for the Antitrust E-Brief and serving as an articles editor for *Competition: Journal of the Antitrust and Unfair Competition Section of the State Bar of California*.

Ms. Anderson is the Editor-in-Chief of MARKET+LITIGATION, Scott+Scott's monthly newsletter. She is also active in the firm's continuing legal education programs, speaking on e-discovery, evidence, and antitrust issues.

Ms. Anderson is a graduate of St. Louis University (B.A. Philosophy, *summa cum laude*, 2003) and the University of California, Hastings College of the Law (J.D. 2006). During law school, Ms. Anderson served as an extern at the U.S. Department of Justice, Antitrust Division, in San Francisco. While at Hastings, Ms. Anderson also served as an extern to Justice Kathryn Mickle Werdegar of the Supreme Court of California and was the research assistant to Professor James R. McCall in the areas of antitrust and comparative antitrust law.

Ms. Anderson is admitted to practice by the Supreme Court of California and all California United States District Courts.

**THOMAS LAUGHLIN** is a partner in the firm's New York office. Mr. Laughlin is a graduate of Yale University (B.A. History, *cum laude*, 2001) and New York University School of Law (J.D., *cum laude*, 2005). After graduating from law school, Mr. Laughlin clerked for the Honorable Irma E. Gonzalez, United States District Court Judge for the Southern District of California.

Mr. Laughlin's practice focuses on securities class action, shareholder derivative, ERISA and other complex commercial litigation. While at Scott+Scott, Mr. Laughlin has worked on several cases that have achieved notable victories, including *Cornwell v. Credit Suisse,* No. 08-3758 (S.D.N.Y.) (securities settlement of $70 million), *Rubenstein v. Oilsands Quest Inc.*, No. 11-1288 (S.D.N.Y.) (securities settlement of $10.235 million) *Plymouth County Contributory Ret. Sys. v. Hassan,* No. 08-1022 (D.N.J.) (corporate governance reform); and *Garcia v. Carrion,* No. 09-1507 (D.P.R.) (corporate governance reform). Mr. Laughlin is a member of the New York bar and is admitted to practice in the Southern District of New York and the Eastern District of New York.

Mr. Laughlin also has significant appellate experience, having represented clients in connection with several appellate victories, including *Cottrell v. Duke,* 737 F.3d 1238 (8th Cir. 2013); *Westmoreland County Employee Retir. Sys. v. Parkinson,* 727 F.3d 719 (7th Cir. 2013); *Pfeil v.*

*State Street Bank and Trust Co.*, 671 F.3d 585 (6th Cir. 2012); and *King v. VeriFone Holdings, Inc.*, 12 A.3d 1140 (Del. Supr. 2011).

In 2014, Mr. Laughlin was co-chair of a 13-day bench trial in *Bankers' Bank Northeast v. Berry, Dunn, McNeil & Parker, LLC*, No. 12-cv-00127 (D. Me.). Mr. Laughlin represented a consortium of 10 community banks asserting negligence and professional malpractice claims against the former officers and directors of a bank and its auditor in connection with an $18 million loan made to that bank in September 2008. Among other things, Mr. Laughlin conducted the cross-examination of all three witnesses from the defendant's auditing firm and the direct examination of plaintiff's auditing expert. The parties to the action succeeded in resolving the action after trial.

**MAX SCHWARTZ** is a partner in the firm's New York office. Mr. Schwartz focuses on antitrust and securities matters, and is experienced in all aspects of complex commercial disputes. He has litigated in federal and state courts, including arguing before several appellate courts, and practiced before the Federal Trade Commission and the U.S. Department of Justice, Antitrust Division. His cases often involve the financial industry, ranging from leveraged-buyouts to structured finance and commodities. He also has significant experience with cases involving healthcare and information technology.

