**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: HERBAL SUPPLEMENTS MARKETING AND SALES PRACTICE LITIGATION | MDL No. 2519<br>Case No.: 15-cv-5070<br><br>Hon. John W. Darrah |
| THIS DOCUMENT RELATES TO ALL ACTIONS | **PLAINTIFFS' APPLICATION FOR APPOINTMENT OF LEAD CLASS COUNSEL AND STEERING COMMITTEE** |

## I.   INTRODUCTION

Plaintiffs[1], who are represented by a coalition of 19 accomplished consumer law firms across the country and are among the first-to-file putative class actions in the country, respectfully seek an order appointing Robert A. Clifford of Clifford Law Offices as Lead Class Counsel ("Lead Counsel") on behalf of the proposed nationwide and state classes of consumers who purchased herbal dietary supplements that did not contain ingredients on the product label or contained ingredients not identified on the product label from Defendants Walgreen Co. ("Walgreens"), GNC Holdings, Inc. ("GNC"), Target Corporation ("Target"), and Wal-Mart Stores, Inc. ("Wal-Mart") and NBTY, Inc.

Plaintiffs also request that the Court establish a Steering Committee structure to facilitate the efficient and most effective representation of the proposed classes, consisting of: (1) Track Counsel and Discovery Liaison for the Target cases; (2) Track Counsel and Discovery Liaison for the Wal-Mart cases; (3) Track Counsel and Discovery Liaison for the Walgreens cases; (4) Track Counsel and Discovery Liaison for the GNC and  NBTY cases;

---

[1] Plaintiffs' counsel in support of this application include the individuals and firms identified in Exhibit 1.

(5) Expert Chairperson for the overall litigation; (6) Discovery Chairperson for the overall litigation and (7) Liaison Counsel for the plaintiffs in the overall litigation.

Proposed Lead Counsel Mr. Clifford will, in consultation with all counsel in these collective actions, recommend for appointment persons to the positions on the Steering Committee based on criteria that will best advance the interests of the alleged classes, including but not limited to, experience in consumer class actions and complex litigation, personnel and financial resources, demonstrated commitment to the successful prosecution of these actions to date, knowledge and expertise in the area of supplements testing and manufacturing, and demonstrated ability to work cooperatively with others.

## II.   LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 23(g)(3), this Court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." In doing so, the Court should:

> inquire into the work counsel has done in investigating and identifying the particular case; counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; counsel's knowledge of the applicable law; the resources counsel will commit to representing the class; and any other factors that bear on the attorney's ability to represent the class fairly and adequately.

Manual for Complex Litigation-4th at ¶ 21.271. These factors for appointing interim class counsel are drawn from the Rule 23(g)(1) factors for selecting class counsel. Courts may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). While "[n]o single factor should necessarily be determinative in a given case," Fed. R. Civ. P. 23 Advisory Committee Note (2003), the experience and ability of the firms to handle class action litigation becomes crucial when all firms have undertaken independent investigations into the underlying facts and legal claims.

If more than one adequate applicant seeks to be designated, "the court must appoint the applicant best able to represent the interests of the class." See Fed. R. Civ. P. 23(g)(2) (emphasis added). Further, a court may appoint more than one firm to act in a leadership capacity as part of a Steering Committee "when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making." Manual for Complex Litigation-4th at ¶ 10.221.

### III.   ARGUMENT

#### A.   Overview

Proposed Lead Counsel and the counsel supporting this application possess the breadth of multi-district litigation experience and technical expertise required to litigate these actions effectively and efficiently. Moreover, Proposed Lead Counsel and supporting counsel have extensive experience in crafting and obtaining multi-state class certifications in consumer rights actions, including those involving mislabeled and adulterated food and supplement products, under a variety of federal and state consumer protection laws.  The procedural and operational management of discovery and class certification efforts is integral to this case, the appointment of experienced and facilitative leadership counsel in this area is vital to protecting the putative class members' claims.  As more fully set forth below, Plaintiffs' attorneys have a proven track record in consumer protection and class action practice, including a wide range of cases involving mislabeled and adulterated food.

As evidenced by their actions to date, Proposed Lead Counsel and supporting counsel are fully committed to this litigation and its success, and as set forth in the supporting Declaration of Robert A. Clifford, have more than adequate capital and personnel resources to vigorously prosecute this action.  Moreover, they are committed to eliminating redundancy in the prosecution of this case by, among other things, efficient and collaborative party and

non-party discovery. Plaintiffs' counsel have worked collaboratively to form and organize plaintiffs' counsel from across the country (many of whom have their own impressive professional experience in leading similar type cases and could well be proposed as Lead Counsel in their own right) to coordinate efforts in the many cases filed and to provide an orderly presentation of the cases transferred to this Court. All current counsel of record for the individual plaintiffs and classes were invited and welcome to participate in the collaborative efforts. As such, Plaintiffs propose an inclusive leadership structure designed to draw on the strength and experience of the many counsel involved.

In the process of Plaintiffs' counsel reaching agreement on this leadership structure proposed to the Court, Plaintiffs' counsel organized themselves, meeting in-person in Chicago shortly after the coordination and transfer of this matter to this Court for a thoughtful exchange of goals and the development of common work product, for the advancement of the putative class members' interests. The cooperative efforts made clear that many of Plaintiff' counsel had engaged leading experts and invested resources in the development of sound theories and supporting evidence.

In these efforts, Plaintiffs have already achieved significant results on behalf of the putative class. For example, Petitioners retained and consulted with leading experts on DNA barcoding testing; conducted extensive interviews with class members from across the country; filed the first class action complaints; organized and actively engaged what a very experienced and geographically diverse coalition of plaintiffs and counsel; and conducted extensive factual investigation and legal research in support of Plaintiffs' extensive litigation efforts.

