```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
                               EASTERN DIVISION


                                        )
                                        )
                                        )
        IN RE:                          )
                                        )
        HERBAL SUPPLEMENTS MARKETING    )  Case No. 15 C 5070
        AND SALES PRACTICES             )
        LITIGATION,                     )  Chicago, Illinois
                                        )  August 20, 2015
                                        )  10:30 o'clock a.m.


                        TRANSCRIPT OF PROCEEDINGS
                   BEFORE THE HONORABLE JOHN R. DARRAH

   APPEARANCES:                     HAGENS BERMAN SOBOL SHAPIRO LLP
                                    BY:  MR. STEVE W. BERMAN
                                         MS. ELIZABETH FEGAN
                                    1918 Eighth Avenue, Suite 3300
                                    Seattle, Washington 98101

                                    CLIFFORD LAW OFFICES PC
                                    BY:  MR. ROBERT A. CLIFFORD
                                    120 North LaSalle Street, 31st Floor
                                    Chicago, Illinois 60602

                                    REED SMITH LLP
                                    BY:  MR. JOHN P. HOOPER
                                    10 South Wacker Drive, 40th Floor
                                    Chicago, Illinois 60606

                                    WINSTON & STRAWN
                                    BY:  MS. AMANDA L. GROVES
                                    100 North Tryon Street
                                    Charlotte, North Carolina 28202

                                    WINSTON & STRAWN
                                    BY:  MR. SCOTT P. GLAUBERMAN
                                    35 West Wacker Drive
                                    Chicago, Illinois 60601
```

```
 1   APPEARANCES:   (Continued:)

 2                                   MR. ALLAN KANNER
                                     701 Camp Street
 3                                   New Orleans, Louisiana 70130

 4                                   KIRTLAND AND PACKARD LLP
                                     BY:  MR. MICHAEL L. KELLY
 5                                   2041 Rosecrans Avenue, 3rd Floor
                                     El Segundo, California 90245
 6
                                     BARNES & THORNBURG LLP
 7                                   BY:  MR. WILLIAM M. McERLEAN
                                     One North Wacker Drive, Suite 4400
 8                                   Chicago, Illinois 60606

 9                                   BARNES & THORNBURG LLP
                                     BY:  MR. KEVIN D. RISING
10                                   2029 Century Park East, Suite 300
                                     Los Angeles, California 90067
11
                                     WILMER CUTLER PICKERING
12                                   HALE & DORR LLP
                                     BY:  MR. JONATHAN E. PAIKIN
13                                   1875 Pennsylvania Avenue, NW
                                     Washington, D.C. 20006
14
                                     DOUGLAS & LONDON PC
15                                   BY:  MS. VIRGINIA E. ANELLO
                                     111 John Street, Suite 1400
16                                   New York, New York 10038

17

18

19

20

21

22                      Mary M. Hacker, CSR, FCRR
                         Official Court Reporter
23                      United States District Court
               219 South Dearborn Street, Suite 1212
24                      Chicago, Illinois  60604
                        Telephone:  (312) 435-5564
25
```

1    (Proceedings had in open court:)

2    THE CLERK:  15 C 5070, in re:  Herbal Supplements

3    and Marketing.

4    THE COURT:  Now, the government set up a conference

5    line so that folks could all call in, we could take their

6    names and show that they had appeared by phone, but I'm sure

7    you'll be very surprised to hear that it doesn't work.

8    (Laughter.)

9    THE COURT:  So we'll have to make do with those

10   folks that we promised they could appear by telephone.

11   I've reviewed everything that's been filed and it's

12   a lot of paper.  Particularly I -- well, I read the Consensus

13   Plaintiffs' statements which generally was submitted by

14   Hagens Berman.  I read the plaintiffs' document entitled

15   Plaintiffs' Preliminary Statement, which was submitted by

16   Robert Clifford and his firm.

17   And then I read the defendants' preliminary

18   reports, the report of Walgreen's, Wal-Mart, Target and NBTY.

19   And then I also read the report directed to me by Reed Smith,

20   GNC's preliminary report.

21   Can I ask the defendant attorneys to identify

22   themselves?

23   MR. HOOPER:  Your Honor, I'm John Hooper.  I

24   represent GNC.  I'm with Reed Smith.

