| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| HERBAL SUPPLEMENTS MARKETING | ) | No. 15-cv-5070 |
| AND SALES PRACTICES LITIGATION | ) | |
| | ) | Hon. Amy J. St. Eve |
| | ) | |

## MEMORANUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants Target Corp. and Target Brands, Inc. (collectively, "Target"); Walgreens

Boots Alliance, Inc. ("Walgreens"); Wal-Mart Stores, Inc. ("Walmart"), and NBTY, Inc.

("NBTY") (collectively, "Defendants") have moved to dismiss and strike Plaintiffs' Second

Consolidated Class Action Complaint ("SAC").  (R. 193 (Target's motion); R. 196 (Walgreens,

Wal-Mart, and NBTY's motion).)  For the following reasons, the Court denies Defendants'

motions to strike, and grants in part and denies in part Defendants' motions to dismiss.

## BACKGROUND[1]

Seventy percent of Americans take an herbal supplement, propelling a multi-billion dollar

industry in which Defendants participate.  (R. 184, Second Am. Consolidated Class Action

Compl., at ¶¶ 1–2.)  Individuals take them for their perceived health benefits.  (*See id.* at ¶ 1.)  St.

John's Wort, for example, "is often taken to combat depression, and Gingko Biloba is used to

improve mental function."  (*Id.*)

---

[1] The Court takes the facts presented in the Background from the complaint and presumes them as true for the
purpose of resolving the pending motion to dismiss under Rule 12(b)(6).  *See Teamsters Local Union No. 705 v.
Burlington N. Santa Fe, LLC*, 741 F.3d 819, 823 (7th Cir. 2014); *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66
(7th Cir. 2013); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Walgreens, Target, and Walmart are all large retailers that market herbal supplements, among other items. (*Id.* at ¶¶ 33–35.) Walgreens sells its line of supplements under the brand "Finest Nutrition," Target sells under the brand "up & up," and Walmart sells under the brand "Spring Valley." (*Id.*) They all contract with third-parties that manufacture and label the supplements for their proprietary brands. (*Id.* at ¶¶ 67, 91, 133.) NBTY "is one of the largest retailers, manufacturers, and distributors of vitamins, nutritional supplements, and related products in the United States." (*Id.* at ¶ 36.) It manufactures herbal supplements and sells them wholesale to Target, Walgreens, and Walmart, among other businesses. (*Id.* at ¶ 153.) They then sell the NBTY supplements under their proprietary brand names. (*Id.* at ¶ 155.) Plaintiffs are individuals who purchased certain herbal supplements from Target, Walmart, and/or Walgreens. (*Id.* at ¶¶ 9–29.)[2]

Plaintiffs broadly allege that Defendants sell supplements "that do not contain what is listed on their labels" but instead "are packed with cheaper 'filler' ingredients, or contain substances not identified on the bottles." (*Id.* at ¶ 2.) Plaintiffs base this contention in large part—or, as Defendants argue, exclusively—on letters the New York Attorney General ("NYAG") sent to Target, Walmart, and Walgreens on February 2, 2015. (*Id.* at ¶¶ 71–77, 96–103, 137–47.)[3]

---

[2] Plaintiffs purchased their supplements in Illinois, Ohio, Pennsylvania, Florida, California, Minnesota, New Jersey, Mississippi, Missouri, New York, Iowa, and Oregon. (R. 184 at ¶¶ 9–29.)

[3] The NYAG also issued a press release detailing the information conveyed in its letters. See Press Release, N.Y. Attorney Gen., A.G. Schneiderman Asks Major Retailers to Halt Sales of Certain Herbal Supplements as DNA Tests Fail to Detect Plant Materials Listed on Majority of Products Tested (Feb. 3, 2015), *available at* https://ag.ny.gov/press-release/ag-schneiderman-asks-major-retailers-halt-sales-certain-herbal-supplements-dna-tests. The parties appear to agree that the Court may consider it, as they reference it in their briefs. (R. 201, Pls.' Response Br., 6–7; R. 198, NBTY, Walmart, and Walgreens' Mem. Supp. Mot. Dismiss, 4 & n.1.) Moreover, the press release is a matter of public record available on the NYAG's website. The Court may take judicial notice of it. *See Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1062 n.24 (7th Cir. 2016); *Hagan v. Quinn*, 838 F. Supp. 2d 805, 809 (C.D. Ill. 2012).

The letter to Target indicated that the NYAG purchased six up & up herbals supplements from three different Target locations in New York state: Ginkgo Biloba, St. John's Wort, Valerian Root, Garlic, Echinacea, and Saw Palmetto. (*Id.* at ¶ 71.) The NYAG informed Target that it conducted testing on the supplements, which revealed that the Ginkgo Biloba, St. John's Wort, and Valerian Root supplements (the "Affected Target Products") did not contain the ingredients listed on their labels but instead contained "adulterants and undisclosed substances that were not listed on the labels" like rice, garlic, beans, peas, wild carrot, and dracaena (the genus encompassing a common houseplant). (*Id.* at ¶¶ 71–73.)

The NYAG's test results for Walgreens and Walmart were similar with respect to certain supplements. As for Walgreens, the NYAG purchased Finest Nutrition brand Gingko Biloba, St. John's Wort, Ginseng, Garlic, Echinacea, and Saw Palmetto from three Walgreens stores in New York state. (*Id.* at ¶ 97.) The testing revealed that five of the supplements—Gingko Biloba, St. John's Wort, Ginseng, Garlic, and Echinacea (the "Affected Walgreens Products")—"did not contain the ingredients they purported to have and were contaminated with other plant material or ingredients not listed on the products' labels." (*Id.* at ¶ 97; *see id.* at ¶¶ 98–102.) With respect to Walmart, the NYAG purchased Gingko Biloba, St. John's Wort, Ginseng, Garlic, Echinacea, and Saw Palmetto from three Walmart locations in New York state. (*Id.* at ¶ 137.) The NYAG indicated that none of the samples of Ginkgo Biloba, St. John's Wort, Ginseng, or Echinacea supplements contained those substances, and only 1/15 samples of Garlic and 3/15 samples of Saw Palmetto supplements (the "Affected Walmart Products")[4] contained those substances. (*Id.* at ¶¶ 139–44.) NYAG also reported that the supplements contained other plants not disclosed on product labels, like dracaena, wheat, cassava, and rice. (*Id.*)

---

[4] The Court refers to the Affected Walmart, Target, and Walgreens Products collectively as the "Affected Products."