At Scott+Scott, Mr. Schwartz has worked on several cases that have set important precedents regarding mortgage-backed securities and successfully argued or briefed dispositive motions in all of them. Those cases include *Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of New York Mellon*, 1:11-cv-05459 (S.D.N.Y.); *Oklahoma Police Pension and Retirement System v. U.S. Bank National Association*, 1:11-cv-08066 (S.D.N.Y.); *Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of America, NA*, 1:12-cv-02865 (S.D.N.Y.). In addition, he has worked on such antitrust cases as *Dahl v. Bain Capital Partners, LLC*, 1:07-cv-12388 (D. Mass.), which involves a conspiracy among the largest private equity firms in the country, where he helped defeat a motion for summary judgment.

Mr. Schwartz has also represented numerous pro bono clients, including before the United States Supreme Court, and has received an award from the Legal Aid Society for the results he helped achieve.

Prior to joining Scott+Scott, Mr. Schwartz practiced at a leading international law firm. He earned his B.A. from Columbia College, *cum laude*, and his J.D. from New York University School of Law. He is a member of the American Bar Association as well as the New York City Bar Association and is admitted to practice in New York State and the Southern District of New York.

**DAVID H. GOLDBERGER** is an associate in Scott+Scott's San Diego office. Currently, Mr. Goldberger's practice is focused on antitrust litigation, initial case investigations, and other special projects.

Representative actions include *Kleen Products LLC v. Packaging Corporation of America*, No. 10-cv-5711 (N.D. Ill.), an action challenging price-fixing in the containerboard industry, and *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420 (N.D. Cal.), an action challenging

price-fixing of Li-Ion batteries. Mr. Goldberger has also worked on antitrust cases involving delayed generic drug entry, such as *Mylan Pharmaceuticals Inc. v. Warner Chilcott Public Ltd. Co.*, No. 12-cv-3824 (E.D. Pa.) ($8 million settlement) and *In re Prograf Antitrust Litig.*, No. 1:11-md-02242 (D. Mass.).

Previously, Mr. Goldberger was active in Scott+Scott's securities fraud and ERISA practice, including *In re: Priceline.com Securities Litigation*, 03-cv-1884 (D. Conn.) ($80 million settlement), *Alaska Electrical Pension Fund v. Pharmacia Corporation*, No. 03-1519 (D.N.J.) ($164 million settlement), and *In re: General Motors ERISA Litigation*, No. 05-71085 (E.D. Mich.) (resulting in significant enhancements to retirement plan administration in addition to $37.5 million settlement for plan participants).

Mr. Goldberger was also a member of Scott+Scott's institutional investor relations staff, providing the Firm's many institutional clients with assistance in various matters pertaining to their involvement in complex civil litigations.

Mr. Goldberger is also a frequent contributing author to Market+Litigation, Scott+Scott's monthly client newsletter.

Mr. Goldberger graduated from the University of Colorado (B.A., 1999) and California Western School of Law (J.D., 2002). Mr. Goldberger is admitted to practice by the Supreme Court of the State of California and in all California United States District Courts.

A San Diego native, Mr. Goldberger was a founding member of the Torrey Pines High School "Friends of the Library" and coaches youth sports in his spare time.

**THOMAS K. BOARDMAN** is an associate in the Scott+Scott's New York office, focusing on antitrust litigation. At his prior firm, Mr. Boardman was a member of the trial team in *In re TFT-LCD (Flat Panel) Antitrust Litigation*. For his work on that case, Mr. Boardman was nominated by Consumer Attorneys of California as a finalist for Consumer Attorney of the Year. Mr. Boardman was also an instrumental part of the lead counsel team in *In re Potash Antitrust Litigation (II)*, a case that featured a unanimous victory before an *en banc* panel of the Seventh Circuit, resulting in one of the most influential antitrust appellate opinions in recent memory. The case ended in $90 million in settlements.

At Scott+Scott, Mr. Boardman represents plaintiff-investors in *In re Foreign Exchange Benchmark Rates Antitrust Litigation* and represents opt-out plaintiffs in *Mag Instrument Inc v. The Goldman Sachs Group Inc*. Mr. Boardman also represents indirect purchaser plaintiffs in *In re Lithium Ion Batteries Antitrust Litigation*.