Plaintiffs recommend an organizational structure that will provide for the efficient prosecution of these related actions, while providing for the substantive involvement of well-

qualified and experienced consumer and class action counsel with specialized knowledge and experience in large, complex litigation, including cases of mislabeled and adulterated food and supplements many with the factual underpinnings of the present actions in particular.

Importantly, in addition to exceptional legal skills, lawyers who cooperate with others, and who take into account and manage often-competing interests and viewpoints, are essential to a successful MDL prosecution. Mr. Clifford initiated efforts to engage all other counsel in this MDL for the common goal of advancing this case on behalf of affected consumers. Plaintiffs' counsel collectively agreed to advance the interests of the putative class with vigorous determination, respect and collegiality. Accordingly, the Proposed Lead Counsel and supporting counsel have early-on committed to, and continue to, demonstrate ethical and professional comportment while remaining focused on the efficient prosecution of this action.

Plaintiffs represent many of the earliest-filed cases against the defendants on behalf of consumers across the country. Proposed Lead Counsel, and supporting counsel, have worked to advance and, more importantly, protect the claims of putative class members from the start by collecting and preserving purchased products; consulting with and retaining leading experts, including those who have performed similar analysis on behalf of the FDA; and conducting product analysis. Several of the counsel supporting this motion began testing herbal supplements using the DNA test methods at the center of these lawsuits more than a year before the New York Attorney General released his findings, which were widely reported in various media channels and triggered many of these lawsuits. Plaintiffs' counsel have collectively submitted, at considerable expense, dozens of herbal supplements for DNA testing. Plaintiffs' counsel have worked closely with leading DNA testing labs to identify the tests most relevant to the claims in these lawsuits, including new testing methodologies that overcome many of the challenges made by the industry to the testing methods used by the

New York Attorney General. Plaintiffs' counsel have also developed deep knowledge and insight into herbal supplements manufacturing processes and protocols, including attending industry seminars and other promotional and educational forums.

Proposed Lead Counsel and supporting counsel have proven that they are fully committed to this litigation and, collectively, have unparalleled resources to support what is likely to be litigation of great size and of equally great importance to millions of consumers around the country. Indeed, Plaintiffs already have created an initial litigation fund to indicate commitment to and funding for their efforts on behalf of consumers. Unquestionably, a case of this magnitude requires an experienced and skilled class counsel structure and ample resources to adequately represent the Class and protect their interests.

The cases concern the rights of, and damages to, thousands of consumers spread throughout the nation. Proposed Lead Counsel and supporting counsel consistently demonstrated their commitment and their ability to effectively and efficiently represent the interests of the greatest possible number of these class members, as they have been leading a nationwide coalition of class members and their counsel who are spread across the country. They are the best choice for interim appointment under Federal Rules of Civil Procedure, Rule 23(g).

**B.**    **The Leadership Structure For This Consolidated Litigation Should Include A Lead Counsel With A Steering Committee.**

There potentially exist five distinct tracks with classes in this litigation: Walgreens cases, Wal-Mart cases, Target cases, GNC cases and NBTY cases[2]. Each retailer may have interests or issues unique to that retailer, thus warranting the retailer-specific tracks. On the

---

[2] There is a possibility that GNC and NBTY can be led by one team.

6

other hand, the classes undoubtedly have many common issues and interests. While the issues particular to each retailer must be vigorously litigated on behalf of those affected consumers, the cases should not be so segregated that the overarching common issues relating to liability, proximate cause and damages, are either overlooked or unnecessarily or repeatedly replayed.

To economize resources and maximize consistency for all parties, Plaintiffs' counsel should have the benefit of a Lead Counsel, namely, Robert A. Clifford, with oversight for the entire litigation, in conjunction with a Steering Committee that provides Track counsel leadership and discovery leadership for each of the case tracks, along with Chairpersons for Discovery and Experts to synchronize and unify the various case tracks and their common issues.

In order to avoid conflicts of interest, while at the same time promoting harmonious efforts on behalf of the Class, Plaintiffs respectfully request that the Court accept Mr. Clifford's recommendation of one attorney for each retailer class to be appointed by this Court as Track Counsel and for one attorney to be appointed as an overall Expert Chairperson[3]. Plaintiffs submit that expert discovery in these actions will take on particular importance as a common issue given the core issues surrounding lab testing of herbal supplements and supplement raw materials. Indeed, the MDL panel consolidated these actions in one Court largely because of the common issues arising from the various test methods applicable to herbal supplements. Proposed Lead Counsel and Track Counsel would jointly recommend a discovery liaison for each retailer class, who would be charged with coordinating written discovery, party depositions, FOIA requests, a document depository, confidential and privileged documents, electronically stored information ("ESI") issues, third-party subpoenas,

---

[3] The expertise needed is common to all cases and, therefore, several efficiencies are satisfied by the Expert Chairperson, including cost-efficiency as it relates to experts.

and other discovery issues unique to each case track. The discovery chairperson, expert chairperson and liaison counsel would further coordinate with the Track Counsel and Lead Counsel for the purpose of organizing and synchronizing efforts and common issues for the benefit of all Class members. *See* FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION, FOURTH (4th ed. 2004) (hereinafter, the "Manual") § 10.221, p.25 (the Court should appoint a "coordinating committee [which is] most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making."). The proposed Steering Committee would promote efficiency, eliminate redundancy, and enable collaboration among the retailer classes, while providing the defendants with a single point of contact for retailer-specific discovery issues, as well as the overall litigation.