25   MR. PAIKIN:  Good morning, your Honor.  My name is

1    Jonathan Paikin from Wilmer Hale.  I represent Target.  And

2    with me is my colleague, Charlie Speth.

3              THE COURT:  Good morning.

4              MR. McERLEAN:  Bill McErlean, your Honor,

5    representing Wal-Mart.

6              THE COURT:  Good morning, Mr. McErlean.

7              MR. RISING:  Good morning, your Honor.  Kevin

8    Rising, representing the Wal-Mart defendants.

9              THE COURT:  Mr. Rising.

10             MS. GROVES:  Good morning, your Honor.  I'm Amanda

11   Groves with Winston & Strawn.  My partner, Scott Glauberman,

12   and I represent NBTY, and also appearing for the Wal-Mart,

13   Walgreen's and Target entities.

14             THE COURT:  Good morning, Counsel.

15             MR. GLAUBERMAN:  Good morning.

16             THE COURT:  Who is representing GNC?

17             MR. HOOPER:  I am, your Honor, John Hooper.

18             THE COURT:  All right.  Was this letter that you

19   sent to me, particularly raising the accuracy of the testing,

20   has that been distributed beyond the folks that you talk

21   about in the letter itself?

22             MR. HOOPER:  Yes, it has, your Honor.  It was

23   distributed to all the lawyers representing the 22 class

24   actions that were filed against GNC, provided to them as a

25   proffer that led to our discussions prior to the JPML

1    hearing.

2              THE COURT:  All right.  Very well.

3              I also read the application of Allan Kanner.  Mr.

4    Kanner could you identify yourself?

5              MR. KANNER:  Yes, your Honor, Allan Kanner.

6              THE COURT:  Good morning.

7              MR. KANNER:  Good morning.

8              THE COURT:  -- and the attachments to that.

9              The application of Michael Lewis Kelly.  Mr. Kelly?

10             MR. KELLY:  Here, your Honor.

11             THE COURT:  Good morning, Mr. Kelly.

12             MR. KELLY:  Good morning.

13             THE COURT:  And the application of Virginia Anello.

14             MS. ANELLO:  Good morning, your Honor.

15             THE COURT:  Good morning Ms. Anello.

16             And your backgrounds in this area are certainly --

17   are remarkably developed and experienced, and I looked at all

18   that material.

19             I also read the consensus plaintiffs' application,

20   and that was essentially Ms. Fegan and Mr. Berman.  Could I

21   ask you to identify yourselves?

22             MS. FEGAN:  Yes, your Honor.

23             MR. BERMAN:  Steve Berman, your Honor.

24             MS. FEGAN:  Beth Fegan.

25             THE COURT:  Good morning.

1           MS. FEGAN:  Good morning.

2           THE COURT:  And you represent 40 plaintiffs in

3    33 cases, is that right?

4           MR. BERMAN:  That's correct, your Honor.

5           THE COURT:  Okay.

6           And then I read the motion for appointment of

7    Robert Clifford.  And can you tell me -- and, Mr. Clifford, I

8    know you.  Can you tell me how many parties you represented

9    in how many cases?

10          MR. CLIFFORD:  Your Honor, Robert Clifford.  We're

11   about 30.

12          THE COURT:  30 cases?

13          MR. CLIFFORD:  Yes, sir.

14          THE COURT:  Okay.

15          And maybe this is the toughest choice that I'm

16   going to have to make in all of this litigation, is this idea

17   of a Lead Counsel Committee.  But I read everything very

18   carefully and considered everything very carefully.

19          I'm going to appoint the six members suggested in

20   the Hagens Berman motion to the Counsel Committee.  The

21   allocation of duties set out in their motion and the

22   experience that each has had is certainly very, very

23   impressive and I think would serve the Court well.

24          In addition, I'm going to appoint Mr. Clifford to

25   the Lead Counsel Committee.  Mr. Clifford's background might

1    not be as extensive in multi-district litigation and class

2    actions, but Mr. Clifford is known to this Court,

3    particularly in trying a very, very complicated lawsuit that

4    was tried in here involving the collision of two aircraft and

5    the death of people aboard the aircraft as well as people on

6    the ground.  It involved a very, very complicated fact

7    situation involving the FAA and some devices that could have

8    been used but weren't used in the control tower out here in I

9    think it was Palwaukee.