The NYAG reached the conclusions relayed in its letters and press release after conducting DNA barcode testing. (*Id.* at ¶¶ 161–76.) A DNA molecule consists of two strands—each with "a backbone made of alternating sugar . . . and phosphate groups." (*Id.* at ¶ 162.) "Attached to each sugar is one of four bases—adenine (A), cytosine (C), guanine (G), and thymine (T)." (*Id.*) The two strands are held together by bonds between the bases. (*Id.*) "DNA barcoding in herbal supplements involve[s] [selecting] a standardized region of a gene in DNA obtained from an herbal supplement, and comparing it to a known database of DNA of plants to find a match." (*Id.* at ¶ 168.) The sequence of base pairs in the standardized gene regions "is unique to each plant species." (*Id.*) Thus, if the sequence in the herbal supplement sample is the same as the sequence in the database for a particular plant, the supplement contains that plant. (*Id.* at ¶¶ 168–70.) Plaintiffs allege that "[e]ven if the DNA molecule has been fragmented during the [herbal supplement] manufacturing process, the DNA can be detectable because a fragment as small as 200 base pairs may be enough DNA to allow for the identification of the plant species from which the DNA came." (*Id.* at ¶ 167.)

Plaintiffs claim that "DNA testing in general" is a generally accepted forensic tool. (*Id.* at ¶ 171.) They also reference a 2013 study from the University of Guelph—which was published in a peer reviewed publication called BMC Medicine—in which researchers used DNA barcoding to test 44 finished herbal products (for 30 different species of herbs) from 12 companies. (*Id.* at ¶¶ 2, 172–75.) The researchers found that 52% of the tested herbal products did not contain the ingredients they purported to contain, 59% contained species of plants that were not listed on the product labels, and 33% of the herbal products also contained contaminants and/or fillers that were not listed on the product labels. (*Id.* at ¶ 174.) The researchers concluded that "[w]hat is listed on the label of herbal products is not always what is

found within the product." (*Id.* at ¶ 172 (alteration in original).) Plaintiffs do not allege, however, that the Guelph study necessarily dealt with the companies or products at issue in this lawsuit.[5]

Beyond claiming that the Affected Products do not contain their listed ingredients but do contain undisclosed substances, Plaintiffs allege that Target, Walgreens, and Walmart do not verify that the supplements they obtain from third-party vendors like NBTY contain only the ingredients listed on the labels, nor do they require their suppliers to test the supplements using DNA barcoding. (*Id.* at ¶¶ 67–70, 91–94, 133–36.) Plaintiffs claim that they were "misled and deceived by Target's material misrepresentations and omissions and were damaged and injured as a result" because they would not have purchased the Affected Products had they known the truth, they did not receive the benefit of the price they paid for the Affected Products, and the Affected Products had no value due to the mislabeling. (*Id.* at ¶¶ 82, 108, 152.) Plaintiffs further allege that NBTY is also responsible for the misrepresentations on the labels because it manufactures the supplements, labels them, and then sells them to Walmart, Walgreens, and Target. (*Id.* at ¶¶ 153–60.)

Plaintiffs, on behalf of various classes, enumerate the following causes of action against Defendants: (1) violation of state consumer protection laws based on misrepresentation, (*id.* at ¶¶ 192–227); (2) breach of express warranties, (*id.* at ¶¶ 239–60); (3) breach of implied warranties, (*id.* at ¶¶ 261–315); and (4) unjust enrichment, (*id.* at ¶¶ 316–327).

---

[5] Plaintiffs also allege that "FDA data reveals that firms regularly manufacture and distribute herbal products that contain contaminants or fillers." (R. 184 at ¶ 47.) Plaintiffs do not claim, however, that the FDA data dealt with the companies and supplements at issue.

**LEGAL STANDARD**

**I.      Motion to Dismiss Standard**

 "A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014).  Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*  Put differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in [a plaintiff's] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

To plead fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8(a)(2). *See Camasta*, 761 F.3d at 736; *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011).  Specifically, "plaintiffs must plead the 'who, what, when, where, and how: the first paragraph of any newspaper story' of the alleged fraud." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)).  In other words, "[t]he requirement of pleading fraud with particularity includes pleading facts that

make the allegation of fraud plausible"; therefore, "[t]he complaint must state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014); *see also Rocha*, 826 F.3d at 911. Allegations based on information and belief will not suffice under Rule 9(b) unless "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'" *Grenadyor*, 772 F.3d at 1108 (quoting *Pirelli*, 631 F.3d at 443); *see also United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016).

Rule 9(b)'s heightened standard does not, however, apply to allegations of states of mind. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Instead, Rule 8's standards—as defined in *Twombly* and *Iqbal*—govern. *See Iqbal*, 556 U.S. at 686–87.

## II. Motion to Strike Standard

Federal Rule of Civil Procedure 12(f) provides that a district court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous material." Fed. R. Civ. P. 12(f). Motions to strike are usually disfavored. *Top Tobacco, L.P. v. Good Times USA, LLC*, No.16-cv-4292, 2017 WL 395698, at *2 (N.D. Ill. Jan. 30, 2017) (citing *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)); *Otero v. Dart*, No. 12 C 3148, 2012 WL 5077727, at *2 (N.D. Ill. Oct. 18, 2012). Motions to strike are appropriate, however, if they serve to streamline the litigation. *See Heller*, 883 F.2d at 1294; *Top Tobacco*, 2017 WL 395698, at *2; *Otero*, 2012 WL 5077727, at *2, *6 (striking "all references to equitable relief from the Complaint"). Courts may grant a motion to strike where the allegations at issue are "so unrelated

to the party's claims as to be devoid of merit and unworthy of any consideration" as well as unduly prejudicial. *See Causay v. Wells Fargo Bank, N.A.*, No. 16-cv-7398, 2016 WL 7188167, at *2 (N.D. Ill. Dec. 12, 2016); *Stop Ill. Health Care Fraud, LLC v. Sayeed*, No. 12 cv 9306, 2016 WL 4479542, at *3 (N.D. Ill. Aug. 26, 2016) *Essex Ins. Co. v. Vill. of Oak Lawn*, 14-cv-04572, 2015 WL 1942937, at *5 (N.D. Ill. Apr. 28, 2015). District courts enjoy considerable discretion in resolving a motion to strike. *See Delta Consulting*, 554 F.3d at 1141; *Essex Ins.*, 2015 WL 1942937, at *5. The moving party carries the burden to show entitlement to its requested relief. *See Causay*, 2016 WL 7188167, at *2; *Otero*, 2012 WL 5077727, at *2.