Mr. Boardman received his Bachelor of Arts degree from Vassar College in 2004, majoring in Political Science and Film Studies. He received his Juris Doctorate from the University of California, Hastings College of the Law in 2009. While at Hastings, Mr. Boardman was a member of the Hastings Science and Technology Law Journal and worked as a research assistant to professors Geoffrey C. Hazard, Jr. and Rory K. Little. Mr. Boardman is a member of the following Bars: California, New York, Ninth Circuit Court of Appeals, Central District of California, Northern District of California, and Southern District of California. He is also a

member of the following professional associations: ABA Antitrust Section – Model Jury Instruction Revision Task Force, ABA Antitrust Section – Young Lawyers Division – Litigation Committee, ABA Antitrust Section – Young Lawyers Division – Civil Practice and Procedure Committee, New York State Bar Association – Antitrust Section, Bar Association of San Francisco, and Public Justice Foundation.

Mr. Boardman has co-authored the following articles: "Reverse Engineering Your Antitrust Case: Plan for Trial Even Before You File Your Case," *Antitrust Magazine*, Spring 2014, Vol. 28, No. 2, with Bruce L. Simon; and "Class Action for Health Professionals," chapter from *Advocacy Strategies for Health and Mental Health Professionals*, Springer Publishing Co., 2011, with Bruce L. Simon, Stuart L. Lustig, Editor.

Prior to joining Scott+Scott, Mr. Boardman worked at Pearson, Simon & Warshaw, LLP in San Francisco and served as a judicial law clerk to the Hon. Christina Reiss in United States District Court, District of Vermont.

Mr. Boardman enjoys running and regularly does so for charity. He has run several races to fundraise for various causes, including the New York City Marathon (National Multiple Sclerosis Foundation) and the Boston Marathon (Cystic Fibrosis Foundation).

**STEPHEN TETI**'s practice focuses on securities class action litigation, shareholder derivative lawsuits and corporate governance, consumer, and ERISA litigation. While at Scott+Scott, Mr. Teti has worked on several cases that have achieved notable results, including *Rubenstein v. Oilsands Quest Inc.*, No. 11-cv-288 (S.D.N.Y.) (securities settlement of $10.235 million) and *Plymouth County Contributory Ret. Sys. v. Hassan*, No. 08-cv-1022 (D.N.J.) (corporate governance reform). Mr. Teti also practices in Scott+Scott's appellate group, achieving victories in *Cottrell v. Duke*, 737 F.3d 1238 (8th Cir. 2013), *Westmoreland County Employee Retirement System v. Parkinson*, 737 F.3d 719 (7th Cir. 2013), and *Chavez v. Nestlé USA, Inc.*, 511 Fed. Appx. 606 (9th Cir. 2013).

Mr. Teti obtained a significant decision for consumers in *Friedman v. Maspeth Fed. Loan & Savings Ass'n*, __ F. Supp. 2d __, 2014 WL 3473407 (E.D.N.Y. July 14, 2014). In a case before the Honorable Jack B. Weinstein raising "issues of first impression on the reach of the Real Estate Settlement Procedures Act," Mr. Teti defeated the motion to dismiss in the case which involved wrongful imposition of late charges on timely received mortgage payments. Mr. Teti has also achieved several favorable decisions regarding the improper removal of class actions under the Securities Act of 1933, including *Niitsoo v. Alpha Natural Resources, Inc.*, 902 F. Supp. 2d 797 (S.D. W. Va. 2012), and *Rajasekaran v. CytRx Corp.*, 2014 WL 4330787 (C.D. Cal. Aug. 21, 2014).