Particularly where distributors and manufacturers overlap amongst the retailer defendants, "common" discovery will require coordination and streamlining of that discovery, and its development in this litigation, through trial. Similarly, "unique" discovery requests can be easily relayed to the committee through the Track Counsel and the respective discovery chairpersons, such that the Proposed Steering Committee may incorporate that discovery into the overall discovery plan for the consolidated litigation, thus promoting efficiency in the discovery process.

    **C.**     <u>**With The Support Of Plaintiffs' Broad-Based Coalition, The Court Should Appoint Lead Counsel and a Steering Committee Comprised Of Track Counsel and Discovery Liaison Counsel For Each Track With Chairpersons For Discovery and Experts.**</u>

Rule 23(g)(3) provides that the Court may designate counsel to act on behalf of a putative class before determining whether to certify the action as a class action.

Unquestionably, this litigation requires such appointment. In appointing lead counsel, the Court must consider:

> (i)     the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)     counsel's knowledge of the applicable law; and
>
> (iv)     the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Further, the Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Such additional factors include "the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court." MANUAL § 10.224.

**(1)     Lead Counsel.**

Appointing class counsel ensures "efficiency and economy without jeopardizing fairness to the parties" in litigation such as this, where so many parties and interests are involved. MANUAL § 10.221. The Manual describes the responsibilities of lead counsel as follows:

> *Lead counsel.* Charged with formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation. Typically they act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met. *Id.*

Proposed Lead Counsel, Robert A. Clifford, satisfies all of the Rule 23(g) factors and is the counsel best suited to represent the interests of the many consumers in this litigation. Mr. Clifford has an unparalleled breadth of qualifications to serve as Lead Counsel. His prior experience as Lead Counsel in overseeing these types of cases, his proven ability to vigorously litigate and resolve complex litigation of this scope, his ability and willingness to devote the necessary resources to prosecute these types of actions, and his commitment to promoting civility and professionalism, cause Mr. Clifford to have a proven track record of successfully bringing cases to their optimal conclusion. Mr. Clifford has, throughout his career, conducted himself so as to earn the respect of colleagues on both sides of the professional Bar. His actions to date have demonstrated that he seeks to facilitate, coordinate and work cooperatively with both Plaintiffs' counsel and defense counsel. He has not attempted to isolate or dominate. Indeed, Mr. Clifford very early-on initiated contact with all plaintiffs' counsel, and hosted a plaintiffs' counsel forum for the purpose of exchanging ideas and uniting to advance the case.

### (2) Liaison Counsel.

The Manual describes the responsibilities of liaison counsel as follows:

> *Liaison counsel.* Charged with essentially administrative matters, such as communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convening meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions. Such counsel may act for the group in managing document depositories and in resolving scheduling conflicts. Liaison counsel will usually have offices in the same locality as the court. The court may appoint (or the parties may select) a liaison for each side . . . .

MANUAL § 10.221.

### (3) Additional Criteria

Finally, some courts have required "evidence of diversity, in terms of race and gender, of any class counsel" appointed to represent a large and diverse class of individuals. *In re J.P.*

*Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 277 (S.D.N.Y. 2007); *see also In re Dynex Capital, Inc. Sec. Litig.*, 05 Civ. 1897 (HB), 2011 WL 781215, at *9 (S.D.N.Y. Mar. 7, 2011) (same). Plaintiffs' broad-based coalition offers more diversity than any competing proposal for appointment of class counsel. The highly skilled attorneys amongst Plaintiffs' counsel include male and female lawyers, of many races and ethnicities, and a mix of urban and rural, solo and large firm practitioners. Plaintiffs are proud to propose any of the attorneys joining this motion as worthy of key positions in this litigation.

  **D.**   <u>**Proposed Lead Counsel, Liaison Counsel, Track Counsel, Discovery Liaison Counsel, the Discovery and Expert Chairpersons, and the Coalition They Represent Have Worked Diligently on Behalf of the Class.**</u>

The first Rule 23(g) factor – the work counsel has done in identifying or investigating potential claims in the action – strongly supports appointment of Plaintiffs' Proposed Lead, Liaison, Track, and Discovery Liaison Counsel, along with the Discovery and Expert Chairpersons comprising the additional seats on the committee.

From the onset of this litigation, Proposed Lead Counsel and the supporting attorneys who are suited for potential leadership roles in this case have valued the efficient use of judicial resources. Plaintiffs' coalition has worked to coordinate and avoid redundancies in the various districts where their individual cases were pending, and have taken care to economize and focus resources for the sake of the class. No other single lawyer or firm has duplicated the work done by Plaintiffs, which is a direct result of the coordination and collaboration among Plaintiffs' counsel.

Indeed, Mr. Clifford, and his proposed leadership structure, have the exact attributes the Manual suggests the Court consider when appointing leadership in complex litigation.

Specifically, the Manual (MANUAL § 10.224) advises that the Court should assess the following factors:

1. qualifications, functions, organization, and compensation of designated counsel;

2. whether there has been full disclosure of all agreements and understandings among counsel;

3. would-be designated attorneys' competence for assignments;

4. whether there are clear and satisfactory guidelines for compensation and reimbursement, and whether the arrangements for coordination among counsel are fair, reasonable, and efficient;

5. whether designated counsel fairly represent the various interests in the litigation—where diverse interests exist among the parties, the court may designate a committee of counsel representing different interests;

6. the attorneys' resources, commitment, and qualifications to accomplish the assigned tasks; and

7. the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court—experience in similar roles in other litigation may be useful, but an attorney may have generated personal antagonisms during prior proceedings that will undermine his or her effectiveness in the present case.