10          That was the Bob Collins case, was it not, Mr.

11   Clifford?

12          MR. CLIFFORD:  Yes, your Honor.

13          THE COURT:  So to cut through all the rhetoric, I'm

14   going to appoint to the Lead Counsel Committee -- and again,

15   I do this recognizing that I'm excluding some people with

16   some remarkable experience.  It shall be comprised of Girard

17   Gibbs LLP, Hagens Berman Sobol Shaprio LLP, Heins Mills &

18   Olson PLC, Kozyak Tropin Throckmorton LLP, Milberg LLP, Scott

19   & Scott LLP and the Law Offices of Robert Clifford to the

20   Lead Counsel Committee.  And Hagens Berman and Robert

21   Clifford shall be co-chairs of that committee.

22          I note in the Hagens Berman material you set out a

23   proposed discovery plan, and I found that attractive, but I

24   would like you to have more input.  Perhaps you can meet and

25   confer on that.

1    And the other thing that strikes me as very

2  interesting is the results of the independent testing by GNC

3  and GNC's contention that the bar code device really was not

4  as accurate as it should have been, and that perhaps the New

5  York Attorney General's results were skewed, at least in some

6  regard.

7    I would like you to meet and confer and see if

8  there's some way that you can't have some comprehensive test

9  that you both rely on.  It occurs to me that that's really a

10  threshold issue in this case, just exactly factually what are

11  we dealing with here.

12    The folks that I've asked to be co-chairs, do you

13  have any suggestions as to orders that should emanate from

14  today?

15    Ms. Fegan, any thoughts?  Or, Mr. Berman?

16    MR. BERMAN:  Steve Berman on behalf of the

17  plaintiffs.  Thank you for the appointment, your Honor.  I

18  hope to live up to your --

19    THE COURT:  There will be a written order to come

20  setting out your duties and the like.

21    MR. BERMAN:  I think that one thing that could

22  advance the litigation -- and I've had this done in three

23  MDLs and it really accelerated things, to kind of cut through

24  some of the pleading motions, made them easier -- and that is

25  we've often gotten MDL judges to order the defendants to turn

1    over whatever they produce to the governmental authority

2    because they've collected it.  It's probably the core

3    documents.  And the sooner we can get those and we can

4    analyze them, the sooner we're going to be able to get the

5    case --

6             THE COURT:  Mr. Clifford, any thoughts in that

7    regard?

8             MR. CLIFFORD:  Thank you.  And, again, Robert

9    Clifford.  And like Mr. Berman, I thank the Court for its

10   confidence in our appointment and we will not disappoint you

11   with our efforts.

12            I agree with Mr. Berman on that point.  I also, as

13   it relates to anything to do today, it strikes me that one of

14   our first tasks will be to try to consolidate a complaint and

15   clean that up, put them together so that we have a master

16   document that we're working off of and everything would tend

17   to follow from that process.

18            THE COURT:  Have the defendants given any thought

19   as to how to proceed, at least to the extent you can as a

20   unit, at this point?

21            Have you discussed perhaps one or more of you

22   pulling the lead oar, at least for the initial stages?  I

23   know Winston & Strawn is very much involved in the case.

24            MS. GROVES:  Yes, your Honor.  Amanda Groves with

25   Winston & Strawn.

1          We have had some meetings and discussions and are
2    happy to coordinate and work as a group and meet and confer
3    with the lead plaintiffs' counsel, now that they've been
4    appointed, to put together next steps in the scheduling order
5    and those types of things.
6          I do think -- what we would like to have as an
7    order today would be a schedule for the consolidated
8    complaint.  Like Mr. Clifford, we agree that that is kind of
9    the first order of business.
10          THE COURT:  Spell that out for me.
11          MS. GROVES:  The consolidated complaint, because
12    right now --
13          THE COURT:  I see.
14          MS. GROVES:  -- there's all of the, you know,
15    80-some class actions.  And once they --
16          THE COURT:  I've read them all, by the way.
17      (Laughter.)
18          MS. GROVES:  Well, it looks like they're going to
19    be changing some based on the statements --
20          THE COURT:  I'm not going to allow that.
21      (Laughter.)
22          MS. GROVES:  Well, we would like to see what the
23    allegations are going to be and against whom, what the claims
24    are going to be.  It looks like the plaintiffs' groups may
25    have had some additional testing done, they talk about

1  additional parties; some of the claims look like they may not

2  be pursued.