## ANALYSIS

### I.    Defendants' Motion to Strike

Defendants seek to strike all allegations regarding the NYAG's investigation, letters, and press release. (*See* R. 198, NBTY, Walgreens, & Walmart's Mem. Supp. Mot. Dismiss, 6–8; R. 194, Target's Mem. Supp. Mot. Dismiss, 10–12.) They rely primarily on the Second Circuit's opinion in *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976). (R. 198 at 7; R. 194 at 10.) In *Lipsky*, the district court had struck from the plaintiff's complaint references to an SEC complaint against the defendant in another case. *Lipsky*, 551 F.2d at 892. The SEC's complaint had ultimately resulted in a consent judgment between the SEC and the defendant. *Id.* at 892–93. The Second Circuit reasoned that the consent judgment was "not the result of an actual adjudication of any of the issues" and therefore could "not be used as evidence in subsequent litigation between that corporation and another party." *Id.* at 893; *see also id.* at 894 ("The consent decree entered into by the SEC and [the defendant] was the result of private bargaining, and there was no hearing or rulings or any form of decision on the merits by the district court."). Because the consent judgment could "have no possible bearing" on subsequent

litigation between the defendant and another party, "the SEC complaint which preceded the consent judgment [was] also immaterial, for the purposes of Rule 12(f)." *Id.* at 894. The court added the caveat, however, that "the SEC's opinion of the sufficiency of the [defendant's] various [registration and proxy] statements may be relevant and may be admissible," and therefore, while the plaintiff could not reference the SEC's complaint, he could potentially reference other documents or testimony from the SEC. *See id.*

Defendants read *Lipsky* to mean that references to the NYAG's investigation are immaterial under Rule 12(f) because the investigation did not result in an adjudication on the merits. (R. 198 at 7; R. 194 at 10–11.) In support, they cite cases from the Southern District of New York for the proposition that "preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f)." (*See* R. 198 at 7 (quoting *In re Merrill Lynch Res. Reports Sec. Litig.*, 218 F.R.D. 76, 78–79 (S.D.N.Y. 2003)); R. 194 at 10–11 (quoting *Merrill Lynch* and citing *In re CRM Holdings, Ltd. Sec. Litig.*, No. 10 CIV 00975(RPP), 2013 WL 787970, at *5 (S.D.N.Y. Mar. 4, 2013); *Ledford v. Rapid-Am. Corp.*, No. 86 Civ. 9116 (JFK), 1988 WL 3428, at *1–2 (S.D.N.Y. Jan. 8, 1988); *Mitchell v. Bendix Corp.*, 603 F. Supp. 920, 922 (N.D. Ind. 1985).) Defendants further quote *In re Rough Rice Commodity Litigation*, No. 11 C 618, 2012 WL 473091, at *4 (N.D. Ill. Feb. 9, 2012), for the proposition that *Merrill Lynch*'s understanding of *Lipsky* is "well-established precedent." (R. 198 at 8; R. 194 at 11.)

Defendants' contention that this interpretation of *Lipsky* is "well-established" is an overstatement. As the *Rough Rice* court itself noted, the Seventh Circuit has not spoken on the question of whether a reference in a complaint to any "preliminary steps in litigations and administrative proceedings" that did not result in an adjudication on the merits is immaterial

under Rule 12(f).  2012 WL 473091, at *4–5; *see also Marvin H. Maurras Revocable Tr. v. Bronfman*, Nos. 12 C 3395, 12 C 6019, 2013 WL 5348357, at *15–17 (N.D. Ill. Sept. 24, 2013) (departing from *Rough Rice* and questioning whether its interpretation of *Lipsky* was well-settled).  Furthermore, district courts in the Second Circuit are divided on the breadth of *Lipsky*'s holding.  *See, e.g.*, *Hanson v. Frazer, LLP*, Nos. 12 Civ. 3166(JSR), 12 Civ. 4222(JSR), 2015 WL 4561707, at *3 & n.1 (S.D.N.Y. July 17, 2015) (noting that some courts interpret *Lipsky* like the *Merrill Lynch* court, but collecting cases for the proposition that "others have questioned whether [*Lipsky*] went so far"); *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012) ("*Lipsky* does not, as defendants argue, stand for the proposition that any factual allegation derived from a government investigation or pleading must be stricken from a private plaintiff's complaint."); *In re Bear Stearns Mtg. Pass–Through Certificates Litig.*, 851 F. Supp. 2d 746, 768 n.24 (S.D.N.Y. 2012); *see also Rodriguez v. City of New York*, No. CV-16-00214 (ENV) (ST), 2016 WL 3264166, at *1 (E.D.N.Y. June 13, 2016); *HSH Nordbank AG v. RBS Holdings USA Inc.*, No. 13 Civ. 3303(PGG), 2015 WL 1307189, at *3–4 (S.D.N.Y. Mar. 23, 2015); *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 343 (S.D.N.Y. 2015).  Thus, the Court will not take Defendants' interpretation of *Lipsky* as a given.[6]

After reviewing the relevant case law, the Court finds the cases that read *Lipsky* narrowly—that is, the cases conflicting with Defendants' interpretation—are most persuasive. First, the Court agrees with the district courts that have pointed out that it makes little sense to bar reference to government studies simply because they did not ultimately result in an adjudication on the merits.  The *Fannie Mae* court explained this clearly:

> *Lipsky* does not, as defendants argue, stand for the proposition that any factual allegation derived from a government investigation or pleading must be stricken from a private plaintiff's complaint.