Mr. Teti graduated from Fairfield University (B.A., *cum laude*, 2007) and the Quinnipiac University School of Law (J.D., *magna cum laude*, 2010). He is a member of the Connecticut Bar. During law school, Mr. Teti served as Publications Editor on the *Quinnipiac Law Review*. Further, he worked as an intern in the State of Connecticut Office of the Attorney General, a judicial extern to the Honorable Stefan R. Underhill in the United States District Court for the District of Connecticut, and a legislative extern to the Judiciary Committee of the Connecticut

General Assembly. Prior to joining Scott+Scott, Mr. Teti clerked for the judges of the Connecticut Superior Court.

Mr. Teti is a regular contributor to and editor of Scott+Scott's monthly newsletter, MARKET+LITIGATION, and he volunteers on his local Youth Services Advisory Board.

**JOHN JASNOCH**'s practice areas include securities and antitrust class actions, shareholder derivative actions, and other complex litigation. Mr. Jasnoch represented plaintiffs in *In re Washington Mutual Mortgage-Backed Securities Litigation,* Case No. 2:09-cv-00037 (W.D. Washington), a case that was litigated through summary judgment and settled on the eve of trial for $26 million. Mr. Jasnoch was also one of the lead attorneys that secured a $7.68 million settlement in *In re Pacific Biosciences Securities Litigation,* Case No. CIV509210 (San Mateo County, California). Other cases Mr. Jasnoch has worked on that have achieved notable results include: *West Palm Beach Police Pension Fund v. Cardionet, Inc.*, Case No. 37-2010-00086836-CU-SL-CTL (San Diego County, California) ($7.25 million settlement), *Hodges v. Akeena Solar,* 09-cv-2147 (N.D. Cal.) ($4.77 million settlement), *Plymouth County Contributory Ret. Sys. v. Hassan*, No. 08-1022 (D.N.J.) (corporate governance reform), and *In re HQ Sustainable Maritime Industries, Inc., Derivative Litigation*, Case No. 11-2-16742-9 (King County, Washington) ($2.75 million settlement).

Mr. Jasnoch is also involved in the firm's healthcare practice group, currently representing institutional investors in *In re DaVita Healthcare Partners, Inc. Derivative Litigation,* Case No. 12-cv-2074 (D. Co.) and *City of Omaha Police and Fire Pension Fund v. LHC Group*, Case No. 12-cv-1609 (W.D. La.).

As an active member of the Consumer Attorneys of California, Mr. Jasnoch has prepared and submitted successful *amicus curie* briefs to the Ninth Circuit Court of Appeals, including on California's Anti-SLAPP law and consumer protection issues.

Mr. Jasnoch graduated *cum laude* from Creighton University with a Bachelor of Arts in Political Science in 2007. He received his Juris Doctorate from The University of Nebraska College of Law in 2011 and is a member of the California Bar.

**MICHAEL G. BURNETT** is a graduate of Creighton University (B.A., 1981) and Creighton University School of Law (J.D., 1984). Mr. Burnett practices complex securities litigation at the firm where he consults with the firm's institutional clients on corporate fraud in the securities markets as well as corporate governance issues. In addition to his work with the firm, Mr. Burnett has specialized in intellectual property and related law. Mr. Burnett is admitted to the Nebraska Supreme Court and United States District Court, District of Nebraska. He is a member of the Nebraska Bar Association.

**ANDREA FARAH**'s practice focuses on securities, shareholder derivative actions, consumer rights, and other complex litigation. Ms. Farah graduated *summa cum laude* from the University of North Florida with a Bachelor of Arts in Psychology in 2009. She received her Juris Doctorate, *cum laude*, in 2013 and a Master in Business Administration in 2013 from Quinnipiac University School of Law. During law school, Ms. Farah worked as an intern in the Connecticut

State's Attorneys Office for the Judicial District of New Haven, Connecticut. Ms. Farah is admitted to practice in New York.

**STEPHANIE HACKETT** is an associate in Scott+Scott's San Diego office. She primarily practices in the area of antitrust litigation on behalf of classes and individual plaintiffs.