As set forth herein, proposed Lead Counsel and the leadership coalition Plaintiffs propose easily satisfy the criteria for appointment.

**E.** **Proposed Lead Counsel Supporting Counsel and Plaintiffs Already Have Taken Significant Steps on Behalf of the Consumer Class.**

With proposed Lead Counsel Robert A. Clifford at the helm, Plaintiffs' coalition has already committed substantial time and effort to researching and identifying the claims of Plaintiffs and the putative Class.  For example, this group (i) has expended considerable resources in retaining consulting experts specializing in the science and regulatory expertise, necessary in this case; (ii) retained consultants well-versed in the process, manufacture,

production, and distribution of Herbal Supplement products; (iii) retained consultants to assist with electronic discovery; and (vi) has a litigation strategy underway that avoids redundancy and optimizes efficiencies and transparency moving forward.

Mr. Clifford and supporting counsel are ready and willing to prosecute this action on behalf of Plaintiffs and the putative Class to the fullest extent possible. To this end, Proposed Lead Counsel has worked cooperatively with local counsel for defendants, as well other Plaintiffs' counsel, in advancing the concerned claims. In addition, Plaintiffs' Counsel have reviewed significant documentation and publications from experts who generally work on behalf of the food and drug industry. Proposed Lead Counsel has closely reviewed such articles with consulting experts who can easily cut wheat from chaff, thus advancing the Class' interests.

Mr. Clifford and supporting counsel will continue their advocacy on behalf of the Class, but will do so with the assistance of the other fine attorneys aligned with Plaintiffs. At all times, this team will conduct itself with transparency, with a keen awareness of the ethical obligations to the clients and to the Court, and with a dedication to civility in the profession.

**F.** **The Leadership Structure Proposed by Plaintiffs Offers Optimal Organization and Leadership to Achieve the Best Possible Results Going Forward.**

The leadership structure recommended by Proposed Lead Counsel, and endorsed by Plaintiffs, will coordinate pretrial activities so as to ensure the efficient use of resources and to eliminate redundancies. Mr. Clifford will recommend for appointment highly experienced and qualified attorneys to prosecute this complex litigation on behalf of the consumer class. Committee members will advocate ethically, with civility and without distraction.

Under the leadership structure envisioned by Plaintiffs, Proposed Lead Counsel, Liaison Counsel, Track Counsel and the designated Discovery Liaison Counsel for each retailer class, plus the Chairpersons for Discovery and Experts, have specific responsibilities. These responsibilities include:

      **(1)**       **Lead Counsel.**

Robert A. Clifford will lead the cases with a cohesive and efficient litigation strategy. He will prepare the cases for trial, exhausting discovery and selecting only the best experts to submit for trial in support of the evidence and law. Mr. Clifford will personally try the cases on behalf of the Class, in conjunction with a trial team, thus conferring a significant benefit to the Class. Mr. Clifford will oversee and coordinate the various tracks, providing guidance for consistency in the litigation strategy, and in reporting all pre-trial activities to the Court. Mr. Clifford will monitor case expenses and billing, in working toward a fair recovery for the class. He will, as lead counsel, confer with the track counsel and facilitate constructive dialogue amongst the lawyers, including defense counsel. Bob Clifford will ensure that class representatives are apprised of the litigation strategy. With respect to any effort to resolve the cases, Mr. Clifford will only advocate for what is in the best interest of the Class, and not the best interest of counsel. Mr. Clifford is undoubtedly the most appropriate and experienced candidate to lead and oversee this litigation.

**(2)  Liaison Counsel.**

This attorney will coordinate the commonalities amongst the cases; will facilitate consistency across the five cases, including with case management orders, protective orders, billing and accounting; will report to the Court at routine status hearings; and will generally ensure the synchronization of the cases amongst Plaintiffs. Liaison Counsel will provide a secondary failsafe to ensure that no duplicative or unauthorized work is taking place.

**(3)  Track Counsel.**

Each of the cases against the five retailers is to have one Track Counsel. The Track Counsel have responsibility for the management and resolution of issues unique to the cases specific to each retailer. To assist in these retailer-specific matters, Track Counsel will jointly recommend with Mr. Clifford a Discovery Liaison Counsel for each retailer class. Track counsel will serve as trial counsel with Mr. Clifford.

**(4)  Discovery Chairperson.**

This Committee member is responsible for the oversight of universal discovery matters commonly relating to the defendants and third parties, including communicating with the Office of the New York Attorney General; facilitating compliance with the Hague Convention as necessary; developing and implement uniform ESI protocols and processes; coordinating with the Discovery Liaison Counsel for each retailer class; and coordinating with the Expert Chairperson.

**(5)  Experts Chairperson.**

This Committee member will continue to identify, retain, and consult with the foremost consulting and testifying experts regarding genetic coding; DNA; labeling

and FDA compliance; damages, value of injunctive relief, and attorneys' fees. Plaintiffs wish to not yet disclose their experts, but in addition to Mr. Clifford's experts, other counsel have made efforts to share their experts for the purpose of unifying the Plaintiffs' counsel and advancing the interest of the Class.