3  So I believe -- and we've talked about this as a

4  defense group -- that the first order of business really

5  ought to be getting the consolidated complaint on file so

6  that we see what the claims are, what's at issue.  And at

7  that point, you know, we can discuss early discovery of

8  documents, putting together a schedule and those types of

9  things.  But turning over documents before there's even an

10  operative complaint or a protective order we believe would be

11  premature.

12  THE COURT:  I see.

13  I note that there were -- I believe there were

14  13 cases that raise the issue of the efficacy of these drugs

15  if, in fact, they were present in the compounds.  And it

16  seems to me that's a completely distinct issue from the

17  dominant issue here; and that is, whether -- that the

18  supplements had what they purportedly said they had, or

19  purportedly had.

20  Anybody disagree with that?

21  MR. BERMAN:  Well, I think they're both issues.

22  THE COURT:  I agree.

23  MR. BERMAN:  There are two different issues, we

24  agree with that.

25  THE COURT:  But that issue of whether or not these

1    things are efficacious is really very separate and distinct

2    from the main issue.

3             MS. GROVES:  Your Honor, if I might.  One of the

4    statements that was filed by the plaintiff said that this

5    case is not about the efficacy of the supplements.  So

6    whether or not that's going to be a claim going forward I

7    think is an open question until we see the consolidated

8    complaint.  But it is separate, we agree.

9             THE COURT:  Okay.

10            Did you hear Mr. Berman's comments regarding

11   production of everything that you gave the governmental

12   agency?

13            Is the only governmental agency involved to date

14   the Attorney General of New York?

15            MS. GROVES:  There are other Attorneys General that

16   have raised the issue as well.  Documents have been produced

17   to the New York Attorney General by various of the

18   defendants.  But those documents were produced pursuant to

19   confidentiality agreements, and we do not have a protective

20   order in this case yet.

21            THE COURT:  Well, we can put one in place easily

22   enough.

23            If that were the case, if a protective order was

24   entered -- and I don't know how much you can speak for your

25   colleagues, but would that be a problem, turning over that

1    information?

2            MS. GROVES:  Before there's a consolidated

3    complaint on file, your Honor, I think it would be because

4    there's not claims at issue yet.  We haven't seen what the

5    allegations are going to be in the new complaint.

6            And it is clear that things are going to be

7    shifting, and I believe putting discovery before the

8    consolidated complaint on file would really be putting the

9    cart before the horse.

10           MR. CLIFFORD:  Well, if you have a protective order

11   in place --

12           THE COURT:  What's the harm?

13           MR. CLIFFORD:  -- what's the harm?

14           MR. PAIKIN:  Your Honor, my name is Jonathan

15   Paikin.  I represent Target.  If I might just add to what my

16   colleague just said?

17           THE COURT:  Sure.

18           MR. PAIKIN:  I think one of the concerns that we

19   have, frankly, is that the issues that are expressed in the

20   GNC letter, about whether or not the tests are correct or

21   were the wrong tests, is one that's common to all of the

22   defendants.  And it's at issue in the discussions with the

23   various Attorney Generals that have taken an interest in

24   this.

25           The interest of the Attorney Generals is very

1    different from that of private litigants.  The Attorney

2    Generals are looking at a broad set of issues, trying to

3    protect the public, understand what the situation is, and all

4    of the defendants have cooperated with the Attorney Generals

5    to try to answer questions that they have and elaborate on

6    it.

7          The complaints that have been filed, for the most

8    part, are based on the hearsay reports of what the Attorney

9    General has said publicly.  There's no indication as to what

10   testing has been done with respect to the various products,

11   the various lots, the various manufacturers that are at issue

12   here.

13         And so, there's substantial questions as to what it

14   is that the plaintiffs can allege based on their own

15   investigation and their own testing that they've done with

16   respect to the products that are at issue.