---

[6] The Court further notes that it is not bound by *Lipsky* or the decision of any district court.

> "There is no absolute rule barring a private plaintiff from relying on government pleadings and proceedings in order to meet the Rule 9(b) and PSLRA thresholds." Thus, "there is nothing improper about utilizing information contained in an SEC complaint as evidence to support private claims under the PSLRA." Indeed, "[i]t makes little sense to say that information from . . . a study [or investigation]—which the [complaint] could unquestionably rely on if it were mentioned in a news clipping or public testimony—is immaterial simply because it is conveyed in an unadjudicated complaint." *In re Bear Stearns Mortgage Pass–Through Certificates Litig.*, 851 F. Supp. 2d 746, 767–68 [n.24] (S.D.N.Y. 2012).

891 F. Supp. 2d at 471 (citations omitted); *see also, e.g.*, *Strougo*, 105 F. Supp. 3d at 343 (permitting allegations based on an NYAG complaint); *VNB Realty, Inc. v. Bank of Am. Corp.*, No. 11 Civ. 6805(DLC), 2013 WL 5179197, at *4 (S.D.N.Y. Sept. 16, 2013). Second, the *Lipsky* court made clear that its holding was limited to its facts. *See* 551 F.2d at 893 ("[W]e hold that neither a complaint nor references to a complaint which results in a consent judgment may properly be cited in the pleadings *under the facts of this case*." (emphasis added)). Thus, *Lipsky*—which is nonbinding authority—has limited application to the current case, which does not deal with a consent judgment.[7] *See VNB Realty*, 2013 WL 5179197, at *4; *Fannie Mae*, 891 F. Supp. 2d at 471. Third, motions to strike are disfavored and courts should grant them only when the allegations at issue are "so unrelated to the party's claims as to be devoid of merit and unworthy of any consideration" as well as unduly prejudicial. *See supra* Legal Standards, § II; *Causay*, 2016 WL 7188167, at *2. Defendants have not clearly articulated why they would suffer prejudice, and the allegations related to the NYAG's study are relevant to the issues in this case. *See Wenzel v. Knight*, 3:14-cv-432, 2015 WL 222182, at *2–3 (E.D. Va. Jan. 14, 2015) ("More importantly, the references to the SEC border bear direct relation to the allegations at issue in this case, and the defendants have not shown how they are prejudiced by the complaint's

---

[7] The Court further notes that the SEC investigation in *Lipsky* came to an end, while it is not clear from the pleadings that the NYAG investigation has concluded.

references to the SEC order.  Accordingly, the Court denies the motion to strike.").  Accordingly, the Court denies Defendants' motion to strike.

## II.      Motion to Dismiss

### A.      Standing to Bring Claims Under the Laws of States Where Named Plaintiffs Have No Connection

NBTY, Walgreens, and Walmart argue that Plaintiffs lack standing to bring claims under the laws of states with which they have no connection.  (R. 198 at 10.)  These Defendants argue, for example, that "no Plaintiff lives within hundreds of miles of Alaska, but they assert that Defendants violated the Alaska unfair competition law."  (*Id.*)  Plaintiffs contend that Defendants' argument "improperly conflates the Article III standing inquiry, which is properly considered at this stage, with the Rule 23 typicality, adequacy, and predominance inquiries, which must be deferred until the Court considers Plaintiffs' motion for class certification."  (R. 201, Pls.' Opp. Mot. Dismiss, 18.)

There is a split in authority on the question at issue, both around the country and within courts in the Seventh Circuit.  *See McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 WL 1149336, at *5 (N.D. Ill. Mar. 28, 2017) (collecting cases and noting that "[c]ourts in this district, however, are divided as to whether these decisions require a plaintiff to establish standing at the pleading stage to pursue claims under state laws in which that plaintiff does not reside or cannot claim to have personally suffered an injury"); *Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp.*, No. CV 16-046 S, 2016 WL 6462137, at *6 (D.R.I. Nov. 1, 2016); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503-DJC, 2015 WL 5458570, at *14 (D. Mass. Sept. 16, 2015) (collecting cases and noting that "[c]ourts have taken different views about how to evaluate Article III and class standing at the motion to dismiss stage where putative class representatives assert claims arising under the

laws of states where they neither reside nor allege to have suffered injury"). After reviewing the

conflicting cases, the Court finds most persuasive the opinions that align with Plaintiffs'

analysis. *See, e.g.*, *McDonnell*, 2017 WL 1149336, at *4–5 (Ellis, J.); *Supreme Auto Transp.*

*LLC v. Arcelor Mittal*, No. 08 CV 5468, 2017 WL 839484, at *2 (N.D. Ill. Mar. 3, 2017) (Shah,

J.); *Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1111–14 (E.D. Wis. 2016); *In re*

*Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 957–58 (N.D. Ill. 2016) (Dow, J.); *Halperin v. Int'l Web*

*Servs., LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. June 5, 2015) (Feinerman, J.); *Solodyn*, 2015

WL 5458570, at *13–14; *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL

3754041, at *5 (N.D. Ill. Nov. 5, 2009) (Gettleman, J.). The Court finds particularly convincing

the analysis in *Halperin*. There, the court explained that the defendant's argument that the

plaintiff lacked standing "to raise claims under the nine state consumer protection laws other

than Illinois's" was "more accurately characterized as an attack not on Halperin's Article III

standing *per* se . . . but rather on his ability under Rule 23 to represent the multi-state class." 123

F. Supp. 3d at 1009. The issue was therefore "best deferred to the class certification stage." *Id.*

(citing *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002), and *Ortiz v. Fibreboard*

*Corp.*, 527 U.S. 815, 831 (1999), for the proposition that the class certification issues were

"logically antecedent to" the standing questions); *see also McDonnell*, 2017 WL 1149336, at *4–

5.