Ms. Hackett has represented class plaintiffs in *Dahl v. Bain Capital Partners, LLC, No. 1:07-cv-12388 (D. Mass.)* ($590.5 million settlement) and *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Ltd. Co.*, No. 12-3824 (E.D. Pa.) ($8 million settlement). She represented corporate opt-out clients in *In re Polychloroprene Rubber (CR) Antitrust Litigation*, MDL No. 1642 (D. Conn.); and *In re Plastics Additives (No. II) Antitrust Litigation*, MDL No. 1684 (E.D. Pa.).

Ms. Hackett's current cases include representing class plaintiffs in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 1:13-cv-07789 (S.D.N.Y.), an action challenging collusion regarding foreign exchange rates, and *Alaska Electrical Pension Fund v. Bank of America Corporation*, No. 1:14-cv-07126 (S.D.N.Y.), an action challenging collusion regarding the setting of the ISDAfix benchmark interest rate. Ms. Hackett also represents corporate opt-out clients in *In re: Aluminum Warehousing Antitrust Litigation*, MDL No. 2481 (S.D.N.Y.), a case challenging collusion regarding the spot metal price of physically-delivered aluminum.

As a part of her *pro bono* work, Ms. Hackett has worked with the San Diego Volunteer Lawyer Program, providing assistance to immigrant victims of domestic violence, and the ABA Immigration Justice Project, where she obtained a grant of asylum on behalf of her client.

Ms. Hackett is an active member of the American Bar Association's Antitrust Section and the San Diego La Raza Lawyers Association. She is also a contributing author to Market+Litigation, Scott+Scott's monthly newsletter.

Ms. Hackett is a graduate of the University of Iowa (B.S. Political Science, International Business Certificate, 2001) and of the University of Iowa College of Law (J.D., with distinction, 2005), where she was a recipient of the Willard L. Boyd Public Service Distinction award. While obtaining her law degree, Ms. Hackett worked as a judicial extern for the Honorable Celeste F. Bremer, United States District Court for the Southern District of Iowa. Ms. Hackett is admitted to practice in California.

In addition to her legal education, Ms. Hackett has engaged in accounting study and passed all four parts of the CPA exam. This background has proved particularly useful in cases involving the financial services industry.

**JENNIFER J. SCOTT** is an associate in Scott+Scott's San Diego office. Her practice focuses on prosecuting antitrust actions.

Ms. Scott represents pension funds and individual investors in *Dahl v. Bain Capital Partners, LLC*, No. 07-cv-12388 (D. Mass), an antitrust action alleging collusion in the buyouts of large publicly traded companies by private equity firms. The defendants in *Dahl* settled for $590.5 million, pending final approval. Ms. Scott also represents class plaintiffs in *Kleen*

24

*Products LLC v. International Paper*, No. 1:10-cv-5711 (N.D. Ill.), an action challenging price fixing in the containerboard products industry.

Currently, Ms. Scott represents plaintiffs in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-7789 (S.D.N.Y), challenging foreign-exchange market manipulation by many global financial institutions. Ms. Scott also represents corporate opt-out clients in *In re: Aluminum Warehousing Antitrust Litigation*, MDL No. 2481 (S.D.N.Y), a case challenging collusion regarding the spot metal price of physical-delivered aluminum.

She represented the indirect purchaser class in *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Company*, No. 2:12-cv-03824 (E.D. Pa.), a case challenging monopolistic conduct known as "product hopping" by the defendants. In *Mylan*, Ms. Scott drafted dispositive motions, prepared lead counsel to depose experts and key managing directors, and prepared for trial. The case settled for $8 million.

Ms. Scott is an active member of the American Bar Association's Antitrust Section. She is also a frequent contributing author to Market+Litigation, Scott+Scott's monthly newsletter.

Ms. Scott graduated *cum laude* from San Diego State University with a Bachelor of Arts in Psychology in 2007 and from the University of San Diego School of Law in 2011. At USD School of Law, she was a contributing writer to the *California Regulatory Law Reporter*, a judicial intern at the Equal Employment Opportunity Commission, and in-house intern at the Department of the Navy, Office of General Counsel. Ms. Scott is a member of the California Bar and admitted to practice in all state and federal courts in California.