### G.    Fees for this Litigation Will Reflect the Precedent Supplied by this Court and the Seventh Circuit.

To ensure uniformity, clarity and transparency, Lead Counsel will supply all counsel a spreadsheet template containing designated fields that must be completed and submitted to a designated time keeper on a monthly basis.  These shall be submitted to the time keeper no later than the 15th day of the following month. All time shall be submitted in increments of tenths of an hour, and each time entry shall indicate who specifically authorized the time being submitted by each individual firm.  All time submissions shall be for common benefit work only.  No time submission will be approved if solely for a particular client's case advancement. Lead Counsel submits use of the following rates, which reflect reasonable and typical rates for the Chicago region, as well as the experience of the lawyer.[4]  The funding bands proposed are as follows:

**Partners:**

| | |
|---|---|
| More than 30 years | $750 |
| 21-30 years of practice | $675 |
| 11-20 years of practice | $600 |
| 6-10 years of practice | $550 |
| 1-5 years of practice | $475 |
| **Associates** | $350 |

---

[4] The proposed fees are wholly subject to the Court's discretion and modification.

| | |
|---|---|
| **Contract Attorneys** | $225 (regardless of experience) |
| **Paralegals and Law Clerks** | $150 |

If the litigation succeeds in creating a common fund, the expected percentage sought would reflect the ratio of (1) the fee to (2) the fee plus what the class members received. *Pearson v. NBTY, Inc*., 772 F.3d 778 (7th Cir. 2014). Importantly, application of this ratio incentivizes class counsel to design the claims process so as to maximize the settlement benefits actually received by the class, rather than formulating claims-filing procedures that discourage filing. *Id.* Courts typically calculate 25% of the fund as the "benchmark" for a reasonable fee award in cases involving recoveries of between $5 million and $15 million. *Abrams v. Van Kampen Funds, Inc*., 2006 WL 163023, at * 19 (N.D.Ill. Jan. 18, 2006). However, certain circumstances which arise in the litigation might warrant a different percentage, which is why the aforementioned ratio is important. Nonetheless, any departure or "special circumstances" requires adequate support and explanation in the record. *Id*. Unequivocally, Mr. Clifford intends to submit to this Court a fully transparent fee proposal that utilizes the Seventh Circuit guidelines, wholly subject to adjustment by this Court in any manner prescribed by this Court, which will be at maximum of the lesser amount of the benchmark of 25% and a 2.3 multiplier of common work lodestar.[5]

---

[5] Other applicants undoubtedly have alternate fee proposals or even alternate committee structures. However, Mr. Clifford has given careful thought to the proposed committee structure and fees. A lead counsel can attempt to economize on assistance and expertise in a case, intending that to serve as a cost-savings. Mr. Clifford has observed such efforts backfire, such that important matters like verifying facts with a client before pleading, or adequately counseling class representatives on any proposed litigation strategy or a proposed settlement, have in the past been overlooked by those who think they did not need the help of other capable counsel, or did not want any checks and balances. What may be initially viewed, on paper, as cost effective to the class, can be ultimately detrimental to the class' claims, such that only a diminished recovery, or worse, no recovery, is possible on behalf of the class. Mr. Clifford's considerations wholly protect and advance the interests of the Class. Again, the Seventh Circuit's ratio is the guide as to fees.

Lead Counsel will also regulate expenses necessary for the common advancement of all plaintiffs' claims. To accomplish the goal of controlling expenses, each Track Counsel shall submit to Lead Counsel a list of all previous month's expenses for the individual tracks by the 15th day of the following month. Each Track Counsel shall be responsible working with the others Track Counsel and Lead Counsel to insure the avoidance of duplicate expenditures and the best use of common items. All receipts for any expenditure in this matter must be retained and submitted for reimbursement, and all expenditures must be approved by Lead Counsel or the Track Counsel for a particular retailer. Mr. Clifford has already initiated a litigation fund with numerous Plaintiffs' counsel with contributions made by all firms committed to this litigation and in support of the leadership structure proposed herein.

## H. Proposed Lead Counsel and Supporting Counsel Have Formidable Experience and Extensive Knowledge of the Applicable Law.

The second and third enumerated factors under Rule 23(g)—counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action and counsel's knowledge of the applicable law—also strongly support appointment of Plaintiffs' Proposed Lead Counsel and leadership structure. Courts appointing lead counsel have placed great emphasis on proposed class counsel's experience, knowledge of applicable law and resources. *See generally In re Cree, Inc. Sec. Litig.*, 219 F.R.D. 369, 373 (M.D.N.C. 2003) (class counsel "has sufficient resources to prosecute this action in a thorough and expeditious manner and to provide adequate representation to the members of the purported class").

Here, Proposed Lead Counsel, and the counsel in support of this submission, have significant experience leading the prosecution of complex matters, including class actions,

consumer fraud claims, related statutory causes of action, and common law breach of contract, negligence, breach of fiduciary duty, unjust enrichment, and injunctive relief claims. They have repeatedly served as lead counsel of co-lead counsel in such cases, have obtained multi-million dollar verdicts and settlements in complex litigation, are well-versed in the applicable law, and will draw on their substantial knowledge and experience to effectively represent plaintiffs and the putative class in this matter.

### (1)      Proposed Lead Counsel Robert A. Clifford

Robert A. Clifford founded a personal injury law firm in his name in 1984. For decades, the firm has worked to establish a national reputation for protecting consumers' and patients' rights, having been named by the National Law Journal in 2013 as one of the Top 10 Litigation Boutiques in the country. NLJ also named his firm one of the top 20 "Plaintiff's Hot List" in 2003 and in 2003 as one of the 25 "Go-To" plaintiffs' law firms in the country. This year, Mr. Clifford was once again named to the list of 100 Most Powerful Chicagoans by *Chicago Magazine*. Clifford is noted with the others for his nationally renowned reputation and recognition for his work on many high-profile cases.