17         We don't know whether, for instance, consistent

18   with their Rule 11 obligations, they can make claims about

19   Ginkgo Baloba or claims about --

20         THE COURT:  Let's assume this:  Let's assume they

21   file a consolidated complaint and discovery can formally

22   commence, and the first thing I order is the turnover of that

23   material subject to the protection of a confidentiality

24   order, that governmental material -- the material produced to

25   the government, I produce that to them.  It would seem to me

1    the next step would be to entertain a motion for a first

2    amended complaint, or in this case a second amended -- first

3    amended consolidated complaint.

4           What --

5           MR. PAIKIN:  Well, your Honor, respectfully, I

6    think that that puts the cart before the horse.  I think that

7    --

8           THE COURT:  It might save us a lot of time and

9    money, though, would it not?

10          MR. PAIKIN:  Well, it may not.  It might save us a

11   lot of time if they set forth which products, based on their

12   investigation that they've undertaken, they believe there are

13   issues with.  And then at that point, once we understand what

14   products are at issue, we can produce information -- you

15   know, consider producing information that relates to those

16   specific products.

17          But to allow them to go on a fishing expedition,

18   search through investigatory files to determine whether or

19   not they can come up with some sort of claim that there's no

20   basis for, really does put the cart before the horse.

21          And we believe that what would be most appropriate

22   would be for them to show us what it is that they have

23   concerns about, what it is that they feel that they can

24   allege consistent with their obligations, and then we can

25   take a look at that universe and determine whether or not --

1   and I would say, frankly, I think we have very strong motions

2   to dismiss here, to dismiss this entire case --

3          THE COURT:  I would like to decide this case

4   ultimately on the facts.  And if you were uniquely in

5   possession of certain facts that might support a cause of

6   action on this side, I think basic fairness requires that you

7   produce them.  How's that for some --

8          (Laughter.)

9          THE COURT:  Do you want to respond to that?

10         MR. BERMAN:  No, your Honor.  I think you've got a

11   point there.

12         THE COURT:  Counsel?

13         MR. HOOPER:  Your Honor, John Hooper.  I represent

14   GNC.

15         We have a different approach.  I think we're just

16   substantially further ahead than our co-defendants.  We met

17   with the New York AG.  They've discontinued their

18   investigation.  They found that we, in fact, did meet the

19   standards of the FDA and of the industry, and as part of

20   that, your Honor, we agreed to do some additional testing on

21   a going-forward basis.

22         One additional thing that's not in our letter --

23   and I waited to speak to counsel to make sure they were

24   comfortable in sharing it because there were Rule 408

25   issues -- was, we've actually met with the plaintiff since

1    the JPML meeting.

2         We've had their expert sit down with our in-house

3    expert.  We've had an open discussion.  We produced 4,000

4    pages of documents.  The documents related to the product at

5    issue we produced.  We've had this dialogue with several of

6    the firms, but essentially the expert dialogue has taken

7    place with the Hagens Berman firm representing a lot of

8    firms.

9         We're trying to un-ring the bell, your Honor.  The

10   New York AG made its decision before it saw our batch

11   testing, before it saw independent testing.  If they had

12   waited, it's my contention we are not here today.

13        We've produced that to the New York AG and they've

14   discontinued their investigation.  We've produced that to 22

15   -- to law firms in 22 cases and eight of them have agreed to

16   dismiss their actions.

17        We feel very confident in our discussions so far

18   with the plaintiffs that a continued open dialogue, free open

19   discovery for GNC, is going to lead to a dismissal.

20        Now, obviously I'm optimistic, but we've had a

21   proven track record with the New York AG in the other cases.

22   So, your Honor, I would ask you to assist in that process by

23   allowing GNC to have a separate track.

24        And when we met with the JPML, we actually

25   requested a separate MDL for each of the defendants.  And the

1    reason for that was, we didn't really want our process to

2    slow down when we've been open, the discovery has been open,

3    we have confidentiality agreements in place and we can get to

4    hopefully the answer that so far a number of people made,

5    that we shouldn't be here.