     The Seventh Circuit's decision in *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 535–36 (7th

Cir. 2011), also supports Plaintiffs' argument. In *Morrison*, the plaintiffs brought suit under an

Illinois statute on behalf of a nationwide class. 649 F.3d at 535. The defendant challenged the

standing of class members from states other than Illinois, and the district court agreed with the

defendant. *Id.* The Seventh Circuit explained that there was "no problem with standing"

because "[p]laintiffs have standing if they have been injured, the defendants cause that injury, and the injury can be redressed by a judicial decision."  649 F.3d at 536.  Because the plaintiffs demonstrated those elements of standing, "[n]othing more [was] required."  *Id.*; *see also Le*, 160 F. Supp. 3d at 1113–14 (relying, in part, on *Morrison*); *Cohan v. Medline Indus., Inc.*, No. 14 CV 1835, 2014 WL 4244314, at *2 (N.D. Ill. Aug. 27, 2014) (Shah, J.) (same).   Here, plaintiffs similarly have established the elements of standing, and the Court agrees with the many courts that have concluded that Defendants' concerns are better left for the class-certification stage.

### B.  Plaintiffs' Standing to Pursue Injunctive Relief

NYBT, Walmart, and Walgreens argue that the Court should dismiss Plaintiffs' request for injunctive relief because "once a consumer fraud plaintiff is aware of allegedly misleading advertising, she must offer more than conjecture of future harm in order to receive an injunction."  (R. 198 at 12.)  The Court agrees.

"[A] plaintiff must demonstrate standing for each form of relief sought.  A plaintiff may have standing to pursue damages but not injunctive relief, for example, depending on the circumstances."  *Kenseth v. Dean Health Plan*, 722 F.3d 869, 890 (7th Cir. 2013).  To establish standing, Plaintiffs must demonstrate "(1) injury in fact, which must be concrete and particularized, and actual and imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redressability."  *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013).  To establish standing for prospective injunctive relief, Plaintiffs "must allege a 'real and immediate' threat of future violations of their rights."  *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *see also Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) ("To have standing for prospective injunctive relief, a plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or

hypothetical.'" (quoting *Lyons*, 461 U.S. at 102)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Simic*, 851 F.3d at 738 (quoting *Lyons*, 561 U.S. at 95–96). Class representatives must have standing with respect to their requested relief—they cannot rely on putative class members to establish standing. *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *see Simic*, 851 F.3d at 740 ("Simic's lack of standing to seek injunctive relief also means that she may not seek that relief on behalf of the putative class she alleged in her complaint."); *see also Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2017 WL 1427070, at *3 (N.D. Ill. Apr. 21, 2017).

There is a split of authority on the question of whether consumer plaintiffs claiming they were deceived can pursue injunctive relief when they are aware of the deceptive practice at issue. *See, e.g.*, *Mednick v. Precor*, No. 14 C 3624, 2016 WL 5390955, at *9 (N.D. Ill. Sept. 27, 2016) (noting the split in authority); *Bohn v. Boiron, Inc.*, No. 11 C 8704, 2013 WL 3975126, at *4 (N.D. Ill. Aug. 1, 2013); *see also Taylor v. Nike*, No. 16-cv-661-MO, 2017 WL 663056, at *2 (D. Or. Feb. 17, 2017) (recognizing a split in authority within the Ninth Circuit); 1 *McLaughlin on Class Actions* § 4.28 (13th ed. 2016) ("Though a minority view disagrees, most courts to address the question have ruled that a plaintiff who is a former customer who provides no concrete basis to conclude that he or she will purchase the product at issue in the future (so that they be subject to the challenged practice) lacks standing to pursue injunctive relief on behalf of a consumer class because the plaintiff is unlikely to suffer future harm."). After reviewing the split in authority, the Court agrees with those cases concluding that plaintiffs like those in the current case lack standing to pursue injunctive relief.

In *Bohn v. Boiron, Inc.*, for example, the plaintiff alleged that the defendant's product, Oscillo, which purportedly relieved flu-like symptoms, was "a dose of sugar and nothing else" and that "had she 'known the truth about Defendants' misrepresentations and omissions, including that the scientific evidence demonstrated that [Oscillo] was not effective as represented by Defendants[,] *Plaintiff would not have purchased Defendants' Product*.'" 2013 WL 3975126, at *1, *3 (emphasis in original) (alterations in original) (quoting the amended complaint at issue). Because of this, the plaintiff could not establish standing to obtain an injunction because she did not face a "real and immediate threat" of future harm. *Id.* (quoting *Lyons*, 461 U.S. at 102); *see also Mednick*, 2016 WL 5390955, at *9 (finding "*Bohn* and its line of cases persuasive'); *Langan v. Johnson & Johnson Consumer Cos.*, Nos. 3:13-cv-1470 (JAM), 3:13-cv-1471 (JAM), 2017 WL 985640, at *10–11 (S.D.N.Y. Mar. 13, 2017); *Taylor*, 2017 WL 663056, at *3 ("Here, Ms. Taylor's economic injury is rooted in Nike's alleged deception; without such deception, she would not have purchased the merchandise or paid as much as she did. By virtue of her past injury, however, Ms. Taylor is now aware of any false pricing scheme in which Nike might be engaged. Therefore, she cannot demonstrate 'the imminent prospect of future jury' because she can no longer be deceived."); *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 564–65 (S.D.N.Y. 2016); *McLaughlin on Class Actions*, *supra*, § 4.28 ("When the claim relates to a product or service purchased or used, a plaintiff who disclaims an intention of purchasing the product or service in the future lacks standing to seek prospective injunctive relief or represent a class pursuing such relief.").

Moreover, beyond the persuasive force of *Bohn* and similar cases, the Seventh Circuit appears to endorse Defendants' argument. In *Camasta v. Jos. A Bank Clothiers*, the plaintiff brought a consumer fraud action based on the defendant's allegedly fraudulent sales technique.

761 F.3d 732, 734–35 (7th Cir. 2014). He claimed that had he known the truth, he would not have purchased the defendant's products. *Id.* at 735. The court explained that the plaintiff's claim did not entitle him to injunctive relief because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Id.* at 740–41 (alteration in original) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)). *Camasta* uses the language of Article III standing (*i.e.*, "case or controversy"), cites *O'Shea* (an Article III standing case), and "[f]ederal courts must determine that they have jurisdiction before proceeding to the merits," *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94–95 (1998)). Thus, *Camasta* dealt with Article III standing. Even if *Camasta* were dicta, as the court found in *Le v. Kohls Department Stores, Inc.*, 160 F. Supp. 3d 1096, 1111 (E.D. Wis. 2016), it is persuasive.