Ms. Scott serves on the board of a San Diego nonprofit literacy organization focusing on early juvenile intervention and rehabilitation.

**JOSEPH V. HALLORAN** is an associate in Scott+Scott's New York office. Mr. Halloran practices in the areas of securities class action litigation, shareholder derivative actions, antitrust, and other complex litigation.

While at Scott+Scott, Mr. Halloran has primarily focused on securities and derivative cases, including *In Re FireEye, Inc. Securities Litigation*, No. 1-14-CV-266866 (Cal. Super. Ct., Santa Clara County); *Thomas Welch v. Pacific Coast Oil Trust*, No. BC550418 (Cal. Super. Ct., Los Angeles County); *IBEW Local No. 58 Annuity Fund v. Everyware Global, Inc.*, 14-cv-01838 (S.D. Ohio); *City of Irving Supplemental Benefit Plan v. Chopra*, 14-cv-09869 (C.D. Cal.); *In re IPC The Hospitalist Company, Inc. Consolidated Derivative Litigation*, C.A. No. 10258-CB (Del. Ch.); and *In re Duke Energy Corporation Coal Ash Derivative Litigation*, C.A. No. 9682-VCN (Del. Ch.).

Mr. Halloran has also been active in the firm's antitrust practice including *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 1:13-cv-07789 (S.D.N.Y.) and *Alaska Electrical Pension Fund v. Bank of America Corporation*, No. 1:14-cv-07126 (S.D.N.Y.).

Mr. Halloran graduated from Boston University (B.B.A., *magna cum laude*, 2008) and the University of San Diego School of Law (J.D., 2012). During law school, Mr. Halloran worked at the California Department of Corporations and was a senior associate for USD's Climate & Energy Law Journal.

Mr. Halloran is a member of the following professional associations: ABA Antitrust Section, ABA Young Lawyers Division, and the State Bar of California's Antitrust and Unfair Competition Law Section. Mr. Halloran is also a regular contributor to Scott+Scott's monthly newsletter. He is admitted to practice in California.

**YIFAN ("KATE") LV** is an associate in Scott+Scott's San Diego office. Her practice focuses on prosecuting antitrust actions with an emphasis on intercultural cartels.

Ms. Lv represents plaintiffs in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-7789 (S.D.N.Y), challenging foreign-exchange market manipulation by many global financial institutions. Ms. Lv also represents and advises the Firm's Asian clients.

Ms. Lv graduated from Tianjin University of Commerce, Tianjin, China, with a Dual Bachelors in Law and Economics in 2008, from Peoples University of China, Beijing, China with a Master in Law in June 2010, and from William & Mary School of Law in 2014.

Ms. Lv is bilingual, speaking fluent Chinese and English.

Ms. Lv is a member of the California, New York, and China Bars.

**HAL CUNNINGHAM** is a graduate of Murray State (B.S. Biological Chemistry) and the University of San Diego School of Law. Prior to joining Scott+Scott, Mr. Cunningham was engaged in research and development in the chemical and pharmaceutical industries.

Mr. Cunningham's practice focuses on securities class action, shareholder derivative, and consumer litigation. While at Scott+Scott, Mr. Cunningham has worked on several cases that have achieved notable results, including *In re Washington Mutual Mortgage Backed Securities Litigation*, No. C09-0037 (W.D. Wash.) (securities settlement of $26 million). Mr. Cunningham is also involved in the Firm's securities lead plaintiff motion practice, having briefed several successful lead plaintiff applications for the firm's institutional and individual clients.

Mr. Cunningham is a regular contributor to and editor of Scott+Scott's monthly newsletter, MARKET+LITIGATION.

Mr. Cunningham is admitted to practice in California.

**GARY D. FOSTER**'s main practice areas include antitrust, securities, and complex litigation, which includes such cases as *Dahl v. Bain Capital Partners, LLC*, No. 1:07-cv-12388 (D. Mass.) and *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Ltd. Co.*, No. 2:12-cv-03824 (E.D. Pa.). Mr. Foster is a member of the West Virginia State Bar.