Mr. Clifford has worked on a number of complex litigation lawsuits over the past three decades including multi-district and class cases ranging from large commercial aircraft crashes to food misbranding cases, data breaches and unauthorized disclosures of patients' medical data. One of his most distinguished accomplishments was serving as liaison counsel for all of the interests that lost property after the al Qaeda terrorists hijacked and piloted two Boeing 767 aircraft that slammed into the World Trade Center Towers in New York on September 11, 2001. Numerous lawsuits were filed against American Airlines and United Airlines for their multiple failures in properly screening the terrorists who eventually boarded these flights. These complex suits were brought on behalf of insurance companies and

business interests from around the globe. With Robert A. Clifford as liaison counsel, the cases settled in 2012 for $1.2 billion.

Mr. Clifford also has served as liaison counsel or lead counsel in several commercial jet crashes including being named Track counsel in Continental Connection Flight 3407 that crashed near Buffalo, New York, killing 50 people on February 12, 2009. He served on the Plaintiff's Discovery Committee of the American Eagle crash of Flight 4184 in 1994 as well as led the litigation in the crash of Comair Flight 5191 in Lexington, Kentucky, that crashed on August, 2006, representing victims' families from the United States and Canada.

Mr. Clifford presently serves as lead counsel in a data breach class action filed against Advocate Medical Group, Illinois' largest healthcare system. The Advocate data breach affected more than 4 million patients, and is reportedly the largest health care data breach in the nation's history. The case remains pending in state court.

Mr. Clifford is also engaged in the complex international class litigation relating to the collapse of the Mt. Gox Bitcoin Exchange, pending in the Northern District of Illinois. Mr. Clifford has been nominated to serve as Co-chair of the United States Settlement Committee in the Mt. Gox Bitcoin Proposed Class Settlement.

Additionally, Mr. Clifford serves as Class counsel in a class action filed against Pella Windows Corporation, a nationwide window manufacturer and distributor. The Pella Windows class action was filed in 2006 and has been a hotly contested litigation since that time. On September 12, 2014, Judge James B. Zagel appointed Robert A. Clifford "as class counsel for his demonstrated skills in the field." Judge Zagel also recognized that Mr. Clifford was undoubtedly capable and will best serve the interests of the class. Importantly, Robert A. Clifford possesses substantial experience in litigating causes of action related to food

misbranding and various other consumer law violations on behalf of consumers across the nation.

Most recently, the lead plaintiff in NCAA concussion litigation retained Bob Clifford to represent him and advocate on his behalf, after learning of a proposed settlement that reflected neither his interests nor those of similarly injured current and former NCAA players. Bob Clifford's has established his reputation as the premier defender of the rights of those with small voices not heard.

Bob Clifford's practice is eclectic. He has handled numerous cases involving complex multi-million dollar cases involving commercial fraud litigation. For example, Clifford recently settled a case on behalf of a group of uninsured patients from Resurrection Hospital who were charged excessively more than insured patients. The settlement provided substantial benefits to the insured patients including an opportunity to apply for a recalculation of past hospital bills by one of the Chicago area's largest health provider networks. He also represented a whistleblower in a qui tam case against Medline which settled for $85 million. He is presently representing a putative class of business owners who supply health insurance to employees, and their employees, against a major insurance company for allegations of fraud and purposefully miscalculated co-pays.

Mr. Clifford has received many awards and accolades recognizing his professionalism and leadership. He was also named as the recipient of the 2014 American Inns of Court Professionalism Award for the Seventh Circuit. Mr. Clifford, who was President of the Chicago Inn of Court from 1994-95, was presented with the award at the Seventh Circuit Judicial Conference in Chicago on May 12, 2014. He was selected from a national panel of members of the American Inns of Court Awards Committee that included Justices from the Supreme Courts of Delaware and Tennessee as well as from various U.S. Courts of

21

Appeal. The award is given to a lawyer whose life and practice has demonstrated "sterling character and unquestioned integrity, coupled with ongoing dedication to the highest standards of the legal profession and the rule of law." Clifford was recognized at the American Inns of Court annual Celebration of Excellence at the Supreme Court of the United States Oct. 25 with Justice Ruth Bader Ginsburg serving as host. Unquestionably, Mr. Clifford's ethics and civility are renowned in the profession. Litigation of this size and complexity demands a lawyer with his legal skill, as well as his personal and professional comportment.

Martindale-Hubbell named Robert Clifford among Chicago's Top Rated Lawyers of 2014. This highly competitive award means that he has an AV Preeminent rating, which is the highest rating given by the peer review group. In using objective standards, the rating service looks at a lawyer's high ethical standards and professional ability determined by one's peers and the judiciary. Legal ability is determined in five key areas: legal knowledge, analytical capabilities, judgment, communication ability and legal experience. AV Preeminent means that a lawyer is rated in the 4.5-5.0 range, the highest on a 1-5 scale. Clifford ranked a perfect "5″ by Martindale-Hubbell. He also has the distinction of being selected by Super Lawyers, a peer-review organization, as the number one lawyer in the state of Illinois in 2014, marking the sixth consecutive year of earning this top honor. He was named by Chicago Magazine as one of the 100 Most Powerful Chicagoans in 2014 and 2013 and was named the 2012 Chicago Lawyer Person of the Year based upon his trial accomplishments, his contributions to the legal community and to the Chicago area. He received the Justice William J. Brennan Award from the University of Virginia School of Law in 2007.