6            So we would ask your Honor to separately track us

7    and give us 90 days to work with the plaintiffs, finish off

8    the discussions.  I think a big part of their decision

9    process had to wait until your Honor decided who would be

10   lead counsel.  We would like 90 days to have that discussion

11   and not spend the time and money since we have already been

12   very pro-active.

13           And it's a very unusual thing, your Honor --

14           THE COURT:  It's very obvious just from the tone of

15   your letter.

16           MR. HOOPER:  I mean, we're not trying to unring a

17   bell.  We're trying to unring 22 bells, your Honor.

18           MR. CLIFFORD:  We think that that's a plan that

19   would work.

20           THE COURT:  Let me do this:  Why don't we take a

21   little break.  If the defense people want to use the jury

22   room to discuss something you might want to bring up in a

23   more consolidated fashion after you all have thought this

24   through, I'll come back out in about ten, 15 minutes.

25           In the meantime you can poll your delegation to see

1    if there's something more that anybody out there believes

2    should be raised as well.

3              MR. BERMAN:  Thank you, your Honor.

4              THE COURT:  Fair enough?

5              MR. CLIFFORD:  Yes.

6              THE COURT:  We'll take a recess.

7         (Brief recess was taken.)

8              THE COURT:  The mystery of the malfunctioning

9    conference call is being argued right now between all of our

10   people in the clerk's office and AT&T.  I don't know how

11   that's going to come out.

12             But what I think I'll do is this:  Mary, can we

13   publish the transcript?  We can post it on CM/ECF and -- I

14   would like to be able to let those people know that we shut

15   out today that thought they were going to appear

16   electronically, let them know --

17             MR. BERMAN:  We'll order it, your Honor.  We'll

18   order it today.

19             THE COURT:  Very well.

20             And we'll get that on line immediately so that

21   they'll know what's going to happen.  And I'll schedule a

22   separate conference date with those people, and I'll ask lead

23   lawyers or somebody from the lead lawyer's firm to show up

24   and bring them up to date as well.

25             And maybe we'll even enter an order inviting them,

1   now that we've identified the lead attorneys, to contact lead

2   counsel prior to the next time that -- so we'll have a status

3   date just for those people and we'll just reiterate pretty

4   much what we've done here.

5           Where are we?  Anything else you would like to

6   bring up, Mr. Berman?

7           MR. BERMAN:  Yes, your Honor.

8           With respect to orders that we think should issue

9   as of today's hearing, we submitted Exhibit 6 to Ms. Fegan's

10  declaration, a proposed protective order, and we would like

11  you to order us to one week from today either agree to a

12  protective order or submit competing proposals.

13          THE COURT:  Any objection to that?

14          MS. GROVES:  Yes, your Honor.

15          We think that the protective order is going to take

16  a little bit more time.  It's not as simple as protective

17  orders usually are in these cases, I'm afraid, because of the

18  different retailers and their competitive information.

19          We are happy to take the lead on drafting a

20  protective order --

21          THE COURT:  Well, all we're agreeing to is not

22  disclose something.  What lawyer in the world would be

23  against that?

24          MS. GROVES:  I am for that, your Honor, and agree

25  with that.  The difficulty that we have -- and it is on the

1    defense side and we can work it out.  But we have, for

2    instance, one manufacturer who produced --

3            THE COURT:  You will meet and confer and produce a

4    protective order within ten days.  And there will not be

5    competing protective orders.  You will agree on one.

6            MS. GROVES:  Yes, your Honor.  That's doable.

7            THE COURT:  Okay?

8            MR. BERMAN:  Yes, sir.

9            THE COURT:  Any of the other defendants want to

10   take the position that GNC is taking regarding disclosure?

11           MS. GROVES:  Yes, your Honor, I think we all would.

12           We are in the same position as GNC with respect to

13   the New York Attorney General issues, with respect to the

14   testing.  Like GNC, the other retailers also had no notice

15   that the AG was doing what it was doing.  The difference is,

16   your Honor, that GNC is a vertically integrated entity, so it

17   manufactures and sells the products and could easily test

18   everything on its own and --

19           THE COURT:  Counsel, what are you telling me, that

20   you're going to produce this material?