Here, Plaintiffs make clear in their complaint that they would not have purchased the Affected Products had they known the truth about them. (*See* R. 184 at 22–24, 33–34, 43–45.) Under *Camasta* as well as the persuasive reasoning set forth above, Plaintiffs cannot pursue injunctive relief because they face no real immediate threat of future injury.[8]

---

[8] The Court notes that even authority that Plaintiffs cite may not support their argument. Plaintiffs cite *Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 WL 5234596, at *10 (N.D. Ill. Sept. 22, 2016), which relies on the Eastern District of Wisconsin's decision in *Le*. The *Le* court explained that the defendants' argument—which is essentially the same as Defendants' argument here—"may be more appropriate in the context of a product-specific complaint" rather than in a "complaint aimed at company-wide, pervasive, and continuous false advertising campaign." 160 F. Supp. 3d at 1110 (internal quotation marks omitted). The complaint in this case is product specific. Therefore, even the *Le* court might disagree with Plaintiffs' position. *See Mednick*, 2016 WL 5390955, at *9 (discussing *Le*).

The Court further notes that in at least one case, *Leiner v. Johnson & Johnson Consumer Cos.*, No. 15 C 5876, 2016 WL 128098, at *1 (N.D. Ill. Jan. 12, 2016), the court looked to *Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008), to conclude that plaintiffs have standing to pursue injunctive relief in consumer deception cases even if they are unlikely to be deceived again. The *Leiner* court read *Arreola*—which drew a distinction between entitlement to relief and Article III standing, *Arreola*, 546 F.3d at 794–95—to mean that a plaintiff need not establish standing to pursue injunctive relief. *Leiner*, 2016 WL 128098, at *1. This, however, would conflict with the precedent cited above, which is clear that a "plaintiff must demonstrate standing for each form of relief sought" and that a plaintiff "may have standing to pursue damages but not injunctive relief." *See Kenseth*, 722 F.3d at 890. The *Arreola* court drew a distinction between standing and "the underlying merits of a claim." 546 F.3d at 795. It did not excuse plaintiffs from demonstrating standing for each form of relief sought.

C.        **State Warranty Laws and Pre-Suit Notice**

Plaintiffs allege that Defendants breached express and implied warranties under the laws of every state and the District of Columbia, although with respect to NBTY, Plaintiffs allege only breach of implied warranties and do so only under the laws of a certain subset of states. (*See* R. 184 at ¶¶ 228–315.)

NBTY, Walgreens, and Walmart argue that "[i]n each of the twelve states where Plaintiffs live, breach of express and implied warranty claims against *retailers* may not be asserted unless the plaintiff previously gave the retailer pre-suit notice of the claim; and, for suits against *manufacturers*, all but three of those states require pre-suit notice." (R. 198 at 11.) These Defendants contend that the complaint names only one Plaintiff, Kaitlyn Pirtle, who allegedly gave pre-suit notice. (*Id.* at 11.)[9] Accordingly, NBTY, Walgreens, and Walmart seek the dismissal of the express and implied warranty claims of every other plaintiff except for the Minnesota, Missouri, and New Jersey plaintiffs (Kardasz, Harris, Chamberlain, Cintron, and Cohn) asserting warranty claim against NBTY under the laws of those three states. (*Id.* at 11–12.) Plaintiffs, in contrast, contend that Defendants' arguments regarding pre-suit notice are premature because "compliance with a statutory pre-suit notice requirement is an affirmative defense" that they need not plead. (R. 201 at 20.)

Plaintiffs cite a single case, *Conlon v. Wal-Mart Stores, Inc.*, No. 2:13-cv-464-FtM-29DNF, 2014 WL 1588463, at *2 (M.D. Fla. 21, 2014), to support their argument that pre-suit notice is an affirmative defense that they need not mention in a complaint. (R. 201 at 20.) The

---

[9] Pirtle is from Iowa and purchased Echinacea, Ginkgo Biloba, Garlic, and Valerian Root from Target as well as Echinacea from Walmart. (R. 184 at ¶ 23.) Plaintiffs' complaint alleges "[o]ne or more Plaintiffs, including Ms. Pirtle, provided the pre-litigation notice and/or notice before bringing a damages claim required by various state . . . warranty statutes with respect to the Retailer Defendants." This vague allegation is not sufficient to provide factual support for notice except with respect to Pirtle. Moreover, Plaintiffs' allegation that "[w]ithin a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of himself [sic] and members of the Class, placed Defendant on notice thereof" is too vague and conclusory to satisfy Rule 8. (*E.g.*, R. 184 at ¶ 278.)

portion of the case Plaintiffs cite deals with a pre-suit notice provision in the Florida Minimum Wage Act.  Plaintiffs therefore support their argument—which should address the issue of whether a plaintiff must plead pre-suit notice to retailers and/or manufactures in breach of warranty actions under the laws of eleven states—with citation to one case concerning a Florida law that is not at issue in the current case.

Moreover, Plaintiffs' argument fails—at least with respect to the law of some of the states at issue, including Illinois.  The complaint alleges breach of express and implied warranties under the Illinois Uniform Commercial Code ("UCC"), 810 Ill. Comp. Stat. 5/2-313–15.  (*See, e.g.*, R. 184 at ¶¶ 258(n), 268(n).)  Another provision in the Illinois UCC, 810 Ill. Comp. Stat. 5/2-607, makes clear that "[w]here a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  The Illinois Supreme Court has held that this notice provision "is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer."  *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 590 (Ill. 1996); *see De Falco v. Vibram USA, Inc.*, No. 12 C 7238, 2013 WL 1122825, at *8 (N.D. Ill. Mar. 18, 2013).  Filing a complaint is insufficient notice for plaintiffs—like those in this case—who did not suffer a personal injury.  *Connick*, 675 N.E.2d at 590–91 ("Only a consumer plaintiff who suffers a personal injury may satisfy the section 2-607 notice requirement by filing a complaint stating a breach of warranty action against the seller.").  Failure to plead adequate notice results in dismissal.  *See Connick*, 675 N.E.2d at 591; *Porter v. NBTY, Inc.*, No. 15 CV 11459, 2016 WL 6948379, at *7 (N.D. Ill. Nov. 28, 2016); *De Falco*, 2013 WL 1122825, at *8.[10]  The law in Mississippi and Florida, as further examples, is similar.