Mr. Foster is a graduate of West Virginia Wesleyan College (B.S., Biology, *cum laude*, 1999) and of the West Virginia University College of Law (J.D., 2002), where he earned a position on the Moot Court Board and Lugar Trial Association. During law school, Mr. Foster served as a law clerk for the West Virginia Supreme Court of Appeals, after which he assumed a full-time term position as a law clerk for the Hon. Thomas C. Evans, III, of the Fifth Circuit Court of West Virginia.

**JOSEPH A. PETTIGREW**'s practice areas include securities, antitrust, shareholder derivative litigation, and other complex litigation, including work on the following cases: *Dahl v. Bain Capital Partners, LLC*, No. 07-cv-12388 (D. Mass.); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL 1720 (E.D.N.Y); and *Marvin H. Maurras Revocable Trust v. Bronfman*, 12-cv-3395 (N.D. Ill.).

Mr. Pettigrew graduated from Carleton College (B.A., Art History, *cum laude*, 1998) and from the University of San Diego School of Law (J.D., 2004). Mr. Pettigrew has served on the board and as legal counsel to several nonprofit arts organizations.

Mr. Pettigrew is admitted to practice in California.

**TROY TERPENING**'s practice centers on securities class action litigation, shareholder derivative lawsuits, corporate governance, and consumer litigation. In addition, Mr. Terpening is actively engaged in a number of healthcare cases, including *In re Aetna UCR Rates Litigation*, MDL No. 2020 (D.N.J.) ($120 million settlement pending) and *In re WellPoint, Inc. Out-of Network "UCR" Rates Litigation*, MDL No. 2074 (C.D. Cal.). Prior to joining Scott+Scott, Mr. Terpening worked in-house for both venture capital and large financial institutions. He is a member of the California Bar.

Mr. Terpening is a graduate of San Diego State University (B.A., 1998) and California Western School of Law (J.D., 2001). While in law school, Mr. Terpening served as President of the Association of Trial Lawyers of America (ATLA) Student Chapter and was selected for two consecutive years to represent his school on the Advocacy Honor's Board negotiation team in American Bar Association national negotiation competitions.

Mr. Terpening has taught Legal Research and Writing at the University of San Diego and Business Law at San Diego Mesa College. He frequently speaks at seminars throughout California, Washington, and Nevada concerning real estate transactions, finance, and taxation.

Mr. Terpening is actively involved in his community and currently serves on the Board of the Clairemont Town Council. He also regularly volunteers with the Legal Aid Society where he trains students in mediation techniques so they can help resolve disputes within their respective schools.

**EDWARD SIGNAIGO**'s main areas of practice are antitrust, consumer, and securities litigation. Representative matters include *Kleen Products LLC v. Packaging Corp. of America*, Civil Action No. 1:10-cv-5711 (N.D. Ill.), *In re Domestic Drywall Antitrust Litigation*, No. 13-MDL-2437 (E.D. Pa.), *Mylan Pharmaceuticals, Inc. v. Warner Chilcott Public Limited Co.*, Civil

27

Action No. 12-3824 (E.D. Pa.), *In re WellPoint UCR Out-of-Network "UCR" Rates Litigation*, MDL No. 2074 (C.D. Cal.), and *City of Austin Police Retirement System v. Kinross Gold Corp.*, No. 12-cv-1203 (S.D.N.Y.).  Prior to joining Scott+Scott, Mr. Signaigo practiced at one of San Diego's premier personal injury firms.

Mr. Signaigo graduated from the University of San Diego (B.A., *magna cum laude*, 2006) and Santa Clara University School of Law (J.D., 2009).  During law school, Mr. Signaigo was an editor on the Santa Clara University School of Law Computer & High Tech Law Journal and studied abroad at the University of Oxford and the International Crime Tribunal for the Former Yugoslavia.  He is a member of the California Bar.