He was selected again as one of Crain's Chicago Business 2013 "Who's Who in Chicago Business" in the area of law. He was named among Crain's 2011 Chicago Business' top civic, cultural and professional leaders in Chicago, which recognized 750 individuals that

everyone "needs to know." In, 2011, Chicago Magazine profiled him in an article detailing his work. In 2010, he was named Top Lawyer of the Year in Medical Malpractice in Chicago by the oldest peer-reviewed organization in the country, Best Lawyers, which featured him on the cover of their guide. Best Lawyers in America also named Mr. Clifford the Personal Injury Attorney Lawyer of the Year in 2012 and 2009 based upon his particularly high ratings for his ability, professionalism and integrity in personal injury and aviation accident litigation. Leading Lawyers of Illinois named him the Top Attorney in the state in 2013 for the sixth consecutive year. Mr. Clifford was named one of the Top 10 Attorneys Who Raised the Bar Over the Last Decade in Chicago by the Law Bulletin Publishing Company. He was featured on the cover of the inaugural 2005 issue of Illinois Super Lawyers where they called him "Chicago's Most Likable Tough Guy." The feature story headlined him as "Chicago's Most Feared Attorney – Bob Clifford is a lamb who turns into a lion when he's confronted by injustice." Corporate Legal Times selected him as one of the "five most respected and feared plaintiffs' attorneys in the country" dubbing him "the best of the bad."

As an attorney representing many high-profile clients, Mr. Clifford frequently is asked to speak on television programs on a wide variety of legal issues. He has appeared on "Oprah," "Good Morning, America," the "Today" show, CNN, MSNBC, CNBC "Power Lunch," Wall Street Week and Chicago Tonight. He also has authored articles for national newspapers including The Wall Street Journal, The Washington Post, The Chicago Tribune, The Chicago Sun-Times and The National Law Journal and he is a regular columnist for the Chicago Lawyer on civil litigation and consumer issues each month for nearly 20 years. During the recent Mayalsia aircraft tragedy, reporters from around the country – The New York Times, Wall Street Journal and Associated Press – reached out to him for comment on airline safety.

Mr. Clifford is committed to promoting the profession. Mr. Clifford served as President of the Chicago Bar Association in 2011-12, serving the 25,000-member group with initiatives that promoted the bar, the bench and the Chicago community. He has been inducted into the International Society of Barristers, the Inner Circle of Advocates and the American Law Institute, a group of 3,000 prominent judges, lawyers and academics from around the world who are selected on the basis of professional achievements in the law. Mr. Clifford is Past President of the Illinois Trial Lawyers Association and a Past President of the Chicago Inn of Court. He has been inducted into the American College of Trial Lawyers, the International Academy of Trial Lawyers and the National Judicial College. He is a member of the Illinois Supreme Court Committee on Civility, which was established to discover and promote ways to promote civility among lawyers. He also was elected to be a trustee of the Supreme Court Historical Society, a non-profit organization supporting historical research and publications of the Supreme Court of the United States. Robert Clifford was selected to participate in a select group of aviation consultants who advised the Rand Institute for Civil Justice, a California-based think tank, on the investigation process of the National Transportation Safety Board. Mr. Clifford also has been asked to sit on the Rand Institute's Board of Overseers. Robert Clifford also has been appointed to the Advisory Board of the International Aviation Law Institute at DePaul University College of Law, a newly created body of top-ranking aviation lawyers and experts from around the world. A graduate of DePaul Law School and DePaul College, Clifford joins those including former Virginia Governor Gerald Baliles and European Association of Airlines Director general Ulrich Schlute Strathaus on the prestigious board that will examine aviation issues facing the public today.

24

For the past seven years, Clifford Law Offices, a continuing legal education provider in Illinois, has presented an annual two-hour free program for all lawyers in Illinois, which also has been approved for credit in various other states. More than 2,600 lawyers and judges attended the program this past February in what is believed to be one of the largest single CLE programs. Mr. Clifford serves as moderator, and has assembled many of the nation's most talented authorities on a variety of legal subjects to present at his firm's free CLE program.

Mr. Clifford serves on the Board of the Rand Institute for Civil Justice, a think tank based in California. He also serves on the Board of Trustees of WTTW, Chicago's public television station where he instituted closed captioning for the hearing impaired 10 years ago. He was elected nine years ago to serve as the Illinois State Delegate to the American Bar Association House of Delegates. He completed his third three-year term, the maximum allowed, in August 2014 at the ABA Annual Meeting in Boston.

Mr. Clifford endowed the first Chair on Tort Law and Social Policy to his alma mater, De Paul University College of Law. This generous gift provides for an annual symposium where academicians, lawyers and judges from across the country gather to speak on a timely topic of interest dealing with the relationship between tort law, popular culture and societal needs. Founded in 1994, the symposium, which is free to the public, has hosted academicians from Stanford Law School to Harvard, from United States Senator John McCain to television commentator/attorney Bill Kurtis. To mark the 20th year in 2014, Associate Justice Stephen Breyer of the Supreme Court of the United States taped a special address to the group honoring U.S. District Court Judge Jack Weinstein of New York. Mr. Clifford shares his knowledge as a frequent lecturer for various bar associations and legal groups throughout the country.

Robert A. Clifford is principal partner of Clifford Law Offices, a nationally recognized law firm in Chicago concentrating in aviation, transportation, personal injury, medical

negligence, consumer advocacy and product liability law. (See <u>Exhibit 2</u>, CV of Robert A. Clifford). Mr. Clifford has never been sanctioned by any Court; nor has he been investigated for any alleged misconduct.

Because of his reputation, experience, resources, and ethics, all of which have been widely recognized, Mr. Clifford is well-suited to lead this complex litigation. Further, Mr. Clifford is capable of selecting candidates for the Steering Committee, such that this litigation is effectively led and efficiently resolved on behalf of the Class.