21           MS. GROVES:  What we would propose is that the

22   retailers produce the information that they provided to the

23   Attorneys General relating to the products that are at issue

24   here, and that we will do that promptly upon entry of the

25   protective order; and that in the spirit of letting the facts

1    out, as your Honor said, that we also exchange with the

2    plaintiffs the testing that they have.  And that will allow

3    the parties to have the discussions that Mr. Hooper suggested

4    GNC is having in that same timeframe.

5              THE COURT:  That sounds reasonable.  Any objection

6    to that?

7              MR. BERMAN:  No, your Honor.

8              THE COURT:  All right.  Then there will be an

9    exchange of all materials that were produced to the New York

10   Attorney General, and that will occur forthwith after the

11   entry of the protective order.

12             Contemporaneous with that production the plaintiffs

13   will produce all records of testing that they have done to

14   date.

15             So we can assume that if the protective order is

16   going to be presented and entered next week, ten days hence,

17   that that material will be produced ten days and one minute

18   from today.

19             MS. GROVES:  Your Honor, just a point of

20   clarification.  The materials that we would be producing,

21   like GNC did for the plaintiffs, are the materials we

22   produced to the Attorney General that relate to the products

23   that are at issue.

24             THE COURT:  Okay.  That seems fair enough.

25             MR. BERMAN:  Yes, your Honor.

1          THE COURT:  Okay.  Anything further from the

2    defense?

3        (No response.)

4          THE COURT:  And the other question is:  Where did

5    you all go?  The clerk went out to try to find you to direct

6    you to the jury room and --

7          MS. GROVES:  We used the witness room.

8          THE COURT:  Oh, okay.

9          All right.  And our clerk that's working on this --

10   Matt, where are you?

11         THE LAW CLERK:  Yes.

12         THE COURT:  This is Matt Schmidt.  He does all the

13   work and I get all the credit.  It's a very good system.

14         MR. HOOPER:  Your Honor?

15         THE COURT:  Yes.

16         MR. HOOPER:  GNC has a confidentiality agreement

17   that we negotiated with plaintiffs' counsel -- with several

18   of the plaintiffs' counsel.  What we would like to do is

19   convert that into the order and move forward fairly quickly

20   on a separate track.

21         I know we raised separate track before, but we do

22   think that -- I mean, we're literally in a position where I

23   think we're at a decision point within the next two or

24   three weeks.

25         So if your Honor would consider the separate track,

1   as we would convert our confidentiality agreement within --

2   by tomorrow into an agreement, and then we would just sit

3   down with the plaintiffs probably well before the other

4   defense have an opportunity to get their documents together.

5              THE COURT:  Any objection to that?

6              MR. CLIFFORD:  No, sir.

7              MR. BERMAN:  No objection.

8              THE COURT:  Well, and you can proceed -- at least

9   at this stage you can proceed at any pace you wish.

10             MR. HOOPER:  Yes, your Honor.

11             THE COURT:  But they'll only be ten days ahead of

12  you -- nine or ten days ahead of you.

13             MR. HOOPER:  Well, I think they have to get their

14  documents pulled together as well.

15             It is true, your Honor, because we're a company

16  that's a retailer and a manufacturer, we did have access to

17  all the documents.  We didn't have to go elsewhere.

18             THE COURT:  I see.

19             MR. HOOPER:  Thank you, your Honor.

20             MR. BERMAN:  A point of clarification, your Honor.

21             THE COURT:  Sure.

22             MR. BERMAN:  Counsel from Winston & Strawn

23  mentioned that they were going to turn over to us -- and I

24  think I got her words -- quote, products at issue, but we

25  want to make sure that we're going to get their general

1    testing protocols as well, because we found that's very

2    important in our discussions with Mr. --

3              THE COURT:  Was that produced to the New York --

4              MS. GROVES:  Yes.  And we will provide that, your

5    Honor.

6              THE COURT:  Okay.

7              MR. BERMAN:  The last issue that I think was raised

8    that we should respond to from our side is the filing of the

9    consolidated complaint.  And what we would like to do is to

10   have 45 days from the date we get the documents.