---

[10] Plaintiffs need not provide notice if the seller has actual knowledge of the defect of the particular product. *Connick*, 675 N.E.2d at 589.  Plaintiffs do not, however, attempt to justify their noncompliance with the UCC's

*See Watson Quality Ford, Inc. v. Casanova*, 999 So. 2d 830, 834 (Miss. 2008) (listing notice to the seller as an element of breach of an implied warranty); *Little v. Smith & Nephew, Inc.*, No. 1:15-cv-00028-GHD-DAS, 2015 WL 3651769, at *11–12 (N.D. Miss. June 11, 2015) ("To survive a Rule 12(b)(6) motion, a plaintiff is required to plead specific facts that he provided such notice."); *Randolph v. J.M. Smucker Co.*, No. 13-80581-CIV, 2014 WL 1018007, at *7 (S.D. Fla. Mar. 14, 2014); *Jones v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1339 (S.D. Fla. 2011) ("Here, Plaintiff does not allege that he ever notified Defendants of the alleged breach of a warranty. Plaintiff, therefore, has failed to state a claim for breach of express warranty.").

Accordingly, the Court grants Defendants' motion with respect to Plaintiffs' challenged warranty claims without prejudice.[11] Plaintiffs, if they wish to replead, should lay out specific facts regarding notice.

### D. Fraud Allegations

Defendants argue that Plaintiffs have failed to support their fraud allegations with first-hand information and therefore fail to satisfy Rule 9(b). (*See, e.g.*, R. 194 at 9–10; R. 210, Defs.' Sur-Reply, 1.) Before considering the merits of this argument, the Court must first determine which claims Rule 9 governs.

---

notice provision based on actual knowledge. Moreover, general awareness of problems with a product line is insufficient. *See id.* at 590; *De Falco*, 2013 WL 112285, at *8.

[11] While the laws of each state involved in this case may vary, the Court concludes that it is prudent to avoid delving into the law of each individual state without the benefit of adversarial testing. *See Families of Spinal Muscular Atrophy v. Nationwide Children's Hosp.*, No. 16-cv-4262, 2016 WL 4987944, at *6 (N.D. Ill. Sept. 19, 2016) (discussing the importance of adversarial testing). Plaintiffs have not set forth the relevant laws of each state at issue, unlike Defendants. (*See* R. 198 at 11; R. 198-1; R. 203 at 10–11.) Moreover, Plaintiffs' complaint, while not sufficient in its current form, suggests that all Plaintiffs provided notice. If this is true, then Plaintiffs' next complaint will properly allege that each Plaintiff gave notice, thereby likely eliminating the need to consider many of the vagaries the UCC's application from state to state.

### 1. Appropriate Pleading Standard

Target argues that Rule 9(b) applies to "causes of action that are 'premised upon a course of fraudulent conduct'—such as Plaintiffs' consumer protection, warranty, and unjust enrichment counts in this case." (R. 194 at 8 (quoting *Camasta*, 761 F.3d at 737).) Plaintiffs do not discuss Rule 9(b)'s applicability, and therefore the Court assumes that Plaintiffs agree that Rule 9(b) applies to their claims.

### 2. Applying Rule 9(b) to Plaintiffs' Remaining Claims

Rule 9(b) imposes a higher pleading requirement when a plaintiff is alleging fraud. The purpose of the rule is to protect defendants from potentially damaging fraud allegations. *Pirelli*, 631 F.3d at 441 (explaining that "Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy" (quotation omitted); *see also Bogina*, 809 F.3d at 370 (noting that allegations on information and belief can mean "as little as 'rumor has it that'"); *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992). While Rule 9(b) raises the pleading bar to protect defendants from damaging, baseless claims of fraud, "[t]he Seventh Circuit interprets Rule 9(b) with flexibility." *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 818 (N.D. Ill. 2013); *see also Pirelli*, 631 F.3d at 442 (noting that courts should not "take an overly rigid view" of Rule 9(b)'s requirements); *United States ex rel. Graziosi v. Accretive Health, Inc.*, No. , 13-CV-1194, 2017 WL 1079190, at *5 (N.D. Ill. Mar. 22, 2017).

As previously noted, to meet the heightened pleading standard, "plaintiffs must plead the 'who, what, when, where, and how: the first paragraph of any newspaper story' of the alleged fraud." *Rocha*, 826 F.3d at 911 (quoting *Lusby*, 570 F.3d at 853). The focus of the parties' arguments, however, is on an additional Rule 9(b) requirement related to allegations based on information and belief—that is, allegations "based on secondhand information that [the plaintiff]

believes to be true." *Pirelli*, 631 F.3d at 442 (quoting *Black's Law Dictionary* 783 (7th ed. 1999)).  The Seventh Circuit has explained that allegations based on information and belief will not suffice under Rule 9(b) unless "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'" *Grenadyor*, 772 F.3d at 1108 (quoting *Pirelli*, 631 F.3d at 443); *see also United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016).

Plaintiffs do not contest Defendants' argument that their allegations concerning the NYAG's test results are based on "secondhand information" and are therefore pled on information and belief.  *Pirelli*, 631 F.3d at 442.  Indeed, their complaint is explicit in its preamble that Plaintiffs' allegations are made "upon personal knowledge as to facts pertaining to Plaintiffs *and upon information and belief as to all other matters*, based on the investigation of their counsel."  (R. 184 at 1 (emphasis added).)  Thus, the Court proceeds to the two-part test for pleading on information and belief under Rule 9(b).