### (2)  Supporting Counsel Are Equally Accomplished and Capable

Plaintiffs have worked collaboratively and compromised to agree upon the leadership structure proposed to the Court here. Nonetheless, the counsel supporting this proposal—but not specifically addressed in this Motion—are also extremely well-qualified. These attorneys have already provided much support to the advancement of this litigation, and will continue to do so as the litigation progresses. These attorneys' experience and qualifications are summarized in the materials submitted as Exhibit 1. Virtually every firm that supports the application has been appointed as lead counsel in class and complex litigation and are arguably qualified in their own right, but each have decided to step back, in support of Bob Clifford and this structure, because it simply delivers the best benefit to the class.

In sum, the other members in Plaintiffs' coalition have extraordinary knowledge and experience, and will provide invaluable support to proposed Lead Counsel, Liaison Counsel, Track Counsel and the designated Discovery Liaison Counsel for each retailer class, along with the Chairpersons for Discovery and Experts.

## I.    The Coalition of Plaintiffs Supporting This Motion Can and Will Commit Unparalleled Resources to This Litigation.

The fourth factor listed in Rule 23(g)—the resources that counsel will commit to representing the class—similarly supports appointment of Petitioner's Proposed Leadership Group.

As stated above, Plaintiffs are represented by a multitude of different, extremely well-qualified and resourceful attorneys from around the country, many of whom could file their own motions seeking lead appointment on their individual behalf.  Instead, Plaintiffs and their counsel have banded together to form the present leadership proposal.

The resources that the supporting law firms have and will continue to commit to this litigation simply cannot be matched by any single law firm or even by a competing coalition of other firms.

## CONCLUSION

For the foregoing reasons, the Court should (1) appoint Robert A. Clifford as Lead Counsel of this litigation, and (2) appoint a Proposed Steering Committee comprised of Liaison Counsel, Track Counsel (for each retailer case), and the Committee positions of Discovery Chairperson and Expert Chairperson.  Mr. Clifford's preeminent qualifications, and his commitment to leading this litigation in a cooperative, cohesive and unified manner, make appropriate his appointment by this Court and confers upon the putative class considerable benefits.

DATED:  August 6, 2015                         Respectfully submitted,

John W. (Don) Barrett
David M. McMullan, Jr.
BARRETT LAW OFFICES
404 Court Square North
P.O. Box 987
Lexington, MS 39095
662.834.2376
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Charles F. Barrett
CHARLES BARRETT, PC
6518 Highway 100 Suite 210
Nashville, TN 37205
615.515.3393
charles@cfbfirm.com

Thomas P. Thrash
THRASH LAW FIRM PA
1101 Garland Street
Little Rock, AR 72201
501.374.1058
tomthrash@sbcglobal.net

Richard Barrett
LAW OFFICES OF RICHARD BARRETT, PLLC
2086 Old Taylor Road, Suite 1011
Oxford, MD 38655
662.380.5018
866.430.5459 Facsimile
rrb@rrblawfirm.net

Marcus N. Bozeman
CAULEY BOWMAN CARNEY & WILLIAMS
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
501.312.8500
mbozeman@cauleybowman.com

*/s/Robert A. Clifford*
Robert A. Clifford
Shannon M. McNulty
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, 31st Floor
Chicago, IL 60602
312.899.9090
RAC@cliffordlaw.com
SMM@cliffordlaw.com

Ben F. Pierce Gore
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
408.369.0752
pgore@prattattorneys.com

Dewitt M. Lovelace
Valerie Lauro
LOVELACE LAW FIRM
12870 US Hwy 98W, Suite 200
Miramar Beach, FL 32550
courtdocs@lovelacelaw.com

John A. Yanchunis
Rachel Soffin
MORGAN & MORGAN
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
813.223.5505
jyanchunis@forthepeople.com
rsoffin@forthepeople.com

Raymond Boucher
Shehnaz Bhujwala
BOUCHER, LLP
21600 Oxnard Street, Suite 600
Woodland Hills, CA 91367
818.340.5400
rboucher@boucher.la
bhujwala@boucher.la

Jonathan W. Cuneo
Taylor Asen
CUNEO GILBERT & DELUCA, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
929.258.7816
jonc@cuneolaw.com
tasen@cuneolaw.com

Shpetim Ademi
John Blythin
ADEMI & O'REILLY, LLP
3620 East Layton Avenue
Cudahy, WI 53110
414.482.8000
sademi@ademilaw.com
jblythin@ademilaw.com

Edward Wallace
Amy Keller
WEXLER WALLACE, LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
312.346.2222
eaw@wexlerwallace.com
aek@wexlerwallace.com

Daniel E. Gustafson
Cathy K. Smith
Daniel J. Nordin
GUSTAFSON GLUEK, PLLC
120 S. Sixth Street, Suite 2600
Minneapolis, MN 55402
612.333.8844
dgustafson@gustafsongluek.com
csmith@gustafsongluek.com
dnordin@gustafsongluek.com

Ben Barnow
Erich Schork
BARNOW & ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
312.621.2004
b.barnow@barnolaw.com
e.schork@barnolaw.com

Cyrus Dashtaki
DASHTAKI LAW FIRM, LLC
5205 Hampton Avenue
St. Louis, MO 63109
314.923.7671
cyrus@dashtaki.com

John S. Steward
STEWARD LAW FIRM, LLC
1717 Park Avenue
St. Louis, MO 63104
314.571.7134
Glaw123@aol.com

Juan Monteverde
Michael Schreiner
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, NY 10017
212.983.9330
jmonteverde@faruqilaw.com
mschreiner@faruqilaw.com

Greg Porter
BAILEY & GLASSER, LLP
1054 31st Street NW, Suite 230
Washington, DC 2007
202.463.2101
gporter@baileyglasser.com

Aron Robinson
LAW OFFICE OF ARON D.
ROBINSON
180 W. Washington Street, Suite 700
Chicago, Illinois 60602
312.857.9050
adroblaw@aol.com