11             THE COURT:  Okay.  Any objection to that?

12             MS. GROVES:  No, your Honor.

13             THE COURT:  Very well.

14             Will you meet and confer and draft an order

15   memorializing what today's rulings have been:  That there

16   will be a protective order produced ten days hence; that

17   immediately upon the execution of the protective order the

18   parties will exchange preliminary disclosure, preliminary

19   discovery; that is, the defendants will produce all

20   information provided to the New York Attorney General

21   regarding the products at issue, including the defendants --

22   including the testing protocols.  And the plaintiffs will

23   produce any information regarding independent tests that the

24   plaintiffs have made.

25             As to GNC, GNC can proceed at its own pace.  As

1  soon as GNC converts the confidentiality agreement into a

2  protective order, the same ruling will be in effect; that is,

3  an immediate exchange of that testing information.

4        And then you suggested something else, Mr. Berman,

5  I think?

6        MR. BERMAN:  The consolidated complaint --

7        THE COURT:  The consolidated complaint will be

8  filed 45 days hence.

9        And why don't we take a status date immediately

10  thereafter to determine what the responsive pleading will be

11  and how much time you need to file a responsive pleading.

12        So what's 45 days from today, Mel?

13        THE CLERK:  October 20th at 10:00 o'clock a.m.

14        THE COURT:  And that will be for setting for the

15  time to file a responsive pleading to the consolidated

16  complaint.

17        Now, let me also direct the parties to meet and

18  confer regarding the proposed discovery schedule.

19        MR. HOOPER:  (Indicating.)

20        THE COURT:  I'm sorry, did you want to say

21  something?

22        MR. HOOPER:  Yes, your Honor.  I think that Mr.

23  Berman requested 45 days from when he received the documents.

24        THE COURT:  Okay.  I'm sorry --

25        MR. HOOPER:  I think you set the schedule 45 days

1  from today.

2  THE COURT:  You're right, I did.  So that would be

3  65 days from now.

4  MR. BERMAN:  Correct.

5  THE COURT:  All right.

6  THE CLERK:  November 3rd at 10:00 o'clock a.m.

7  THE COURT:  Okay.  And when did we set a status

8  date?

9  THE CLERK:  That's a status.

10  THE COURT:  When will they have to file their

11  amended complaint?  We wanted to make it --

12  THE CLERK:  45 days --

13  THE COURT:  -- 45 days from the time you receive

14  the documents, which was ten days hence.

15  THE CLERK:  Documents to be provided by

16  August 31st.  Consolidated amended complaint by October 21st.

17  THE COURT:  And then a status date shortly

18  thereafter.

19  THE CLERK:  October 29th at 10:00 o'clock a.m.

20  THE COURT:  And that will be status and setting for

21  the time to file responsive pleadings.

22  I'm going to ask the parties to meet and confer

23  regarding a proposed discovery schedule.

24  And I strongly urge you to consider some kind of

25  testing by an independent company whose integrity both sides

1   agree is impeccable, sort of along the lines of what GNC has

2   done so far.  Meet and confer on that point, if you will.

3               Okay.  Anything else?

4               MS. GROVES:  No, your Honor.  Thank you.

5               THE COURT:  You're welcome.

6               MR. BERMAN:  Thank you, your Honor.

7               MR. HOOPER:  Thank you, your Honor.

8               THE COURT:  Good to see you all and we'll see you

9   65 days hence.

10              MR. BERMAN:  Thank you.

11              MR. CLIFFORD:  Thank you, sir.

12              THE COURT:  You will see an order regarding the

13  duties of the committee.  And you'll also see an order

14  setting a status time for those folks that were going to

15  appear by phone, in a separate order.  I'll alert them that

16  they will be able to read the transcript of what has

17  transpired.  They'll be able to see the orders appointing

18  both of you and the orders regarding discovery so far.  And

19  then maybe somebody from each side can show up for that -- on

20  that date as well.  And you'll be notified by mail.  I would

21  guess it will be in the next week or two.

22              MR. CLIFFORD:  Yes, sir.  Thank you.

23              THE COURT:  Thank you all.

24          (Which were all the proceedings heard.)

25

1                          CERTIFICATE

2          I certify that the foregoing is a correct transcript

3     from the record of proceedings in the above-entitled matter.

4

5        /s/ *Mary M. Hacker*                    *August 20, 2015*

6     _____          _____

7     Mary M. Hacker                    Date
      Official Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25