The Court considers the second prong of the test first and concludes that Plaintiffs have adequately provided the grounds for their suspicions.  The NYAG is the chief legal officer of New York.  *See* N.Y. Attorney Gen., *Our Office*, https://ag.ny.gov/our-office.  The NYAG's press release and letters to Defendants indicate what tests the NYAG used, how they conducted their tests (*e.g.*, how many samples were tested, how many times each sample was tested), and what the results were.  Taking Plaintiffs' allegations as true and viewing the complaint in the light most favorable to Plaintiffs, *see Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 648 (7th Cir. 2017), there is no reason to believe the NYAG inaccurately reported the testing it conducted, and there is no reason to believe that the NYAG is anything other than a reliable government source.  Additionally, the NYAG's results are bolstered by the University of Guelph study,

which found a high percentage of mislabeling when testing supplements using the same testing method—DNA barcoding—as the NYAG. Plaintiffs therefore have relied on specific testing results from a credible source, not mere allegations in a complaint as in *Pirelli*. *See* 631 F.3d at 443 ("[T]he complaint relies on the ground that other people have sued Walgreens and detailed their allegations."). This is not a case where Plaintiffs are simply relying on stray remarks fresh off the rumor mill. *See Fannie Mae*, 891 F. Supp. 2d at 471 (explaining that plaintiffs are not precluded from relying on government pleadings and proceedings in order to meet Rule 9(b)); *see also Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 665 (N.D. Ill. 2016) (explaining that the plaintiff failed to adequately plead an ICFA claim because she did not plead facts, "such as personal experience or third-party studies," in support of her claim).

Defendants argue that the Seventh Circuit in *Camasta* "rejected a plaintiff's effort to support his allegations of fraud by relying on an investigation *conducted by the very same New York Attorney General's Office*." (R. 210 at 3 (emphasis in original).) The *Camasta* court, however, did not hold that the NYAG's office is unreliable and that scientific testing the NYAG conducts cannot support a claim of fraud. Instead, the court merely explained that "Camasta failed to explain how the New York advertising practices that were the subject of the 2004 [NYAG] investigation are the same or similar to practices employed by [the defendant] in Illinois between 2009 and 2012." 761 F.3d at 738. Accordingly, Defendants' argument falls flat, and Plaintiffs have satisfied the second prong of the test.

Plaintiffs also satisfy the first prong of the test. As Plaintiffs point out, "the whole point of a consumer fraud scheme is for the Defendants to wrongfully profit without anyone knowing." (R. 209 at 5.) The average consumer has no way of readily knowing if a supplement she buys is genuine or not. While a consumer plaintiff could perhaps engage in testing as the NYAG did,

the Court doubts such a plaintiff has a realistic ability or incentive to do so. Additionally, Plaintiffs' ability to test supplements was further hindered by a January 28, 2016 order barring the parties from conducting any testing. (R. 129.)

It is also unnecessary for pleading purposes to require a consumer plaintiff to conduct his own DNA testing on supplements when the NYAG just released his own test results. Requiring a plaintiff to duplicate publicly available scientific testing conducted at the direction of the NYAG would not serve the purpose of Rule 9(b). As discussed above, Rule 9(b) exists to protect defendants from damaging, groundless accusations of fraud. Here, Plaintiffs' allegations are rooted in a reliable source's publicly disclosed scientific test results. Forcing Plaintiffs to repeat the NYAG's work for pleading purposes does little more than increase litigation costs for Plaintiffs without good reason. Given that Rule 9 is meant to be flexible rather than an arid formalism and given the unique circumstances of this case, the Court declines to send Plaintiffs to the laboratory to do what the NYAG has already done.

Having disposed of Defendants' arguments regarding pleading information and belief, the Court turns to Target's arguments that even if the Court considers the NYAG investigation, Plaintiffs fail to state a claim. (R. 194 at 12.) Target argues that there is an "obvious alternative explanation" for the NYAG's result: that DNA from the source material was degraded during the extraction process used during the creation of the supplements. (*Id.* at 13; R. 202 at 8.) Target here presents a factual issue related to the reliability of DNA barcode testing that is best reserved for motions on expert testimony or trial. Furthermore, because the NYAG's testing and the Guelph study testing revealed the presence of the DNA of some of the labeled herbs on a consistent basis and not others—for example, the NYAG found that Target's Echinacea, Garlic, and Saw Palmetto supplements "showed nearly consistent presence of the labeled contents"—it

is sufficiently plausible that DNA barcode testing can accurately identify whether a supplement contains the substance its label says it contains. In other words, if DNA barcode testing entirely degrades DNA, why do some of the tests consistently show the presence of the DNA of the advertised herb? Additionally, why is the DNA of other substances not listed on the label— beans, house plants, etc.—detected by barcode testing? Defendants are free to challenge the efficacy of DNA barcode testing later in the litigation, but at the pleading stage, the NYAG testing is sufficient factual support for Plaintiffs' claims.[12]

Finally, Target argues in a truncated paragraph that because the NYAG tested only supplements from New York stores they cannot allege fraudulent activity around the nation. (R. 194 at 14–15.) Courts have permitted consumer claims in nationwide class actions regarding product mislabeling to move forward based on limited testing, including a single test on a single sample of the product at issue. *See, e.g.*, *Gubala v. HBS Int'l Corp.*, No. 14 C 9299, 2016 WL 2344583, at *4 (N.D. Ill. May 4, 2016); *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2016 WL 1019794, at *2, *7–8 (N.D. Ill. Mar. 15, 2016). Furthermore, there is no reason to believe, based on the complaint, that Defendants' manufacturing and labeling processes vary from one geographical area to another.

In short, Defendants' arguments discussed in this section are unavailing. The Court therefore denies their motions to dismiss except to the extent stated above. (*See supra* Analysis, § II.B–C.)

---

[12] Target also argues that the fraud here is that cheaper plants were substituted for more expensive labeled herbs in order to fool chemical tests that supplement manufacturers supposedly carry out. (R. 194 at 13–14.) The fraud allegation, however, can more simply be described as a claim that Defendants sell supplements that do not contain what they are supposed to contain. The NYAG's testing results support such a claim. Additionally, the allegations to which Target refers, (*see* R. 184 at ¶¶ 48–58), simply outline that the testing some manufacturers purport to use to test supplements is deficient.

## CONCLUSION

For the foregoing reasons, Defendants' motions to strike are denied, and Defendants' motions to dismiss are granted in part and denied in part. The Court therefore (1) dismisses without prejudice Plaintiffs' claims for injunctive relief as stated above for lack of standing, and (2) dismisses the challenged warranty claims without prejudice.

**Dated:** **May 19, 2017**                                      **ENTERED**

_____

AMY J. ST. EVE
United States District Court Judge